UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TIMOTHY BURKE | Case No. 8:24-cr-68-KKM-TGW |

# DEFENDANT TIMOTHY BURKE'S OPPOSITION TO GOVERNMENT'S MOTION TO ENJOIN PUBLICATION OR USE OF SEIZED EXPRESSIVE MATERIALS

Comes Now, Defendant TIMOTHY BURKE, by and through the undersigned counsel and files this revised opposition to the government's motion for a protective order to restrict publication of certain materials. [1] In support whereof, Defendant states as follows:

1. "[T]he government *must* permit the defendant to inspect and to copy [materials if] the item was obtained from or belongs to the defendant,"[2] but "the

---

[1] The government filed a Motion for a Protective order (Doc. 39)(May 13, 2024) and Defendant objected with respect to privacy, copyright and trade secrets. (Doc. 43). The Defendant's further objection with respect to prior restraint (Doc. 44) was rejected by the Court as untimely and overlong (Doc. 46), and this response follows.
[2] F.R. Crim. P. 16 (a)(1)(E)(iii)

court *may, for good cause,* deny, restrict, or defer discovery or inspection, or grant other appropriate relief." [3]

2. The government seeks to enjoin Mr. Burke, an award-winning journalist, [4] from using, disseminating, or publishing his own work product and other <u>materials that pre-existed this investigation</u> and prosecution, which were collected for the purpose of dissemination to the public, [5] which were seized from his newsroom more than a year ago. This is a classic "prior restraint" on a journalists' ability to publish. [6] The government seeks this prior restraint without any demonstration of the kind of compelling and immediate harm with respect to each

---

[3] Fed. R. Crim. P. 16(d). "When the Government is seeking a protective order, it bears the burden of showing that good cause exists for its issuance. See, *United States v. Johnson* , 314 F.Supp.3d 248, 251 (D.D.C. 2018). *United States v. Bishop*, No. 5:22-CR-79-JA-PRL, 2023 WL 8529040, at *1 (M.D. Fla. Dec. 8, 2023). Protective orders should only be granted upon a showing of good cause, (*United States v. Belfast*, No. 06-20758-CR, 2007 WL 9705938, at *2 (S.D. Fla. Apr. 26, 2007)); where such "disclosure will work a clearly defined and serious injury to the party seeking closure" (*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994))," and upon a demonstration of a particular factual showing of potential harm to witnesses. (*United States v. Gangi,* 1998 WL 226196, at *2 (S.D.N.Y. 1998)) *See also Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (same) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). ""In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm."" *United States v. Cudd*, 534 F. Supp. 3d 48, 52 (D.D.C. 2021)(Government sought protective order regarding thousands of pages of "highly sensitive" surveillance data in Jan. 6 prosecution).
[4] Much of Mr. Burke's award-winning journalism — including his reporting about Sinclair Broadcast Group, NBC Olympics censorship, and events at the U.S. Capitol on Jan. 6, 2021 — has come from public live streams of broadcasts.
[5] See, 42 U.S.C. 2000aa(a) and (b)
[6] "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993); *Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1008 (3d Cir. 1976)(discovery protective order is prior restraint on publication).

individual item it seeks to restrain (with particularity) required both under Rule 16(d) and under the law of prior restraint. [7] The government asserts that this prior restraint is required because the materials seized are "contraband" and "stolen."

**The Government has Seized and Seeks to Prevent Publication of Journalistic Materials**

3. This case is at the core about journalism. The materials the government seeks to restrain from publication are Mr. Burke's reporting materials. The crime charged is finding and reporting on information -- reporting -- allegedly without permission. The government has seized Mr. Burke's newsroom, and now agrees to partially return it, if he agrees not to publish, based on the erroneous assumptions that the materials are "stolen" or "contraband" and that the government may, on behalf of entities like Fox News (Fox) and the National Basketball Association (NBA) assert that Burke's reporting on this information would violate these entities' copyright rights. Neither assertion, even if true, rises to the level of immediate harm to justify a prior restraint on publication.

---

[7] Prior restraints on freedom of speech have long been disfavored in Anglo-American law. *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931). While a prior restraint is not unconstitutional per se, there is a strong presumption against its constitutionality. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). "In order to be held lawful [the prior restraint], first, must fit within one of the narrowly defined exceptions to the prohibition against prior restraints, and, second, must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Southeastern Promotions, Ltd. v. Conrad, supra* 420 U.S. at 559. *United States v. Frandsen,* 212 F. 3d 1231, 1236 (11th Cir., 2000); *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005)("A prior restraint on speech prohibits or censors speech before it can take place.").

3

4. In *New York Times Co. v. United States*, 403 U.S. 713 (1971), the Supreme Court accepted the allegation that the "History of U. S. Decision-Making Process on Viet Nam Policy" was classified, stolen and was to be published without authorization, but held that its publication could not constitutionally be enjoined, even where the publication itself could violate the espionage law. The Court specifically held that the Department of Justice could not prevent publication of classified and stolen information by the New York Times and the Washington Post on the grounds that this information was "stolen," or would cause grave harm to national security. [8] Indeed, journalists (and the government itself)[9] routinely obtain and use information received from disgruntled employees, whistleblowers, leakers and others. [10] Thus, even if a journalist holds information that was stolen, an injunction against publication is an unconstitutional prior restraint without evidence of immediate and irreparable harm. [11]

---

[8] The principle against prior restraint has been upheld many times by the Eleventh Circuit, See, e.g., *Gayety Theatres, Inc. v. City of Miami,* 719 F. 2d 1550 (11th Cir., 1983); Cheffer v. McGregor, 6 F. 3d 705 (11th Cir., 1993); *The News-Journal Corp. v. Foxman*, 939 F. 2d 1499 (11th Cir., 1991; *Dimmitt v. City of Clearwater*, 985 F. 2d 1565 (11th Cir., 1993).

[9] *United States v. Jarrett*, 338 F. 3d 339 (4th Cir., 2003)(the Government used information provided by an anonymous computer hacker to initiate a search); *United States v. Kramer,* 75 F. 4th 339 (3rd Cir., 2023); *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003); *United States v. Rosenow,* 50 F.4th 715, 731 (9th Cir. 2022); *United States v. Koerber*, 10 F.4th 1083, 1114 (10th Cir. 2021).

[10] Examples include the Panama Papers, the Wikileaks papers, the SONY emails, the "Blueleaks" hack of government records, the "ClimateGate" leaks, the "Biden laptop" leak, and myriad other instances of reporters reporting on information obtained through leaks, whistleblowers, hacks or other forms of alleged "theft" or "misappropriation" or obtaining information or publishing it without consent.

[11] While we could find no cases in which the government obtained an injunction preventing a reporter from publishing information based on the theory that the information was obtained

5. To obtain what amounts to an injunction against publication even as part of the discovery process, [12] the government has the burden [13] of demonstrating that the publication will result in an imminent harm [14] which would result in a "grave and irreparable injury"[15] which cannot be mitigated by less intrusive measures. [16] The instant motion does not attempt to do so.  Moreover, even the justification that the information may be restrained from being published because the "information" was learned as a result of access to a website made without authorization does not hold up to the most basic scrutiny, and the government has not come close to meeting its burden under *New York Times* for a prior restraint. [17]

---

improperly, in *US v. Schulte,* 436 F. Supp. 3d 698 (SDNY 2020) the Court agreed to close the courtroom during the presentation of classified information allegedly disclosed to a journalist as part of the Wikileaks investigation pursuant to CIPA, 18 U.S.C. App. III. Sections 1-16.

[12] See, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) affirming that a court may restrict a newspaper/litigant from publishing materials they receive in discovery, but may not prohibit publication of materials initially gained by means other than the discovery process itself. The Court recognized that where such protective orders impact First Amendment concerns, they are subject to heightened review.

[13] "...only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." *Freedman v. Maryland*, 380 U.S. 51, 58 (1965). Thus, if material protected by the First Amendment is removed from circulation without these procedural protections, the seizure is invalid as a prior restraint." *Ctr. For Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 656 (E.D. Pa. 2004)

[14] "[A]n imminent, not merely likely, threat" and "[t]he danger must not be remote or even probable; it must be immediately imperil." U.S. v. Columbia Broad. Sys., Inc., 497 F.2d 102, 104 (5th Cir. 1974) (quoting Craig v. Harney, 331 U.S. 367, 376 (1947))

[15] *New York Times Co.* v. U.S., 403 U.S. 713, 726-27 (1971) (Brennan, J. concurring)

[16] *CBS, Inc. v. Davis,* 510 U.S. 1315, 1317 (1994) *Fla. Star v. B.J.F.*, 491 U.S. 524, 533 (1989). Accord, Nebraska Press Assn. v. Stuart, 427 US 539 (1976) and *Near v. Minnesota ex rel. Olson,* 283 US 697 (1931).

[17] Most recently in  *Gray Media Group, Inc. d/b/a WSAZ v. W.Va. Dep't of Health & Human Resources*, No. 22-P-197 (Kanawha Cnty. Cir. Aug. 28, 2023) a state court found that the government could not restrain, on First Amendment grounds, the publication of FOIA materials

6. Timothy Burke is a journalist who is accused of "downloading information without consent" by "accessing computers without authorization," [18] and by "acquiring the contents of communications" [19] and disclosing them.[20] The charges related to yet unproven allegations that a source for Mr. Burke directed him to an archived public website of WGNS radio, where the radio station *had published a link to its live feeds* [21] (streaming content) hosted by streaming service LiveU.tv, together with the published demo userid and password enabling access to those live video streams. The indictment alleges that, using the published demo credentials, Mr. Burke logged into the LiveU.tv website "without authorization," which automatically downloaded to his computer <u>a list</u> of both CBS and other live video streams, including a list of public, unencrypted streams of Fox News. [22] Mr. Burke allegedly then viewed (acquired the contents of) the publicly accessible,

---

inadvertently provided to a newspaper. https://medialaw.org/wp-content/uploads/2023/08/08.29.23graymedia.pdf

[18] Counts 2 through 7., 18 USC 1030(a)(2)(c) and (c)(2)[count 2-3] and 18 USC 1030(a)(2)(c) and (c)(2)(B)(ii)[counts 4 – 7].

[19] Counts 8 through 12., 18 USC 2511(1)(a) and 18 USC Section 2.

[20] Counts 13 and 14.. 18 USC 2511(1)(c) and 18 USC Section 2.

[21] "Live streams" are the unedited content of materials generated on camera and broadcast between the camera operator and some other location - either within the same room or building, or remotely. Much of this content is simply video of an empty chair in a studio, but there is often newsworthy content contained in this material. Dozens of broadcasters - including major US television news and sports broadcasters -- routinely stream their live content on the public Internet. Indeed, much of Mr. Burke's award-winning journalism — including his reporting about Sinclair Broadcast Group, NBC Olympics censorship, and events at the U.S. Capitol on Jan. 6, 2021 — has come from public live streams of broadcasts.

[22] This "list" of URL's is the "information" Mr. Burke allegedly obtained as a result of "unauthorized access" using the published credentials which forms the basis for the Computer Fraud and Abuse count 2 through 7 in the Indictment. See, 18 USC 1030(a)(2)(c).

internet addressable addresses hosting the live streams, (no credentials were required) and saved them to his computer.[23] The live feed URLs were not "secret" -- their address was merely obscure;[24] anyone with the address could view the streams which were *indistinguishable from hundreds of other television live streams freely available to view online.* [25]

7. Through media outlets like Media Matters and Vice News, Mr. Burke then published some of what he found on the live streams, [26] including information that embarrassed then-Fox News' host Tucker Carlson and his guest Kanye "Ye" West.

---

[23] Viewing and/or downloading the live streams is the basis for the wiretapping allegations in counts 8 through 12. 18 USC 2511(1)(a).

[24] As former federal computer crime prosecutor Orin Kerr observed, "A hard-to-guess URL is still a URL, and the information posted at that address is still posted and accessible to the world" Orin S. Kerr, Norms of Computer Trespass, 116 Colum. L. Rev. 1143, 1164–65 (2016) cited in *Davis v. HDR Inc.*, 652 F. Supp. 3d 1087, 1093–95 (D. Ariz. 2023), *appeal dismissed*, No. 23-15233, 2023 WL 5367499 (9th Cir. May 10, 2023)

[25] Live video feeds of news, sports, and entertainment can be found with simple Google searches. These include NBC News https://nbcnewslive.akamaized.net/hls/live/2093243/nbc_live1/index_750.m3u8; C-SPAN https://dotorg1.c-spanvideo.org/out/v1/87a3832998f64638a8f0db091cc1b8db/index.m3u8;
ABC News https://abcnews-streams.akamaized.net/hls/live/2023560/abcnews1/master_800.m3u8
CBS News https://cbsn-la.cbsnstream.cbsnews.com/out/v1/57b6c4534a164accb6b1872b501e0028/master.m3u8 and the Associated Press http://streaming-a-806.cdn.nextologies.com/Ugg7ohj1KOol2v04/live_LZhmmII6x8GR7I3ig3zQ/AP_FEED_1_1000k/chunks.m3u8.

[26] The act of publication is the basis for the "disclosure" allegations in counts 13 through 14. 18 USC 2511(1)(c).

[27] It is this publication that makes out the "disclosure" counts 13 and 14 in the Indictment.

8. Based on information obtained by Fox News lawyers and a forensic firm hired by these lawyers, the government seized the contents of Mr. Burke's newsroom, and has refused to return the contents of the live feeds and other information unless Mr. Burke agrees to a protective order obligating him not to publish the materials. In addition to the West/Carlson interviews, the live streams contain hundreds of hours of streamed information which Mr. Burke has not had the opportunity to review, but which likely also contain the only copy of information [28] relevant to Fox News commentators' knowledge of the falsity of on-air claims made about election interference and "rigged" voting machines related to the Smartmatic and Dominion lawsuits. [29]

---

[27] It includes a reference to going "death con 3" [sic] on "JEWISH PEOPLE," and allegations that Margaret Sanger, the founder of Planned Parenthood, was a "known eugenics," and that the organization was created by the KKK "to control the Jew population." Ye added "When I say Jew, I mean the 12 lost tribes of Judah, the blood of Christ, who the people known as the race Black really are. This is who our people are. The blood of Christ. This, as a Christian, is my belief." See, Anna Merlan, Watch the Disturbing Kanye Interview Clips That Tucker Carlson Didn't Put on Air, Vice News, October 11, 2022, available at https://www.vice.com/en/article/3ad77y/kanye-west-tucker-carlson-leaked-footage-antisemitism-fake-children (last visited May 6, 2024)

[28] The nature of "live streams" is such that the contents are unlikely to have been preserved by the entity streaming the content. Thus, the information the government seeks to restrain from publication is likely the only copy of this newsworthy information.

[29] One of the streams published by Media Matters occurred the same day Carlson was depositioned by lawyers representing Dominion Voting Systems, a lawyer Carlson referred to as a "slimy little motherf*****." Matt Gertz, FOXLEAKS: Tucker Carlson on getting "triggered" by Dominion's deposition lawyer: "That slimy little mother*****" Media Matters (May 3, 2023) available at https://www.mediamatters.org/fox-news/foxleaks-tucker-carlson-getting-triggered-dominions-deposition-lawyer-slimy-little (last visited, May 6, 2024).

9. The government's petition for a prior restraint on publication is based on two distinct rationales. First, that a reporter may be restrained from publishing information that was "stolen" - particularly if the reporter is alleged to have stolen or participated in the "theft" of that information and second, that a court may enjoin a reporter from reporting on copyrighted information. Under *New York Times v. United States*, neither allegation is sufficient to justify a prior restraint - the issue is immediate harm from disclosure of the information, not the method by which the information was obtained.

10. Journalists frequently search for, find, and publish "hidden" information online, including a Scripps Howard reporter finding hidden information about the "Lifeline" phone program, [30] an AP reporter using "directory transversal" to find and disclose the contents of the unreleased Sandy Hook 911 tapes; [31] the "Friends of the City of Fullerton" exposing hidden Dropbox folders; [32] the AP finding a pre

---

[30] Gerry Smith, Scripps Employees Called 'Hackers' For Exposing Massive Security Flaw, Huffington Post, May 22, 2013, https://www.huffpost.com/entry/scripps-reporters-hackers_n_3320701 Isaac Wolf, a reporter for Scripps Howard News Service discovered that these companies had exposed online completed customer applications including customers' Social Security numbers and dates of birth. When he published this fact, the companies threatened to sue him under the civil provisions of the Computer Fraud and Abuse Act.

[31] In 2013, when the State of Connecticut was forced by a lawsuit by the Associated Press to release the 911 tapes related to the Sandy Hook (Newtown) massacre, the State announced that it would post the tapes to a website http://www.newtown-ct.gov/public_documents/newtownct_police/index. Using a technique called "directory transversal" or "directory climbing," an AP reporter simply removed the word "index" from the URL, and was able to explore the file directory and find a folder that was not publicized (but publicly accessible) where the police kept the 911 tapes, which he downloaded and reported on.

[32] [The blogger] routinely requested public records, and the city had provided him with a link to the Dropbox folder in the past, he told CPJ. The city acknowledges sending a link to access the

release copy of a judicial opinion "parked" online; [33] and, St. Louis Post-Dispatch reporter Josh Renaud's finding information inadvertently exposed by a State-run teacher licensing website. [34] The materials obtained in this manner are not subject to prior restraint against publication simply because the journalist found the information exposed online, unless the government can show immediate and irreparable harm resulting from the publication of specific information.

11. Moreover, the "contents of the communications" between Carlson and West, captured and distributed with the knowledge and consent of the participants who enjoyed no expectation that their communications would not be

---

folder in response to records requests, according to court filings reviewed by CPJ. The folder was not password protected, and anyone could access it via the web address in the link. Files that were approved for public release were kept in the same folder as others that had not been, some of which were password protected, according to those documents. The complaint said [the journalists] accessed files in the folder that had not been approved for release, thereby violating the Computer Fraud and Abuse Act (CFAA),https://cpj.org/2019/12/fullerton-journalists-sued-hacking-dropbox/ The police were required to return the seized Dropbox files and pay the costs and legal fees of the advocates.

https://www.eff.org/files/2021/01/06/g058996_friends_for_fullerton_v._fullerton_amicus_brief.pdf See also, Fullerton journalists sued for "hacking" city's open Dropbox folder, Committee to Protect Journalists,
December 20, 2019 available at https://cpj.org/2019/12/fullerton-journalists-sued-hacking-dropbox/ (last visited, May 10, 2024).

[33] Ted Bridis, Court Posts Microsoft Ruling on Web, Associated Press Online (November 1, 2002) available at https://www.govtech.com/archive/court-posts-microsoft-ruling-on-web.html (last visited May 10, 2024)

[34] Jason Hancock, Claim that reporter hacked state website was debunked. Parson still says he's a criminal, Missouri Independent, Feb. 23, 2022, available at https://missouriindependent.com/2022/02/23/claim-that-reporter-hacked-state-website-was-debunked-parson-still-says-hes-a-criminal/ (last visited May 10, 2024)

recorded,[35] was not "intercepted" unlawfully, and therefore the "disclosure" (reporting) of this information was not, and is not, unlawful.  The fact is - even according to the Indictment - the live streams were unencrypted, and configured to be readily accessible to the public. *Snow v. DirecTV, Inc.*, 450 F. 3d 1314, 1320-21 (11th Cir. 2006)("Congress did not intend to criminalize …. acts of individuals who "intercept" or "access" communications that are otherwise readily accessible by the general public.").[36] It makes no difference whether the entity transmitting the communication knew that it had made the communication "readily accessible," [37] a journalist has a right, under the First Amendment, to "disclose" the contents of such communications, even in the face of a statute that prohibits such disclosure. *Bartnicki v. Vopper*, 532 U.S. 514 (2001) (18 USC 2511)  is unconstitutional as applied

---

[35] *Walker v. Darby*, 911 F. 2d 1573, 1579 (11th Circuit 1990) (in a wiretapping case, "the issue is whether a question of fact remained for trial regarding whether Jessie Walker had a subjective expectation that conversations taking place near his case were free from interception.")

[36]  The  *Snow*  court explained, "Through the World Wide Web, individuals can easily and readily access websites hosted throughout the world. Given the Web's ubiquitous and public nature, it becomes increasingly important in cases concerning electronic communications available through the Web for a plaintiff to demonstrate that those communications are not readily accessible. *If by simply clicking a hypertext link, after ignoring an express warning, on an otherwise publicly accessible webpage, one is liable under the SCA, then the floodgates of litigation would open and the merely curious would be prosecuted. We find no intent by Congress to so permit*" I*d*., at 1320. (emphasis added).

[37] I*n re Innovatio IP Ventures, LLC Pat. Litig*., 886 F. Supp. 2d 888, 892–94 (N.D. Ill. 2012) "The public's lack of awareness of the ease with which unencrypted Wi–Fi communications can be intercepted by a third party is, however, irrelevant to a determination of whether those communications are 'readily accessible to the general public.'" 18 U.S.C. § 2511(2)(g)(i). The language of the exception does not, after all, refer to "communications that the general public knows are readily accessible to the general public." The Court went on to note that "the public's expectation of privacy in a particular communication is irrelevant to the application of the Wiretap Act as currently written." *Id*.

11

to journalists, even if they had reason to know that the communication was acquired unlawfully.[38]

12. The government finally asserts that it may, on behalf of copyright holders, obtain an injunction against publication of newsworthy content and information on the ground that the information is, or is derived from copyrighted information published online - a prior restraint to prevent potential copyright infringement. We question whether the government has standing to assert the copyright rights of third parties, and the position that news reporting can be quashed on copyright grounds is inconsistent with the legal position taken by Fox News in other cases.[39]

13. Whether a reporter's use of copyrighted materials is permissible cannot be determined without the First Amendment balancing Congress created in 17 U.S.

---

[38] Of course, in *Bartnicki*, "the broadcasters [] engaged in no unlawful activity other than the ultimate publication of the information another had previously obtained. They "neither encouraged nor participated directly or indirectly in the interception." Id. In *Democratic National Committee v. Russian Federation,* 392 F. Supp. 3d 410, 434-35 (S.D. N.Y., 2019) the District Court extended *Bartniki* to provide a First Amendment right to publish information even when the publisher was in "active collaboration" with the person who allegedly stole the information, or where the publisher solicited the theft of the information.

[39] See, e.g., Fox Broadcasting Memorandum of Law in Support of Motion to Dismiss, ( Document 21 Filed 09/15/22) *Brody v. Fox Broadcasting* Case 1:22-cv-06249-DLC (S.D.N.Y); *New Jersey Media Group., v. Fox News Network, LLC, Dkt No*. 1:13-cv-07153-ER (Fox's Memorandum of Law in Support of Defendant's Motion for Summary Judgement, Document 35 Filed 06/30/14)(S.D.N.Y.)( arguing that Jeanne Pirro's use of Plaintiff's copyrighted photograph was "fair use")

Code § 107 establishing reporters right to make "fair use" of copyrighted materials. [40]

14. To restrain publication of news because the news may be based on copyrighted information is wholly inconsistent with the fair use doctrine of copyright law, and for the government (rather than the copyright holder) to enjoin a reporter from making fair use of a copyrighted work in order to prevent it from being published is unprecedented. Indeed, it would permit the government to use copyright law to prevent dissent, criticism, or discourse. It would be a clear violation of the First Amendment right of a journalist to publish relevant portions of newsworthy content under the "fair use" doctrine. [41]

15. Indeed, this has been the consistent position of Fox News itself. Fox News consistently rebroadcasts newsworthy information obtained from others; a practice universally accepted as lawful. [42] In short, whether Mr. Burke's -- or anyone else's publication of newsworthy live video feeds of Fox News violates

---

[40] See, e.g. *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1263 (11th Cir. 2001)(refusing to restrain publication of work derivative of Gone With the Wind); Eldred v. Ashcroft, 537 US 186, 219-220 (2003); Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985); Zacchini v. Scripps-Howard Broadcasting Co., 433 US 562, 580 (1977); Bollea v. Gawker Media, LLC, 913 F. Supp. 2d 1325, 1326-27 (MD Fla. 2012)(denying injunction ordering Defendants to remove "the excerpts from the Hulk Hogan sex tape that were posted on the www. Gawker. com website").

[41] Buchanan, Sean (2009) "If Hip-Hop Were Classified and the Pentagon Papers Had Been Copyrighted: An Analysis of Whether the Fair Use Defense in Copyright Law is Broad Enough to Protect First Amendment Concerns," Akron Intellectual Property Journal: Vol. 3 : Iss. 2 , Article 7.
Available at: https://ideaexchange.uakron.edu/akronintellectualproperty/vol3/iss2/7

[42] See also, *Gunder's Auto Center v. State Farm Ins.*, 617 F. Supp. 2d 1222 (MD Fla., 2009)

copyright law will depend on the traditional "fair use" factors contained in 17 U.S. Code § 107. [43]

**Conclusion**

16. The government's proposed protective order is an attempt to prevent a journalist from publishing materials he collected which are newsworthy and relevant not because the prior restraint meets the standards of *Near*, *New York Times,* and *Nebraska Press*, but because the government asserts without evidence that the information was downloaded without authorization. Such allegations do not justify the prior restraint and irreparable harm to the First Amendment. In the end, no "good cause" exists to prevent Mr. Burke from publishing - should he choose to do so - the newsworthy portion of the materials he held prior to the seizure of his newsroom.

Respectfully submitted

*s/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
Fax: (813) 253-2553

---

[43] Moreover, applying the doctrine that a party cannot "publish" copyrighted works without the consent of the copyright holder would permit Mr. Burke to preclude the introduction at trial of the contents of any copyrighted emails, direct messages, tweets, or other publications, including the allegedly "stolen" Fox News live streams.

14

*s/Mark D. Rasch*
Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
Admitted *Pro hac vice*

ATTORNEYS FOR TIMOTHY BURKE

## CERTIFICATE OF SERVICE

I hereby certify that on **June 10, 2024**, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF to: Jay Trezevant, Esq. U.S. Attorney's Office Middle District of Florida Tampa Division 400 North Tampa Street Suite 3200 Tampa, FL 33602 at jay.trezevant@usdoj.gov.

*s/Michael P. Maddux*
Michael P. Maddux, Esquire