Attachment 2

AF Approval *TLK for JAM*                    Chief Approval *Clifton PJB*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

      v.                    CASE NO. 8:24-cr- 165-CEH-SPF

MARCO GAUDINO

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, MARCO GAUDINO, and the attorney for the defendant,

Adam Allen, mutually agree as follows:

### A.   Particularized Terms

    1.   Count Pleading To

        The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with conspiracy, in violation

of 18 U.S.C. § 371.

    2.   Maximum Penalties

        Count One carries a maximum sentence of five years'

imprisonment, a fine of $250,000, a term of supervised release of not more

than three years, and a special assessment of $100 per felony count. With

respect to certain offenses, the Court shall order the defendant to make

Defendant's Initials *M6*

restitution to any victim of the offense, and with respect to other offenses, the
Court may order the defendant to make restitution to any victim of the
offense, or to the community, as set forth below.

3. <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and
elements of the offense with which defendant has been charged and to which
defendant is pleading guilty. The elements of Count One are:

<u>First</u>: two or more persons in some way agreed to try to
accomplish a shared and unlawful plan, as
described in the information;

<u>Second</u>: the defendant knew the unlawful purpose of the
plan and willfully joined in it;

<u>Third</u>: during the conspiracy, one of the conspirators
knowingly engaged in at least one overt act as
described in the information; and

<u>Fourth</u>: the overt act was committed at or about the time
alleged and with the purpose of carrying out or
accomplishing some object of the conspiracy.

4. <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of
indictment before a federal grand jury.

Defendant's Initials _MB_          2

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

6. <u>Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to any victims of the offense as determined by the Court at sentencing.

7. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _MB_                    3

8.  Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot

Defendant's Initials _MS_          4

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information; including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to

Defendant's Initials _MB_    5

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion at the time of sentencing recommending (1) a downward departure

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

11.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no

self-incriminating information which the defendant may provide during the

Defendant's Initials _MO_        6

course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

In that regard, the defendant has previously agreed to cooperate with the United States and has participated in proffers during which he provided information concerning the unlawful activities of himself and one or more person(s) during the period beginning February 2022, and continuing into May 2023. Those activities involved securing and utilizing compromised credentials to gain unauthorized access to protected computers owned and utilized by a national sports league, a sports network, and one or more broadcast network(s), and then searching those protected computer for electronic items and information deemed desirable and obtaining said items and information from those computers.

12. <u>Cooperation - Responsibilities of Parties</u>

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation

Defendant's Initials _MG_               7

that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by

Defendant's Initials _M6_        8

imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _M6_          9

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B), 1030(i), and 2513, and 28 U.S.C. § 2461, whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited include, but are not limited to: a Black Custom PC, NZXT, Case Model # PB1-XR02-BL-004; a Black WD Elements Portable Hard Drive, S/N: WXB1E99CKJ51; and a Black Google Pixel Cell Phone in Otter Box Case, which were seized from the defendant's residence on May 8, 2023, and were used or intended to be used to commit or to facilitate the commission of the offense to which the defendant is pleading guilty.

Defendant's Initials _M6_        10

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets

Defendant's Initials _M𝘰̂_                11

held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials *M6*       12

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.  Standard Terms and Conditions**

1.  Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663,

Defendant's Initials _M6_               13

including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release

Defendant's Initials /M6          14

upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

### 3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _MG_         15

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States

Defendant's Initials _46_          16

Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

  6. <u>Sentencing Recommendations</u>

    It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _MG_    17

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _M6_          18

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

Defendant's Initials _/h6_                19

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

      11.    Factual Basis

      Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _MG_        20

## FACTS

### *Background*

#### The Conspirators

Defendant Marco Gaudino ("GAUDINO") resided in Washington. GAUDINO maintained and utilized computers, the Twitter account @E—es,[1] and the Google account associated with email address m—99@gmail.com.

Co-conspirator Timothy Burke ("BURKE") resided in Tampa, Florida in the Middle District of Florida. BURKE maintained and utilized the website i—tr.us, multiple computers, and electronic communications services, including his Twitter account @b—og and the Google accounts associated with email addresses t—ke@gmail.com and tim@b—ns.com.

#### The Companies

##### *The National Sports League*

The National Sports League ("NSL") was a professional sports league founded in New York City, New York. The NSL operated in North America and was composed of teams based in states across the United States and in

---

[1] The parties to this plea agreement understand that the identity of certain entities, social media handles, email addresses, and listed credentials (usernames and passwords) have been anonymized in this agreement and in the related information filed in this case, and that both parties know and appreciate the actual identities and credentials referred to in this agreement.

Defendant's Initials MG      21

Canada. As one of the major sports leagues in North America, the NSL had long-standing contracts and partnerships with television and radio network broadcasters in the United States, Canada, and elsewhere. Pursuant to its operations, the NSL utilized computer systems in or affecting interstate and/or foreign commerce, including those that made use of one or more file transfer protocol ("FTP") servers, such as an FTP server located at ftp://ftp01.NSL.com. Access to that FTP server required the use of a username and password (hereinafter, also "credentials").

*The Sports Network*

The Sports Network ("TSN") was an American international cable sports network. TSN maintained offices and broadcasted from studio facilities located in major cities across the United States and in other locations. TSN utilized computer systems in or affecting interstate and/or foreign commerce, including those that made use of one or more FTP servers, access to which required use of a username and password.

*StreamCo Inc.*

StreamCo Inc. ("StreamCo") was a video contribution technology company based in the United States that provided worldwide live video streaming for television, mobile, online, and social media. StreamCo utilized computer network systems in or affecting interstate and/or foreign commerce.

Defendant's Initials _MG_          22

StreamCo-Net was a StreamCo service that allowed its broadcaster-customers to electronically record and transmit high-resolution content and communications over the Internet.

The StreamCo-Net offered a preview function that enabled its broadcaster-customers to access and review, at a lower resolution, video content being streamed across the StreamCo-Net for quality assurance and for other business-related purposes. The StreamCo-Net preview function was viewable by accessing specific uniform resource locaters ("URLs") that were composed of letters, numbers, and symbols and included a unique StreamCo-assigned "BID," generated by an algorithm, that functioned much like a Social Security number. The BIDs ranged from 9-16 characters and were associated with the StreamCo devices utilized by StreamCo and its customers to capture, transmit, and record streamed content. In other words, a camera used to capture and stream events, including in-studio productions, was plugged into a StreamCo device that had an assigned unique BID.

Each StreamCo Internet video transmission was encoded by a StreamCo device at the event location and sent in a high-resolution video format via a StreamCo proprietary streaming point-to-point protocol to a StreamCo receiving device capable of decoding that transmission, which also had an assigned unique BID. The StreamCo-Net was designed to limit access

Defendant's Initials _MG_      23

to authorized customers through the Internet via a secured password-protected website that required customers to first enter assigned credentials before gaining access.

*Network #1*

Network #1 ("NW-1") was a multinational media company headquartered in New York City, New York that produced and distributed content through multiple brands, including NW-1 News Media and NW-1 Sports. NW-1 utilized computer systems in or affecting interstate and/or foreign commerce. NW-1 was a StreamCo broadcaster-customer and therefore owned and utilized multiple StreamCo devices to develop and stream NW-1 content.

*Network #2*

Network #2 ("NW-2") was a commercial broadcast television and radio network, headquartered in New York City, New York. NW-2 produced and distributed content through multiple divisions, including NW-2 News and the NW-2 Sports Network. NW-2 utilized computer systems in or affecting interstate and/or foreign commerce. NW-2 was a StreamCo broadcaster-customer and therefore owned and utilized multiple StreamCo devices to develop and stream NW-2 content.

Defendant's Initials _MG_                    24

*The Conspiracy*

Beginning in or around February 2022, and continuing into May 2023, in the Middle District of Florida and elsewhere, the defendant, Marco GAUDINO, knowingly and voluntarily conspired with BURKE to (a) intentionally access protected computers without authorization to obtain information therefrom, (b) intentionally intercept wire and electronic communications, and (c) intentionally disclose some of those wire and electronic communications.

To that end, as further described in Count One, Section C of the information, GAUDINO and BURKE used their respective Internet-connected computer devices to coordinate via direct-message exchanges to: (a) secure and utilize compromised credentials to gain unauthorized access to protected computers; (b) search those protected computers for electronic items and information; (c) obtain and steal electronic items and information deemed desirable; and (d) organize and exploit some of those electronic items and information. GAUDINO and BURKE further coordinated via their computer devices to utilize some of the electronic items and information obtained and stolen from a protected computer to intercept and download to their computers the contents of wire, oral, and/or electronic video communications

Defendant's Initials _MG_                25

during transmission and to disclose one or more of those communication(s) to another person or entity.

As examples of acts committed by GAUDINO and BURKE in furtherance of the conspiracy:

   a.    On or about February 20, 2022, GAUDINO and BURKE exchanged direct messages via their Twitter accounts, each of which constitutes a separate overt act, regarding compromised credentials that would enable them to access a protected computer, namely the NSL FTP server located at ftp://ftp01.NSL.com, without having been authorized by the NSL to use those credentials or to access that FTP server:

| Overt Act | Direct Message | Message From | Message To |
|---|---|---|---|
| a.1 | ftp://ftp01.NSL.com<br>f—ry<br>H—s1<br>It's the main NSL FTP for all of their footage they post to social, send to partners, etc. | E—es | b—og |
| a.2 | i see | b—og | E—es |

   b.    On or about each of the dates set forth below, each of which constitutes a separate overt act, BURKE sent a direct message via his Twitter account to GAUDINO, regarding BURKE's unauthorized access of a protected computer, namely the NSL FTP server located at ftp://ftp01.NSL.com, and BURKE's efforts to obtain, download, and steal electronic items and information found therein:

Defendant's Initials /MB          26

| Overt Act | Date | Direct Message | Message From | Message To |
|---|---|---|---|---|
| b.1 | 05-08-2022 | I kind of gave up on the NSL FTP because the transfers were so slow. Are they slow for you? | b—og | E—es |
| b.2 | 06-22-2022 | for whatever reason when i try to download multiple at a time it ends up in like an 80 GB broken file of garbage | b—og | E—es |
| b.3 | 06-22-2022 | i figured it out, it's the way the segmenting works in cyberduck i turned it off and the transfers are way slower but they work now | b—og | E—es |

   c.  On or about June 13, 2022, GAUDINO and BURKE

exchanged direct messages via their Twitter accounts, each of which

constitutes a separate overt act, regarding compromised credentials that would

enable them to access a protected computer, namely a TSN FTP server,

without having been authorized by TSN to use those credentials or to access

that FTP server:

| Overt Act | Date | Direct Message | Message From | Message To |
|---|---|---|---|---|
| c.1 | 06-13-2022 | Ok! Which BTW fi you need the other TSN FTPs lemme know and I can toss them over. | E—es | b—og |
| c.2 | 06-13-2022 | OK got it. i should have all of them though from that filezilla.xml | b—og | E—es |

Defendant's Initials _M6_    27

| Overt Act | Date | Direct Message | Message From | Message To |
|---|---|---|---|---|
| c.3 | 06-13-2022 | Yeah that should have 'em all.<br>r—p1-u<br>p—os<br>g—07-u<br>g—07<br>T—pu<br>T—1p<br>T—N1<br>e—cs<br>c—ts | E—es | b—og |
| c.4 | 06-13-2022 | TSN** probably has the largest amount of "oh this shit is cool" files outside of graphics. | E—es | b—og |
| c.5 | 06-13-2022 | oh no i do not have some of those. which folder did you get the xml from mine only has maybe half of those | b—og | E—es |
| c.6 | 06-13-2022 | Oh those are just all the ones I've gathered from PDFs, doc files, etc. | E—es | b—og |
| c.7 | 06-13-2022 | ah OK. well i'll check back once i've gotten anything interesting from the ones I Have | b—og | E—es |
| c.8 | 06-13-2022 | I'm geting hte ART folder from TSN* right now and just building the file list has taken several hours | b—og | E—es |
| c.9 | 06-13-2022 | Well some of the FTPs are just alternate logins they give to contractors, like g—07-u is the same as g—07 but diff password. | E—es | b—og |
| c.10 | 06-13-2022 | hahaha oh boy this art folder, how much do you want headshots of every single CFB player from 2019? | E—es | b—og |

     d.     On or about August 22, 2022, GAUDINO and BURKE

exchanged direct messages via their Twitter accounts, each of which

constitutes a separate overt act, regarding compromised NW-2 credentials that

Defendant's Initials _MB_       28

would enable the conspirators to access a protected computer, namely the

StreamCo-Net, without having been authorized by either NW-2 or StreamCo

to use those credentials or to access that computer network:

| Overt Act | Date | Direct Message | Message From | Message To |
|---|---|---|---|---|
| d.1 | 08-22-2022 | Oh, also<br>NW-2-net-demo<br>NW-2news!!<br>https://t.co/BW30vuhCoT | E—es | b—og |
| d.2 | 08-22-2022 | >1080i lol. fun though thanks | b—og | E—es |

     e.     On or about each of the dates (and times) set forth below,

each of which constitutes a separate overt act, BURKE and GAUDINO, as

specified, used compromised NW-2 credentials to gain unauthorized access

from the specified IP address to a protected computer, namely the StreamCo-

Net:

| Overt Act | Date (UTC) | Conduct | IP Address Conspirator |
|---|---|---|---|
| e.1 | 08-22-2022 (19:43:04) | Log in to StreamCo-Net | 67.183.179.97 GAUDINO |
| e.2 | 08-22-2022 (19:45:26) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.3 | 08-23-2022 (13:56:26) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.4 | 08-24-2022 (17:25:23) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.5 | 09-25-2022 (16:43:27) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.6 | 09-28-2022 (18:54:57) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.7 | 10-13-2022 (23:27:10) | Log in to StreamCo-Net | 67.183.179.97 GAUDINO |

Defendant's Initials _M6_       29

     f.     On or about the dates set forth below, each of which constitutes a separate overt act, BURKE disclosed the below, which had been culled from electronic wire, oral, and/or video communications that had been intercepted by the conspirators during transmissions by StreamCo broadcaster-customer(s) across the StreamCo-Net:

| Overt Act | Date | Description |
|-----------|------|-------------|
| f.1 | 10-10-2022 | Excerpts from an audio/video NW-1 stream intercepted on 10-06-2022, which included interview discussion between show host and guest |
| f.2 | 04-24-2023 | Excerpt from audio/video NW-1 stream intercepted on 09-28-22 (together with a false and misleading caption), which originally included pre-production statements by show host expressing concern about potential impact to host's house from approaching Hurricane Ian |

GAUDINO understands and acknowledges that he was not employed by or otherwise associated with the NSL, TSN, StreamCo, StreamCo-Net, NW-1, or NW-2, and that he did not have authorization from any of the entities or associated credential holders to utilize the above-listed credentials to access the entities' above-listed protected computers.

More specifically, GAUDINO acknowledges that, prior to 2020, he unlawfully obtained compromised credentials from an Internet website dealing unlawfully in such credentials, which enabled him to gain unauthorized access to a protected computer hosting an NSL archive site. There, GAUDINO found, amongst other electronic items and information, a second set of

Defendant's Initials /MG        30

credentials that enabled him to gain unauthorized access to a second protected computer, namely the NSL FTP server located at ftp://ftp01.NSL.com, referred to above in subparagraphs (a) and (b), which GAUDINO shared with BURKE. Further, GAUDINO originally acquired the compromised NW-2 credentials referred to above in subparagraphs (d) and (e) that were used by GAUDINO and BURKE to gain unauthorized access to a protected computer, namely the StreamCo-Net, from an online acquaintance who GAUDINO understood was not authorized to possess or utilize such credentials.

To facilitate GAUDINO's conspiratorial conduct as described in the information, GAUDINO maintained and used electronic, mechanical, or other devices, including: a Black Custom PC, NZXT, Case Model # PB1-XR02-BL-004; a Black WD Elements Portable Hard Drive, S/N: WXB1E99CKJ51; and a Black Google Pixel Cell Phone in Otter Box Case.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials /46    31

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ⟨18⟩ day of March, 2024.

ROGER B. HANDBERG
United States Attorney

_____
Marco Gaudino
Defendant

_____
Jay G. Trezevant
Assistant United States Attorney

_____
Adam Allen, AFPD
Attorney for Defendant

_____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section