UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The United States of America submits this response in opposition to defendant's *Motion to Dismiss Indictment for Failure to State an Actual Violation of Criminal Law and Incorporated Memorandum of Law in Support* ("Motion to Dismiss") (doc. 64), filed July 12, 2024. The Motion to Dismiss requests that this Court consider pretrial the defendant's proffered "facts" and conclusions and dismiss all the charged counts of the indictment. Defendant additionally argues that the indictment is insufficient on its face because it does not explicitly refute potential defenses of the defendant and requests that this Court conclude that the failure to engage in this preemptive refutation amounts to a failure to plead key elements.

In making these requests, the Motion to Dismiss ignores the indictment's proper charging language as well as 35 years of binding Eleventh Circuit law. The motion also ignores any allegations in the indictment that are inconsistent with the defendant's proffered "facts" and conclusions.

On February 15, 2024, a legally constituted and unbiased federal grand jury sitting in the Middle District of Florida returned an indictment, charging defendant with conspiracy and related substantive violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(2)(C)) and the Wiretap Act (18 U.S.C. § 2511(1)(a) and (1)(c)). Doc. 1. The indictment properly alleges that the defendant committed each of the essential elements of the crimes charged so that the defendant can prepare his defense and invoke the double jeopardy clause should he be subsequently prosecuted for the same criminal conduct. As this is legally sufficient and all that is required, this Court should decline the defendant's misguided invitation to engage in a pretrial evaluation of the defendant's proffered "facts" and resulting conclusions. To do so in this context would constitute error. The defendant's Motion to Dismiss should therefore be denied.

## LAW AND ARGUMENT

A. <u>Summary of Relevant Eleventh Circuit Law</u>

The sufficiency of an indictment presents a legal question reviewable *de novo*, *United States v. Pendergraft*, 297 F.3d 1198, 1204 (11th Cir. 2002), which the court must determine by looking solely to the face of the indictment. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). "An indictment, to be sufficient, must allege that the defendant committed each of the essential elements of the crime charged so as to enable the accused to prepare his defense and to invoke the double jeopardy clause in any subsequent prosecution for the same offense." *United States v. Crippen*, 579 F.2d

340, 342 (5th Cir. 1978);[1] *see also Hamling v. United States*, 418 U.S. 87, 117 (1974); *Critzer*, 951 F.2d at 307-08; *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985). "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charge[]." *Crippen*, 579 F.2d at 342. The test is satisfied as long as the language in the indictment sets forth the essential elements of the crime. *Critzer*, 951 F.2d at 307-08. Moreover, constitutional requirements are met "by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." *Id*. at 308 (quoting *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983)).

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956) (footnote omitted). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). In other words, "[i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *U.S. v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2006) (emphasis in original). "To permit preliminary trials on essential facts, post-indictment, would 'run counter to the whole history of the grand jury institution, . . . [and] would result in interminable delay but add nothing to the assurance of a fair trial.'" *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (quoting *Costello*, 350 U.S. at 364).

> B. The Motion to Dismiss Improperly Proffers Facts and Conclusions and Ignores the Indictment and Controlling Eleventh Circuit Law.

The arguments raised by the defendant's Motion to Dismiss attack each of the charged counts within the indictment by proffering a collection of unsupported "facts" and conclusions. Defendant also ignores inconvenient factual allegations that undermine defense theories and instead works to recast the allegations to create a more defensible case.[2]

For example, defendant proffers without support that "participants [in the wiretap charges] were in a television studio, facing cameras which were on, wearing lapel microphones, with boom microphones, ready to transmit their conversations worldwide."[3] Doc. 64 at 9–10. In making this argument, defendant ignores the

---

[2] The Motion to Dismiss follows the ongoing defense practice of disregarding the actual indictment language and charges returned by the grand jury and instead attempting to recast the indictment, or some aspect(s) thereof, to fit a defense argument, theory, or technological philosophy. *See e.g.* Doc. 51, Page 3 ("This case is at the core about journalism . . ."); and Doc 62, para. 13 ("A hard-to-guess URL is still a URL . . . [and is] accessible to the world") (quoting a secondary source law review essay by Orin Kerr advocating for courts to adopt a specific legal viewpoint).

[3] Notably, notwithstanding that the Motion to Dismiss (doc. 64) correctly recognizes that the Court "cannot [in a pretrial setting] determine the adequacy of the evidence in a criminal case (*Id.* at 4) (quoting *United States v. Salman*, 378 F.3d 1266, 1269 (11th Cir. 2004)), the motion immediately proceeds to inappropriately proffer many additional unsupported "facts" that are not contained within the four corners of the indictment, including: (1) allegations that the charges in the indictment derive their import because they involve wire communications "that would be embarrassing" to

4

distinctions within the statute between oral, wire, and electronic communications. The indictment alleges interception (in the conjunctive) of oral, wire, and electronic communications in Counts Eight through Twelve. Unlike the definition of "oral communication," the definitions of "wire" and "electronic" communications[4] do not include any requirement that the parties to the communication exhibit a reasonable expectation that the communication is not subject to interception.

Defendant also proffers without support that "the live video feeds allegedly intercepted were publicly and readily accessible."[5] Doc. 64 at 11. This proffered "fact" is not present within the indictment and serves only to bolster the self-serving conclusions of defendant's legal theories.

Defendant wrongly attempts throughout the motion to inject additional proffered "facts" into the analysis, including:

1. In the context of the intercepted wire communications, defendant states "No user id or password was required. No special configuration. [The streams] were not encrypted. There were no limitations in 'Terms of Use'." (*Id.* at 11);

---

individuals who engage in polemical speech (Doc. 64 at 4); (2) use of "published credentials found online" to access materials found on a National Sports League (NSL) server (*Id.* at 4); (3) classification of "BID(s)" as a type of web address and alleging these were "automatically downloaded to him" (*Id.* at 10).

[4] 18 U.S.C. § 2510(1), (2), and (12).

[5] The government contends that the evidence at trial would refute defendant's assertion that the video feeds were "publicly and readily accessible" and has previously stated that given the algorithmically generated "BIDs" and structure of the Uniform Resource Locators (URLs) at issue in this case, even assuming knowledge of the structure of the URLs, the approximate odds of guessing a valid 15-character BID is 1 in 999,999,900,000,000. *See* doc. 52 n. 2.

5

2. That the credentials alleged in the indictment to have been used without authorization by the defendant in Count(s) Four through Seven, were obtained by the defendant by means "shared by its owner to a public website that was freely accessible" (*Id.* at 13–17);[6]

3. That the "BID's" obtained by the defendant as part of the charges in Counts Four through Seven were "automatically downloaded" to him (*Id.* at 10); and

4. That the defendant and co-conspirator Gaudino conspired to "find publicly accessible passwords and use them" (*Id.* at 23).[7]

Based upon the defendant's proffered "facts" and conclusions and his patchwork misinterpretation of the indictment, the defendant argues that the indictment fails as a matter of law. *Id.* at 1.

To support his arguments, defendant completely ignores the allegations contained within the Manner and Means and Overt Acts sections the indictment. For example, defendant ignores the allegations that defendant and coconspirator Gaudino coordinated with one another to search protected computers to secure credentials belonging to others and used them without authorization to gain access to protected computers, whereupon the defendant and co-conspirator Gaudino obtained and stole electronic items and information without authorization or

---

[6] As the government has stated in previous memoranda before this Court, this particular contention by the defendant stands at direct factual odds with the allegations within the indictment, as well as the evidence the government anticipates eliciting at trial. The government anticipates that the trial evidence will show that defendant obtained these credentials from his coconspirator with knowledge that they did not have authorization to use them, rather than from the radio website. *See* Doc. 63 at 16.

[7] Marco Gaudino has pleaded guilty for his role as a coconspirator in these offenses. In his plea agreement, Gaudino acknowledged and admitted to a factual basis which explained that these credentials were not obtained from publicly accessible sources and that neither he, nor to his knowledge Mr. Burke, had authorization to utilize these credentials. *See also*, Doc. 63 at 10.

permission. Doc. 1 at 8–9. Defendant likewise breezes past that he is alleged to have exploited the stolen information and knowledge unlawfully obtained from these protected computers which provided him an ability he otherwise did not possess, that being to intercept statutorily protected communications as they were being transmitted, unlawfully recording those transmissions, and then unlawfully disclosing them to others. *Id*. at 10. Most critically, the defendant also ignores that the indictment properly tracks all the key statutory language and sets forth the essential elements of each of the crimes charged.

    In asking the Court to dismiss the indictment pretrial based upon proffered "facts" and conclusions, the Motion to Dismiss ignores 35 years of controlling Eleventh Circuit law. Indeed, notwithstanding that the Motion to Dismiss argues that defendant is entitled to relief as a "matter of law" and upon Constitutional grounds, doc. 64 at 1, the motion is actually based upon proffered "facts" not contained upon the face of the indictment. Defendant's motion does not even mention seminal cases such as *Torkington, Critzer,* or *Sharpe*, all binding Eleventh Circuit decisions, in addition to *Salman,* directly addressing a pretrial motion to dismiss. Respectfully, this Court should decline the defendant's misguided invitation to engage in a pretrial evaluation of the defendant's unsupported version of the "facts" and self-serving conclusions. At this point in the proceedings, such is not the role of the Court, and it would be error to do so. *See, e.g.*, *Critzer,* 951 F.2d at 308; and

*U.S. v. Brantley*, 461 Fed.Appx. 849 (11th Cir. 2012). Of course, precisely what form that evidence ultimately will take at trial is unsettled.[8]

Settled law makes clear that a trial court may not take into account the legal sufficiency of the underlying facts supporting the indictment when ruling on a motion to dismiss. *Salman*, 378 F.3d at 1266. In *Salman*, the trial court had dismissed an indictment "based on certain undisputed facts [demonstrating that] Salman was not 'illegally or unlawfully in the United States' as a matter of law at the time of his arrest," as charged in the indictment. *Id*. at 1267. On appeal, the Eleventh Circuit reversed the dismissal "for procedural reasons" (emphasis added):

> By looking beyond the face of the indictment and ruling on the merits of the charges against Salman, the district court in effect granted summary judgment in favor of the defendant. In so doing, the district court overlooked binding precedent from this court. . . . '***There is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face.  The indictment is sufficient if it charges in the language of the statute.***'

*Id*. at 1267-68 (citations omitted) (quoting in part *Critzer,* 951 F.2d at 307). The appellate court continued:

> There is no dispute that the government properly indicted Salman for an alleged violation of § 922(g)(5)(A). Because Salman was properly indicted, the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.

---

[8] Obviously, the government does not believe or concede that the evidence developed at trial will be consistent with defendant's unsupported version of the "facts" proffered in the Motion to Dismiss.

*Id*. at 1268 (citations omitted); *see also Id. at* 1268 n. 5 ("[T]here is currently no authority within the Federal Rules of Criminal Procedure for granting a motion to dismiss predicated on the insufficiency of the evidence, **whether it be based in fact or law.**") (emphasis added).

Similarly, in *Critzer*, the Eleventh Circuit reversed the dismissal of an indictment premised on the supposed insufficiency of proffered facts rather than insufficiency of the indictment itself. There, the defendant had moved to dismiss an indictment, asserting that it was too vague to allege violations of federal law. *Critzer*, 951 F.2d at 307. The defendant had also sought a bill of particulars. *Id.* The government responded that the trial court should not look beyond the face of the indictment in determining the indictment's sufficiency, but it also listed the facts it expected to prove at trial and explained how those facts constituted the offenses charged. *Id.* The trial court then "looked beyond the face of the indictment and considered the facts proffered by the government [and] determined that, assuming the facts to be true, defendant's actions did not constitute a violation of federal law[,]" and dismissed the indictment. *Id.* The appellate court reversed the dismissal of the indictment. Even though the government had issued an "implied invitation to the district court" to pierce the language of the indictment, the indictment itself was legally sufficient (as it tracked the statutory language). *Id*. at 307-308. Therefore, the trial court had erred by dismissing the indictment, and the appellate court reversed the dismissal. *Id*.

9

In short, the defendant's Motion to Dismiss simply ignores: (1) that the indictment properly alleges that the defendant committed each of the essential elements of the crimes charged, (2) allegations in the indictment that are inconsistent with defendant's proffered "facts" and conclusions, and (3) 35 years of binding Eleventh Circuit precedent. Instead, the Motion to Dismiss rests upon its own proffered "facts" applied in the context of desired (rather than actual) charging language. That is not allowed. The defense will have ample opportunity before a jury to challenge or develop facts in defense of the charged conduct. The Motion to Dismiss should be denied.

    C. **The Defendant Improperly Argues Insufficiency of the Indictment for <u>Failure to Recite Affirmative Defenses as Elements.</u>**

Not only does the defendant improperly ask this Court to consider proffered "facts" not contained within the indictment, he also improperly argues the indictment is fatally flawed for its failure to plead elements. Specifically, the Motion to Dismiss intersperses claims that the absence of certain pleaded facts in the indictment amounts to a failure to plead key elements. This is false.

For example, the defendant claims that the government must plead "lack of consent" as an element of the offense of interception of wire and electronic communications under 18 U.S.C. § 2511. Doc. 64 at 9. The defendant argues that failure to do so renders all manner of commonplace activities, such as "watching TV" or "having a Zoom meeting" illegal, and that Constitutional harms result from not explicitly refuting a defense of consent within the text of the indictment. *Id*. at 8–

10

9. Defendant also claims that another "element" of § 2511 that must be pleaded on the face of the indictment is that a wire or electronic communication must not be "readily accessible to the general public." *Id.* at 11.

Controlling Eleventh Circuit case law distinguishes between "elements" of a criminal offense versus affirmative defenses using a three-part inquiry seminally laid out in *U.S. v. McArthur*, 108 F.3d 1350 (11th Cir. 1997). The Court explained the three-part inquiry as follows:

> To determine whether an exception to a criminal offense is an element of the crime or an affirmative defense, we undertake a three-part inquiry. We begin with the language and structure of the statute. Next, we examine the legislative history of the provision. *United States v. Laroche*, 723 F.2d 1541, 1543 (11th Cir.) (following *United States v. Mayo*, 705 F.2d 62 (2d Cir.1983)), cert. denied, 467 U.S. 1245, 104 S.Ct. 3521, 82 L.Ed.2d 829 (1984). Finally, we decide whether the defendant or the government is better situated to adduce evidence tending to prove or disprove the applicability of the exception. *United States v. Jackson*, 57 F.3d 1012, 1016 (11th Cir.), cert. denied, 516 U.S. 970, 116 S.Ct. 432, 133 L.Ed.2d 346 (1995).

*Id.* at 1353. The Court then noted two interpretive presumptions that guide the Court in making these distinctions:

> With regard to the language and structure of the statute, we are guided by two interpretive presumptions. First, a narrow proviso to a more general statutory offense is more likely to be an affirmative defense than an element of the offense. As the Supreme Court has stated, "an indictment ... founded on a general provision defining the elements of an offense ... need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere. ... " *McKelvey v. United States*, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922). A second, but related, rule is that where one can omit the exception from the statute without doing violence to the definition of the offense, the exception is more likely an affirmative defense. Thus, in *United States v. Outler*, 659 F.2d 1306, 1309–10 (5th Cir. Unit B Oct. 1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982), we explained that where "an exception ... [is] so necessary to a true definition of the offense ... the elements of the crime are not fully stated without the exception."

11

*Id*. at 1353. The Court has continued to uphold this framework in distinguishing between elements and affirmative defenses, and *McArthur* is still good law. *See United States v. Shamsid-Deen*, 61 F.4th 935 (11th Cir. 2023).

Applying *McArthur* and its progeny to defendant's arguments, the exceptions to the wiretap statute (18 U.S.C. § 2511) are numerous but narrow provisos (*see* 18 U.S.C. § 2511(2)(a)–(j)). It's preposterous to think that the government must negatively allege as elements, and then disprove, a medley of narrow exceptions, ranging from the rights of service providers, the authority of the Federal Communications Commission (FCC), the exclusion of certain radio bands, and exceptions under the Foreign Intelligence Surveillance Act (FISA).

The "consent" exceptions (§ 2511(2)(c) and (2)(d)), and the "readily accessible to the general public" exception (§ 2511(2)(g)(i)), are part of this group of narrow exceptions, and they fall within the language of *McArthur*. These exceptions can be omitted from the elements without violence to the definition of the offenses of either interception or disclosure. The defendant's claim that these affirmative defenses must be pleaded as necessary elements is without merit and should be rejected.

D. <u>The Defendant Misapplies *Bartnicki, Van Buren,* and Associated Case Law.</u>

In addition to the many unsupported "facts" defendant raises in his Motion to Suppress, the motion also asks the Court to misapply the law in support of reaching a dismissal of the indictment.

12

### *Bartnicki v. Vopper*

As related to the counts of unlawful disclosure of statutorily protected communications (Counts Thirteen and Fourteen), defendant argues that his disclosure is not a crime due to his intent to publish the material, citing *Bartnicki v. Vopper*, 121 S.Ct. 1753 (2001). Specifically, defendant claims that his disclosure of intercepted communications is ***never*** a crime because publication of truthful newsworthy information, regardless of the circumstances by which that information is obtained, is protected speech under the holding in *Bartnicki*. Doc 64 at 6.

As discussed by the government in an earlier reply brief, *see* doc. 52 at 11–12, the defendant's conduct as alleged within the four corners of the indictment is readily distinguishable from the conduct at issue in *Bartnicki*. In *Bartnicki*, the Supreme Court explicitly noted that, in *New York Times v. United States*, 403 U.S. 713 (1971), it had previously "upheld the right of the press to publish information of great public concern obtained from documents ***stolen by a third party***." *Bartnicki*, 121 S.Ct. at 1761 (emphasis added). The Supreme Court then clarified the issue presented by *Bartnicki*: "Where the publisher of information has obtained [it] ***in a manner lawful in itself*** but from a source who has obtained it unlawfully, may the government punish [subsequent] publication of that information based on the defect in a chain?" *Id*. at 1762 (emphasis added).

The Motion to Dismiss misstates both the question presented in *Bartnicki* and its holding. The defendant contends that the framing of the issue presented in

13

*Bartnicki* is ***not*** as quoted in the case by the Supreme Court; rather, defendant believes that *Bartnicki* answers the question: "Where the publisher of information has obtained [it] ~~in a manner lawful in itself but from a source who has obtained it~~ unlawfully, may the government punish [subsequent] publication of that information based on the defect in a chain?" This framing is patently inaccurate and lends itself to absurd conclusions.

As alleged within the four corners of the indictment, the grand jury found probable cause to believe that defendant himself, not some other source, personally violated 18 U.S.C. § 2511 when he intercepted the materials that form Counts Eight through Twelve of the indictment. In other words, defendant acted in ***both*** the role of the "source" in *Bartnicki* who initially obtained the information unlawfully ***and*** the discloser of the unlawfully intercepted material. This is distinguishable from the "clean hands" of the publisher in *Bartnicki*. Defendant's contention that *Bartnicki*'s holding is that an individual, even a purported journalist, can ***personally*** unlawfully intercept a wire or electronic communication and then be immune from prosecution under 18 U.S.C. § 2511(1)(c) for their willful disclosure of that wire communication on public policy grounds favoring the public interest in publication of newsworthy material, *see* Doc. 64, n. 7, is not consistent with the law.

The First Amendment explicitly protects the freedom of the press, and *Bartnicki* rightfully gives meaning to that freedom by barring prosecution of journalists who publish information in good faith and in support of the public

14

interest, but importantly, to be consistent with *Bartnicki,* **the publisher must have clean hands**. To assert otherwise runs counter to fundamental principles of jurisprudence. As recognized by the Supreme Court in *Branzburg v.Hayes*, 408 U.S. 665, 691 (1972), it would be "frivolous" to assert—much less hold—that a reporter or his sources would have a "license . . . to violate valid criminal laws."

### *Van Buren v. United States*

The defendant also overstates and misapplies the law and the conclusions in *Van Buren v. United States*, 593 U.S. 374, 141 S.Ct. 1648 (2021), in arguing that *Van Buren* effectively reversed Eleventh Circuit case law holding that "downloading and obtaining information from protected computers" is unlawful under the Computer Fraud and Abuse Act of 1986 ("CFAA"). Doc. 64 at 18.

Based upon the added "fact" (contrary to the allegations in the indictment) that defendant had an implicit authorization or license to use the compromised credentials he obtained to access various protected computers, the defendant asserts that the holding in *Van Buren* narrows the inquiry of the courts by defining "exceeding authorized access" as limited to a question of whether a defendant "broke into the computer" rather than whether there was an authorization to obtain the information therein. *Id.* at 18.

The represented holding in *Van Buren* is incomplete and misleading as presented in Burke's motion. Section 1030(a)(2)(C) is drafted in the disjunctive and can be violated in two different ways (emphasis added): a person can violate the

15

statute by "intentionally access[ing] a [protected] computer without authorization *or* exceed[ing] authorized access, and thereby obtain[ing]" information. The Supreme Court in *Van Buren* addressed only the second prong of § 1030(a)(2), the scenario in which a person has some level of authorization to access a computer, but then exceeds the scope of that authorization to access other areas of the computer. *Van Buren*, 141 S.Ct. 1648 at 1650. There, the Supreme Court determined that the CFAA does not extend to an individual who has an improper purpose for retrieving information from a computer system that is otherwise available to that individual. *Id.* at 1662. Therefore, the second prong of § 1030(a)(2) covers those who access a computer system with authorization but then obtain information located in areas of the system that are off limits. *Id. Van Buren*, however, had **no impact** on the first prong of § 1030(a)(2),[9] and the defendant's conduct as described in the indictment—accessing the NSL FTP server and the StreamCo password-protected website using credentials assigned to others without authorization and thereby obtaining and stealing information from those protected computers—violates that first prong. Because the indictment alleges the defendant's violation occurs under the first prong of unauthorized access, rather than the second prong for exceeding authorized

---

[9] The elements of a violation of the first prong of 18 U.S.C. § 1030(a)(2)(C) are that: (1) the defendant intentionally accessed a computer without authorization; (2) when the defendant accessed the computer, the defendant obtained information therefrom; and (3) the computer accessed was a protected computer. 18 U.S.C. § 1030(a)(2)(C); and see Eleventh Circuit Jury Instructions (Criminal), Instruction O42.2 (modified).

access, *Van Buren* is inapplicable, and is misapplied by the defendant as a basis for dismissal of the indictment.

  E. <u>The Indictment is Legally Sufficient</u>

  Here, the defendant is charged in Count One of the indictment with conspiring, in violation of 18 U.S.C. § 371, to commit certain offenses against the United States, namely to violate 18 U.S.C. §§ 1030(a)(2)(C), 2511(1)(a), and 2511(1)(c). Doc 1 at ¶ 21. Per the pertinent language of 18 U.S.C. § 371:

> If two or more persons conspire either to commit any offense against the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object[s] of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The conspiracy charged in Count One properly tracks the relevant statutory language and cites the statutes violated. Count One also alleges the various manner and means by which conspirators sought to accomplish the objects of the charged conspiracy (*Id.* at ¶ 22(a)–(l)) and lists 33 overt acts committed by one or both of the conspirators to effect its objects. *Id.* at ¶ 23(a)–(k).

Likewise, Counts Two and Three,[10] Count Four, Counts Five through Seven, Counts Eight through Twelve,[11] and Counts Thirteen and Fourteen[12] also properly track the statutory language and cite the relevant statutes. Additionally, the indictment is not a 'bare bones' accusation which is limited to the language of the charging statutes. The introductory paragraphs (doc. 1, ¶ 1–20), together with the Manner and Means section contained within Count One, offer a detailed background relevant to all charged counts. In doing so, the indictment more than sufficiently apprises the defendant with enough precision to prepare his defense, minimize surprise at trial, and enable him to plead double jeopardy in the event of a later prosecution. The indictment is therefore legally sufficient.

---

[10] Elements for a violation of 18 U.S.C. § 1030(a)(2)(C) include: "Whoever— (1) intentionally (2) accesses a computer without authorization or exceeds authorized access, and (3) thereby obtains— information (4) from any protected computer . . . the punishment for an offense under subsection (a) or (b) of this section is—

As to Count Two and Three, the penalty provision provides under subection (2)(A): "a fine under this title or imprisonment for not more than one year, or both[.]";

As to Count Four, the penalties are enhanced for an individual where "the offense was committed for purposes of commercial advantage or private financial gain" (subsection (c)(2)(B)(i)) and (c)(2)(B)(ii), consistent with the language directly below concerning Counts Five through Seven;

As to Counts Five through Seven, the penalties are enhanced for an individual where "the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" (subsection (c)(2)(B)(ii)).

[11] Per 18 U.S.C. § 2511(1)(a): ". . . any person who— intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]"

[12] Per 18 U.S.C. § 2511(1)(c): ". . . any person who— intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]"

## CONCLUSION

Wherefore, for all the reasons set forth above, the defendant's Motion to Dismiss is without merit and should be denied.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   */s/ Jay G. Trezevant*
       Jay G. Trezevant
       Assistant United States Attorney
       Florida Bar No. 0802093
       400 N. Tampa St., Suite 3200
       Tampa, Florida 33602-4798
       Telephone: (813) 274-6000
       Email: jay.trezevant@usdoj.gov

       */s/ Adam J. Duso*
       Adam J. Duso
       Assistant United States Attorney
       Florida Bar No. 1026003
       400 N. Tampa St., Suite 3200
       Tampa, Florida 33602-4798
       Telephone: (813) 274-6000
       Email: adam.duso@usdoj.gov

U.S. v. TIMOTHY BURKE            CASE NO. 8:24-cr-00068-KKM-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the Defendant.

/s/ Jay G. Trezevant
Jay G. Trezevant
Assistant United States Attorney