UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:24-cr-00068-KKM-TGW |
| v. | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS** |
| TIMOTHY BURKE | |

Timothy Burke respectfully submits this reply brief in support of his motion to suppress evidence seized during the search of his residence on May 8, 2023.

**There Is No Evidence of A Filter Team**

The government implies there were binding filter team protocols. [1] But the *Magistrate was never told that the government intended to search Burke's newsroom and seize privileged and protected materials* from Burke and City Councilmember Hurtak,[2] so *the court* never imposed a requirement of a filter team. [3] 28 CFR

---

[1] *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)("Our Circuit recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts.")

[2] Failing to inform the Magistrate Judge of Councilman Hurtak's privilege in a sealed pleading obviously did nothing to protect her privacy, and merely fueled speculation that the Agents were investigating her. See, Justin Garcia, Tampa City Council member Lynn Hurtak's home searched by FBI, Tampa Bay Times May 8, 2023, available at https://www.tampabay.com/news/florida-politics/2023/05/08/tampa-city-council-member-lynn-hurtaks-home-searched-by-fbi/

[3] See, 28 CFR § 50.10(o) mandating the use of a filter team "to minimize the potential intrusion into newsgathering-related materials that are unrelated to the conduct under investigation." This comports with the Constitutional requirement of "scrupulous exactitude" and is not a mere internal DOJ policy. DOJ Manual 9-13.420 (magistrate should be told of privilege). The Magistrate never imposed filter protocols because the affidavit never disclosed that they were mandated.

1

50.10(o) mandates the imposition of such protocols whenever it is likely that materials related to journalism will be seized, to ensure that the investigators do not see such materials unless they are covered by probable cause, and this rule is intended to make the search reasonable under the Fourth Amendment.[4]  Here, the government failed to disclose the fact they were seeking protected materials from Burke and Hurtak, removing every reference to Fox News, Vice News, CBS News, and Media Matters. The government notes (p. 2) "A member *of the search team* was designated to act as a filter-team agent *if such materials were encountered*, and an AUSA not part of the investigative team was identified to coordinate with that agent if needed." Properly constituted, a filter team under 28 CFR § 50.10(o) takes custody of ALL of the materials, and ONLY provides the investigative team

---

[4] *In re Sealed Search Warrant & Application for a Warrant*, No. 20-MJ-03278, 2020 WL 5658721, at *5 (S.D. Fla. Sept. 23, 2020), aff'd sub nom. *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, No. 20-03278-MJ, 2020 WL 6689045 (S.D. Fla. Nov. 2, 2020), aff'd, 11 F.4th 1235 (11th Cir. 2021)("the filter team decides that any of the communications to/from attorneys are not actually privileged."); *Trump v. United States*, 625 F. Supp. 3d 1257, 1273 (S.D. Fla.), vacated and remanded, 54 F.4th 689 (11th Cir. 2022)("securing a search warrant for [the former President's home and office] and seeking and obtaining [a] magistrate judge's approval of the [f]ilter [p]rotocol."); *United States v. Stein*, No. 21-20321-CR, 2023 WL 2585033, at *1 (S.D. Fla. Mar. 21, 2023)(government petitioned the court for permission to transmit information from taint team to investigative team under "crime-fraud" exception.); *In re Search Warrants*, No. 1:21-CV-04968-SDG, 2021 WL 5917983, at *4 (N.D. Ga. Dec. 15, 2021), *on reconsideration in part,* No. 1:21-CV-4968-SDG, 2022 WL 19075290 (N.D. Ga. Mar. 2, 2022) ("whether a filter protocol suffices depends on the particular facts and circumstances and, specifically, on the types of materials seized and the purpose of the search."); *United States v. Sealed Search Warrant*, No. 217CR103VEHTMP1, 2017 WL 3396441, at *1 (N.D. Ala. Aug. 8, 2017)("The magistrate judge issued the Filter Team Order because he felt the breadth of the information sought necessitated greater privacy protection than is usually afforded in a search."); *In re Search Warrants,* No. 1:21-CV-4968-SDG, 2022 WL 19075290, at *1 (N.D. Ga. Mar. 2, 2022)("Order enjoined the Government from using a filter team according to a protocol attached to the search warrants (the Original Filter Protocol), which the Court held was insufficient to protect against the risk of inadvertent disclosure of privileged material to the prosecution team.")

the specific materials within the scope of probable cause, (and removes privileged information as well) as determined by the binding protocols.[5] Had the Magistrate Judge been told the government was seizing 60Tb of journalistic records, it is highly unlikely that the procedure would have been approved. The resulting general search of a journalist was unreasonable and exposed the investigators to privileged materials. [6] <u>To this date, there is no evidence of any binding filter protocols</u>, and any filter team which permitted the government to seize things like physical notebooks with names and details of Burke's confidential sources and stories going back more than a decade, and hold them for almost half a year.

**News Media Policy And Privacy Protection Act (PPA)**

While neither the DOJ Press Policy nor the PPA *directly* provide for enforceable rights or suppression *per se* in the Courts, [7] for searches of protected

---

[5] 28 CFR 50.10(o)(3) "members of the Department must use filter protocols when … the compulsory legal process could potentially encompass newsgathering-related materials that are unrelated to the conduct under investigation."

[6] The journalist privilege works more like the "informant" privilege in that the identity of the source is itself privileged. *Branzburg v. Hayes,* 408 U.S. 665, 726 (1972)("The newsman-informer relationship is different from . . . other relationships whose confidentiality is protected by statute, such as the attorney-client and physician-patient relationship.)  Thus, to "filter" privileged information, the government would have to know the identity of Burke's sources and the nature of the privileged information provided.  To this day, we do not know whether or how the government separated privileged from unprivileged information.

[7] *But see*, *In re Williams*, 766 F. Supp. 358, 371 (W.D. Pa. 1991), *aff'd,* 963 F.2d 567 (3d Cir. 1992)(quashing subpoena to journalist relying on Press Policy); *United States v. Blanton*, 534 F. Supp. 295, 297 (S.D. Fla. 1982)("if the party seeking the information is the United States, it must follow the Department of Justice Guidelines, 28 C.F.R. s 50.10"); *See also, United States v. Watson*, No. 23-CR-82(EK), 2023 WL 7300618, at *10 (E.D.N.Y. Nov. 6, 2023)(government relying on need to comply with Press Policy as justification for delay in presenting warrant to Magistrate Judge.")

3

materials, the First Amendment demands a higher standard of "scrupulous exactitude" *in addition to* the Fourth Amendment requirements of particularity and probable cause. [8] The PPA protects a person, like Burke, who collects data for the "purpose of disseminating it to the public," and the DOJ Press policy clearly covers persons like Burke who are engaged in "news gathering." The government's assertion, based on Burke's side business website[9], that he is or was not an active "journalist,"[10] is wholly irrelevant - the legal protections apply to the materials to be seized - not just the status of the person from whom they are seized. The government *implies* that it obtained approval from the Attorney General or Deputy Attorney General, for the compulsory process and the filter

---

[8] *United States v. Middleton*, 599 F.2d 1349, 1356 (5th Cir. 1979) " the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are" expressive matter, and recognized the "constitutional impossibility of leaving the protection of (First Amendment) freedoms to the whim of the officers charged with executing the warrant . . . ." S*tanford v. State of Tex.*, 379 U.S. 476, 486 (1965) "it was not any contraband … which was ordered to be seized, but literary material…. The indiscriminate sweep of that language is constitutionally intolerable. To hold otherwise would be false to the terms of the Fourth Amendment, false to its meaning, and false to its history." Here, the problem is exacerbated by the fact that the seizure has worked, and continues to work a prior restraint on Burke's ability to report materials critical to the upcoming election which were seized by the government. This seizure was not "ordinary contraband" but journalist notes and reportage, but *the Magistrate Judge did not know this and could not know it.*

[9] The search warrant affidavit included dozens of pages describing how Twitter (now X) maintains its records - suggesting that the warrant was intended also to seize Burke's social media account, under F.R. Crim. P. 41(e)(2)(A). *United States v. Blake,* 868 F.3d 960 (11th Cir. 2017)(warrant for social media account "general warrant.") *United States v. Chavez,* 423 F. Supp. 3d 194 (S.D.N.Y. 2019). **28 CFR 50.10(j)notice required)**

[10] Indeed, the "crime" under investigation was "newsgathering" and the charges relate to the manner in which Burke collected and disseminated newsworthy information to the public. However, the affidavit failed to inform the Magistrate Judge the fact that the information gathered was published on media outlets like Media Matters and Vice News, Whether and under what circumstances DOJ approval was granted (or denied) would have been critical not just for the finding of probable cause, but for the overall finding of reasonableness of the proposed search to be authorized by the Magistrate Judge.

4

team pursuant to the DOJ Press Policy. [11] But *nothing in the affidavit suggests such approval was actually obtained* - or believed to be necessary.

**The General Warrant**

The warrant here commanded the agents to seize evidence of "downloading information without authorization" [12] and acquiring or disclosing the contents of oral and electronic communications. As such, *the warrant is astonishingly broad* - authorizing the seizure of every file, email, document, song, or video downloaded, every website or service accessed, and every file transfer because of the possibility any file was downloaded "without permission." The filter team agents were provided *no guidance on how to distinguish between files for which there was probable cause* to believe they were evidence of crime and could be seized and those for which there was no probable cause, and could not lawfully be seized. *Unsurprisingly, the searching agents (not the filter team agents) seized everything* - not simply because materials within the scope of probable cause were intermingled with those outside the finding of probable cause but because apart from the temporal limitation, *the warrant effectively contemplated seizure of everything without distinction.* It is truly an example of "seize first" and find

---

[11] The government notes (p. 16) "Even if government investigators had not complied with its [DOJ Press] policies, *which was not the case…*" This *suggests* that the requisite approvals had, in fact, been sought and obtained. Which raises the question, why was the Magistrate Judge not informed of this critical fact, and why has evidence of any such approval not been provided to this Court?

[12] This is a fatal flaw in the warrant - it commanded the seizure of "evidence" of something that is simply not a crime.

evidence of crime later with the government taking possession of 60Tb of data and then "looking for victims" and looking for crimes.[13] The government seized more than 60Tb of data,[14] with about 100 Mb identified in the Indictment as evidence of "unauthorized access" or "interception." Thus approximately 99.9998% of the seized data *was not within the finding of probable cause,* including Hurtak's personal computer, campaign computer, and city council owned/operated computers.

**Probable Cause Was Dependent on the Omission of Facts and Law**

The government asserts that the Magistrate judge was properly informed that there was probable cause to believe that Burke's downloading of the Fox News' live streams violated the wiretap statute irrespective of the expectations of privacy of the participants in the communications because "[u]nder the Wiretap Act, that intercepted audio/video transmission contained both oral (human voice) and electronic communications (images and other electronic information)

---

[13] Had the warrant incorporated by reference the affidavit, and had the affidavit provided some limitation on the scope of the search, the seizing agents might have been able to limit their search to records related on LiveU.tv, Fox News, Tucker Carlson, Vice News and Media Matters - at least marginally relevant to the probable cause finding. Instead, searches for terms like "StreamCo" or "Network News Co." would provide no actual results, and therefore no meaningful limit on what could be seized or after seizure, what could be reviewed. F. R.Crim. P. 49.1 (b)(7) specifically exempts affidavits in support of search warrants from the requirement that personal information be redacted. Nothing in 18 U.S. Code § 3771 grants victims the right to have their identity redacted from relevant pleadings. *In re Wild*, 955 F.3d 1196, 1205 (11th Cir.), reh'g en banc granted, opinion vacated, 967 F.3d 1285 (11th Cir. 2020), and on reh'g en banc, 994 F.3d 1244 (11th Cir. 2021)

[14] 60 TB of data equals 32 billion, 212 million, 254 thousand, 720 pages of plain text data, or 7 years,11 months, and 2 weeks of continuous playing standard definition video. By comparison, the largest library in the world, the Library of Congress, houses about 11.4 billion print pages. It is a massive amount of data seized.

and amounted to a violation of § 2511(1)(a)." *The two offenses are mutually exclusive.* [15] The Magistrate Judge was never told that the "oral communications" were not "uttered by a person exhibiting an expectation [of privacy]" and that that the "electronic communications" allegedly "intercepted" were broadcast publicly, unencrypted, through a server that was configured to be "readily accessible to the public" under 18 USC 2411(g)(i), and that Burke's "disclosing" of these communications to Media Matters and Vice News were constitutionally protected activities under *Bartnicki v. Vopper,* 532 U.S. 514 (2001).

**Conclusion**

Rather than tell the Magistrate they sought authority to seize sensitive and privileged information from a journalist related to his collection and dissemination of newsworthy information and that they had obtained approval from high level DOJ officials for such a search narrowed and limited by specific key words and filter protocols, the government omitted every reference from the affidavit that could permit the Magistrate Judge to know what he was being asked to authorize. Worse, the government omitted the fact that the "intercepted" oral communications were created for broadcast, that the "intercepted" electronic communications were configured to be readily accessible

---

[15] 18 USC 2510(2) defines an "oral communication" as a communication "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication" while 18 USC 2510(12)(A) provides that "electronic communication" "does not include…any wire or oral communication."

to the public, that the credentials used to access the server purportedly "without authorization" were published by the owner of the credentials, that "downloading information without authorization" was simply not a crime, and that the "disclosure" of the "intercepted" communications by a journalist to the public is "pure speech" protected from criminal punishment. Instead, the government failed to disclose the fact that the case revolved around a reporter publishing information to the public.

        Respectfully submitted,

        <u>s/Michael P. Maddux</u>
        Michael P. Maddux, Esquire
        Florida Bar No.: 0964212
        Michael P. Maddux, P.A.
        2102 West Cleveland Street
        Tampa, Florida 33606
        Phone: (813) 253-3363
        Fax: (813) 253-2553
        E-mail: mmaddux@madduxattorneys.com

        <u>s/Mark D. Rasch</u>
        Mark D. Rasch
        Law Office of Mark Rasch
        Member, MD, MA, NY Bar
        MDRasch@gmail.com
        (301) 547-6925
        Admitted Pro hac vice

        COUNSEL FOR
        TIMOTHY BURKE

**CERTIFICATE OF SERVICE**

I hereby certify that on **August 16, 2024**, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF to: Jay Trezevant, Esquire, U.S. Attorney's Office, Middle District of Florida, Tampa Division, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602 at jay.trezevant@usdoj.gov.

_s/Michael P. Maddux_
Michael P. Maddux, Esquire
