UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v. Case No: 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE,

Defendant.

---

ORDER

Defendant Timothy Burke moves to suppress evidence seized from his premises after a Magistrate Judge found probable cause and issued a warrant. Mot. to Suppress (MTS) (Doc. 65). Burke also moves for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). For the following reasons, he is entitled to neither request.

## I. BACKGROUND

In February 2024, a grand jury returned a fourteen-count indictment against Timothy Burke, finding probable cause that Burke violated various provisions of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Wiretap Act, 18 U.S.C. § 2511, and conspired to do the same. Indictment (Doc. 1). The indictment alleges that Burke, among other things, accessed without authorization a website used to transmit

video content; intercepted wire, oral, or electronic communications; and disclosed some of these intercepted communications to others. *See generally id.*

Months earlier, in May 2023, a Magistrate Judge found probable cause and issued a warrant to search Burke's home and an unattached secondary suite. Search Warrant Records (Doc. 18-1 in Case No. 8:23-mc-00014-WFJ-SPF) at 2, 5. The warrant authorized agents to seize "[a]ll records and other evidence relating to violations of" § 1030 and § 2511 involving Burke and occurring after August 1, 2022, including computers, smart phones, storage media, routers, and modems. *Id.* at 2, 7–11. The warrant authorized agents to review "electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant." *Id.* at 11.

Agents executed the warrant on May 8, 2023, and seized about twenty items, including laptops, smart phones, and external hard drives. *Id.* at 28–29. Burke moves to suppress the evidence the government seized and for a *Franks* hearing. *See generally* MTS.

## II. LEGAL STANDARDS

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "Probable cause exists if facts within the magistrate's

knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched." *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982); *accord United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."). If a magistrate judge finds probable cause using common sense and "his own judgment based on the entire picture presented to him," then the magistrate judge's "determination is conclusive in the absence of arbitrariness." *United States v. Long*, 674 F.2d 848, 852 (11th Cir. 1982) (quotation marks omitted) (quoting *United States v. Weinrich*, 586 F.2d 481, 487 (5th Cir. 1978)); *see United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991) ("Great deference is accorded to the magistrate's determination of probable cause.").

In reviewing a magistrate judge's decision, a court must "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (alteration and omission in the original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). When an officer "has obtained a warrant and abided by its terms," a court may suppress evidence stemming from the execution of that warrant only when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *United States v.*

*Leon*, 468 U.S. 897, 922–23 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)); *accord United States v. McCall*, 84 F.4th 1317, 1325 (11th Cir. 2023) ("To exclude evidence on this ground, the affidavit must be so clearly insufficient 'that it provided "no hint" as to why police believed they would find incriminating evidence.' " (quoting *United States v. Morales*, 987 F.3d 966, 976 (11th Cir. 2021))).

A warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Thus, a warrant that permits a "general, exploratory rummaging in a person's belongings" violates the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A warrant's "description is considered 'sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.' " *United States v. Betancourt*, 734 F.2d 750, 754–55 (11th Cir. 1984) (quoting *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A Sep. 1981)). The particularity requirement must " 'be applied with a practical margin of flexibility, depending on the type of property to be seized,' and the property description need only be 'as specific as the circumstances and nature of activity under investigation permit.' " *McCall*, 84 F.4th at 1327 (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982)). Suppression is an available remedy only when the warrant is so "facially deficient" in "particularizing the places to be searched or things to be seized that

the detective could not have 'reasonably presume[d] it to be valid.' " *Id.* at 1328 (alteration in the original) (quoting *Leon*, 468 U.S. at 923).

In some circumstances, a defendant challenging the validity of an affidavit is entitled to an evidentiary hearing. *Franks*, 438 U.S. at 171–72. A court has discretion to hold a *Franks* hearing if a defendant makes "a substantial preliminary showing" that (1) "the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false"; and (2) "that the false statements were necessary to the finding of probable cause." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009).

## III. ANALYSIS

Burke argues that suppression is warranted for three reasons. First, Burke argues that no probable cause existed to issue the warrant because the affidavit failed to provide the Magistrate Judge with an accurate view of the facts and law relevant to the alleged offenses and anonymized potential victims, witnesses, and third parties. MTS at 5, 7–10. Second, Burke argues that the search was unreasonable because the affidavit omitted statements regarding the First Amendment implications of the search and the government's compliance with Department of Justice (DOJ) regulations and the Privacy Protection Act (PPA), 42 U.S.C § 2000aa. *Id.* at 6–7, 10–14. Third, Burke argues that the warrant fails to meet the Fourth Amendment's particularity requirement. *Id.* at 14–17.

Burke also seeks a *Franks* hearing on the basis of the alleged misrepresentations and omissions in the government's affidavit. *Id.* at 2, 19–21.

**A. Probable Cause Supported the Warrant**

Burke asserts that the government's affidavit misled the Magistrate Judge as to the law and the facts of this case. None of these arguments provide a basis to suppress the evidence at issue.

1. The Warrant's Purported Omissions of Law and Fact Do Not Undermine the Probable Cause Finding

Burke argues that "the offenses as cited and described in the affidavit were inconsistent with applicable law." MTS at 9. Burke contends that the affidavit failed to inform the Magistrate Judge that (1) the allegedly intercepted electronic and oral communications are not covered by § 2511; (2) the disclosure of "truthful and newsworthy information to the public" is protected by the First Amendment under *Bartnicki v. Vopper*, 532 U.S. 514 (2001); and (3) "downloading information without authorization" is not a crime under *Van Buren v. United States*, 593 U.S. 374 (2021). MTS at 7–9. These contentions do not provide a reason to conclude that the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown*, 422 U.S. at 611 (Powell, J., concurring in part)).

Burke argues that the affidavit failed to inform the Magistrate Judge of certain facts relevant to determining whether Burke intercepted "oral communications," as defined in

18 U.S.C. § 2510(2), and other facts relevant to determining whether the allegedly intercepted "electronic communications" were "configured to be readily accessible to the public," *see id.* § 2511(2)(g)(i) (providing an exception to § 2511(1)(a) when a person intercepts "an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public"). MTS at 7–8. As to the first argument, Burke states that the affidavit failed to reveal that the "oral communications were made between persons in a broadcast studio who had no expectation of privacy." *Id.* at 8. The affidavit, though, informed the Magistrate Judge that Burke allegedly intercepted a news interview of a celebrity. Affidavit (Doc. 72-1) at 11–14. As for the second argument, the affidavit informed the Magistrate Judge that Burke used credentials that he discovered on a publicly accessible website to access the video-streaming platform and that specific video feeds on that platform were accessible on the internet by using specific uniform resource locators (URLs). *Id.* at 12–14, 16–17. The affidavit then explained how an individual like Burke could construct these URLs. *Id.* at 17. These facts appear relevant to a determination of whether § 2511(2)(g)(i) applies.

Burke is therefore wrong to insist that the affidavit masked supposedly unfavorable facts. Further, his debatable view of the law's application to the facts does not render "entirely unreasonable" the government's reliance on the warrant. *Leon*, 468 U.S. at 923

(quoting *Brown*, 422 U.S. at 611 (Powell, J., concurring in part)). This is especially true given the fact that Burke does not question the affidavit's sufficiency as to the alleged interception of "wire communications." *See* Affidavit at 3 ("There is probable cause to believe that the Target Location . . . contains the fruits, instrumentalities, and/or evidence of . . . an intentional interception and disclosure of wire, oral, or electronic communication, in violation of 18 U.S.C. § 2511.").

As for *Bartnicki*, the Supreme Court held that the Free Speech Clause shields the disclosure of "lawfully obtained" communications concerning matters of public concern. 532 U.S. at 525, 534–35. Because the affiant alleged that Burke took part in the illegal interception of the subsequently disclosed communications, *see, e.g.*, Affidavit at 13–14, 24, *Bartnicki* is distinguishable, and thus the affidavit's failure to discuss it does not provide a basis for suppressing the evidence.

Finally, the Supreme Court's decision in *Van Buren* did not concern the statutory provision at issue in this case. Section 1030(a)(2) has two clauses: one applies to those who intentionally access a "computer without authorization" and the other applies to those who "exceed[] authorized access." *Van Buren* concerned a circuit split about the meaning of the second clause. 593 U.S. at 381. Here, the affiant alleged the existence of probable cause only as to § 1030(a)(2)'s first clause. Affidavit at 3. Therefore, the omission of the *Van Buren* decision is not a reason to question the probable cause finding.

In sum, Burke has not identified any defects in the affidavit that make a lack of probable cause "so obvious that the good faith exception should not apply." *McCall*, 84 F.4th at 1325.

2. The Affidavit's Anonymizations Do Not Undermine the Probable Cause Finding

The affidavit anonymized the names of "potential victims, witnesses, and third parties" to "protect their privacy and the integrity of the federal criminal investigation." Affidavit at 11 n.1. Burke argues that because fictional entities "don't exist," they "could not alone form a factual basis for probable cause." MTS at 5. Burke provides no explanation for why the real identities of the potential victims were necessary for the Magistrate Judge to make a probable cause finding and presents no legal authority for his argument that anonymizations, as a general matter, prevent a probable cause finding. I therefore find no basis to grant Burke's motion on this basis.

**B. The Affidavit's Alleged Omissions Do Not Render the Search Unreasonable**

Burke faults the affidavit for failing to inform the Magistrate Judge that warrants authorizing searches for First Amendment-protected materials must be drafted with "scrupulous exactitude." MTS at 6, 10 (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)). Burke cites no support for this argument, which more properly attacks the sufficiency of the warrant than the sufficiency of the affidavit. Relatedly, Burke asserts that

the affidavit misled the Magistrate Judge by stating that Burke was "not presently working in the media as a news journalist." Affidavit at 14; *see* MTS at 6. As the government explains in response, the affidavit accurately captures Burke's resume, which includes working as the Director of Video for a publication and other experience as a journalist and editor. Response (Resp.) (Doc. 72) at 18; *see* (Doc. 52-1) at 2. The affidavit's statement about Burke's then-present work status is in line with how Burke described his communications consulting firm. (Doc. 52-1) at 3–4. Further, the affidavit informed the Magistrate Judge that Burke was suspected of disclosing intercepted communications and that Burke maintained a media presence by disseminating news and video clips on the internet. Affidavit at 3, 14. Therefore, the Magistrate Judge was aware that Burke still sometimes published information and video on the internet and had knowledge that the government sought to seize evidence related to Burke's alleged disclosure of intercepted communications. As a result, the affidavit informed the Magistrate Judge about Burke's activities and the subject of the search, notwithstanding Burke's objections. Regardless, Burke fails to explain how the lawfulness of the warrant and search turns on the affidavit's description of his occupation.

Next, Burke contends that the search is unreasonable because the government did not inform the Magistrate Judge of its compliance with DOJ regulations "regarding obtaining information from or records of members of the news media." 28 C.F.R. § 50.10

(hereinafter News Media Policy); *see* MTS at 6–7, 11–14. For example, Burke asserts that the government erred by failing to supply evidence that protocols concerning a filter team existed. *See, e.g.*, MTS at 6–7, 12–14; 28 C.F.R. § 50.10(o). The government disputes this contention and argues that it complied with the News Media Policy. Resp. at 2–3, 15.

The News Media Policy does not shield "from accountability members of the news media who are subjects or targets of a criminal investigation for conduct outside the scope of newsgathering." 28 C.F.R. § 50.10(a)(1). Newsgathering does not include "unlawfully accessing a computer or computer system" or "wiretapping." *Id.* § 50.10(b)(2)(ii)(B). Further, as Burke concedes, the regulations that make up the News Media Policy do not "grant enforceable rights." MTS at 12; Reply (Doc. 77) at 3 & n.7; *see* 28 C.F.R. § 50.10(t) ("This section is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006) ("The guidelines, not required by any constitutional or statutory provision, exist to guide the Department's exercise of its discretion in determining whether and when to seek the issuance of subpoenas to reporters, not to confer substantive or procedural benefits upon individual media personnel." (citation omitted)); *In re Shain*, 978 F.2d 850, 854 (4th Cir. 1992) ("[T]he regulation invoked by the reporters is of the kind to be enforced internally

by a governmental department, and not by courts through exclusion of evidence."). As a result, even if the government failed to comply with DOJ regulations, courts lack the authority to suppress evidence gathered in violation of them. Nor does Burke present any authority requiring an affidavit to include a certificate of compliance with these regulations.

Burke argues that the affidavit concealed the fact that the PPA applies, *see* MTS at 10–11, which places restrictions on the government's ability to search for and seize (1) "work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce" and (2) "documentary materials" "possessed by a person in connection" with the same purpose to disseminate. 42 U.S.C. § 2000aa(a), (b). But neither "work product materials" nor "documentary materials" include "contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used as, the means of committing a criminal offense." *Id.* § 2000aa-7(a), (b). Further, the PPA's restrictions do not apply if "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate," provided that the government "may not search for or seize such materials under the provisions of this paragraph if the offense to which the materials relate consists of the receipt, possession,

communication, or withholding of such materials or the information contained therein." *Id.* § 2000aa(a), (b).

Even assuming that the PPA applies in some form here, Congress rejected the remedy of suppression for violations of the PPA. *See id.* § 2000aa-6(e) ("Evidence otherwise admissible in a proceeding shall not be excluded on the basis of a violation of this chapter."). Burke does not otherwise explain how the reasonableness of a search turns on the government informing the Magistrate Judge about its compliance with the PPA.

In sum, suppression is not warranted in the light of the affidavit's failure to explicitly inform the Magistrate Judge of any First Amendment implications of the search and seizure and the affidavit's treatment of Burke's occupation. The same is true of the affidavit's silence as to the News Media Policy and the PPA.

### C. The Warrant is Not a General Warrant

Burke argues that the government failed to comply with the Fourth Amendment's particularity requirement because the warrant "authorized the seizure of any electronic device that contained information about downloading or publishing information," with only a date range to serve as guidance for agents. MTS at 15 Burke argues that the warrant is like one that directs agents to "find evidence of crime," especially because the warrant did not enumerate alleged victims and the affidavit contained anonymized victim names. *Id.* at 15–17. The warrant's overbreadth, Burke contends, is so obvious that the exclusionary

rule's good-faith exception does not apply. *Id.* at 17 n.19. I disagree and conclude that the warrant's scope does not provide a basis to suppress the evidence.

The warrant authorized agents to search Burke's residence and to seize "[a]ll records and other evidence relating to violations of 18 U.S.C. § 1030 . . . and 18 U.S.C. § 2511 . . . those violations involving Timothy Burke and occurring after August 1, 2022." Search Warrant Records at 2, 7. Included within this authorization were "[c]omputers, storage media, cell phones, [and] smart phones . . . used as a means to commit [the alleged violation of 18 U.S.C. § 1030 and 18 U.S.C. § 2511], including downloading confidential materials without authorization in violation of 18 U.S.C. § 1030(a)(2)." *Id.* at 7–8. Although broad, the warrant provided a temporal limitation—allowing only for the seizure of evidence related to violations occurring after August 1, 2022—which cuts in favor of the warrant's compliance with the Fourth Amendment's particularity requirement. *Cf. McCall*, 84 F.4th at 1328 ("By narrowing a search to the data created or uploaded during a relevant time connected to the crime being investigated, officers can particularize their searches to avoid general rummaging.").

Further, as the government notes, courts agree "that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a 'sufficient chance of finding

some needles in the computer haystack.' " *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) (quoting *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999)); *see, e.g.*, *Upham*, 168 F.3d at 535 ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images."); *see also United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005) ("This court has never required warrants to contain a particularized computer search strategy. We have simply held that officers must describe with particularity the *objects of their search*." (emphasis in the original)). The government's affidavit meets this requirement. *See, e.g.*, Affidavit at 13–14, 24–27.

Burke relies on a few cases to make his general warrant argument. In *United States v. Stefonek*, the warrant authorized seizure of "evidence of crime." 179 F.3d 1030, 1032 (7th Cir. 1999). This case is obviously different, given that the warrant authorized seizure of records and other evidence tied to the violation of two particular criminal statutes occurring over a limited period.

Burke relies on *United States v. Srivastava* (*Srivastava II*), 476 F. Supp. 2d 509, 514 (D. Md. 2007), for the proposition that a "warrant authorizing seizure of 'evidence of fraud' was [a] general warrant." MTS at 16 n.15. In *Srivastava*, the warrant at issue "authorized the seizure of ten categories of records, 'including but not limited to, financial, business, patient, insurance and other records related to the business of Dr. Pradeep Srivastava, to

include Drs. Balnath Bhandary and Felipe Robinson, for the period January 1, 1998 to Present, which may constitute evidence of violations of Title 18, United States Code, Section 1347.' " *United States v. Srivastava* (*Srivastava I*), 444 F. Supp. 2d 385, 390 (D. Md. 2006) (emphasis omitted). The court concluded that the warrant satisfied the Fourth Amendment's particularity requirement. *See Srivastava I*, 444 F. Supp. 2d at 396; *Srivastava II*, 476 F. Supp. 2d at 512 ("[T]his Court ultimately found that the language of the warrant satisfied the particularity requirement and *was not* overly broad." (emphasis omitted)). The portion Burke cites concerns another issue—whether the agents "blatantly exceeded the scope of the warrant"—which was the basis for the district court's suppression order. *Srivastava II*, 476 F. Supp. 2d at 512–14. Burke does not raise a similar argument here, and, in any case, the Fourth Circuit vacated the district court's suppression ruling. *United States v. Srivastava* (*Srivastava III*), 540 F.3d 277, 294 (4th Cir. 2008).

Burke turns next to *United States v. Blake*, where two of the warrants at issue "required Facebook to 'disclose' to the government virtually every type of data that could be located in a Facebook account." 868 F.3d 960, 966 (11th Cir. 2017). Neither warrant limited disclosures to the period relevant to the defendant's criminal activity. *Id.* at 967. Although the Eleventh Circuit expressed some skepticism as to whether these warrants complied with the Fourth Amendment, it did not decide the issue because it concluded that the good-faith exception to the exclusionary rule applied. *Id.* at 974. Relevant to this

case, the Eleventh Circuit distinguished between cases which involve social media accounts and cases "which involve seizing an entire hard drive located in the defendant's home and then later searching it at the government's offices." *Id.* In the latter context, the government is afforded more flexibility, for the "means of hiding evidence on a hard drive—obscure folders, misnamed files, encrypted data—are not currently possible in the context of a Facebook account." *Id.* Although, with respect to Facebook, "the government need only send a request with the specific data sought and Facebook will respond with precisely that data," "[h]ard drive searches require time-consuming electronic forensic investigation with special equipment, and conducting that kind of search in the defendant's home would be impractical, if not impossible." *Id.* For these reasons, *Blake* does not support Burke's argument for suppression.

Finally, Burke contends that the government enjoys less flexibility because "the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude' " when "the materials sought to be seized may be protected by the First Amendment." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (quoting *Stanford*, 379 U.S. at 485). Burke cites *Stanford* as one example, where the warrant authorized seizure of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party of Texas." 379 U.S. at 478–79. Relying on English cases like *Entick v.*

*Carrington*, (1756) 95 Eng. Rep. 807 (KB), in which the King's "messengers executing the warrant ransacked Entick's home for four hours and carted away quantities of his books and papers," the Supreme Court concluded that the "indiscriminate sweep of [the warrant's] language is constitutionally intolerable." *Id.* at 483–84, 486.

The warrant here does not compare to the one in *Stanford*, where the subject of the search was literary materials, the reason for the search was the content of the materials, and First Amendment freedoms were left "to the whim of the officers charged with executing the warrant." *Id.* at 485. The Burke warrant authorizes the seizure of records and other evidence related to the "intentional unauthorized access of a computer" and the "intentional interception and disclosure of wire, oral, or electronic communication[s]." Search Warrant Records at 2, 7–11. This is hardly the government using the "power of search and seizure" as an "instrument for stifling liberty of expression." *Marcus v. Search Warrant*, 367 U.S. 717, 729 (1961). *cf. Stanford*, 379 U.S. at 485 n.16 ("A 'book' which is no more than a ledger of an unlawful enterprise thus might stand on a quite different constitutional footing from the books involved in the present case."). *Stanford* and cases like it are therefore distinguishable. Although the warrant is broad, it "enable[d] the searcher to reasonably ascertain and identify the things authorized to be seized." *Wuagneux*, 683 F.2d at 1348. This is sufficient under the Fourth Amendment.

Even if Burke was correct that the warrant failed to meet the Fourth Amendment's particularity requirement, "the good faith exception applies in this case to excuse the unconstitutionally over broad warrant." *United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000). The exclusionary rule does not apply to evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. Therefore, in this context, Burke must show that a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. Burke cannot do so. Indeed, in *Blake*, a case on which Burke relies, the Eleventh Circuit concluded that the good faith exception applied even though the warrants "required disclosure to the government of virtually every kind of data that could be found in a social media account." 868 F.3d at 974. Like in *Blake*, the warrant's compliance with the particularity requirement is a "close enough question that the warrants were not 'so facially deficient' that the. . . agents who executed them could not have reasonably believed them to be valid." *Id.* at 975. Therefore, the exclusionary rule does not apply.

**D. A *Franks* Hearing is Not Warranted**

Burke requests a *Franks* hearing and lists a set of questions that the hearing should address. MTS at 19–21. "A *Franks* hearing is warranted where a defendant 'makes a substantial preliminary showing' that an affiant made intentionally false or recklessly

misleading statements (or omissions), and those statements are 'necessary to the finding of probable cause.' " *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014) (quoting *Franks*, 438 U.S. at 155–56).

Burke has not met his burden to warrant a *Franks* hearing. To start, many of the alleged omissions in the affidavit are not relevant to the probable cause inquiry. Examples include the affiant's failure to include a certification that the government complied with the PPA and the News Media Policy and a reminder to the Magistrate Judge of the "scrupulous exactitude" requirement. MTS at 6–7, 10–14. Next, the alleged misrepresentations of facts and law relevant to violations of the CFAA and Wiretap Act do not undermine the Magistrate Judge's probable cause finding. *See supra* at 6–9. Finally, Burke fails to convincingly explain how inclusion of the supposedly omitted "true full, factual context for the case," which includes the identity of one of the alleged victims, would "have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997). Therefore, Burke is not entitled to a *Franks* hearing.

## IV. CONCLUSION

Accordingly, Burke's Motion to Suppress (Doc. 65) is **DENIED**.

**ORDERED** in Tampa, Florida, on November 21, 2024.

Kathryn Kimball Mizelle

Kathryn Kimball Mizelle
United States District Judge