UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**TIMOTHY BURKE** | Case No. 8:24-cr-68-KKM-TGU |

**DEFENDANT TIMOTHY BURKE'S
MOTION FOR RECONSIDERATION OF
THE COURT'S ORDER MAKING THE PUBLIC NATURE
OF COMMUNICATIONS AN AFFIRMATIVE DEFENSE**

In its April 14, 2025 Order denying Mr. Burke's Motion to Dismiss, (Doc. 110, p. 21) the court found, as a matter of law, that, stripped of what the Court calls "affirmative defenses" under 2511(2)(g)(i), the statute, 18 U.S.C. § 2511(1)(a) "defines a perfectly cogent offense" which punishes anyone who "intentionally [acquires the contents of] a wire, oral, or electronic communication."

Rather than being a "perfectly cogent offense," the stripped statute is unconstitutionally overbroad, and creates criminal liability to the "merely curious" who click on a hypertext link on a publicly accessible web page. *Snow v. DirecTV, Inc.*, 450 F. 3d 1314 (11th Cir., 2006). If "intentionally acquiring the contents of an electronic communication" is, in fact, a crime, then the statute is unconstitutional on its face, and criminally punishes a host of protected activities. It does not survive scrutiny - strict, intermediate, or ordinary. Congress is without

the power to make it a crime to "acquire the contents of a communication" as the Court suggests it has.[1] While the court notes that "Burke cites not a single instance

---

[1] Attempting to draft jury instructions based on the court's holding illustrates the problem. There is simply no way to draft such an instruction that does not raise insurmountable constitutional problems. By way of example:

> You are instructed that, if you find that the government has proven that Mr. Burke (1) intentionally; (2) "acquired the contents"; (3) of an electronic communication you must find him guilty of these charges. If you further find that he "disclosed" the contents of a communication he acquired, you must also find him guilty of those offenses. Any intentional acquisition of the contents of an electronic communication in interstate or foreign commerce violates the law. This includes any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.
>
> Mr. Burke has the burden of proving whether or not the communications allegedly acquired were made through an electronic communication system that was configured so that such electronic communication was readily accessible to the general public. That burden never shifts to the government. Mr. Burke is in a "better position" to adduce evidence about how he acquired the contents of the communication, and therefore, the law imposes on him the burden to do so. The government has no burden of proving whether or not such communications were or were not readily accessible - only that the defendant "acquired" the contents of the communications. If you find that Mr. Burke has proven, by [a preponderance of the evidence?] that the communication was readily accessible to the general public, you [may/must?] find him not guilty.

Under no circumstances would this be an acceptable jury instruction. See, e.g., *Cool v. United States*, 409 U.S. 100 (1972)(jury instruction questioning credibility of defense witness "places an improper burden on the defense, and allows the jury to convict despite its failure to find guilt beyond a reasonable doubt"); *Mullaney v. Wilbur*, 421 U.S. 684, 701–02 (1975)(requiring the defendant to prove absence of malice was unconstitutional burden shifting); *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979)(jury instruction that defendant is presumed to intend consequences improper burden shifting); *Francis v. Franklin*, 471 U.S. 307, 315–18 (1985) (state may not shift burden on defendant); *Patterson v. Austin*, 728 F.2d 1389, 1393–95 (11th Cir. 1984))(shifting burden "serious constitutional error"); *United States v. Simon*, 964 F.2d 1082, 1086–88 (11th Cir. 1992)(prosecutor commenting on defendant's failure to rebut testimony unconstitutional burden shifting); *United States v. Blakey,* 14 F.3d 1557, 1560–62 (11th Cir. 1994)(suggesting that there is any duty on the defendant to present evidence unconstitutional burden shifting); *Woodard v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-445-MMH, slip op. at 20–24 (M.D. Fla. May 26, 2021)(Howard, J.)("the prosecution may not… 'shift the burden of proof to the defendant or otherwise suggest that the defendant has an obligation to produce evidence or prove innocence.'"); *Arnold v. Sec'y, Fla. Dep't of Corr.*, No. 3:13-cv-1132-J-39,

of the government indicting someone for watching television or googling something" (Doc 110, p. 24), this may be because, until this court's ruling, no court had found that the statute, by its terms, permits such an indictment and prosecution,[2] and until now, the Eleventh Circuit had closed "the floodgates of litigation" so that "the merely curious would [not] be prosecuted." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006). Those floodgates have now been opened, and individuals may now be prosecuted for merely "acquiring the contents of a communication." [3]  Even if Mr. Burke is the first journalist to be

---

slip op. at 45–49 (M.D. Fla. Mar. 6, 2018)(Davis, J.)("[i]mproper suggestions, insinuations, or assertions" that misstate the burden or "appeal to prejudices")

[2] The closest are *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005) noting that 18 USC 2511(3), "authorizes a communication service provider to divulge a communication to one other than the recipient in four specified circumstances"and noting that "Congress addressed that problem with a broad, affirmative good faith defense: A good faith reliance on ... (3) a good faith determination that [§ 2511(3) ] permitted the conduct complained of[ ] is a complete defense against any civil or criminal action brought under [the Wiretap Act] or any other law. 18 U.S.C. § 2520(d)(3)." In *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507–08 (S.D.N.Y. 2001) the court noted with respect to other provisions of the ECPA in 18 USC 2701(c):

> it appears that § 2701(c) is a statutory exception. First, § 2701(c) is entitled "Exceptions" and states "Subsection (a) of this section does not apply with respect to conduct ..." Second, § 2701(a) reinforces § 2701(c)'s function by carving out § 2701(c)'s exceptions in the very definition of the offense: "§ 2701(a) Offense.-Except as provided in subsection (c) of this section ..." Third, § 2707, the section that provides for a civil cause of action, subsection (e), is entitled "Defense" and specifies three affirmative defenses to civil claims under § 2707. Presumably, if Congress had intended § 2701(c)(1–3) to constitute affirmative defenses, it could have labeled them as such as it did in § 2707. Fourth, nothing in the legislative history suggests that § 2701(c) should be considered an affirmative defense instead of a statutory exception.

[3] We can expect that other journalists - like the Atlantic magazine editor-in-chief Jeffrey Goldberg, who was inadvertently put on a Signal message chain with Secretary of Defense Hesgeth and others are now subject to having their computers and reportage seized and being prosecuted because they -- like Mr. Burke - "acquired the contents of an electronic communication," and then "disclosed" those contents, subject to their presenting as an "affirmative defense" that the

prosecuted for acquiring communications without evidence or any assertion that the communications were not publicly accessible, who is to say that he won't be the last. The floodgates are now open.

The solution here is simple. If the government believes that the communications were taken from a server that was not configured to be readily accessible to the public - just say so. Re-present the case to a grand jury so that the grand jury can simply add the words "that was configured so that the communications were not readily accessible to the general public." The government is literally litigating to be excused from the obligation of making -- and proving -- this claim. The fact that they have not - and cannot - says everything we need to know about what the government intends to prove. As presently configured, wiretap counts must be dismissed.

### 1. The Wiretap Statute is a Privacy Statute.

The wiretap statute as a whole is intended to prevent the unlawful or non consensual acquisition of private communications -- it is a privacy statute.[4] In

---

"interception" was lawful. Indeed, Goldberg, like Burke, is in a "better position" to present evidence about how he acquired the contents of the Signal message - suggesting that he would have the burden of doing so. Jeffrey Goldberg & Shane Harris, Here Are the Attack Plans That Trump's Advisers Shared on Signal, THE ATLANTIC (Mar. 26, 2025), https://www.theatlantic.com/politics/archive/2025/03/signal-group-chat-attack-plans-hegseth-goldberg/682176/(last visited April 24,2025) The problem is not that Goldberg could be tried and convicted -- he could not. The problem is that he could be tried and acquitted. By that point, the damage is done.
[4] *Snow v. DirecTV, Inc.*, 450 F. 3d 1314, 1320 (11th Cir., 2006)

*United States v. McCann*, 465 F.2d 147 (5th Cir. 1972), the court dealt with an <u>unlawful</u> interception of communications <u>in which the participants had a reasonable expectation of privacy</u> under 18 USC 2510(1), and considered whether the government had to additionally prove that these "private communications" were not consensually intercepted. The interception of "oral" communications inherently requires the government to prove both subjective and objective privacy -- and an invasion thereof. 18 U.S.C. 2510(1) and the application of the "consent" provision of 18 USC 2511(2)(d) does not fundamentally alter the criminal offense.[5] Removing "consent" as an element the government must prove leaves a "perfectly cogent offense" - intercepting a private oral communication.

Not so for the interception of *electronic communications* at issue here and in *Snow v. DirecTV, Inc.*, 450 F. 3d 1314 (11th Cir., 2006). The definition of "electronic communications" under 18 USC 2510(12) has no element of "privacy" or

---

The ECPA was enacted to update the then existing federal wiretapping law to protect the privacy of the growing number of electronic communications. See 132 Cong. Rec. H4039 (1986) (statement of Rep. Kastenmeier). Since its inception, the ECPA provided "several clear exceptions to the bar on interception so as to leave unaffected electronic communication made through an electronic communication system designed so that such communication is readily available to the public." 131 Cong. Rec. S11790-03 (1985) (statement of Sen. Leahy on a bill that was the precursor to the ECPA); see also 131 Cong. Rec. E4128 (1985) (statement of Rep. Kastenmeier on the same bill).

[5] Under the "invited ear" exception, one always risks that a party to a communication will disclose it. See, e.g., *Hoffa v. United States,* 385 U.S. 293, 302 (1966). Thus, consensual interception by a party necessarily obviates the expectation of privacy in "oral communications."

expectation of privacy.[6] It includes all communications "of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system…" Everything from a phone call, to a TV broadcast, to a radio broadcast, to social media, e-mail, text messages, streaming music, and indeed this document on the ECF system, including forms of communications we cannot today contemplate are covered by the definition. What the definition of "electronic communications" does not include, however, is any requirement that the "electronic communication" be private, or expected to be private, which distinguishes it from the "oral communication" considered in *McCann*.

The "invasion of privacy" requirement - *needed to make the conduct criminal* - is found in section 2511(2)(g)(i) for electronic communications, and 2511(2)(g)(ii)(I) for radio communications, which the court reads out of the statute and makes an affirmative defense which the defendant must prove. It is not the case that the statute contains a prohibition subject to a defense. In the absence of the limitation there simply is no criminal conduct.

As the Department of Justice noted "Because the definition of an electronic communication, as added by the 1986 Act, is <u>so broad and all-inclusive,</u> it became necessary to <u>carve out</u> some forms of electronic communications that either

---

[6] The problem in Mr. Burke's case is exacerbated by the fact that each of the allegedly intercepted communications are simultaneously and inconsistently alleged to be "oral, wire <u>and</u> electronic."

appeared <u>not to be deserving of privacy protection</u> or where a policy decision was made by Congress not to include a specific form of electronic communication." Department of Justice Criminal Resource Manual § 1056 (emphasis added).

What this court does is to <u>reincorporate</u> that which Congress <u>deliberately carved out</u> as to not be criminal activity. We can all agree that "acquiring the contents" of a publicly accessible electronic communication is not only not a crime, but is a common, everyday and constitutionally protected activity. To comport with due process, the government in every criminal prosecution must prove beyond a reasonable doubt, the "fact[s] necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The court reduces these "facts" to the government's showing that Mr. Burke, a journalist, "intentionally" "acquired the contents" of "a communication" which affected interstate commerce. These are NOT the "facts necessary to constitute a crime." The critical elements of wrongfulness, impropriety, criminality, or even privacy invasion, are removed. There is simply and plainly no longer a "cogent offense" alleged.

**2. The "Readily Accessible" Element Differs from Other Exclusions in the Statutory Scheme**

The "readily accessible to the general public" language in 18 USC 2511(2)(g)(i) differs from other possible "exceptions or exclusions" under the statutory scheme.

If someone "intercepts" a private communication (a crime) but they are, for example, the operator of a switchboard, the "crime" (or invasion of privacy) is excused. The same is true if they are a law enforcement official with an appropriate Title III order or one party consent, or using an extension telephone, or other "exceptions." By virtue of their position, authority or circumstance, they *are permitted to invade the privacy* of the communication. Forcing a defendant to prove that they are "authorized" to invade privacy acts in the same manner as other "affirmative defenses" - providing a justification for otherwise criminal conduct. They are "permitted" violations of the statute.

Not so for the "readily accessible to the general public" elements in both section 2511(2)(g)(i)(for electronic communications) and 2511(2)(g)(ii)(I)(for radio communications). If a communication is "readily accessible to the public" such as a TV or radio broadcast, a public website, a public posting on social media, etc., *it is afforded no protection under the statute* - it is, as the DOJ notes, "carved out" from coverage. This is the same as the non-private "oral" communications in *McCann*. The statute does not - and indeed constitutionally cannot - reach such conduct. It is simply not a crime. The private nature of the communication is essential to the crime.

If the statute is interpreted to prohibit "acquiring the contents of an electronic communication" as a "perfectly cogent offense," the statute becomes

unconstitutionally overbroad, and violative of the First Amendment. <u>The whole point of communications is that they are intended to be "acquired."</u> Without reference to the provisions of 18 USC 2511(2)(g), "the ingredients constituting the offense <u>may be accurately and clearly defined</u>" (Doc. 110 at p. 22 citing *United States v. Cook*, 84 U.S. 168, 173 (1872)).[7] These "ingredients" are merely *acquiring communications.* When a person tunes their radio to 95.3 to listen to Neil Solondz' play-by-play of the Rays game from Steinbrenner field, they are "acquiring the contents" of a wire communication, subjecting the Rays fan to seizure, arrest and prosecution, subject to their calling witnesses from WDAE in St. Petersburg to testify that the radio broadcast was accessible to the general public under 18 USC 2511(2)(g)(ii)(I). *It is of no mind that Mr. Burke can point to no prosecutions for such*

---

[7] In *Cook*, in the paragraph immediately preceding the quoted language, the Supreme Court noted, "Where a statute defining an offence contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception…" The court went on to note "without an allegation that the accused is not within an exception contained in the statute defining the offence, it is clear that no indictment founded upon the statute can be a good one which does not contain such an allegation,…" The court concluded that there are circumstances where "it would be impossible to frame the actual statutory charge in the form of an indictment with accuracy, and the required certainty, without an allegation showing that the accused was not within the exception contained in the subsequent clause, section, or statute. Obviously such an exception must be pleaded, as otherwise the indictment would not present the actual statutory accusation, and would also be defective for the want of clearness and certainty." *Cook, supra.* See also, E*dward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

*activity - what matters is that the court authorizes such prosecutions.* The First Amendment creates a right to engage in these communications. The expurgated statute makes it a presumptive crime to engage in constitutionally protected speech.

### 3. Affirmative Defenses Typically Act As An Excuse or Justification for Otherwise Criminal Conduct

Affirmative defenses like duress, incapacity, permission or consent, reliance on governmental authority, insanity, necessity, entrapment and others [8] are typically some "excuse" that permits or excuses <u>otherwise criminal behavior</u>, or which challenges the government's proof on a specific element (e.g., mental state) of an offense which is ordinarily presumed by conduct. Despite this, the initial conduct - what *Winship* calls the "facts related to the offense" must still be proven by the government - beyond a reasonable doubt.

---

[8] *Dixon v. United States*, 548 U.S. 1 (2006)(duress is affirmative defense); *Patterson v. New York*, 432 U.S. 197, 210 (1977)(affirmative defense of extreme emotional disturbance); Clark v. Arizona, 548 U.S. 735 (2006)(insanity) see also 18 U.S.C. § 17; *Martin v. Ohio*, 480 U.S. 228, 233–34 (1987) (self-defense); *Smith v. United States*, 568 U.S. 106 (2013) and United States v. Finestone, 816 F.2d 583, 589 (11th Cir. 1987) (withdrawl from a conspiracy); United States v. Maxwell, 254 F.3d 21, 26 (11th Cir. 2001)(entrapment); *United States v. Ryan,* 289 F.3d 1339 (11th Cir. 2002)(inducement); *United States v. Hough*, 803 F.3d 1181, 1188 (11th Cir. 2015)(good-faith defense in a tax fraud case); *United States v. Deleveaux,* 205 F.3d 1292 (11th Cir. 2000)(justification/necessity); *United States v. Juan,* 776 F.2d 256, 258 (11th Cir. 1985)(reliance on government authority). *United States v. Castanos*, No. 20-11618 (11th Cir. July 7, 2020)(consent as a defense to wrongful retention of a child); *United States v. Rosenthal*, 793 F.2d 1214 (11th Cir. 1986)(reliance on actual governmental authority distinguished from apparent authority as a defense); *Sullivan v. United States*, No. 15-13993 (11th Cir. Sept. 20, 2016)(voluntary intoxication not a defense); 18 U.S.C. § 373(b)(renunciation as an affirmative defense to solicitation of a crime).

In the wiretap statute considered by the *McCann* court, "consent" of the parties was just such an "excuse" - the defendant invaded a private conversation, but claimed that he was excused from violating the law because it was done with consent. The Court found that the statute permitted such burden shifting.[9]

In *Snow* and here, the <u>public nature of the communication</u> is not an "excuse" permitting otherwise criminal activity. If the communication is "public" *it is not covered by the statutory prohibition* - it is simply not a crime - not that it excuses a crime. It's <u>not a crime</u> to listen to the radio, watch TV, or browse the web. Just like the oral communications in *McCann* which required the government to demonstrate the existence of a reasonable expectation of privacy, the government must demonstrate that the electronic communications here were not readily accessible to the public. Without this, there is no crime - or worse, without this as an element, the "crime" is so broad as to encroach fundamental rights under the Constitution.

---

[9] The *McCann* court did not, however, address the due process implications of such burden shifting. In *In re Winship*, 397 U.S. 358, 364 (1970) the Supreme Court held that due process requires the prosecution to prove beyond a reasonable doubt "every fact necessary to constitute the crime charged." *Mullaney v. Wilbur*, 421 U.S. 684 (1975)("the State has affirmatively shifted the burden of proof to the defendant. The result, in a case such as this one, where the defendant is required to prove the critical fact in dispute, is to increase further the likelihood of an erroneous murder conviction."); *Speiser v. Randall,* 357 U. S. 513, 357 U. S. 525-526 (1958)("[W]here one party has at stake an interest of transcending value -- as a criminal defendant his liberty -- th[e] margin of error is reduced as to him by the process of placing on the [prosecution] the burden . . . of persuading the factfinder at the conclusion of the trial. . . .).

To comport with due process alone, the indictment must, at a minimum, allege that the communications Mr. Burke is alleged to have acquired were not on a server configured to be readily accessible to the public, just as the *McCann* indictment alleged (directly or inferentially) that the "oral" communications intercepted there were uttered by a person with an expectation of privacy. [10]

**4.    Mr. Burke is Not in A "Better Position" To Show How StreamCo Configured its Servers**

The court next notes that burden shifting in this case is appropriate because "Burke is uniquely better equipped to adduce evidence about how he went about getting the communications." (Doc 110, p.24). In almost every criminal case, a defendant is "better equipped to adduce evidence" about what they did or what they are alleged to have done. The Fifth Amendment, however, means a defendant cannot be compelled to testify or present such evidence. It is, and remains entirely the government's burden to demonstrate to the jury "how [or whether] Burke went about getting the communications." The defendant

---

[10] The indictment disingenuously dances around this requirement. It asserts that The StreamCo-Net [the website granting access to the file with the web addresses or BID's] was designed to limit access to only authorized customers through the Internet via a secured password-protected website that required customers to first enter assigned credentials before gaining access and that the "preview" streams (the communications that Burke allegedly acquired) were "viewable by accessing specific uniform resource locators ("URLS") that were composed of letters, numbers, and symbols and included a unique StreamCo-assigned "BID," generated by an algorithm, that functioned much like a Social Security number." The indictment asserts that "[t]he BIDs ranged from 9-16 characters and were associated with the StreamCo devices" and each "device was typically only associated with a discrete StreamCo customer and was not typically shared between StreamCo customers." *What the indictment -- and the affidavit in support of the search warrant -- do not allege is that the communications themselves were not "readily accessible to the public."*

emphatically and categorically rejects the court's kind invitation to take on the burden of adducing such evidence.

The court also incorrectly assumes that Mr. Burke, under F.R. Crim. P. 17(c), is "better equipped" than the government to compel the attendance of a witness from Stream-Co and to present network diagrams, configurations, settings and topographies, as well as testimony to establish whether the system was "configured so that the communications were readily accessible to the general public." The test for whether the communications were so accessible is an objective test - based on the configuration of the servers - not something based on Burke's state of mind or something only he would know. [11] The court contemplates forcing the journalist to testify about "how he went about getting the communications" rather than forcing the government to prove that he did so unlawfully. Even though the court "suspect[s that] much of the trial will be

---

[11] *In re Innovatio IP Ventures,* LLC Pat. Litig., 886 F. Supp. 2d 888, 894 (N.D. Ill. 2012)("The public's lack of awareness of the ease with which unencrypted Wi–Fi communications can be intercepted by a third party is, however, irrelevant to a determination of whether those communications are "readily accessible to the general public." 18 U.S.C. § 2511(2)(g)(i). The language of the exception does not, after all, refer to "communications that the general public knows are readily accessible to the general public." Therefore, the public's expectation of privacy in a particular communication is irrelevant to the application of the Wiretap Act as currently written. Because data packets sent over unencrypted Wi–Fi networks are readily accessible using the basic equipment described above, the Wiretap Act does not apply here." *Accord, Davis v. HDR Inc.*, 652 F. Supp. 3d 1087, 1096 (D. Ariz. 2023), *appeal dismissed,* No. 23-15233, 2023 WL 5367499 (9th Cir. May 10, 2023)("the legal question is not what her expectation of privacy was when posting, but rather, whether her communications were, in fact, "readily accessible to the public."… Plaintiff may have wanted her posts to be seen only by the members of these two private groups… but that is irrelevant to the question of whether her posts were, in fact, readily accessible to the general public."

devoted to presenting evidence of how Burke obtained the electronic communications" the court improperly imposes the burden on the defendant - not the government - to establish these facts.

**5. Removing the "Readily Accessible" Element Makes the Statute Itself Unconstitutional**

"Congress did not intend to criminalize … acts of individuals who "intercept" or "access" communications that are otherwise readily accessible by the general public." *Snow v. DirecTv, Inc.*, 450 F.3d 1314 (11th Cir. 2006) (noting that proof that the communication is not readily accessible is "an essential <u>element</u>" of the offense). The court's formulation <u>does exactly that</u> by making the government prove only that a defendant "acquired the contents of a communication." This is a major reinterpretation of the statutory requirement, impacting significant social consequences, which *Snow* recognized was inconsistent with the intent of Congress.[12]

---

[12] Courts should not interpret statutory provisions to resolve "major questions" involving significant economic, political, or social consequences absent a clear statement from Congress. See *West Virginia v. EPA*, 597 U.S. 697, 721–722 (2022); *Utility Air Regulatory Grp. v. EPA,* 573 U.S. 302, 324 (2014); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). "Congress,... does not … one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). The doctrine applies with particular force where, as here, the court seeks to reinterpret or expand a long-standing statute—the Wiretap Act—to criminalize previously unpunished conduct -merely acquiring electronic communications. This includes journalistic access to content that is publicly available online. The Major Questions Doctrine requires "clear congressional authorization" before a court or agency may interpret a statute to resolve questions of major importance. *West Virginia,* 597 U.S. at 721–722. Accord, *Georgia v. President of the United States*, 46 F.4th 1283, 1308 (11th Cir. 2022); *Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1287–88 (11th Cir. 2021); *Properties of the Villages, Inc. v. FTC,* No. 5:24-cv-00316, 2024 WL 4851234, at *7–9 (M.D. Fla. Aug. 14, 2024)(Corrigan, J.)(enjoining the FTC's non-compete rule based on the

The breadth of such a statute creates a chilling effect on protected speech. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). Even if a journalist were ultimately acquitted of the charge of "acquiring a communication" at trial by proving to the petit jury that the communication was "readily accessible," the fact that they were subject to arrest, search, seizure, indictment and trial for constitutionally protected activity would undoubtedly chill free speech. As the *Ashcroft* court noted "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." See, *NAACP v. Button,* 371 U.S. 415, 433 (1963)("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity"); *Reno v. ACLU,* 521 U.S. 844, 872 (1997)("Even the prospect of enforcement may cause speakers to self-censor."); *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)("The threat of sanctions may deter…almost as potently as the actual application of sanctions."); *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967)("The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform…what is being proscribed."). Indeed, while the Supreme Court in *Bartnicki v. Vopper*, 532 U.S. 514 (2001) found that the First Amendment protected

---

Major Questions Doctrine). No such clear statement exists in the text or legislative history of § 2511, indeed, the text and history suggest exactly the opposite.

journalists who "disclose" the contents of communications they knew were acquired in violation of the statute; the party to whom the communication was "disclosed" would have themselves "acquired the contents" of that communication, which the court here makes an offense, if acquired electronically.

This chilling effect is especially powerful where, as here, the speech concerns criticism of the government, news reporting, or whistleblowing—areas that are central to the "uninhibited, robust, and wide-open" public discourse protected by *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964). Based at least in part upon a showing that Mr. Burke "acquired the contents of a communication" (without any showing that this communication was not readily accessible to the public), [13] the government here raided and seized the contents of his newsroom - a shot across the bow to any journalist warning against what might happen should they have the temerity to collect and publish information. While newsrooms are not immune from searches, "In searches of press offices, the potential for impinging upon First Amendment values calls for scrupulous

---

[13] The problem is particularly acute at stages of a criminal process which afford the defendant no opportunity to present what the court now concludes is an "affirmative defense." Removing any element of invasion of privacy from the requirement for the government to go forward permits a Magistrate Judge to issue a search warrant based on evidence that a defendant "acquired the contents of a communication" since the prosecutors or agents would have no duty to allege or establish the "affirmative defense" of lack of public accessibility. The same is true for Title III wiretap orders, pen registers, CIPA warrants, arrest warrants, orders under the All Writs Act, grand jury proceedings, indictments, arrest warrants or detainers, or any other *ex parte* proceeding. In all of these proceedings, the defendant does not participate and the government need, according to the court, present no evidence other than that the defendant "obtained the contents of a communication."

adherence to procedural safeguards." *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978). If the government need only show that a journalist "acquired the contents of a communication" to seize a newsroom, any reporter can have their privileged information seized. This does not comport with "scrupulous adherence."

If the court is correct, and the statute may constitutionally be applied to any activity which "acquires the contents of an electronic communication" then the statute "lends itself to harsh applications... and, more importantly, leaves wide open the standard of responsibility." *Gooding v. Wilson*, 405 U.S. 518, 521–22 (1972). This is particularly true "[b]ecause overbroad laws may chill the expression of protected speech, [and therefore] courts must be especially vigilant in scrutinizing restrictions that carry criminal penalties." *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12 (1973). "The vagueness and breadth of the statute operate to inhibit the exercise of individual freedoms." *Keyishian v. Bd. of Regents,* 385 U.S. 589, 604 (1967).

Under the court's interpretation of the statute - every journalist - and indeed every person, runs the risk that the government will prosecute them for normal, everyday activities like searching the web or streaming video content, and then require them to waive their Fifth Amendment rights and affirmatively "adduce evidence" of how they obtained the contents, and why it was not illegal. Even if they are successful in doing so, they will be discouraged from engaging in constitutionally protected - and encouraged - conduct. Even more disturbing is

the fact that the government - and the Magistrate Judge issuing the search warrant in this case - both must have assumed that merely "acquiring the contents of a communication" was enough of a crime to warrant seizing a newsroom.

### 5. Conclusion

If, as the district court suggests, § 2511(1)(a) criminalizes only the intentional acquisition of the contents of any communication without reference to whether that communication was private, protected, secured, or restricted, then the statute is facially unconstitutional. It criminalizes a wide array of speech and information-gathering conduct that lies at the heart of the First Amendment. Its overbreadth is substantial, its deterrent effect immediate, and its application plainly inconsistent with decades of First Amendment doctrine. The Court's construction transforms a narrow privacy law into a speech crime of general application, subjecting journalists, researchers, and private citizens to prosecution for nothing more than accessing or receiving truthful information. If the statute requires the defendant to "adduce evidence" of how he acquired the communication, and prove that he did so lawfully, it similarly violates the Fifth and Sixth Amendments.

Such a statute cannot stand, and we urge the court to reconsider. The current indictment - which wholly fails to allege "criminal" interception - must be dismissed.

## LOCAL RULE 3.01 CERTIFICATION

Given Local Rule deadlines concerning the filing for reconsideration, Counsel files this Motion without the benefit of a completed conferral, but based on the original position of the Government and its response to the Motion, it is presumed that the Government objects to the requested relief.

Respectfully submitted,

*s/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
Fax: (813) 253-2553
Email: mmaddux@madduxattorneys.com

*s/Mark D. Rasch*
Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
Admitted *Pro hac vice*

COUNSEL FOR TIMOTHY BURKE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **25th** day of **April 2025**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

s/*Michael P. Maddux*
Michael P. Maddux, Esquire