# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                          **CASE NO.: 8:24-cr-00068-KKM-TGW**

**TIMOTHY BURKE**

_____/

## DEFENDANT'S MOTION TO DISMISS COUNTS 8, 9, 10, 11, 12, 13, and 14 OF THE INDICTMENT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW the Defendant, TIMOTHY BURKE, by and through undersigned counsels, and respectfully move this Honorable Court pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure and under the Sixth Amendment to dismiss the indictment for failure to state an offense and to declare the federal wiretap statute unconstitutional both as applied and, as the government interprets the statute, on its face under the First Amendment.

Counts 8, 9, 10, 11, 12, 13, and 14 of the indictment in this case charge the defendant with criminally acquiring the contents of oral, wire, AND electronic communications by obtaining certain video clips from the internet and reporting on what he found. At a hearing on May 6, 2025, the government argued it is a crime to "acquire the contents" [18 USC 2510(4)] of a video that contains the human voice over the Internet as a "wire communication" [18 USC 2510(1)] AND

to acquire the video and images in that video as an "electronic communication" [18 USC 2510(12)].

For electronic, but not for wire communications, the government contends that the defendant may demonstrate - as an affirmative defense - that the communications were acquired from a server configured so that the communication was "readily accessible to the general public." [18 USC 2511(2)(g)(i)] Doc. 101 (Govt Resp.). In an Order dated April 14, 2025 (Doc. 111) the Court adopted the government's argument that the issue of whether the server was "readily accessible to the public" was an affirmative defense, and not, as the defense contends, an element of proof of the offense of criminally acquiring an electronic communication and the government's burden.

This singular and unprecedented interpretation of the electronic communications statute would apply criminal liability to any acquisition of any electronic communication, without any limitation before a trial. It would invariably make it a presumptive crime to listen to podcasts, and music, watch YouTube videos, TikToks, and other forms of "aural" communications. It would subject those who watch videos, stream content, and view social media to be searched, have their computers and phones seized, to be arrested, indicted, and tried until they can prove that they obtained this content from a server that was configured to be "readily accessible." If interpreted this way, the statute unconstitutionally infringes on the First Amendment rights of all people on its

2

face and is unconstitutional as applied against Mr. Burke because it prohibits and chills a wide swath of protected activity.

This interpretation would undo what the Eleventh Circuit did in *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) where it noted in a civil case that proof that the electronic communication was not "readily accessible to the general public" was an "element" of the offense, *even where the complaint alleged that the defendant did not have authorization* to access the offending content. ("Snow alleged that [defendants] accessed his website's electronic bulletin board without authorization.") Id. at 1316. To violate the statute, the Eleventh Circuit noted, the test was not one of "permission" or "authorization" (like the issue of "consent" in *United States v. McCann*, 465 F.2d 147 (5th Cir. 1972)) but rather the objective configuration of the server delivering the content, stating:

> The legislative history and the statutory structure clearly show that Congress did not intend to criminalize or create civil liability for acts of individuals who "intercept" or "access" communications that are otherwise readily accessible by the general public. … Through the World Wide Web, individuals can easily and readily access websites hosted throughout the world. Given the Web's ubiquitous and public nature, it becomes increasingly important in cases concerning electronic communications available through the Web for a plaintiff to demonstrate that those communications are not readily accessible. If by simply clicking a hypertext link, after ignoring an express warning, on an otherwise publicly accessible webpage, one is liable under the SCA, then the floodgates of litigation would open and the merely curious would be prosecuted. We find no intent by Congress to so permit. Thus, the requirement that the electronic communication not be readily accessible by the general public is material and essential to recovery under the SCA.

The finding that *Snow* mandated both an allegation and proof that the communication was not readily accessible - at least in the civil context - is supported by how other courts have interpreted the holding.  In *Davis v. HDR Inc.*, 606 F. Supp. 3d 898, 903 (D. Ariz. 2022) the court observed:

> Plaintiff argues that whether posts in the Groups were readily accessible to the public—and whether they are therefore private communications protected under the ECPA—is a factual dispute that must be construed in Plaintiff's favor at this motion-to-dismiss stage. (Doc. 13 at 8). The Court does not agree. *Snow* clearly holds that the readily accessible issue concerns a "material and essential" element of an ECPA claim that must be sufficiently pleaded to in the complaint. *Snow*, 450 F.3d at 1321. This Court agrees with the Eleventh Circuit's reasoning and sees no reason to find differently. Moreover, this Court is unaware of—and Plaintiff has not shown—any authority suggesting that the readily accessible requirement is a factual issue.

*Accord, Stirling Int'l Realty, Inc. v. Soderstrom*, No. 6:14-CV-1109-ORL-40, 2015 WL 2354803, at *5 (M.D. Fla. May 15, 2015)("not all unauthorized access to private electronic communications violates the SCA."). There is no reason to believe that what is an essential element to be plead and proven to establish civil liability is an affirmative defense under the same statute when it comes to establishing criminal liability. The wiretap statute **cannot be constitutionally reinterpreted to make it a strict liability offense** that punishes anyone who obtains the contents of communications. The government attempts to do this by redefining communications as simultaneously wire, oral, AND electronic, and by omitting or eliminating the critical element that makes obtaining

communications a crime. It is inconsistent with the language and purpose of the wiretap law and the intent of Congress; the omission of that element makes the criminal charge insufficient as a matter of law, and it does not pass constitutional muster. The wiretap law is a privacy statute, and if a communication is public (or publicly accessible) it is not private and simply not covered by the statute.

## I.    The Wiretap Statute and ECPA Protect Only Certain Private Communications

In 1968, after the Supreme Court's ruling in *Katz v. United States,* 389 U.S. 347 (1967), Congress passed Title III of the Omnibus Crime Control and Safe Streets Act "to protect effectively the privacy of wire and oral communications" while allowing limited surveillance for law enforcement purposes to protect the privacy of certain communications. S. Rep. No. 90-1097, at 66 (1968), as reprinted in 1968 U.S.C.C.A.N. 2112, 2153. *Gelbard v. United States*, 408 U.S. 41 (1972); *Bartnicki v. Vopper*, 532 U.S. 514 (2001); *United States v. Vest,* 813 F.2d 477, 482 (11th Cir. 1987)(Title III's overarching goal was to "protect the privacy of communications"); *Adams v. Lankford*, 788 F.2d 1493, 1497 (11th Cir. 1986)("protecting the privacy of wire and oral communications" was a "core concern" of the statute). Congress distinguished between face-to-face (oral) communications, phone calls (wire), and broadcast communications in terms of privacy concerns, and later added a distinct and mutually exclusive category of

electronic communications which were protected only if they were not "readily accessible to the general public."

### A.    Oral Communications

Oral communications were protected only if they met the test established by *Katz* - that they were uttered with a subjective expectation of privacy that was objectively reasonable - in short, they were private.    This definition was embedded in the statute.  18 USC 2510(1).

### B.    Radio and TV

For radio and television communications, rather than focusing on the privacy expectations of the parties, Congress focused on how the communications were acquired - if acquired from a source that was readily accessible to the public, the statute did not apply. Section 2511(2)(g)(ii) specifically excludes "...the interception of any radio communication which is transmitted ... by any station for the use of the general public." This includes AM/FM radio, TV broadcasts, and other over-the-air content. As the House Judiciary Committee noted:

> "The bill does not prohibit the monitoring of radio transmissions that are publicly accessible—such as conventional television or radio programming—even if those signals are carried in part over wires." (H.R. Rep. No. 90-972, at 108 (1968))

The statute also provides in relevant part that intercepting radio communications which are "readily accessible to the general public" is not an

offense under the statute, defining the term with respect to a radio communication, to mean "that such communication is not ... (A) scrambled or encrypted." 18 U.S.C. § 2510(16). An unencrypted radio communication is, therefore, "readily accessible to the general public." In short, intercepting an unencrypted radio communication does not give rise to liability under the Wiretap Act because of the combination of the § 2511(2)(g)(i) exemption and the § 2510(16) definition." *Joffe v. Google, Inc.*, 746 F.3d 920, 924 (9th Cir. 2013)

## C.    Telephone Calls ("Wire Communications")

Wire communications - which in 1968 were almost exclusively phone calls - were assumed to be private and protected. The "interception ... of wire communications is forbidden regardless of the speaker's expectation of privacy." *Briggs v. Am. Air Filter Co.*, 630 F.2d 414, 417 & n.4 (5th Cir. 1980)." *United States v. Ortiz-Lopez*, 651 F. Supp. 3d 855, 860 (W.D. Tex. 2023). See, *United States v. Tsurkan*, 753 F. App'x 768, 770 (11th Cir. 2018) (per curiam) ("The protection of telephone conversations from interception is the primary objective of this legislation." Id., citing, S. Rep. No. 90-1097, at 2153." As the Senate Judiciary Committee explained:

> "The term 'wire communication' is intended to encompass voice communications transmitted through a wire-based system—such as the national telephone system—*as these are generally expected to be private.*" (S. Rep. No. 90-1097, at 90 (1968))(emphasis added)

As Sen. McClellan noted in the debate over Title III, "[t]elephone communications... are intended by the parties to be private and not to be overheard by strangers" (114 Cong. Rec. 14694 (1968)).   Put simply, Congress intended "wire communications" to mean phone calls and not communications that originate on the Internet.

### D.    Electronic Communications

Later, when Congress enacted the ECPA in 1986, it extended Title III's protections to "protect the privacy of users of advanced electronic communications systems from unauthorized and surreptitious interception" H.R. Rep. No. 99-647, at 18 (1986).  *Accord, Trump v. Clinton,* 626 F. Supp. 3d 1264, 1317 (S.D. Fla. 2022)(concerning the related Stored Communications Act noting "it would appear difficult to maintain an SCA claim based on public internet data. [citing] *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200 (2022) ("Congress wanted to protect electronic communications that are configured to be private." (citation omitted)). "Electronic communications were protected unless they were on a server that was "configured to be readily accessible to the general public", a phrase which was intended to create an objective standard of design to determine whether a communication deserved privacy protection, underscoring that communications not so accessible remained protected (S. Rep. No. 99-541, at 18 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555, 3572).  *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006).  As the Senate report explained, "[n]othing in this

Act is intended to restrict the legitimate acquisition of communications *made publicly available* or broadcast to the general public." See S. Rep. No. 99-541, at 19 (1986)(emphasis added).  The test is an objective test about how the network is configured - not whether the party to the communication or the owner of the server intended the communication to be public, or consented to its acquisition, clearly distinguishing it from *McCann.  Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 875 (9th Cir. 2002) ("The question is not... whether <u>the networks</u> are 'readily accessible to the general public,' but instead whether the network is configured in such a way so that the electronic <u>communications sent over the network</u> are readily accessible.");  *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 892 (N.D. Ill. 2012) ("[T]he question is whether the network is configured to allow access by the general public... not whether the individual communications are, in fact, accessed by the public.");  *Live Face on Web, LLC v. Tweople, Inc.*, No. 6:14-CV-44-ORL-22TBS, 2014 WL 12611359, at *3 (M.D. Fla. Sept. 29, 2014) (The [Stored Communications Act] does not provide a cause of action for 'acts of individuals who intercept or access communications that are otherwise readily accessible by the general public.'")

Indeed, the government has repeatedly relied on this principle when it accesses *without a warrant* any information from Peer-to-Peer services that have been configured so that information is "readily accessible to the general public," relying on the legal principle that it is irrelevant whether the party knew that the

information was made accessible, or whether they wanted it to be accessible. See, *United States v. Norman*, 448 F. App'x 895, 897 (11th Cir. 2011)(accessing files that were "readily accessible" even if law enforcement used "unique" software that was not available to the general public); *Read v. United States,* Case No. 2:17-cv-322-FtM-38MRM, Case No: 2:15-cr-6-FtM-38MRM (M.D. Fl., May 21, 2018)("Government states that a warrant was not required to search Read's computer because he did not have an objectively reasonable expectation of privacy in his peer-to-peer shared computer files"); *United States v. Thomas*, 548 F. Supp. 3d 1212, 1218 (MD Fl., 2021)("the Government points out that no P2P user has a reasonable expectation of privacy in either the files made available to other P2P users or the IP address of the device making them available."); *United States v. Ganoe*, 538 F. 3d 1117, 1119 (9th Cir. 2008)(Defendant "knew or should have known that the folder into which he downloaded files was accessible to others on the peer-to-peer network" and therefore "lacked an objectively reasonable expectation of privacy in those files."); *United States v. Borowy*, 595 F. 3d 1045, 1048 (9th Cir., 2010)(no expectation of privacy despite the fact that P2P user "simply did not know that others would be able to access files stored on his own computer" and that, although Defendant intended to render the files private, his "technical savvy" failed him.."); United States v. Johnsen, No. CR2101118001TUCJCHJR, 2023 WL 5846709, at *2 (D. Ariz. July 11, 2023), report and recommendation adopted sub nom. United States v. Johnson, No.

CR2101118001TUCJCHJR, 2023 WL 5348751 (D. Ariz. Aug. 21, 2023 (government "argues that since Defendant has no reasonable expectation of privacy in the files he shared over eMule, 18 U.S.C. 2511 is inapplicable."); Electronic data that is exposed to the public - voluntarily or not, knowingly or not, intentionally or not, is simply not covered by the wiretap statute.  Courts have consistently held that no consent, permission, warrant, or other authority is required to lawfully access or publish it because it is publicly accessible.

## II.    An Individual Communication Cannot Simultaneously Be "Oral, Wire, and Electronic"; They Must Be One or Another

The language, structure, history, and purpose of the statute invariably lead to two conclusions: first, that the statute only protects private communications that are not readily accessible to the public; second, that a single communication cannot simultaneously be what the government alleges - an oral, wire and electronic communication.  While this court notes that where a statute specifies multiple "alternative ways in which an offense may be committed," the indictment may allege the multiple ways in the conjunctive, by using the word "and." However, at oral argument on May 6, 2025, the government clarified <u>that this is not what they are doing</u>.  The government now asserts that the audio (voice) portions of the downloaded communications are "wire" communications and the non-aural portions (video and metadata) are "electronic" communications. Yet, as a matter of law, these different communications (wire

and electronic) are subject to different rules on suppression, privacy, elements, and potentially affirmative defenses. It is simply not possible that the communications are all things at once because 18 U.S.C. § 2510(12) specifically defines 'electronic communication' to include any transfer of signs, signals, writing, images, sounds, or data transmitted by electromagnetic systems, but expressly **excludes** wire and oral communications. See 18 U.S.C. § 2510(12)(A). A communication containing "sounds" transmitted electronically cannot be both an electronic and wire communication according to the clear proscription of the statute. See, e.g., *United States v. Serna*, No. 5:22-CR-01194-01, 2024 WL 1902759, at *8 (S.D. Tex. Jan. 31, 2024)(suggesting mixed communications are subject to suppression under 18 USC 2515 as wire communications). For that reason, Counts 8, 9, 10, 11, 12, 13, and 14 of the indictment are defective and must be dismissed.

### III.    The Wiretap Statute, As Applied, Unconstitutionally Infringes Freedom of Speech

"An as-applied challenge contends that the law is unconstitutional as applied to the challenger's particular speech activity, even though the law may be capable of valid application to others." *Wisconsin Right to Life, Inc. v. FEC,* 546 U.S. 410, 411–12 (2006) (per curiam)). Here, Mr. Burke's newsroom was searched and seized, his files taken and searched, he was arrested and is now facing trial solely on evidence that he downloaded files from the Internet without any

allegation that these files were private or not configured to be readily accessible.

A statute that, as the government suggests,  flat-out prohibits the acquisition of

the aural portion of an Internet-accessible communication, or one which similarly

prohibits the acquisition of electronic communications subject to the defendant's

offer of proof that the communication was readily accessible, violates his rights

as a journalist and a citizen to the protection of expression guaranteed under the

First Amendment. See, *Harrell v. The Florida Bar*, 608 F.3d 1241, 1253–54 (11th Cir.

2010) (holding that a statute may be unconstitutional as applied "where it

impermissibly infringes upon a party's First Amendment rights in the

circumstances of a particular case"). "When the Government restricts speech, the

Government bears the burden of proving the constitutionality of its actions."

*United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 813 (2000).

The wiretap statute cannot permissibly be read as the government

suggests, nor can it be applied this way to Mr. Burke. The statute is both vague

and overbroad in violation of the First Amendment of the U.S. Constitution. *HM*

*Florida-Ori v. Governor of Florida,* Dkt. No. 23-12160, *slip op.* at 11 (11th Cir., May

13, 2025). It is vague because it does not, as interpreted by the Court, clearly

define the elements that must be proven to establish the crime.  It is overbroad

because it permits persons to be prosecuted merely for accessing and disclosing

information that is otherwise publicly accessible. Burke's concerns that the

statute will be enforced to prosecute the "merely curious" who click on a web

link and obtain data is neither hypothetical nor potential.  That is precisely why he is being prosecuted.   He has standing to challenge the statute as applied to him because the statute, on its face, is the basis for his prosecution and would prohibit his future activities as a journalist to find and report on information he finds online. *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973)("Litigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."). *Accord*,  *Virginia v. Hicks,* 539 U.S. 113 (2003)  While the wiretap statute itself is "content neutral," its vagueness and overbreadth as construed permits the government to "pick and choose" which downloads or acquisitions of all publicly accessible information it chooses to suppress through prosecution, and which it chooses to permit.  *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997)(even though the CDA was content neutral, its breadth and vagueness chilled speech based on content); *Dombrowski v. Pfister*, 380 U.S. 479 (1965) (overbroad statutes chill protected speech by permitting "bad faith" enforcement). This is chilling the rights of all consumers of any electronic communications, as well as Mr. Burke, and is particularly problematic where, as here, the "speech" was related to newsworthy content of public interest.

As the Eleventh Circuit noted most recently on May 13, 2025, "The Constitution demands specificity when the state restricts speech. Requiring clarity in speech regulations shields us from the whims of government censors." *HM Florida-Ori v. Governor of Florida*, Dkt. No. 23-12160 (11th Cir., May 13, 2025)(*slip op.* at 1). Here, the government is applying its interpretation of the wiretap statute not only to chill but to punish Mr. Burke's acquisition of and publication of the contents of communications - irrespective of whether or not these communications were readily accessible to the general public. It does so in two ways - first, by redefining electronic communications as "wire" communications (and therefore attempting to eliminate the element of public accessibility,) and second by asserting that the element is merely a defense that need not be demonstrated by the government or charged in the indictment.

As applied to Mr. Burke in this case, it is unconstitutional. Publication of truthful information about a matter of public significance is protected by the First Amendment. *Florida Star v. B.J.F.*, 491 U.S. 524, 534–35 (1989); *Bartnicki v. Vopper*, 532 U.S. 514, 527–28 (2001)). A statute that does not meaningfully distinguish between invasions of privacy and permitted acquisitions of public speech, and which fails to exempt the press or good-faith journalists, risks invalidation under this standard and acts as "a real and substantial deterrent to legitimate expression." See *Harrell v. Florida Bar*, 608 F.3d 1241, 1259 (11th Cir. 2010). "If the First Amendment means anything, it means that a State has no business telling a

15

man, sitting alone in his own house, what books he may read or what films he may watch." *Stanley v. Georgia,* 394 U.S. 557, 565 (1969); *Lamont v. Postmaster General*, 381 U.S. 301 (1965); Reno v. ACLU, 521 U.S. 844, 870 (1997); *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 255 (2002); *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020). Threatening to prosecute journalists or others for merely acquiring the contents of publicly accessible communications, without any requirement that they be obtained unlawfully or from a restricted source impedes and infringes this right and "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens,* 559 U.S. 460, 473 (2010); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

The constitutional problem can be avoided by simply acknowledging that not all oral, wire, or electronic communications are covered by the statute, and that to be consistent with due process the government must allege and prove that the interception was of a private oral communication, or a protected wire communication, or an electronic communication that was not otherwise accessible. See, Defendant's Motion to Dismiss on Grounds of Duplicity. Doc. 97

When a statute is susceptible to multiple plausible interpretations, a court must adopt the interpretation that does not raise constitutional doubts—even if that interpretation is not the most natural reading of the text. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568

(1988). *Accord, Crowell v. Benson*, 285 U.S. 22 (1932); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288 (1936) (Brandeis, J., concurring). *See also,  United States v. Hasson*, 26 F.4th 610 (11th Cir. 2022)( "We construe statutes to avoid constitutional questions if a reasonable alternative interpretation is available."); *Doe v. Miami-Dade County*, 846 F.3d 1180, 1184 (11th Cir. 2017), the principle of constitutional avoidance "is strongest where the alternative interpretation avoids intrusion on fundamental constitutional rights."

**IV. Excusing the Government From Proving Critical Elements of the Offense Violates the Due Process Clause of the Fifth Amendment and the Right of Fair Trial Under the Sixth Amendment**

The Due Process Clause requires that the prosecution prove every element of a crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970). A statute violates this requirement if it relieves the government of proving an essential element by requiring the defendant to disprove it, especially when the fact in question is central to culpability.  As noted above, removing "not readily accessible" from the elements of the offense renders the "crime" a nullity - it prescribes the acquisition of **all** electronic communications. Applying *Winship*, the government must prove some element of criminality and this indictment fails in that regard.  It also violates the Sixth Amendment's guarantee that an accused shall "be informed of the nature and cause of the accusation." Where, as here, the statutory structure (or judicial interpretation of it) allows the government to

presume an element of the offense—such as the private nature of a communication—and shifts to the defendant the burden of proving that the communication was public, the statute impermissibly erodes this fundamental protection. "The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. *See id.; see also Patterson v. New York*, 432 U.S. 197, 215 (1977); *Hall v. Kelso*, 892 F.2d 1541, 1546 (11th Cir.1990)." *United States v. Deleveaux,* 205 F.3d 1292, 1298 (11th Cir. 2000).The Eleventh Circuit has echoed this in *United States v. McQueen,* 727 F.3d 1144, 1155 (11th Cir. 2013), noting that "the government must prove each element of a charged offense beyond a reasonable doubt," and that ambiguities or omissions in the indictment that hinder the defendant's ability to prepare a defense or avoid future jeopardy violate both the Sixth and Fifth Amendments. See also *United States v. Bobo,* 344 F.3d 1076, 1083 (11th Cir. 2003) (holding that constructive amendments or vague charges that do not clearly delineate the theory of the prosecution "impermissibly broaden the possible bases for conviction" and violate the Sixth Amendment). Thus, any statute or charge that leaves the defendant guessing at the applicable theory—or compels the defendant to prove an exculpatory element like public accessibility—undermines the Sixth Amendment's core guarantees of notice, clarity, and the adversarial burden of proof.

## V. Shifting the Burden of Proving That the Communications Were Not "Readily Accessible to the General Public" Violates the Fifth Amendment

Making the defendant prove that he had a right to acquire electronic communications - or "permission" to obtain information, rather than making the government prove a lack of permission, and making the defendant prove the configuration of the source from which he acquired the communications, shifts the burden of proof to the defendant in violation of the Fifth Amendment. *See, e.g., Sandstrom v. Montana*, 442 U.S. 510, 524 (1979)(burden-shifting presumptions in criminal statutes violate due process); *Mullaney v. Wilbur*, 421 U.S. 684, 703 (1975), (prosecution must bear the burden of disproving justification). Here, requiring the defendant to testify or to offer testimony proving StreamCo.Net had configured its servers so that the communications were "readily accessible to the general public" risks compelling testimony that would violate the Fifth Amendment's Self-Incrimination Clause. See *Griffin v. California,* 380 U.S. 609, 615 (1965) The Eleventh Circuit has repeatedly affirmed that due process is violated when a criminal statute requires the defendant to negate an element that distinguishes innocent from criminal conduct. In *United States v. Ruiz*, 253 F.3d 634, 636 (11th Cir. 2001), the court held that "a statute that criminalizes otherwise innocent conduct must clearly delineate the line between permissible and prohibited conduct and cannot constitutionally require the defendant to prove facts that exculpate him." *Accord, United States v. Gray*, 751 F.2d 733, 735 (5th Cir.

19

1985)("it is impermissible to require a defendant to prove a negative essential to innocence."); *United States v. Green*, 873 F.3d 846 (11th Cir. 2017)(where a statutory exception negates criminal liability, the government must prove the exception does not apply).

The Supreme Court has drawn a critical distinction between true affirmative defenses—such as insanity, duress, or entrapment—and elements of the crime. While the burden may be constitutionally placed on defendants to prove affirmative defenses, that is only permissible when this is a true "affirmative defense" - where the government has proven a crime, and the defense wishes to present evidence to negate some element of the crime proven. *See Patterson v. New York,* 432 U.S. 197, 210 (1977). The "readily accessible to the general public" clause is not such a defense—without this, there is no crime, and the statute punishes constitutionally protected communication.

## VI.    The Court Cannot Redefine the Statutory Term "Intercept"

Because the statutory definition of "intercept" under 18 USC 2510(4) is so broad and includes virtually any "acquisition" of communications, in an effort to make the statute survive constitutional scrutiny, the government suggested at oral argument that the Court could redefine the term "intercept" rather than compel the government to allege and prove that the communication was not "readily accessible to the public."    The Eleventh Circuit has not attempted to define the term "acquisition" as used in 18 USC 2510(4). The Ninth Circuit has

construed the term according to its ordinary meaning as the "act of acquiring, or coming into possession of [.]" United States v. Smith, 155 F.3d 1051, 1055 n.7 (9th Cir. 1998). "Such acquisition occurs when the contents of a wire communication are captured or redirected in any way." Noel v. Hall, 568 F.3d 743, 749 (9th Cir. 2009) (internal citation and quotation marks omitted). In re Meta Pixel Healthcare Litig., 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022).

The Court may not assume the role of Congress and "rewrite" the statute, nor assign meanings different than that which Congress chose. When Congress has explicitly defined a term within a statute, courts are not free to substitute their own understanding of the word's "ordinary meaning," nor may they import definitions from dictionaries or other external sources. The Supreme Court has repeatedly emphasized that the "starting point in every case involving the construction of a statute is the language itself," and when that language includes a definition, that is "dispositive." Here, the statute clearly defines the term, explicitly stating in 18 USC 2510(4) that "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  The statute, as interpreted, prohibits any defined "acquisition"

As the Court explained in *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000), "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." See also *Meese v. Keene*, 481

U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term."). *Accord United States v. Veal*, 153 F.3d 1233, 1246 (11th Cir. 1998), ("Where Congress has specifically defined a term, courts are not at liberty to ignore the definition and rely on their own or a dictionary's understanding of the term.")

### VII.    Dismissal of the Charges Is the Only Appropriate Remedy

Counts 8, 9, 10, 11, 12, 13, and 14 of the indictment are insufficient as well as vague and duplicitous.  By charging in each count that the communication is simultaneously oral, wire, AND electronic, it fails to give notice of what the government intends to prove and what the relevant evidence and burden of proof will be. Second, and more significantly, the indictment fails to allege - as suggested by the statute (its purpose, language and intent) and by *Snow* - that the communications were acquired from a server that was configured so that the specific communications acquired were "not readily accessible to the general public."  This indictment contains no such allegation.  The government suggests that the crime is *merely acquiring a communication.*

This is not, and cannot be a crime.

The government suggests that it need not assert or prove that the communication was not on a server that was "readily accessible," but without such an assertion, the counts in the indictment fail to state an offense and must be dismissed under  F. R. Crim. P. 12(b)(3)(B)(v).

Under *Winship*, *supra*, these counts do not "allege facts" sufficient to make out the critical element that the communications were "intercepted" (acquired) from a server that was configured so that they were not "readily accessible to the general public" and indeed, the indictment suggests that they were, in fact, obtained via the "preview function" of the StreamCo-Net server, which was "accessible" simply by putting in the correct "uniform resource locator." (Indictment, Doc. 1, Par. 9).

We see no other "quick fix." "When an indictment is filed with the court no change can be made in the body of the instrument by order of the court, or by the prosecuting attorney, without resubmission of the case to the grand jury." *Ex parte Bain*, 121 U.S. 1 (1887), *Accord*, *Russell v. United States*, 369 U.S. 749 (1962)("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure."); *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995)(an amendment occurs when the charging terms of an indictment are altered, and such changes require grand jury resubmission.); *United States v. Keller*, 916 F.2d 628 (11th Cir. 1990) (broadening the possible bases for conviction beyond what was presented to the grand jury constitutes an impermissible amendment.)

Counts 8, 9, 10, 11, 12, 13, and 14 of the indictment are therefore fatally defective, fail to charge a crime, and as construed by this Court to eliminate the element of "not readily accessible to the general public" are unconstitutional, and must be dismissed.  An indictment cannot simply charge that a person obtained a communication over the Internet, or that they downloaded a file that contained the human voice --  that is what this indictment does.

Respectfully submitted,

s/Michael P. Maddux
Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
Fax: (813) 253-2553
Email: mmaddux@madduxattorneys.com
        ctonski@madduxattorneys.com

s/Mark D. Rasch
Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
Admitted Pro hac vice

COUNSEL FOR TIMOTHY BURKE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **13th day of May, 2025**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

 _s/Michael P. Maddux_

Michael P. Maddux, Esquire