UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE

_____/

**DEFENDANT'S REPLACEMENT MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
COUNTS 8, 9, 10, 11, 12, 13, and 14**

At the hearing of May 6, 2025, the government revealed its theory of this prosecution–that is that the wiretap statute prohibits the interception (acquisition of the contents - 18 USC 2510(4)) of any communication that contains the human voice (as a "wire communication" - 18 USC 2510(1) and (18)) unless the defendant can establish that "one of the parties to the communication has given prior consent to such interception." (18 USC 2511(2)(c) or (d)). To the extent that the communication does not contain the human voice, the government contends that the defendant may show, as an affirmative defense, that the communication was acquired from an electronic communication system configured so that such electronic communication is readily accessible to the general public. 18 USC 2511(2)(g)(i). This motion will primarily address the Court's questions raised at

1

the hearing largely focused on the First Amendment arguments of the defendant's Motion to Dismiss.

**Introduction**

If a file, a stream, a movie, or other communication contains the human voice (and is viewed as a wire communication), the statute makes it a felony to acquire its contents - even from a public or publicly accessible source. Any interception of a "wire communication" without the consent of a party is prohibited. The statute can be applied to prohibit obtaining even publicly available information and separately, publishing that information, if consent is not obtained. In the context of downloading Internet content containing human voice content, that is what makes the statute constitutionally infirm.

While the statute permits access to such content with the prior consent of one of the parties to the communication, the statute remains impermissibly overbroad. A casual Internet web surfer cannot know whether the content they view, stream, or listen to was posted or streamed with the "prior consent" of one of the parties - all they would know is that the stream is available online. As noted, *infra*, Congress intended to allow persons to acquire content if that content is on a server that is configured to be readily accessible to the general public as to (18 USC 2511(2)(g)(i)(electronic communications) and 18 USC 2510 (16) (radio communications). This commonsense limitation on prosecution to only circumstances where the government can show that the communication was

obtained from a non-public source - would save the statute from overbreadth - if it can be applied. However, the "wire communications" provision which the government asserts is applicable here, has no such statutory limiting principle.

By charging that the communications are simultaneously "wire, oral and electronic" communications, the government cannot at trial - without re-presentation to the grand jury - charge that these communications are "electronic" only to avoid insult to the First Amendment. That change would not merely "narrow" the criminal charges, it would fundamentally alter their character. Indeed, even this may not save the Indictment because at least one court has suggested that if the communication in any way contains the contents of a human voice, it is a "wire" and is not an "electronic" communication. *United States v. Serna*, No. 5:22-CR-01194-01, 2024 WL 1902759, at *8 (S.D. Tex. Jan. 31, 2024)(rejecting DOJ's argument that tablet video calls from prison were not subject to statutory suppression rules of 18 USC 2515 because they were "electronic" not "wire" communications).

But, here, the grand jury has charged that each live stream allegedly intercepted is simultaneously "oral, wire *and* electronic" communication. No amendment of the indictment by the government or the Court to elect a singular form of communication now is permitted. See *Russell v. United States,* 369 U.S. 749, 770, 82 S. Ct. 1038, 1050, 8 L. Ed. 2d 240 (1962)(noting the "settled rule in the federal courts that an indictment may not be amended except by resubmission to

3

the grand jury, unless the change is merely a matter of form."); *Compare.*, *United States v. Miller*, 471 U.S. 130, 145, 105 S. Ct. 1811, 1820, 85 L. Ed. 2d 99 (1985)(restricting holding to amendments that expand the scope of charges).

Whether the Court finds that "lack of consent" is an element of an interception of a "wire" communication, or finds that it is an affirmative defense, the statute as applied to Internet communications restricts or restrains a wide swath of First Amendment-protected activities - creating the potential for criminal liability to anyone who merely accesses a streaming TikTok or YouTube video, a live stream, or any content containing the human voice, without first procuring a party's consent. It is almost unimaginably broad in its reach, and its prohibition.  It would require Internet users not to determine whether a file, folder, stream or communication is public or publicly accessible, but instead whether a party to that communication has consented to the download.  The wiretap statute, as applied, would permit the government to selectively investigate and prosecute individuals for accessing and publishing freely available information online. As applied, the statute would chill protected speech, and discourage activities protected under the First Amendment. Although content and viewpoint neutral, the breadth and scope of such a statute is unimaginable - and would require any person to establish not just accessibility, but actual consent (permission) to view and listen to each and every bit of

information online. The indictment counts triggering this overbreadth should be dismissed. (Counts 8, 9, 10, 11, 12, 13, and 14)

**I.   To The Extent the Wiretap Statute Permits Prosecution For Downloading Publicly Accessible Information Because it Contains the Human Voice, It is Unconstitutionally Overbroad And Prohibits First Amendment Protected Activities**

**A.   Journalist Tim Burke Has Standing to Mount Both an As-Applied and Facial Challenge to the Statute**

As a criminal defendant and journalist whose newsroom was searched and seized, and who has been indicted based on the government's theory of the application of the wiretap statute, Mr. Burke has suffered a "real and concrete" injury in fact and has standing to challenge the scope of the application of the statute to him. *Tinsley Media, LLC v. Pickens Cnty.*, 203 F. App'x 268, 272 (11th Cir. 2006). To determine whether a challenge to the constitutionality of a law is facial or as-applied, the label of the claim is not what matters; rather, the important point for identifying the nature of a challenge is whether the plaintiff's claim and the relief that would follow reach beyond the particular circumstances of the plaintiff. *Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025)(headnote 6).

**B.   The Statute is Unconstitutional As Applied to Journalist Burke**

As a journalist whose future data collection and reporting will be impacted by the government's interpretation of the wiretap statute to prohibit the acquisition of information from publicly accessible servers, in a way likely to chill future investigative journalism by all journalists, he has standing to

5

challenge the application of the statute as applied to himself. "A statute or a rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." *Boddie v. Conn.*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). We stress here, that we do not contend that there are no applications of the wiretap statute that are not constitutional - as applied to the non-consensual interception of private telephone calls which are not configured to be readily accessible to the general public, the statute achieves a legitimate purpose, and does not "chill" protected speech. But as interpreted here to prohibit the download of any content containing the human voice - even from publicly accessible places, it is unconstitutional.

### C. The Statute is Facially Unconstitutional And Burke Has Standing to Challenge the Statute on Its Face

In addition to threatening Burke's own protected activity, the wiretap statute *as interpreted here* "threatens others not before the court"—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)(unconstitutional parts of a statute can be stricken while the non-offending parts are held in tact), because there is a realistic danger that the

statute itself will significantly compromise recognized First Amendment protections of the non-parties. *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S. Ct. 2568, 2572, 96 L. Ed. 2d 500 (1987)(airport terminal band on First Amendment speech not fairly subject to a limiting construction). "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *United States v. Hansen*, 599 U.S. 762, 770, 143 S. Ct. 1932, 1939, 216 L. Ed. 2d 692 (2023).

Here, the unconstitutional application is real and concrete, and if applied, prohibits not only the acquisition of private communications, but a broad swath of common internet communications. Burke, therefore, has standing to raise his own claims "as applied" and because the application of the statute rests in the "unbridled discretion" of prosecutors, to assert the claims of those of other journalists and researchers in a facial challenge. *See, e.g., City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 108 S. Ct. 2138, 2144, 100 L. Ed. 2d 771 (1988)(statute requiring permit to put up newsracks was unconstitutional despite facial neutrality because it has a chilling effect on speech and vests "unbridled discretion in a government official over whether to permit or deny expressive activity…") *Id.* 486 U.S. 750, 755, 108 S. Ct. 2138, 2143, 100 L. Ed. 2d 771 (1988).

This case itself illustrates how the government can use the broad interpretation of the wiretap statute to prosecute those who expose to the public

information that others would rather keep secret - even if that information was acquired from a publicly accessible, Internet addressable server.

## II. The Statute As Applied Violates the First Amendment Right of Access to Communications and to Communicate

In *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 122 S. Ct. 1389, 1398, 152 L. Ed. 2d 403 (2002) the court recognized that:

> The First Amendment commands, "Congress shall make no law ... abridging the freedom of speech." The government may violate this mandate in many ways, e.g., *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); *Keller v. State Bar of Cal.*, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), but a law imposing criminal penalties on protected speech is a stark example of speech suppression.

The First Amendment also includes the right of the press to publish truthful and newsworthy content lawfully acquired. If the wiretap statute acts to prohibit such activity, the application of that statute to journalists violates the First Amendment. Statutes that operate in a manner that acts to prohibit or restrict free speech and free expression activities - even if they do so without reference to content or viewpoint - may violate the First Amendment. Most recently in *TikTok Inc. v. Garland*, 145 S. Ct. 57, 66, 220 L. Ed. 2d 319 (2025), the Supreme Court set out a litany of expressive and associational and speech rights guaranteed by the First Amendment, including criticizing laws that "foreclose an entire medium of expression." *Id.*, citing *City of Ladue v. Gilleo*, 512 U.S. 43, 54–58, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). The wiretap statute, as interpreted,

8

prohibits the acquisition of freely accessible information, and chills and criminalizes expressive conduct and speech. This renders it unconstitutional.

"It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom (of speech and press) * * * necessarily protects the right to receive * * *.' …. This right to receive information and ideas, regardless of their social worth,… is fundamental to our free society." *Stanley v. Georgia* 394 U.S. 557, 564 (1969). *See First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 783, 98 S. Ct. 1407, 1419, 55 L. Ed. 2d 707 (1978)("[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw.") Without the ability to download (and later distribute) publicly accessible streaming information from these and other sites, individuals cease to perform these functions. This restricts both speech and association.

### III. The Overbreadth of the Statute Gives Prosecutors Unbridled Discretion Over Whom to Prosecute

Even if the wiretap statute is viewpoint and content-neutral, its overbreadth as applied to expressive activity threatens a host of protected First Amendment protected speech, *Virginia v. Hicks*, 539 U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003), and gives prosecutors "unbridled discretion" over when to prosecute - even based on the nature of the information obtained. "The First Amendment prohibits the vesting of such unbridled discretion in a government

official." *Forsyth County v. Nationalist Movement,* 505 US 123, 133, 120 L.Ed.2d 101,112 S.Ct. 2395 (1992).

Here, the government claims that the statute can be appropriately read to prohibit all acquisitions of communications containing the human voice from any source whatsoever and in any manner whatsoever, irrespective of the privacy rights of the participants. To avoid overbreadth, "[a] narrowly tailored statute "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz,* 487 U.S. 474, 475, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). *See, Vigue v. Shoar*, 494 F. Supp. 3d 1204, 1228 (M.D. Fla. 2020), dismissed, No. 20-14285-V, 2021 WL 11628665 (11th Cir. Sept. 1, 2021)(state statute's general prohibition of charitable solicitation on public rights-of-way was overbroad). Here, the "evil" the wiretap statute was intended to remedy was an invasion of privacy. The statute as applied in Mr. Burke's indictment fully prohibits accessing or sharing public information.

**IV. The Court Cannot Simply Redefine "Intercept" to Save The Indictment**

The statute is overbroad because it prohibits on its face all "interceptions" not just those which are "unlawful"or surreptitious. 18 USC 2510(4) defines the term "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." While a colloquial view of "interception" or "eavesdropping"

or "wiretapping" might imply some of what Justice Black called "listening secretly and sometimes 'snoopily' to conversations and discussions believed to be private by those who engage in them."*Berger v. State of N.Y.*, 388 U.S. 41, 71, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967)  (Black, J. dissenting), the statute's definition speaks for itself.

The government has argued that the Court can save the statute, and thus the Indictment, by adopting a different definition of "intercept" to mean more than the simple acquisition of the contents of a communication, in abrogation of the definition chosen by Congress.  Congress' use of clear definitions makes them virtually conclusive. *Sturgeon v. Frost,* 587 U.S. 28, 56, 139 S.Ct. 1066, 1086, (2019)(defining "land" in the context of the Alaska National Interest Lands Conservation Act (ANILCA)). "This Court will not deviate from an express statutory definition merely because it 'varies from the term's ordinary meaning.'" *Department of Agriculture Rural Development Rural Housing Service v. Kirtz,* 601 U.S. 42, 59, 144 S.Ct. 457, 217 L.Ed.2d 361 (2024), citing *Digital Realty Tr., Inc. v. Somers,* 583 U.S. 149, 163–64, 138 S. Ct. 767, 778, 200 L. Ed. 2d 15 (2018).  The court will only decline to apply a statutory definition "where doing so would have been "incompatible with ... Congress' regulatory scheme," … or would have "destroy[ed] one of the [statute's] major purposes." *Digital Realty Tr., Inc. v. Somers,* 583 U.S. 149, 163–64, 138 S. Ct. 767, 778, 200 L. Ed. 2d 15 (2018)(internal citations omitted). Here, the problem is not that the definition of "intercept" does

11

not achieve the purpose of the regulation - it is that it also extends the scope of the statute to prohibit protected First Amendment activities.

Nor can the court rely on governmental promises that it will not, in the future, apply the statute as it does here - to the download of information freely available online. As the Court noted in *United States v. Stevens,* 559 U.S. 460, 462, 130 S. Ct. 1577, 1581, 176 L. Ed. 2d 435 (2010), the "Court will not uphold an unconstitutional statute merely because the Government promises to use it responsibly. Nor can the Court construe this statutory language to avoid constitutional doubt." A limiting construction can be imposed only if the statute "is 'readily susceptible' to such a construction." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 884, 117 S.Ct. 2329, 138 L.Ed.2d 874.

**V.      The Wiretap Statute May Also Prohibit Acquisition of Wire Communications "In Transmission" Rather Than As They Are Made.**

The breadth of the statutory exclusion on acquiring the contents of a communication containing the human voice is exacerbated by the fact that the statute is not clear whether the "interception" must be "contemporaneous with the *communication*" as suggested in *United States v. Turk*, 526 F.2d 654, 658 (5th Cir. 1976) or contemporaneous with *the transmission* of that communication as suggested by every other case. *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003)   *Steve Jackson Games, Inc. v. Secret Service,* 36 F.3d 457 (5th Cir.1994); *Konop v. Hawaiian Airlines, Inc.*, 236 F.3d 1035, 1043 (9th Cir.), *opinion withdrawn*,

12

262 F.3d 972 (9th Cir. 2001), and superseded, 302 F.3d 868 (9th Cir. 2002)("The law by which such acts of downloading are judged has changed significantly, however, since *Turk* read its contemporaneity requirement into the Wiretap Act."); *United States v. Smith,* 155 F.3d 1051, 1058 (9th Cir. 1998); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 (3d Cir. 2003), as amended (Jan. 20, 2004). The ambiguity is compounded by the fact that the definition of interception of "wire communication" included interception "in storage" - obviating *Turk's* conception that *contemporaneity with the communication* was required, but that term was later removed. (USA Patriot Act § 209, Pub. L. No. 107–56, § 209(1)(A), 115 Stat. 272, 283 (2001)).

The weight of these cases would suggest that a person violates the "wire communication" statute when they "intercept" *even a rebroadcast of a communication containing the human voice,* if that "interception" is while the rebroadcast is "in transmission." The former definition would still be overbroad, covering the acquisition of any live feeds, streams, news, webcams, or similar content. The latter definition would also include *any* transmitted content containing the human voice - movies, songs, TikToks, YouTube videos and the like that are not "live streaming."

## VI. The Statute Cannot Be Saved By Making "Consent" An Element Rather than An Affirmative Defense

At the May 6 hearing, this Cout wondered if *United States v. McCann*, 465 F.2d 147 (5th Cir. 1972), prevented the constitutional challenge raised due to the prior panel precedent rule. This rule declares that a prior panel rulings bind subsequent panels until overruled by another en banc panel or the Supreme Court. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). While the rule applies even if the panel did not have the benefit of specific arguments, *United States v. Moore*, 22 F.4th 1258, 1268 (11th Cir. 2022), the wholesale absence of any constitutional challenge in *McCann* should not foreclose the current challenge.

Next, this Court has held that, under the wiretap statute, the issue of whether or not a party to the communication has "consented" to the interception is an affirmative defense which must be proven at trial. In 1972, when *McCann* was decided, prohibited "wire communications" were only transmitted through a common carrier, and were essentially private telephone calls - usually between two people. The ECPA expanded the scope of the type of communication covered under the statute, because "existing title III applies only to interceptions of communications sent via common carriers" S. REP. 99-541, 12, 1986 U.S.C.C.A.N. 3555, 3556 and noting:

> … a wire communication encompasses the whole of a voice telephone transmission even if part of the transmission is carried by fiber optic cable or by radio—as in the case of cellular telephones and long distance satellite or micowave facilities. <u>The conversion of</u>

14

<u>a voice signal to digital form for purposes of transmission does not render the communication non-wire</u>. The term 'wire communication' includes existing telephone service, and digitized communications to the extent that they contain the human voice at the point of origin, reception, or some point in between. A private telephone system established by a company whose activities affect interstate commerce, would also be covered.

*Id.* At the same time, new technologies have vastly expanded the ways in which persons express themselves by posting, transmitting, downloading, uploading, streaming and otherwise sharing "communications" which contain the human voice. The scope of conduct covered by the statute in 2025 would be unimaginable in 1972 when *McCann* was decided. Indeed, both changes in the statute and the technology have laid bare constitutional concerns to the application of the statute never presented or considered by the *McCann* court. Applying the principle of constitutional avoidance, this Court can and should readdress *McCann* under the circumstances here.

However, even if the statute is reinterpreted to require the government to prove the "non-consensual" acquisition of wire communications, the statute remains overbroad and does not solve the problem. The average Internet user downloading a file, a stream, or a video, would have no way of knowing whether the "party to the communication" did or did not consent to its posting, streaming, or dissemination online. What they do know is whether the stream is readily accessible. If the statute prohibits the "interception" of a live stream of historically created data (say, the interception of the broadcast of the Nixon

15

tapes), the "parties" to that communication cannot consent, and cannot give prior consent, so the "interception" is unlawful.

Under 18 USC 2511(3)(b)(ii), a person or entity providing electronic communication service to the public may divulge the contents of any such communication "with the lawful consent of the originator or any addressee or intended recipient of such communication," but the term "any such communication" likely refers only to "electronic communications" and not "wire communications," and this refers to the right of the provider to publish, not the right of a user to "intercept" or acquire.

The wire communications statute also requires that the "party" not only consent to the interception, but that this "consent" be "prior consent." It is not clear whether this is "prior to the communication" or "prior to the interception."

Additionally, the statute provides that the consent must be "to *such* interception." This could mean that the party must consent individually to each acquisition of the contents of their communication. As the Eleventh Circuit noted in *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983):

> Consent under title III is not to be cavalierly implied. Title III expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place. See *United States v. Harpel*, 493 F.2d 346, 351 (10th Cir.1974). Stiff penalties are provided for its violation. It would thwart this policy if consent could routinely be implied from circumstances. *Jandak v. Village of Brookfield,* 520 F.Supp. 815, 820 (N.D.Ill.1981). Thus, knowledge of the capability of monitoring alone cannot be considered implied consent. *See Campiti v. Walonis*, 611 F.2d 387, 394

(1st Cir.1979); *Crooker v. United States Department of Justice*, 497 F.Supp. 500, 503 (D.Conn.1980) (prisoners' knowledge that calls were routinely monitored did not constitute consent to it).

Unlike oral communications, the wiretap statute prohibits the interception of "wire" communications, by electronic, mechanical or other devices, "regardless of the speaker's expectation of privacy." *Briggs v. Am. Air Filter Co.*, 630 F.2d 414, 417 & n.4 (5th Cir. 1980). *United States v. Ortiz-Lopez*, 651 F. Supp. 3d 855, 860 (W.D. Tex. 2023). Thus, a wide variety of Internet content would be prohibited unless there was actual "consent."

Even stripped of its character as an "affirmative defense" it would be constitutionally unworkable to prohibit the download of publicly accessible information only with the "prior consent" of one of the participants. The statute in light of today's technological practices does not withstand constitutional scrutiny.

Congress did not intend to make the downloading of publicly available information into a crime. The standard is an objective standard based not on the intent of the parties, their consent, their permission, or their expectation of privacy, but based solely on how the server from which the communication was acquired was configured, and placed the burden of proving that the communications were not on a server so configured on the Plaintiff/Government.

17

"The term 'configure' is intended to establish an objective standard of design configuration for determining whether a system receives privacy protection." S. REP. 99-541, 18, 1986 U.S.C.C.A.N. 3555; *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006)(no violation where communications are configured to be readily accessible); *Davis v. HDR Inc.*, 652 F. Supp. 3d 1087, 1089–90 (D. Ariz. 2023), *appeal dismissed*, No. 23-15233, 2023 WL 5367499 (9th Cir. May 10, 2023) (relying on *Snow* to say Plaintiff's post must be configured in some way so as not be readily accessible to the public).

To the extent that these communications are "electronic communications" in any respect, the government, not the journalist, must show that they were "intercepted" "illegally." It cannot be a crime to merely acquire Internet content, and then require the defendant to prove that they did so lawfully. Only after the government shows an "unlawful" acquisition (from a non-public server) should the defendant be forced to prove that the acquisition was "justified" or "permitted." The Due Process Clause requires that the prosecution prove every element of a crime beyond a reasonable doubt. The Sixth Amendment' mandates that the accused "be informed of the nature and cause of the accusation." Criminalizing merely "acquiring the contents" of an electronic communication does not survive First Amendment scrutiny, and punishes anyone who downloads anything. The limiting principle, that the communications be downloaded from a non-public server is what makes the downloading criminal

18

and therefore must be an element of the offense which the government must both plead in the Indictment and prove at trial. Forcing the defendant to prove his innocence violates the most basic principles of the Fifth Amendment.

### VII. Conclusion

The government insists that, if the communication contains the human voice, this legal regime does not apply, and for the purpose of this motion, we assume they are correct. But if they are correct, then the statute - which bars virtually all acquisitions of communications - even those from public sources - is unconstitutional. Counts 8, 9, 10, 11, 12, 13, and 14 of the indictment which relate to both the "interception" and "disclosure" of these communications, must therefore be dismissed.

Respectfully submitted,

*s/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
Fax: (813) 253-2553
Email: mmaddux@madduxattorneys.com

*s/Mark D. Rasch*
Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
Admitted Pro hac vice

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **19th day of May, 2025**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

*s/Michael P. Maddux*
Michael P. Maddux, Esquire