1       **UNITED STATES DISTRICT COURT**
        **MIDDLE DISTRICT OF FLORIDA**
2              **TAMPA DIVISION**

3   UNITED STATES OF AMERICA,

4                      Plaintiff,

5       vs.                    CASE NO. 8:24-cr-68-KKM-TGW
                               May 6, 2025
6                              Tampa, Florida
                               11:00 - 11:57 a.m.
7
    TIMOTHY BURKE,
8
                       Defendant.
9   _____/

10

11

12            **TRANSCRIPT OF MOTION HEARING**
        BEFORE THE HONORABLE KATHRYN K. MIZELLE
13           UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24  Proceedings reported and transcribed by
    computer-aided transcription.
25

                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION

1    **APPEARANCES:**

2

3    For the Government:        JAY TREZEVANT, ESQ.
                                ADAM DUSO, ESQ.
4                               Assistant U.S. Attorneys
                                400 N. Tampa Street, Suite 3200
5                               Tampa, Florida 33602
                                813/274-6000
6

7    For the Defendant:        MICHAEL P. MADDUX, ESQ.
                                Michael P. Maddux, PA
8                               2102 West Cleveland Street
                                Tampa, Florida 33606
9                               813/253-3363

10                              MARK D. RASCH, ESQ.
                                Law Office of Mark D. Rasch
11                              7919 Springer Road
                                Bethesda, Maryland 20817
12                              301/547-6925

13
     Court Reporter:           Howard W. Jones, RDR, RMR, FCRR
14                              801 N. Florida Avenue, Suite 13B
                                Tampa, Florida 33602
15                              813/301-6158

16

17                   *   *   *   *   *   *   *   *   *   *

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**I N D E X**

|                                    | PAGE |
|------------------------------------|------|
| ARGUMENT BY MR. RASCH:             | 7    |
| ARGUMENT BY MR. TREZEVANT:         | 16   |
| RULING OF THE COURT:               | 36   |
| CERTIFICATE OF COURT REPORTER:     | 40   |

* * * * * * * * * *

|   |   |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | **(Court called to order.)** |
| 3 | THE COURT:  Good morning.  We are here in |
| 4 | Case 8:24-cr-68, United States v. Timothy Burke. |
| 5 | Who speaks for the United States? |
| 6 | MR. TREZEVANT:  Good morning, Your Honor.  Jay |
| 7 | Trezevant, Assistant U.S. Attorney, for the United States. |
| 8 | With me is Gina Wetherald, the paralegal who works |
| 9 | with me in these cases.  And Adam Duso, who is also an |
| 10 | Assistant U.S. Attorney. |
| 11 | THE COURT:  Good morning. |
| 12 | All right.  Who speaks for the Defendant? |
| 13 | MR. MADDUX:  Good morning, Your Honor.  Michael |
| 14 | Maddux present with Mr. Burke, who is with me.  And also on |
| 15 | the phone, who will be I expect arguing, is Mr. Rasch.  I |
| 16 | believe he's already on the phone. |
| 17 | THE COURT:  Mr. Rasch, good morning. |
| 18 | MR. RASCH:  Thank you for allowing me to appear |
| 19 | telephonically. |
| 20 | THE COURT:  Yes.  That's fine.  You sound a little |
| 21 | muffled.  Are you speakerphone perhaps? |
| 22 | Mr. Rasch? |
| 23 | MR. RASCH:  I was on the headphones, but I'm |
| 24 | taking off the headphones. |
| 25 | THE COURT:  Just for clarity, for purposes of the |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    court reporter, I think if you could speak directly into the

2    phone and not headphones or the earbuds, I think that might

3    improve the quality.  It could also be my courtroom.

4              MR. RASCH:  I'm off the headphones.  This is

5    directly into the phone.

6              THE COURT:  Okay.  Thank you.

7              Okay.  I had scheduled this -- I realized the

8    government's brief in response to the motion for

9    reconsideration is not yet due, but there's a few things I

10   wanted to discuss with counsel and then I'll give the

11   government, obviously, an opportunity to respond.

12             Of the arguments that have been raised in the

13   first motion to dismiss, the supplemental, and then this

14   motion for reconsideration, I have all along considered this

15   to be the most difficult, which is why I ordered

16   supplemental briefing on the issue.  In particular, how I am

17   to deal with *McCann*, which is still binding Fifth Circuit

18   precedent that applies in the Eleventh Circuit, as well as

19   *Snow*, which is also Eleventh Circuit precedent.

20             As I understand the defendant's argument in this

21   motion, there are certain constitutional contours that were

22   not as clearly raised in the earlier iterations.  For

23   example, I now am hearing due process, Fifth Amendment

24   rights against self-incrimination were raised, other issues,

25   some of which I can't tell if they're actually being raised

1   or trying to provide color, like a major questions doctrine

2   argument.

3          This seems different in kind, at least to some of

4   the arguments that were made earlier, which I thought

5   sounded more in the vein of statutory interpretation as to

6   what is an element and what is a defense per the statute.

7   And then I had to deal with the precedent that has

8   interpreted that statute.

9          So there are a couple things I want to clarify

10  first, from Mr. Burke's perspective, as to the precise

11  nature of the arguments that are raised in the motion for

12  reconsideration.  And then I have several questions I want

13  to pose to the government in terms of its position and how

14  it would like to respond going forward.

15         So, I'm not sure, Mr. Maddux, Mr. Rasch, are you

16  going to handle this?

17         MR. RASCH:  Yes, Your Honor, I will.

18         THE COURT:  Okay.  So can you tell me the precise

19  arguments you are making here?  Is it a due process

20  argument, is it a First Amendment argument, is it a Fifth

21  Amendment argument?  At the very tail end of the motion,

22  there was a Sixth Amendment argument raised, but I have no

23  idea what the Sixth Amendment argument is.  So can you

24  precisely tell me which -- if it's a constitutional concern,

25  which constitutional provision emanates your motion?

1          MR. RASCH:  So, Your Honor, I would say to the

2     extent that the Court's ruling says that the only thing the

3     government has to prove is that Mr. Burke obtained the

4     contents of an electronic communication, period, full stop.

5     And then the burden shifts to Mr. Burke to demonstrate that

6     he did so in a noncriminal manner; in other words, if he

7     acquired them from a server that was configured to be

8     readily accessible to the public.  We have multiple

9     constitutional problems with a statute like that.

10          The first is overbreadth.  The statute is --

11     essentially would criminalize conduct which is protected by

12     the Constitution and is ordinary everyday conduct.  Congress

13     would be without the authority to pass such a statute,

14     because it's overbroad.

15          THE COURT:  You mean --

16          MR. RASCH:  Related to that is a First Amendment--

17          THE COURT:  Mr. Rasch.  Wait.  Mr. Rasch, you have

18     to pause when I ask questions.

19          MR. RASCH:  Sure.

20          THE COURT:  Overbreadth meaning it violates the

21     First Amendment?

22          MR. RASCH:  Correct, more related -- it's

23     overbroad and it violates the First Amendment.

24          THE COURT:  Those are two different.  That's why

25     I'm asking.  What do you mean by overbreadth?

1          MR. RASCH:  Overbreadth -- the overbreadth claim

2     is both a due process claim under the Fifth Amendment, as

3     well as a First Amendment claim.

4          THE COURT:  What case supports an overbreadth due

5     process claim?

6          MR. RASCH:  That it fails to adequately define a

7     criminal offense, whether the activity is protected under

8     the First Amendment or not, that a statute which bans common

9     everyday activity, whether it's First Amendment, Fifth

10    Amendment, or not, violates due process of law.

11         THE COURT:  What case supports that proposition?

12         MR. RASCH:  I would have to -- we have focused

13    primarily on the First Amendment and I would have to give

14    you some cases on that and I can do so shortly.

15         THE COURT:  Okay.  This is why I wanted to have

16    this hearing, because I, like I said from the beginning,

17    think this is the most substantial argument of the many

18    arguments that were raised in the motion to dismiss, which

19    is why I ordered supplemental briefing on it, but the nature

20    of the arguments you're making continues to evolve.  And I

21    want to make sure I am conceptualizing of them correctly so

22    I can adjudicate them correctly and so that the government

23    can have an opportunity to respond to them intelligently.

24         So you're telling me that there is --

25         MR. RASCH:  I understand.

```
 1              THE COURT:  -- there is an overbreadth argument
 2   under due process, even if the conduct has nothing to do
 3   with the First Amendment protection, it's just every day
 4   activity that you think the government under the due process
 5   clause should be barred from criminalizing?
 6              MR. RASCH:  That's correct.  So, for example --
 7              THE COURT:  Okay.  Wait.
 8              MR. RASCH:  -- if the government issues a --
 9              THE COURT:  Okay.  Mr. Rasch?
10              MR. RASCH:  Yes.
11              THE COURT:  Wait for me to ask the question.
12   Okay?
13              I have a hypo for you, because I wasn't sure if
14   that's the argument.  So tell me -- tell me the
15   constitutional problem with this example:  The government or
16   Congress writes a statute that says it shall be unlawful to
17   cross the street.
18              Exception, in a different part of the statute, is
19   unless you have a white walk symbol.
20              Is that unconstitutional?
21              MR. RASCH:  Right.  Yes.  And that's exactly --
22   and that is exactly the analogy I was going to bring up.
23   Congress passing the statute which makes normal everyday
24   activity, travel, the right to travel is one of those number
25   of rights, okay?  Not specified in the Constitution and it's
```

1    not specifically a First Amendment right.  Congress

2    restricts the right to travel unreasonably, but creates an

3    affirmative defense that there's no way to cross any street

4    unless -- but if they are prosecuted, they have an

5    affirmative defense to say that they had some privilege or

6    right to do so, in your case, because there was a green

7    light or a cross light, that would, I think, violate due

8    process, without violating necessarily the First Amendment.

9             THE COURT:  Are you saying that violates due

10    process or are you saying that violates the right to

11    interstate travel?

12             MR. RASCH:  It violates the right to interstate

13    travel without due process of law.  I think that's a better

14    way to phrase it.  We have to find some right that a person

15    has generally to engage in the activity that's being

16    prescribed, that's being infringed upon.

17             THE COURT:  What is the due process violation in

18    that?

19             MR. RASCH:  Well, the statute essentially bans --

20    bans protected activity and then puts the burden on the

21    defendant to demonstrate that the -- that the permitted

22    activity is not prohibited.

23             THE COURT:  Okay.  Well, this is why I'm trying to

24    drill down on this, because what you just said actually is a

25    First Amendment argument.  You don't have -- Congress can

1  pass stupid laws, but they can't pass unconstitutional ones,

2  right?  So you have to have a protected activity that

3  Congress cannot make a crime for -- to raise a

4  constitutional argument.  Right?

5              MR. RASCH:  That's correct.

6              THE COURT:  Okay.

7              MR. RASCH:  But those rights don't just come from

8  the First Amendment.  The one that you picked, the right to

9  travel, is not a right specified in the First Amendment.

10              THE COURT:  Right.  I was intentionally trying to

11  pick something that didn't have a First Amendment component.

12              MR. RASCH:  Right.

13              THE COURT:  So are you saying it's a burden -- the

14  burden shifting of disproving something that you have a

15  constitutional right to engage in is the due process

16  violation?  Is that your argument?

17              MR. RASCH:  That's what I would formulate, because

18  it's not necessarily a First Amendment right.  It's a right

19  that you have just generically, like the right to travel.

20  Okay.  And that would not be a First Amendment violation if

21  they -- unnecessarily infringe it, that would be a

22  constitutional violation.  And it would be the best place

23  for that -- to look for that would be in the due process

24  clause.

25              THE COURT:  Okay.  So the argument you're making

1    is a burden shifting based off of due process, because the

2    thing that is now an affirmative -- or not an affirmative

3    defense, an exception or defense has a constitutional

4    component to it.  Is that the argument?

5            MR. RASCH:  Yes.  Yes.

6            THE COURT:  Okay.  So going back, you originally

7    said overbreadth was the first aspect.  Are you bringing --

8    and I don't understand -- I don't quite understand this.

9    Are you bringing a challenge based on chilling other

10   people's First Amendment rights?

11           MR. RASCH:  Yes.  And others, yes.  If the statute

12   prohibits the intentional acquisition of electronic

13   communications, period, full stop, end of sentence, that has

14   a chilling effect on anybody's right to acquire electronic

15   communications, to receive emails, text messages, read the

16   newspaper electronically, watch television electronically,

17   all of which would be presumptively subject then, if not to

18   criminal prosecution -- it's not to conviction, but at least

19   to criminal prosecution.  And even if no one is ever

20   prosecuted for that, yes, that would have a chilling effect.

21           THE COURT:  And do you have standing to bring that

22   on behalf of other people in this criminal prosecution?

23           MR. RASCH:  Our claim is that the statute would be

24   unconstitutional facially, because it is overbroad and the

25   overbreadth infringes constitutional rights of everyone,

1   including Mr. Burke.  And it directly affected Mr. Burke as

2   well.

3           THE COURT:  Okay.  What's the Fifth Amendment

4   right against self-incrimination aspect, because that was

5   raised in the brief?

6           MR. RASCH:  Yes, Your Honor.  To the extent that

7   the defendant would be forced to present evidence -- now --

8   which, in his case, could also be his own testimony, in

9   order to establish that it was acquired from a server that

10  was readily accessible to the general public.

11          That burden shifting puts undue pressure on his

12  Fifth Amendment rights.  In other words, he is forced to

13  prove something that the government should be forced to

14  prove or forced to disprove it without the government having

15  any burden of showing that it actually happened.  It would

16  impose a duty on the defendant in most cases to testify

17  about how he acquired the communications and why they were

18  readily accessible when the government should have at least

19  an initial burden of alleging and proving that they were

20  not.  He can -- he can be forced to testify to negate what

21  the government's evidence is, but once --

22          THE COURT:  No, I understand how trial works.

23  What I'm trying to get at is, why is that not a policy

24  consideration for Congress to decide what's an element and

25  what's an exception that the defendant would prove?

14

1              MR. RASCH:  Because there's no criminality without

2     that element.  All you're doing is banning communications

3     and you're basically saying -- and then this is what the

4     Supreme Court said in *Smith vs. California* and in *Ashcroft*,

5     where it gave them an opportunity to testify and present

6     evidence that it was -- for example, books were not obscene

7     and those kinds of cases, and the Supreme Court said, no,

8     that's unconstitutional, puts too much of a burden on the

9     Fifth Amendment right.

10             THE COURT:  Okay.  What's the Sixth Amendment

11    dimension to this argument?

12             MR. RASCH:  Well, it also relates to the right of

13    a fair trial.  A fair trial has to be -- and the right to

14    indictment.  The indictment has to specify the facts that

15    make out the criminal offense.

16             In this case, the indictment is missing critical

17    facts.  The indictment never alleges that the server was

18    configured so that the communications that were allegedly

19    intercepted were not readily accessible to the public.  In

20    fact, it says exactly the opposite.  And therefore, the

21    indictment itself under the Sixth Amendment does not

22    specify the crime, it doesn't spell out the elements of the

23    crime.

24             THE COURT:  Okay.  And then you want to explain

25    the major questions doctrine argument?

1        MR. RASCH:  Sure.  So essentially what we're doing

2   is we're reinterpreting a statute that has been around at

3   least since 1968 in a way that it has never been interpreted

4   this way before.  And it has never been interpreted in a way

5   that says that the defendant has -- the government only

6   needs to prove that the defendant acquired a communication

7   and the defendant thereafter has to prove that they did so

8   lawfully.  And if we're gonna do that, that's the kind of a

9   major reinterpretation of the statute that we would want to

10  look for some -- some Congressional intent to do that.

11       THE COURT:  Are you aware of any Supreme Court

12  case that has applied the major questions doctrine to courts

13  construing statutes?

14       MR. RASCH:  Well, each of the cases in the major

15  questions doctrine, they have looked to whether or not

16  Congress through statutes has authorized courts or

17  regulatory bodies to interpret the statute the way that they

18  are.  So the major questions doctrine applies to both courts

19  and regulatory bodies.  Either, I think, an extension of the

20  principles of statutory interpretation typically applied to

21  administrative judges are also applied to courts.

22       THE COURT:  Are you arguing that it is a

23  substantive canon of interpretation like Justice Gorsuch

24  says or that it's a linguistic canon like Justice Barrett

25  says?

1          MR. RASCH:  I would look more at the linguistic

2    cannon.  I mean, it seems more appropriate in this case.

3          THE COURT:  Okay.  I'm going to turn to the

4    government now, because I have some questions for them.

5          As I said earlier, I understood the original

6    thrust of the defendant's argument on this score to be about

7    how to interpret this statute under binding precedent as to

8    what is an element that Congress has required the government

9    to prove beyond a reasonable doubt and what is a defense or

10   exception that they've left to the defense.  That is why I

11   had turned everyone's attention to *McCann* and *Snow*.

12         I think this is a different argument in kind and

13   if the government could please tell me what they view the

14   necessary elements of this offense are with relation to

15   electronic communications.

16         MR. TREZEVANT:  I believe, in fact I'm certain,

17   we've stated that.  Essentially that the -- it's the

18   interception --

19         One moment.  I want to make sure I say this

20   properly.

21         That the defendant intentionally intercepted,

22   endeavored to intercept, or procured any other person to

23   intercept or endeavor to intercept a wire, oral, or

24   electronic communication.  The defendant did so

25   intentionally and, in the Eleventh Circuit, that he did so

1    as it was occurring through the use of a device.

2            THE COURT:  Okay.  That is how my earlier order

3    read the statute based on my understanding of what I thought

4    *McCa*nn required.

5            What is the argument going to be, because I think

6    there is quite a bit of force to it, to say that doesn't

7    capture -- or it couldn't capture as a part of just

8    indicting someone streaming a YouTube video, for example?  I

9    would have thought that the definition of intercept would

10   have included a component of unlawfulness, but that is not

11   how it's defined by the statute.

12           MR. TREZEVANT:  It is not, Your Honor.

13           THE COURT:  So what's the government's response to

14   that?  I understand neither party has shown me a case where

15   that has occurred and neither party has identified a case

16   where this argument has come up before.  So I am not

17   reinventing this -- you know, I'm not -- or parties can tell

18   me if I'm wrong about this, but neither party cited to me a

19   case where this has become an issue in this manner.  As far

20   as I'm aware, no court has been asked to construe this

21   particular readily available exception as either an element

22   or as a defense.

23           MR. TREZEVANT:  I think that's correct, Your

24   Honor.  This particular --

25           MR. RASCH:  Your Honor, I would disagree, I think

1    that's what *Snow* did in a civil case.

2             THE COURT:  I understand.  It did do that in a

3    civil case.

4             MR. RASCH:  Right.

5             THE COURT:  It didn't address *McCann* and it didn't

6    purport to apply it to a criminal case.

7             MR. TREZEVANT:  And so, Your Honor, from the

8    government's perspective, there's a couple things.

9             One, some of the force we believe that is

10   presented in the defendant's motion for reconsideration --

11   and I will tell the Court, to the extent the Court has other

12   questions for the government about how we looked at this, we

13   viewed this as a motion -- the defendant's motion for

14   reconsideration as a reconsideration of the Court's earlier

15   order and did not view it -- to the extent it raised other

16   issues, that was a different part of the motion itself.

17            But as far as to the motion for reconsideration,

18   that what the defense was doing in that motion was trying

19   to, as best it could, deal with the Court's order,

20   Docket 110, where the Court pointed out that Burke had not

21   addressed why one statutory exception, that being consent,

22   need not be alleged and proven as an element by the

23   government, but another readily accessible must be.

24            And so that the defense did that and that's what

25   is captured by the majority of the motion for

19

1  reconsideration and the focus of the motion for

2  reconsideration.  But it does so in that it starts with

3  *McCa*nn and what *McCa*nn is looking at and then goes from

4  there.  And the way the defense has presented *McCa*nn in the

5  motion for reconsideration, an attempt to apparently get

6  traction before this Court, is through the false narrative

7  that's repeated throughout the motion for reconsideration,

8  that *McCa*nn has anything to do -- that they suggest that

9  *McCa*nn has to do with oral communications.  And they

10  reference that in their filing at pages five, six, eight,

11  11, and 12, that *McCa*nn deals with oral communications and

12  consent and everybody can see why that's a problem.  But

13  *McCa*nn has nothing to do with oral communication, it has

14  everything to do with wire communications.  And for that

15  reason, it's much more applicable to our scenario.

16        And so if, for example, in the motion for

17  reconsideration at page five, and six is where it really

18  starts, and it talks, it says:  The interception of oral

19  communications inherently requires the government to prove

20  both subjective and objective privacy and an invasion

21  thereof, 18 U.S.C. 2510(1) in the application, the consent

22  provision of 18 U.S.C. 2511(2)(D) does not fundamentally

23  alter the criminal offense.  Removing consent as an element

24  the government must prove these are perfectly cogent events

25  intercepting a private oral communication.

1           And then on the next page they clarify that that's

2  what their argument is here.  In the bottom of the partial

3  paragraph at the top of page six, it says:  What the

4  definition of electronic communications does not include,

5  however, is any requirement that the electronic

6  communication be private or expected to be private, which

7  distinguishes it from the oral communication considered in

8  *McCann*.

9           And they repeat the same statement on page eight

10 where they say that this is -- the bottom of the second full

11 paragraph:  This is the same as the non-private oral

12 communications in *McCa*nn.

13          And then they go again in 11, where they say:

14 Just like the oral communications in *McCann*.  And they say

15 that throughout.  Whereas, if the Court looks at *McCann*, and

16 *McCann*, starting at page 147, the very first sentence of the

17 reporter, notes that:  Defendants were convicted in the

18 United States District Court for the Northern District of

19 Texas at Dallas of unlawfully intercepting and endeavoring

20 to intercept wire communications.  The very first sentence

21 of the opinion then says:  The appellants, John Joseph Kelly

22 and Patrick McCann, were both charged in each count of a

23 four-count indictment with unlawfully intercepting and

24 endeavoring to intercept wire communications.

25          And it mentions wire communications again at

```
 1   page 160 where it's talking about, I believe, the search
 2   warrant.  And it says:  The affidavit set forth the purchase
 3   of items by Kelly which could be used in the unlawful
 4   interception of wire communications.
 5             It does it again at 162 where it says:  Appellants
 6   contend the trial erred when it failed to limit the charge
 7   in Counts Two, Three, and Four of the indictment to
 8   intercept wire communications.
 9             Just over and over again.  And so they --
10   basically, they haven't really addressed McCann and the
11   holding of McCann at all.  Instead, what they've done is
12   presented a narrative of McCann that's false and then used
13   that to support the argument.  But it just doesn't.
14             So that from our perspective, we looked at it and
15   we don't believe that there's any way to view the statute
16   and the elements other than to look at McCann and follow
17   McCann.
18             Now, to the extent the Court asks a question has
19   there ever been a look at intercept differently, there has
20   been in an oral communication.  Courts have looked at oral
21   communication in the Eleventh Circuit, which was frankly a
22   Fifth Circuit case, Turk, which is cited in some of our
23   filings.  And in Turk, the Court looks to -- looks to that
24   and says that:  We believe that in Turk -- this is at
25   526 F.2d 654, we believe that it -- they're looking at the
```

1    word intercept, what does it mean.

2            THE COURT:  Uh-huh.

3            MR. TREZEVANT:  And basically at page 658,

4    Headnote Three, Four, it says:  We believe that a different

5    interpretation, one which would exclude from the definition

6    of intercept, through a playing of a previously recorded

7    conversation -- because it's -- they are looking at -- it

8    was -- dealt with tape recorded messages captured on a

9    cassette recorder of human exchange voice, is what they're

10   looking at.  And they say:  The words acquisition through

11   the use of any device suggests that the central concern is

12   with the activity engaged in at the time of the oral

13   communication, which causes some communication to be

14   overheard by uninvited listeners.  But that is -- that's the

15   oral -- that's where they looked at it as an oral

16   communication concept.

17           In wire and electronic, *McCann* is we believe good

18   law and controls here.  I don't think there's anything in

19   their motion for reconsideration -- in fact, I know there's

20   not -- that addresses the challenges presented in an

21   argument for overbreadth, like under a recent Supreme Court

22   decision of *Hansen*, which is a 2023 case.

23           But we just -- I really looked at it in terms of

24   what are they asking the Court to reconsider, and it seemed

25   to me that's what they were asking the Court to reconsider,

 1   was there is a difference between *McCann* and our situation,

 2   that being that *McCann* dealt with oral communications and

 3   consent.  And frankly, when I saw that it was

 4   misrepresenting and presenting a false narrative as to

 5   *McCann*, I thought that there was --

 6            THE COURT:  Because *McCann* is wire communications

 7   and --

 8            MR. TREZEVANT:  A hundred percent.

 9            THE COURT:  Okay.

10            MR. TREZEVANT:  And so to me, from my perspective,

11   Your Honor, it just didn't even approach consideration, that

12   motion, at all.

13            THE COURT:  So say it's a new motion to dismiss --

14            MR. TREZEVANT:  Which is what I'm hearing.

15            THE COURT:  That's how I read it, to be honest.

16   It seems like a different argument than the original, which

17   was a statutory construction in light of the precedent of

18   *McCann*.

19            So one of the questions I had for the government,

20   if that is how it is, and it reads that way to me, I'm not

21   going to deny it, trial got pushed off to September, it's

22   not untimely.  So whether it's a motion for reconsideration

23   or another motion to dismiss, a third one, I suppose, like

24   whatever, doesn't matter the title we give it.  The question

25   I have for the government is *McCann* clearly controls with

1    regards to the matter of whether consent is something that

2    is an element of the government's case in chief or

3    defense -- defense can put on.  I don't see any way around

4    that, at least as a matter of statutory construction.

5              But does the prior panel precedent rule control if

6    there are new First Amendment intermingled with due process,

7    however you want to deem it, constitutional objections to

8    interpreting this provision of readily accessible as an

9    element versus a defense?

10             What I'm trying to say is, it didn't seem to me

11   that there was any constitutional dimension to the arguments

12   raised in *McCann* that are now being raised in this motion.

13   And does the prior panel precedent rule preclude

14   consideration of that since it wasn't an issue in *McCann*?

15             MR. TREZEVANT:  I would have to see the issue,

16   Your Honor, but I think it would control.  I think *McCann*

17   controls the construction of that statute.  I would have to

18   see what the particular issue raised.

19             THE COURT:  Well, this is why I started with

20   defense, because I wasn't sure of the particular issue

21   either.

22             MR. TREZEVANT:  I'm still not understanding what

23   they're saying.

24             THE COURT:  Okay.  Well, here are a few other

25   things I am wanting to hear from the government when they

1    file their response.  So the first would be does *McCann* --

2    assuming the argument that the defense is making is that

3    this -- by deeming this defense instead of an element, it

4    sounds to me like they're making an argument that the

5    statute, as constructed, is facially unconstitutional under

6    an overbreadth theory of the First Amendment.  That is my

7    understanding.  And then it's somewhat commingled with due

8    process, but not quite sure how.

9            So the first thing I want to know is, does *McCann*

10   control and to what extent does it control if this sort of

11   constitutional argument was not presented to that panel?

12   And the obvious distinction here is you can't get away from

13   consent was the issue that was specifically argued there.

14   This is an amendment to the statute after *McCann*, that's

15   what *Snow* was looking at.

16           And that leads me kind of to my first question, I

17   suppose that I started with with the government is, is it

18   your view, then, that someone under the electronic

19   communications theory could be indicted for watching a video

20   on YouTube?  Or fill-in-the-blank example of the kinds of

21   rhetoric that the defendant's used in their motion.  Could

22   someone be indicted for that?

23           MR. TREZEVANT:  I don't -- I don't believe so.  I

24   don't see how, but --

25           THE COURT:  Well, wouldn't they be intercepting

1    something that's deemed an electronic communication, because

2    they're acquiring it?

3          MR. TREZEVANT:  Obviously, we're looking at the

4    word intercept in the more common way someone would look at

5    the word intercept.  The defense never uses the word

6    intercept, despite that being the language of --

7          THE COURT:  Isn't the statute definition for

8    intercept to acquire?

9          MR. TREZEVANT:  It is.  Under (4).  That's

10   ultimately what intercept means, but it also has its own

11   meaning in and of itself.

12         THE COURT:  You think it has a different --

13         MR. TREZEVANT:  Language.  In common language.  I

14   mean, no one -- you know, anybody watching anything, police

15   intercept a shipment, in football a pass is intercepted.

16   Intercepted, if you look it up in the dictionary, Your

17   Honor, I believe you'll see that it -- intercept in the

18   dictionary.

19         THE COURT:  No, I agree.  This is why I actually

20   thought -- if I were being asked to define intercept

21   independent of the statutory definition that was provided,

22   it would probably read differently.  But I -- unless the

23   government is making a different argument, I don't see a

24   basis to deviate in instructing the jury as to what the word

25   intercept means, other than just read the definition from

 1    the statute, unless there's an argument you're saying --

 2              MR. TREZEVANT:  Right.  Yes, ma'am, together with

 3    the actual intercept being its own word as one of the

 4    elements, that's correct.

 5              THE COURT:  Well, that -- okay.  Then one thing I

 6    would like the government to respond to is what it thinks

 7    the legal definition of intercept is.  So basically, what is

 8    the proposed jury instruction when I define the word

 9    intercept to the jury.  If I define it and I just read it

10    the way the statute reads it, which I think says acquire --

11    am I right about that, I think it's acquire?  Why does that

12    not cover a host of online activity that is pretty

13    commonplace?  Does the government not think it does for some

14    reason?  Am I missing something?

15              MR. TREZEVANT:  I've never thought -- I've never

16    thought of it that way, Judge, and I don't as I sit here.  I

17    understand --

18              THE COURT:  Okay.

19              MR. TREZEVANT:  -- the proposition that is raised

20    by the defense, but like I mentioned to the Court, those

21    were based on a -- and then it's -- overbreadth is such a

22    hill that -- and has been made clear to be so through the

23    recent Supreme Court decisions.  And the idea that someone

24    is chilled from watching television, listening to the radio,

25    watching TV, by Title III, that doesn't make sense to me.

```
1    But --

2              THE COURT:  So as I said in the order, no one's

3    pointed me to an incident where that has occurred.  It is --

4              MR. TREZEVANT:  The closest I'm aware of, Judge,

5    is -- or where someone has discussed intercept together with

6    the actual definition as provided would be interpreted in an

7    oral communication.  But here we're --

8              THE COURT:  But isn't that just about the

9    temporality aspect of intercept, isn't that what *Turk* is

10   talking about?

11             MR. TREZEVANT:  The decision itself is going to

12   temporality.  The discussion of intercept is not.

13             THE COURT:  Okay.

14             MR. TREZEVANT:  But that's part of the discussion.

15   That's why I was looking just to see, in case the Court

16   wondered about that.  But this is given -- the defense has

17   done is basically misrepresented *McCann*, and I just don't --

18   I think the statute has been applied and can be applied by

19   reading it and explaining it to the jury.

20             I understand the Court wants additional briefing.

21   I would want to see some motion and argument laid out before

22   we had to do such a thing, because it seems like a very

23   much -- at least in here this morning to me, Judge,

24   listening to the defense sounds like a moving target that --

25             THE COURT:  Well, I'll get to that in a minute.  I
```

1    was -- I'll get to that in a minute.  Let me go through some

2    of the other issues that I think the government should think

3    about.

4          So I need to know how the government is gonna deal

5    with or if I just define intercept by the statutory

6    definition why that doesn't cover a large amount of everyday

7    activity by many Americans who watch TV or whatnot?

8          The next question I have is, if that does cover

9    all of that sort of stuff, is that not a First Amendment

10   problem in requiring the readily accessible exception to be

11   something that the defense has to put on instead of the

12   government in their case in chief.  I suspect, based off of

13   what I understand of the case, and obviously, the counsel

14   and parties are better informed than I am, that the

15   government is gonna put on evidence that this was not

16   readily accessible.

17         MR. TREZEVANT:  We believe the indictment makes

18   that clear, Your Honor.

19         THE COURT:  I agree.  The footnote that is quoted

20   at length in the defense motion are facts that would suggest

21   it's not readily accessible.

22         MR. TREZEVANT:  And, Your Honor, just so I

23   understand, does the Court mean readily accessible only as

24   to electronic communications?  Because that does not affect

25   wire at all.

1          THE COURT:  Right.  So that gets me to my next

2   question.  I understand and the government is allowed to

3   in -- charge all three, oral, wire, or electronic, is this

4   case really, though, all about electronic?

5          MR. TREZEVANT:  Yes, Your Honor.

6          THE COURT:  Okay.  Is --

7          MR. TREZEVANT:  No, is it all about electronic --

8   oh, I'm sorry.  It's electronic and wire, for sure.  And

9   perhaps some oral.  But really, primarily wire and

10  electronic.  Wire is the oral -- the human voice.  And

11  electronic is the image and other information.  Both are --

12  and any stream carries both wire and electronic information.

13  A wire could simply be voice.  You could -- you could

14  intercept, for example, easy way to think about it is, if

15  you -- nowadays people use Teams or something like that

16  where you can just log in and have it on a -- just do your

17  voice with no image.  The voice part is wire and the -- if

18  you have your image and other information captured, that

19  would be electronic.

20         THE COURT:  The main things that were alleged to

21  have been --

22         MR. TREZEVANT:  It will be given --

23         THE COURT:  Are wire and electronic?

24         MR. TREZEVANT:  The primary, yes, ma'am, that's --

25  those are the --

1          THE COURT:  In common lay terms, it's a video, is

2    that -- that's what I understood this to be.

3          MR. TREZEVANT:  Yes, ma'am.

4          THE COURT:  Readily accessible to the general

5    public only applies to electronic.

6          MR. TREZEVANT:  The image and the other

7    information.

8          THE COURT:  Consent applies to wire.

9          MR. TREZEVANT:  Correct.  And -- right, yes,

10   ma'am, and just anything generally.  The consent

11   provision --

12         THE COURT:  Right, consent is an exception to any

13   of it.

14         MR. TREZEVANT:  All of it.  And for some reason

15   the motion for reconsideration talks about radio, but

16   that's --

17         THE COURT:  I think that's copied from the

18   criminal justice manual.

19         MR. TREZEVANT:  And I don't believe that's a

20   current manual.

21         THE COURT:  This isn't the current manual that

22   it's referring to?

23         MR. TREZEVANT:  I don't believe so.  Maybe.  I

24   don't think so.

25         THE COURT:  Mr. Duso?

1              MR. DUSO:  Your Honor, it's not a matter of

2    currency, but the criminal reference manual, the criminal

3    resource manuals, the CRMs.  When the United States

4    Attorney's manual transitioned to the Justice manual, those

5    particular items were taken out of the Justice manual.  Some

6    elements of those resource manuals have been put into

7    monographs produced by the Office of Legal Education --

8    whether those particular criminal resource manual items are

9    no longer considered to be current doctrine --

10             THE COURT:  Okay.  Well, this doesn't answer the

11   question anyway as to whether it's an element or a defense.

12             If I were to agree after this is re-briefed on the

13   argument, as I've understood it here this morning, that the

14   readily accessible to the general public to avoid a First

15   Amendment problem must be an element instead of a defense,

16   if I were to agree with that, how does that impact the

17   motion to dismiss, given that it currently is alleged oral,

18   wire, or electronic communications for Counts Eight

19   through -- I think this would implicate through 14, not just

20   12, right?

21             There was no discussion of the remedy in the

22   motion.  I posed it as a question.  Think about it and I

23   would like an answer in the briefing.

24             MR. TREZEVANT:  Yes, ma'am.

25             THE COURT:  Or at least I would like to hear the

1    government's position as to how this would impact those

2    counts and whether it's Counts Eight through 12 or Eight

3    through 14.

4           MR. TREZEVANT:  Well, I believe -- and, Your

5    Honor, I do believe they're only talking about the

6    electronic feature of it.  Information.

7           THE COURT:  You mean the defense?

8           MR. TREZEVANT:  Yes.

9           THE COURT:  Yes, their motion right now only talks

10   about electronic communications and the readily accessible

11   to the general public exception in 2511(2)(G).

12          MR. TREZEVANT:  Right.

13          THE COURT:  But if I were to agree with them, I

14   still wouldn't dismiss those counts based on the fact that

15   you've alleged wire and oral, I just would make a legal

16   ruling that I wouldn't be permitting evidence on -- I

17   wouldn't be permitting evidence to come in contrary to that

18   legal ruling and I wouldn't be charging the jury in that

19   manner.

20          Well, actually, I think the correct way to do it

21   is because there hasn't been an allegation of what I would

22   have determined is an element, I wouldn't be allowing the

23   government to put on a case as to electronic communication.

24          Does that make sense?

25          If I were to agree with them that it ought to be

1    an element, the current indictment does not allege that

2    element, thus I would not allow the government to put on a

3    case of electronic communication interception.  Right?  I

4    mean, I think that's how it would have to work.

5            MR. TREZEVANT:  Well, I --

6            THE COURT:  Unless you superseded and alleged it

7    and then the government would have to put on the case.

8            MR. TREZEVANT:  Right, which, obviously, we could

9    do, but that's -- I would want to look at our -- the way our

10   indictment is drafted a little more closely, depending upon

11   what the ruling was, given the contents of how the

12   information charge included in the indictment.  But I take

13   the Court's point.

14           THE COURT:  If this is the first time this has

15   come up in how many decades?  I don't know.  And the

16   government --

17           MR. TREZEVANT:  Four or five.

18           THE COURT:  Many years.  And the whole trial is

19   really all about what was readily accessible to the general

20   public or not, so the government is going to put on

21   evidence, I imagine expert testimony and the like, as to how

22   these systems work?

23           MR. TREZEVANT:  We are.

24           THE COURT:  You could moot a three-week trial and

25   significant risk on appeal and a retrial if the government

```
 1   would replead and prove this element, even if they don't

 2   think they have to.

 3            MR. TREZEVANT:  That would be --

 4            THE COURT:  It's an option.

 5            MR. TREZEVANT:  It is.

 6            THE COURT:  I see no way to get an immediate

 7   appeal.  If this was a civil case, I would probably certify

 8   this question and I've never done that before.  I think it's

 9   that tricky.  But it's not.

10            So I just put that out there.  If the government's

11   position -- really, I mean, the first argument will be what

12   the brief says is any person who watches a video or uses the

13   internet or watches TV could be indicted.  That will be

14   their first argument at the Court of Appeals and I'm not

15   entirely sure that I've heard a response as to why that's

16   not true.

17            MR. TREZEVANT:  And, Your Honor, I think that's

18   fair.  We haven't even -- we don't believe that they've

19   raised it properly in a motion, but we are happy to respond

20   to the Court and give the Court --

21            THE COURT:  Okay.  No, I just think that that's

22   a --

23            MR. TREZEVANT:  It's not that we don't have a

24   response at all, Your Honor.  I just hesitate to give

25   partial responses or --
```

```
 1              THE COURT:  No, I understand.  I'm just -- what
 2    I'm saying is I --
 3              MR. TREZEVANT:  We'll have a response, Judge, but
 4    we would want to see what they argue first.
 5              THE COURT:  Okay.  And then I said I would address
 6    this.  This is something I meant to address at the last
 7    status conference.
 8              Part of the difficulty with this motion is that it
 9    raises new issues and buries a lot of issues in footnotes
10    that are both voluminous and clearly, if they were made part
11    of the actual text, would make the motion far exceed the
12    page limits.
13              I'm not so worried about the page limits as I am
14    the clarity of the legal positions that are being raised.
15    It is not fair to the government and I cannot adjudicate
16    claims that I'm not sure are being clearly raised.  And I
17    don't know what to do with footnotes that are a huge block
18    quotes and maybe make reference to doctrine, but don't make
19    a full argument as to them.
20              So I'm going to deny for those reasons the motion
21    for reconsideration.  The defense may refile a motion and
22    just file a new motion to dismiss.  But these are new
23    issues, so just another motion to dismiss to clearly raise
24    the arguments that are percolating in the current draft.  So
25    I understand those to be housed in the First and Fifth
```

```
 1   Amendment.

 2           If defense thinks they need more pages, they can

 3   file a motion to explain why they need more pages.  But

 4   going forward, counsel from both sides are not allowed to

 5   use footnotes.  We're going to use the page limits that are

 6   prescribed by the Local Rules unless there's a reason to

 7   exceed them.  I think that will help with clarity for all

 8   involved.

 9           MR. RASCH:  That's fine, Your Honor.

10           THE COURT:  You want two weeks?

11           MR. RASCH:  I think one week would be fine.

12           THE COURT:  One week?

13           MR. RASCH:  I won't need that long to -- yeah.

14           THE COURT:  Okay.  Then I'll say that the defense

15   motion, new motion to dismiss, is due on May 13th, 2025, to

16   raise the First and Fifth Amendment constitutional concerns

17   with the electronic communication.

18           It would be wise I think that the motion also

19   address how it perceives remedies to be implemented in this

20   case.

21           And then the government will have two weeks.  So

22   that is May 27th.

23           Is that enough time from the government's

24   perspective?

25           MR. TREZEVANT:  At this point, I believe so, Your
```

1    Honor, without seeing their motion.

2              THE COURT:  Understand.  If you need more time,

3    file a motion, please.

4              MR. TREZEVANT:  We will.

5              THE COURT:  Does either party wish me to clarify

6    some of the issues that I think need to be addressed or does

7    everyone have a handle of what those are?

8              MR. RASCH:  Your Honor, I think I have it.

9              THE COURT:  If I understand the government

10   correctly, Mr. Rasch, I don't think your motion has anything

11   to do with wire communication?

12             MR. RASCH:  Yeah, that was the only way -- I think

13   the government seems to be saying that an audio portion of a

14   video is a separate communication from the video.  The

15   video's an electronic communication and the audio is a wire

16   communication, if I'm right.

17             THE COURT:  I understand that to be true, that the

18   audio is a wire communication --

19             MR. RASCH:  Okay.

20             THE COURT:  I understand that to be what the

21   government represented and that the video portion of -- the

22   images --

23             MR. TREZEVANT:  Video and other information, yes,

24   ma'am.

25             THE COURT:  When you say other information, what

1  do you mean?

2          MR. TREZEVANT:  There's a lot of metadata and

3  other information in the communication.

4          THE COURT:  Okay.  So each of these videos, which

5  is I think what the whole trial will be about, are videos,

6  would constitute two different kinds of communications?

7          MR. TREZEVANT:  Yes, ma'am.

8          THE COURT:  Okay.  The normal rules then of Local

9  Rules for page limits apply absent a motion for extending

10  those.

11          And if we don't have anything else, then we can be

12  adjourned.  Is there anything else?

13          MR. TREZEVANT:  No.  Thank you, Your Honor.

14          MR. MADDUX:  Not for Mr. Burke.

15          THE COURT:  Okay.  Then we're adjourned.  Thank

16  you.

17                  (Proceedings concluded.)

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

40

```
 1    UNITED STATES DISTRICT COURT )
                                   )
 2    MIDDLE DISTRICT OF FLORIDA   )

 3                    REPORTER TRANSCRIPT CERTIFICATE

 4
           I, Howard W. Jones, Official Court Reporter for the
 5    United States District Court, Middle District of Florida,
      certify, pursuant to Section 753, Title 28, United States
 6    Code, that the foregoing is a true and correct transcription
      of the stenographic notes taken by the undersigned in the
 7    above-entitled matter (Pages 1 through 39 inclusive) and
      that the transcript page format is in conformance with the
 8    regulations of the Judicial Conference of the United States
      of America.

 9

10                            /s  Howard W. Jones

11                            _____
                              Howard W. Jones, RPR, FCRR
12                            Official Court Reporter
                              United States District Court
                              Middle District of Florida
13                            Tampa Division
                              Date:  5/20/2025
14

15

16                    REPORTER ORIGINAL NOTES CERTIFICATE

17         In accordance with Section 753(b), Title 28, United
      States Code, I certify that these original notes are a true
18    and correct record of proceedings held in the United States
      District Court, Middle District of Florida, before the
19    Honorable Kathryn K. Mizelle, District Court Judge, on
      5/6/2025.
20

21                            /s  Howard W. Jones

22                            _____
                              Howard W. Jones, RPR, FCRR
23                            Official Court Reporter
                              United States District Court
                              Middle District of Florida
24                            Tampa Division
                              Date:  5/20/2025
25
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION