**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,
Plaintiff,

v.                                              Case No. 8:24-cr-68-KMM-TGW

TIMOTHY BURKE,
Defendant.

_____/

**MOTION OF THE INTERNET ACCOUNTABILITY PROJECT**
**FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

The Internet Accountability Project respectfully moves for leave to file the

attached amicus curiae brief in support of the government and in response to this

Court's invitation for amici input. Order, Doc. 128 at 4–5 (May 21, 2025). The

decision whether to accept an amicus brief is committed to the district court's

discretion. *See City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1304 (11th Cir.

1999). The Project has an interest in filing a brief because it supports policies that

protect online privacy and promote technological innovation. The Project is also

committed to the rule of law and wishes to help the Court apply the Wiretap Act

consistent with its text and the Constitution. The Court invited amici to answer

three questions. Order, Doc. 128 at 4–5. The Project's brief touches on all three

questions and explains that the indictment should not be dismissed in the light of

its answers to those questions.

Dated: July 11, 2025                          Respectfully submitted,

                                             /s/ Jason Gonzalez
John D. Ohlendorf*                           Jason Gonzalez (FBN: 146845)
Adam P. Laxalt*                              LAWSON HUCK GONZALEZ, PLLC
COOPER & KIRK, PLLC                          215 South Monroe St., Suite 320
1523 New Hampshire Ave.,                     Tallahassee, FL 32301
NW                                           (850) 825-4334
Washington, DC 20036                         jason@lawsonhuckgonzalez.com
(202) 220-9600                               marsha@lawsonhuckgonzalez.com
johlendorf@cooperkirk.com                    michelle@lawsonhuckgonzalez.com
alaxalt@cooperkirk.com

*Admitted Pro Hac Vice

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

v.                                    Case No. 8:24-cr-68-KMM-TGW

TIMOTHY BURKE,
Defendant.

_____/

## AMICUS CURIAE BRIEF OF THE INTERNET ACCOUNTABILITY PROJECT IN SUPPORT OF THE GOVERNMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

INTEREST OF AMICUS CURIAE ................................................................... 1

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 3

   I.  Burke's Constitutional Challenges Fails Because the Wiretap Act Does Not Cover a Person Who Watches a Video on a Public Webpage ........................... 3

     A.  The Ordinary Meaning of "Intercept" Does Not Cover a Person Who Watches a Video on a Public Webpage ...................................................... 3

     B.  If "Intercept" Is Construed Broadly, the Wiretap Act's Exceptions Prevent the Government from Indicting Someone for Viewing Publicly Accessible Communications. ........................................................................ 7

     C.  If the Court Construes "Intercept" Broadly, as Applying to Anyone Who Views Publicly Accessible Communications, It Should Hold that the "Readily Accessible" and "Party" Exceptions Are Elements of a Wiretap Act Violation ........................................................................... 10

  II.  There Is No Other Basis for Dismissing the Indictment. ................................ 17

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Bond v. United States*,
    572 U.S. 844 (2014) ........................................................................................ 4, 5

*Delligatti v. United States*,
    145 S. Ct. 797 (2025) ........................................................................................... 5

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ............................................................................ 12

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) ...................................................................... 14, 15

*United States v. Herring*,
    993 F.2d 784 (11th Cir. 1993) .......................................................................... 9, 18

*United States v. Kincherlow*,
    88 F.4th 897 (11th Cir. 2023) .............................................................................. 18

*United States v. McArthur*,
    108 F.3d 1350 (11th Cir. 1997) ...................................................... 10, 11, 12, 13, 14

*United States v. McCann*,
    465 F.2d 147 (5th Cir. 1972) ......................................................................... 10, 12

*United States v. Outler*,
    659 F.2d 1306 (5th Cir. Unit B Oct. 1981)...................................... 10, 11, 12, 14

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ............................................................................... 6

*United States v. Stefan*,
    784 F.2d 1093 (11th Cir. 1986) ...................................................................... 16, 17

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) .............................................................. 3, 4, 5, 6

*United States v. Woodruff*,
    296 F.3d 1041 (11th Cir. 2002) ...................................................................... 15, 16

*Watkins v. L.M. Berry & Co.*,
    704 F.2d 577 (11th Cir. 1983) ............................................................................. 12

**Statutes and Codes**

18 U.S.C.

§ 2510(1) ......................................................................... 9, 12, 13

§ 2510(4) ....................................................... 4, 6, 7, 11, 14, 19

§ 2510(5)(a) ...................................................................................7

§ 2510(12) ....................................................................... 9, 12, 13

§ 2510(13) .....................................................................................7

§ 2510(15) .....................................................................................7

§ 2511(1)(a) ...................................................... 1, 11, 14, 16

§ 2511(2)(d) ...................................................... 2, 3, 8, 9, 10

§ 2511(2)(g)(i) .................................................. 2, 3, 8, 9, 10

**Other Authorities**

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1969) ................... 4

11 THE OXFORD ENGLISH DICTIONARY (2d ed. 1989) .................................................. 8

18 THE OXFORD ENGLISH DICTIONARY (2d ed. 1989) ................................................ 13

THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE
  (2d unabridged ed. 1987) .................................................................................. 8

## INTEREST OF AMICUS CURIAE

The Internet Accountability Project is an advocacy organization that supports policies that promote technological innovation, prevent online viewpoint discrimination, protect children and privacy, and strengthen national security through technology. The Project has an interest in ensuring that the Wiretap Act is construed according to its text because the Act protects online users and their data from bad actors. The Project also has an interest in ensuring that those who violate the rights of others online face justice. To aid the Court in construing the Act consistent with its text and the Constitution, the Project submits this brief in response to the Court's invitation and urges the Court not to dismiss the indictment.

## INTRODUCTION

Although the Wiretap Act has long proscribed "intentionally intercept[ing] . . . any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), Timothy Burke contends that federal courts have overlooked a serious First Amendment problem with the Act. Def.'s Replacement Mem. of Law in Supp. of Mot. to Dismiss, Doc. 125 at 8–10 (May 18, 2025) ("Mot. to Dismiss"). In response, the Court invited amici curiae to answer questions related to Burke's contention that the Wiretap Act presumptively prohibits protected information gathering

1

activities including watching videos on public webpages. Order, Doc. 128 at 4–5.
As amicus curiae, the Internet Accountability Project responds to this invitation
and contends that the Wiretap Act does not cover a person who watches a video
on a public webpage, so the Court should deny Burke's third motion to dismiss
the indictment.

Burke's constitutional challenge fails because the Wiretap Act does not
cover a person who watches a video on a public webpage. The Court need not
reference the Act's exceptions to reach that conclusion because the ordinary
meaning of "intercept" excludes intended recipients and authorized viewers. And
even if the Court construes "intercept" based solely on its statutory definition, the
Act still does not cover a person who watches a video on a public webpage. In that
situation, the exceptions for "parties to the communication," 18 U.S.C.
§ 2511(2)(d), and "readily accessible" electronic communications, *id.*
§ 2511(2)(g)(i), should be understood as elements of a violation because they are
essential to distinguishing between culpable and nonculpable activity. Either way,
there is no First Amendment problem with the Act.

Nor does any other related issue warrant dismissal of the indictment. The
government need not reindict Burke to prove at trial that he intercepted only

electronic communications. And Burke was plainly not a "party" to the video

streams at issue.

Burke's motion should be denied.

## ARGUMENT

### I. Burke's Constitutional Challenges Fails Because the Wiretap Act Does Not Cover a Person Who Watches a Video on a Public Webpage.

In ordinary language, only an unauthorized viewer can "intercept" a video

on the internet. So even without reference to its exceptions, the Act does not

prohibit watching a video on a public webpage. But even if the Court construes

"intercept" solely based on its statutory definition, the Act's exceptions for

"parties to the communication" and "electronic communication[s] . . . readily

accessible to the general public" prevent the government from indicting someone

for watching a video on a public webpage. *Id.* § 2511(2)(d), (g)(i). If "intercept" is

construed broadly, those exceptions must be elements because they are essential

to distinguishing between culpable and nonculpable activity. Either way, Burke's

constitutional challenge fails.

### A. The Ordinary Meaning of "Intercept" Does Not Cover a Person Who Watches a Video on a Public Webpage.

The Wiretap Act does not cover a person who watches a video on a public

webpage even without reference to its exceptions. The "ordinary meaning of

intercept" as used in the Act "is to stop, seize, or interrupt in progress or course before arrival." *United States v. Steiger*, 318 F.3d 1039, 1048 (11th Cir. 2003) (citation and internal quotation marks omitted); *see also Intercept*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 683 (1969) (defining "intercept" as "[t]o stop, deflect, or interrupt the progress or intended course of"). In ordinary language, an individual cannot "intercept" something if he is its intended recipient. For example, in football, a defensive back can intercept a pass from the opposing quarterback, but that quarterback's wide receiver cannot. Likewise, the viewer of a video posted online cannot "intercept" that video if the website in question is one generally open to the public, because *all* public viewers are the intended recipients of material posted on such public websites.

To be sure, the Act defines "intercept" broadly, as including the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). But under the settled ground rules of interpretation, this apparently expansive definition does not warrant a dramatic departure from the term's ordinary meaning. The Supreme Court's opinion in *Bond v. United States*, 572 U.S. 844 (2014), provides an instructive example. Faced with a statute that broadly defined the term "'chemical weapon'"

as "'[a] toxic chemical and its precursors,'" the Supreme Court nonetheless determined that a "fair reading" of the statute "does not have as expansive a scope as might at first appear." *Id.* at 851, 860 (quoting 18 U.S.C. § 229F(1)(A)). The Court explained that an "educated user of English would not describe [a simple assault with mild chemicals] as involving a 'chemical weapon.'" *Id.* at 860. And, the Court continued, "[i]n settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." *Id.* at 861. Indeed, as recently as this term, the Court has reiterated that principle: "When choosing among interpretations of a statutory definition, the 'ordinary meaning' of the 'defined term' is an important contextual clue." *Delligatti v. United States*, 145 S. Ct. 797, 808 (2025) (quoting *Bond*, 572 U.S. at 861). And the importance of that clue is especially heightened in situations like this one where a broad reading of a defined term would criminalize, at the federal level, an extraordinary amount of conduct. *See Bond*, 572 U.S. at 860.

Reading the term "intercept" in the light of its ordinary meaning is also consistent with Eleventh Circuit precedent. In *Steiger*, the Eleventh Circuit held that the Wiretap Act requires "*contemporaneous* interception—*i.e.*, an acquisition

during 'flight.'" 318 F.3d at 1048–49 (emphasis added). Notably, the statutory

definition of "intercept" does not suggest that the "acquisition" of a

"communication" must be contemporaneous with the communication's

transmission. *See* 18 U.S.C. § 2510(4). The definition, again, includes "the aural or

other acquisition of the contents of any . . . communication through the use of any

electronic, mechanical, or other device," *id.*—language that on its face would reach

the later acquisition of an earlier communication. But the Eleventh Circuit held

that an acquisition must be contemporaneous with a communication's

transmission based on "'the ordinary meaning of "intercept."'" *Steiger*, 318 F.3d at

1048 (quoting *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)); *see

also United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir. 1998) (acknowledging that

contemporaneous acquisition "might comport with the . . . ordinary meaning" of

intercept). As in *Steiger*, so too here. Although the statutory definition of

"intercept" may technically extend to an intended recipient's acquisition of a

communication, the term's ordinary meaning certainly does not, and that ordinary

meaning must inform the Court's interpretation of the Act.

    For these reasons, the answer to the first half of the Court's Question (2) is

no: the Wiretap Act does not cover watching a video on a public webpage quite

apart from the Act's enumerated exceptions. Accordingly, Burke's constitutional challenge fails out of the starting gates.

Alternatively, if the Court is inclined to rely exclusively on statutory definitions, the government's approach also renders Burke's constitutional challenge a non-starter. U.S.'s Resp. Opposing Burke's Third Mot. to Dismiss, Doc. 138 at 7–8 (May 23, 2025). Under that approach, someone who uses a device to connect to a service provider's facilities does not "intercept" anything if that person is an authorized user of the service, provided that the use is in the "ordinary course of [the user's] business." 18 U.S.C. § 2510(4), (5)(a), (13), (15). Although there may be some daylight between our proposed reliance on the ordinary meaning of "intercept" and the government's proposed reliance on the "ordinary course of . . . business" requirement, either interpretation of "intercept" prevents the Wiretap Act from having the unconstitutionally expansive scope Burke claims. So his constitutional challenge fails either way.

### B. If "Intercept" Is Construed Broadly, the Wiretap Act's Exceptions Prevent the Government from Indicting Someone for Viewing Publicly Accessible Communications.

If the Court does not agree that the ordinary meaning of "intercept" controls, the Wiretap Act's exceptions nevertheless prevent the government from indicting someone who watches a video on a public webpage. Two exceptions are

7

relevant here: the Act does not apply where the defendant was a "party to the communication" or where the intercepted "electronic communication[s] [were] readily accessible to the general public." 18 U.S.C. § 2511(2)(d), (g)(i). Even if the Court construes "intercept" broadly, so as to reach a member of the general public's receipt of a video posted on a publicly accessible webpage, both exceptions would bar any such application of the Act. But, to be clear, the Court need not revisit its prior ruling that the exceptions are affirmative defenses as long as it does not construe "intercept" to have nearly limitless reach.

Begin with the "party" exception. A "party" is a "person . . . [who] participates in some action . . . [or] affair." *Party*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1416 (2d unabridged ed. 1987); *accord Party*, 11 THE OXFORD ENGLISH DICTIONARY 282 (2d ed. 1989) ("One who takes part, participates, or is concerned in some action or affair."). As a participant, a "party" is not an interloper but instead "ha[s] a part or share of or in" the activity. *Participate*, 11 THE OXFORD ENGLISH DICTIONARY 268 (2d ed. 1989). So a person is a "party" to a communication in ordinary language if he is authorized to receive it. And when a "communication" such as a video is posted on a publicly available website, *all* members of the public are necessarily "parties" to that communication.

8

The exception for accessing an "electronic communication [that] is readily accessible to the general public" would also likely apply to such a circumstance. 18 U.S.C. § 2511(2)(g)(i). Such an online video would likely be an "electronic communication" under Eleventh Circuit precedent. The Eleventh Circuit has held that "'electronic communications'" include "television programming." *United States v. Herring*, 993 F.2d 784, 787 (11th Cir. 1993). And there is no basis to distinguish television programming from online videos because the Wiretap Act defines wire and electronic communications with reference to their content. *See* 18 U.S.C. § 2510(1), (12). Thus, if television programming, which includes audio and video, is an electronic communication, an online video that also includes audio and video must be an electronic communication too, under circuit precedent. And of course, a video posted on a public-facing webpage is, by definition, "readily accessible to the general public." *Id.* § 2511(2)(g)(i).

Accordingly, the answer to the second half of the Court's Question (2) is yes: if "intercept" is interpreted broadly, as applying to anyone who watches a video posted on a public website, two of Section 2511's exceptions would bar that application because such a communication would be "readily accessible to the general public" and the viewer would be a "party to the communication." *Id.*

§ 2511(2)(d), (g)(i).

### C. If the Court Construes "Intercept" Broadly, as Applying to Anyone Who Views Publicly Accessible Communications, It Should Hold that the "Readily Accessible" and "Party" Exceptions Are Elements of a Wiretap Act Violation.

To the extent that the Court interprets the term "intercept" broadly—and contrary to its ordinary meaning—as applying to a member of the public who views a video posted on a public-facing website, the Court should reconsider its previous ruling that all the Act's exceptions are affirmative defenses. Order, Doc. 110 at 27 (Apr. 14, 2025). To be sure, the Court correctly concluded that under circuit precedent the "consent" exception is an affirmative defense. *Id.* at 16; *see United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972). But neither the holding nor the reasoning of *McCann* applies to *all* of the Act's exceptions. And a broad interpretation of the term "intercept" makes some of the those exceptions essential to the crime because they then "embod[y] the culpability of the offense." *United States v. Outler*, 659 F.2d 1306, 1309 (5th Cir. Unit B Oct. 1981).

"[L]anguage and structure" is first and foremost in the "three-part inquiry" to determine "whether an exception to a criminal offense is an element of the crime or an affirmative defense." *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997). "[A] *narrow* proviso to a more general statutory offense is more likely to be

an affirmative defense than an element of the offense." *Id.* (emphasis added). "[W]here one can omit the exception from the statute without doing violence to the definition of the offense, the exception is more likely an affirmative defense." *Id.* But, if an exception is so essential to the offense that its "elements . . . are not fully stated without the exception," the exception is not an affirmative defense. *Id.* (quoting *Outler*, 659 F.2d at 1310). So, for example, an "essential element of the crime of prescribing controlled substances is that a physician act 'without a legitimate medical reason,' even though" that requirement is not part of the "statutory definition of the crime." *Id.* at 1354 (quoting *Outler*, 659 F.2d at 1309). "Without behavior beyond professional practice, there is no crime," so that "element embodies the culpability of the offense." *Outler*, 659 F.2d at 1309.

1.    Beginning with the exception in Section 2511(2)(d), when "intercept" is construed broadly, proof that a defendant was not a "party to the communication" becomes an essential element of the offense. A reading of the Wiretap Act that fails to account for the ordinary meaning of "intercept" subjects anyone who uses a "device" to "acqui[re]" the "contents" of a "communication" to liability. 18 U.S.C. §§ 2510(4), 2511(1)(a). For example, the Act would cover a person who accepts an invite to a video conference or watches a YouTube video.

11

That result does not mean the Act violates the First Amendment as Burke argues. But it does establish that the Act's "language and structure" require that the government prove that a defendant was not a "party to the communication." *McArthur*, 108 F.3d at 1353. Otherwise, there is no "culpability" in the individual's conduct and, hence, "there is no crime." *Outler*, 659 F.2d at 1309.

*McCann* does not alter this conclusion. First, *McCann* dealt only with the "consent" exception. *See* 465 F.2d at 162. *McCann* does not say, or imply, that all of the Act's other exceptions are affirmative defenses. And in any event, "regardless of what a court says in its opinion, [a] decision can hold nothing beyond the facts of that case." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

Second, *McCann*'s ruling as to the "consent" exception is distinguishable. As noted above, one textual clue that an exception is an affirmative defense is that the exception is a "narrow proviso." *McArthur*, 108 F.3d at 1353. The "consent" exception fits that description because it applies only in unusual circumstances like when a person who "knew or should have known that the line he was using was *constantly* taped" places a sensitive phone call anyway. *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983). Seldom does someone have consent to snoop on the communications of others. The existence of "parties," by contrast, is

12

a necessary part of *every* communication. Both "wire" and "electronic communications" require a "transfer." 18 U.S.C. § 2510(1), (12). And a "transfer" cannot occur without one party to transmit the communication and another to receive it. *See Transfer*, 18 THE OXFORD ENGLISH DICTIONARY 395 (2d ed. 1989) (defining "transfer" and a "transmission" from "one place, person, etc. to another"). Rather than serving as a "narrow proviso," then, the "party" exception is integral to defining the "more general statutory offense." *McArthur*, 108 F.3d at 1353. Accordingly, *McCann* is distinguishable, and its ruling as to the "consent" exception ought not control how the Court views the "party" exception.

2.    Turning to the "readily accessible" exception, if this Court broadly construes "intercept," it should reconsider its prior ruling regarding this exception, too. Order, Doc. 110 at 18–19. Two points that suggest that the government must prove that an electronic communication was not readily accessible to the general public.

First, like the "party" exception but unlike the "consent" exception, the "readily accessible" exception is not a "narrow proviso." *McArthur*, 108 F.3d at 1353. Although this Court previously reasoned that exceptions to the same statute should be treated the same, Order, Doc. 110 at 27, the Court at that point had not

13

yet considered how the exception interacts with the term "intercept," *see id.* at 20–22. If anyone who uses a "device" to "acqui[re]" the "contents" of a "communication" is subject to liability, 18 U.S.C. §§ 2510(4), 2511(1)(a), the "readily accessible" exception cannot "be omitted . . . 'without doing violence to the definition of the offense,'" Order, Doc. 110 at 20 (quoting *McArthur*, 108 F.3d at 1353). Without reference to the exception, the statute would cover a person watching a video on YouTube. So, as with the "party" exception, "there is no crime" without reference to the "readily accessible" exception because it "embodies the culpability of the offense." *Outler*, 659 F.2d at 1309. As discussed, the "consent" exception is far narrower because rare is the situation in which a party to a communication authorizes someone to snoop.

Second, the Eleventh Circuit's binding decision in *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006), bears more on this issue than this Court initially realized. Order, Doc. 110 at 25–27. In the context of a civil action, *Snow* concluded that the "readily accessible" exception is an element of a violation of the Stored Communications Act, 18 U.S.C. § 2701(a). 450 F.3d at 1320–21. This Court reasoned that differences between the civil action in *Snow* and the criminal prosecution here justified different treatment of the exceptions. Order, Doc. 110 at 27. But, like the

14

Wiretap Act, the statute at issue in *Snow*, 18 U.S.C. § 2701(a), is also a criminal statute. And *Snow* reasoned that the prospect of criminal prosecution strengthened its conclusion that the "readily accessible" exception is an element of a violation, not an affirmative defense: "If by simply clicking a hypertext link, after ignoring an express warning, on an otherwise publicly accessible webpage, one is liable . . ., . . . the merely curious *would be prosecuted*." *Snow*, 450 F.3d at 1321 (emphasis added). Although the underlying substantive provisions differ, *Snow*'s reasoning is equally applicable to a broad construction of the Wiretap Act. "[I]ndividuals can easily and readily access websites hosted throughout the world," so it is essential that the government establish "that those communications [were] not readily accessible." *Id.*

3.    For these reasons, the answer to the Court's Question (3) is yes: it should reconsider its previous ruling that the exceptions at issue are affirmative defenses and instead hold that they are necessary elements of a Wiretap Act violation.

Such a conclusion would not mean that the government would have to reindict Burke. An indictment must "(1) present[] the essential elements of the charged offense, (2) notif[y] the accused of the charges to be defended against, and

15

(3) enable[] the accused to rely upon a judgment under the indictment as a bar against double jeopardy." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (citation omitted). Although an "indictment must contain every element of the offense charged," it need not "track the statutory language." *United States v. Stefan*, 784 F.2d 1093, 1101 (11th Cir. 1986). For example, an indictment that "did not expressly state that the crime was committed 'knowingly'" was sufficient because it nevertheless "necessarily impart[ed] an allegation of knowledge." *Woodruff*, 296 F.3d at 1046–47. And if an "indictment specifically refers to the statute on which the charge was based, the statutory language may be used to determine whether the defendant received adequate notice." *Stefan*, 784 F.2d at 1101–02 (quoting *United States v. Chilcote*, 724 F.2d 1498, 1505 (11th Cir. 1984)).

Here, although the indictment does not specifically refer to the "party" and "readily accessible" exceptions, it "necessarily impart[s] . . . allegation[s]" that Burke was not a party and that the video streams were not readily accessible. *Woodruff*, 296 F.3d at 1047. The indictment "specifically refers to the statute" under which Burke is charged. *Stefan*, 784 F.2d at 1101; Indictment, Doc. 1 at 21 (Feb. 15, 2024) ("Indictment") (citing 18 U.S.C. § 2511(1)(a)). It is replete with allegations that Burke "gain[ed] unauthorized access" and that the video streams required

16

"credentials" to gain access. *E.g.*, Indictment ¶¶ 1, 10, 12, 22. Most directly, the indictment alleges that the communications that Burke intercepted were transmitted through a service "designed to limit access to only authorized customers through the Internet via a secured password-protected website that required customers to first enter assigned credentials before gaining access." *Id.* ¶ 12. Aside from "track the statutory language," which it is not required to do, *Stefan*, 784 F.2d at 1101, there is little more than the government could do to notify Burke that he is charged with intercepting communications that were not publicly available and to which he was not a party.

* * * * *

Taken together, the "party" and "readily accessible" exceptions vitiate any constitutional concerns about the Wiretap Act. Those exceptions encompass a broad range of innocent activity, from participating in a video conference to watching a YouTube video. They are essential to distinguishing between innocent and criminal conduct if the Court construes "intercept" broadly. And holding that they are elements of the offense renders Burke's constitutional challenge unavailing.

## II. There Is No Other Basis for Dismissing the Indictment.

Burke and one of his amici, the Electronic Privacy Information Center,

launch two additional challenges to the sufficiency of the indictment, but neither is persuasive. First, Burke argues that the government cannot now contend that the video streams were electronic communications instead of wire or oral communications. Mot. to Dismiss at 3. As discussed, the video streams at issue likely constitute electronic communications. *See Herring*, 993 F.2d at 787. But whether or not that is so, this debate has no bearing on the sufficiency of the indictment. If a "statute lists multiple means of committing the offense and the government's indictment against the defendant charges two or more of them conjunctively, the government may prove one or more of them at trial in the disjunctive." *United States v. Kincherlow*, 88 F.4th 897, 905–06 (11th Cir. 2023). "The conjunctive/disjunctive rule is not just the law of this circuit; it is the law of . . . every other circuit with a criminal caseload as well." *Id.* at 907 (Ed Carnes, J., concurring). Here, the indictment alleges that the video streams were "wire, oral and/or electronic . . . communications," *e.g.*, Indictment ¶ 1, and so the government need not reindict Burke to prove that the video streams were only electronic communications. The Court may simply instruct the jury on the definitions of "electronic communication" and "wire communication" and let the jury find whether the government has proven either.

Second, the Center's argument that Burke became a "party" to the video streams once he accessed them is a non-starter. Amicus Br. of Elec. Priv. Info. Ctr., Doc. 143 at 5–6, 9–10 (June 26, 2025). The unauthorized use of someone else's login credentials to gain access to a private and secure "communication" is *the very definition* of "intercepting" that communication. And the fact that the video streams transferred content to Burke's computer does not make him a "direct party," either. *Id*. at 9–10. The Center would perversely turn Burke's use of a device to acquire the content of the video streams—use that is part of the definition of "intercept," 18 U.S.C. § 2510(4)—into a defense for Burke.

At the end of the day, the Center's contention that by his very act of "intercepting" the communication—and thus violating the Act—Burke thereby became a "party" to the communication—and exempted himself from the Act— makes no sense and would *nullify* Congress's handiwork. For by the Center's lights, *everyone* who uses a device to intercept a communication would thereby become a party to the communication and thus exempt from liability. That is not the law. Burke had no right to access the video streams at issue, so he was not a party to them, and he thus necessarily "intercepted" their content.

19

## CONCLUSION

The Wiretap Act does not presumptively proscribe lawful information gathering online. It prohibits only the unauthorized acquisition of the communications of others. Burke's constitutional challenge fails at the outset. And so too do the other arguments for dismissing the indictment.

Dated: July 11, 2025                          Respectfully submitted,

                                             /s/ Jason Gonzalez

John D. Ohlendorf*                           Jason Gonzalez (FBN: 146845)
Adam P. Laxalt*                              LAWSON HUCK GONZALEZ, PLLC
COOPER & KIRK, PLLC                          215 South Monroe St., Suite 320
1523 New Hampshire Ave.,                     Tallahassee, FL 32301
NW                                           (850) 825-4334
Washington, DC 20036                         jason@lawsonhuckgonzalez.com
(202) 220-9600                               marsha@lawsonhuckgonzalez.com
johlendorf@cooperkirk.com                    michelle@lawsonhuckgonzalez.com
alaxalt@cooperkirk.com

*Admitted Pro Hac Vice

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

filed via the Courts CM/ECF, and a copy of said document has been served on

all counsel of record this July 11, 2025.

By: <u>/s/ Jason Gonzalez</u>
Attorney