UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO.: 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE

_____/

## DEFENDANT TIMOTHY BURKE'S MOTION FOR RULE 17(c) SUBPOENAS TO COMPEL EARLY PRODUCTION OF DOCUMENTS

COMES NOW, Defendant Burke, by and through the undersigned counsel and moves for the issuance of the attached subpoenas duces tecum pursuant to Fed.R.Crim.P. 17(c) and to make the subpoenas returnable to counsel for Defendant within 21 days. This motion is made on the grounds that the requested documents are evidentiary, relevant, not otherwise procurable, necessary for trial preparation, and sought in good faith. In support thereof, Defendant states as follows:

1.  The Indictment and defenses thereto relate to questions about whether or not journalist Tim Burke had a right to access certain computers, information on those computers, or whether certain communications (including interviews, videos, etc.) were obtained from servers that were configured to be readily accessible to the general public.

2.  In addition to the charges in the Indictment, the government intends to offer evidence, pursuant to F.R. Evid. 404(b) - either in its case in chief, or in its potential rebuttal case, about other instances in which Mr. Burke allegedly disseminated newsworthy information. The government has listed as "victims" of the journalists' publications entities like ESPN, FedNet, National Basketball Association, StreamCo Inc, Broadcaster-2 Corp., Broadcaster-1 Broadcasting, Hearst Communications, MSNBC and Extreme Reach.

3.  The bulk of the information provided by the government pursuant to Rule 16 are materials it obtained from searches of Mr. Burke's computers, those of the co-defendant, Mr. Gaudino, and those which were provided to the government from entities like "StreamCo," "Network-1," "Network-2" and "National Sports Network." We use these terms in this Motion, but the subpoenas themselves include what we assume are the true names of these entities.

4.  However, this information is incomplete and does not include substantial information which, if in the possession of the government or grand jury, would be producible not only under Rule 16, but under the due process provisions of *Brady* and *Giglio*. A few examples illustrate this point.

5.  As the affidavit in support of the search warrant indicates, after Network-2 discovered that the portions of the interview between Tucker Carlson and Kanye West that it had edited out of its network broadcast (sanitized) had

been published online, they engaged several law firms and forensics firms to investigate this apparent leak. The government contends that this investigation cost up to $800,000. However, the only documents produced by the government related to this exhaustive forensic investigation is a short referral document from two of the law firms with little forensic backup and no evidence to support these facts or the $800,00 figure. This information is available only from its source.

6. Much of the case may involve information about things like StreamCo's terms of use, configurations, network designs, authorizations, etc., none of which have been provided by the government in discovery. For example, the government has not indicated whether or not the website of StreamCo contained any access controls, terms of use, terms of service, or other logons, what StreamCo's policies were regarding access, sharing of passwords, use of passwords, creation and use of "demonstration" or "demo" passwords, all of which are critical in this case.

7. With respect to Network-2, the Indictment contends that the intercepted "oral" communications were made "by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation" (18 USC 2511(2)), but has provided no discovery to support this allegation. A subpoena duces tecum to both Network-2 and to the parties to the alleged communication is necessary to establish or dis-establish these facts.

8. With respect to the 404(b) information, the proposed subpoenas call for production of basic identifying and configuration information which have not been provided by the government in discovery.

9. The documents are essential for the defense to adequately prepare for trial. They contain information that is critical to understanding the context of the alleged offenses and to formulating a defense strategy.

10. The defense seeks these documents in good faith, with the sole purpose of ensuring a fair trial for the defendant. There is no intention to delay proceedings or to engage in a fishing expedition.

## Memorandum of Law

Under Federal Rule of Criminal Procedure 17(c), a party may seek the production of documents prior to trial if they meet certain criteria. To require production before trial, the requesting party must show: (1) the documents requested are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the requesting party cannot properly prepare for trial without production and inspection of the documents in advance of trial and failure to obtain the documents may tend unreasonably to delay the trial; and (4) the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Gow*, No. 2:17-CR-16-FTM-29CM, 2018 WL 6618654, at *4 (M.D. Fla. Dec. 18, 2018) citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). Put another

4

way, the party seeking a pretrial production under a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700.

In each instance, the documents requested by the defense meet the criteria set forth in Rule 17(c) for the following reasons:

**Relevant:** The documents are directly related to the charges against the defendant and are expected to contain information that will be used to challenge the prosecution's evidence and support the defense's case.

**Admissibility:**

A predetermination of the admissibility of the subpoenaed material is not the criterion of the validity of the process. *United States v. Jannuzzio*, 22 F.R.D. 223, 226 (D. Del. 1958) It need only appear that the subpoena is being utilized in good faith to obtain evidence. *Id.* citing *Bowman Dairy Co. v. U. S.*, 1950, 341 U.S. 214, 219–220, 71 S.Ct. 675, 95 L.Ed. 879. There are other valid potential evidentiary uses for the same material. U*nited States v. Nixon*, 418 U.S. 683, 701–02, 94 S. Ct. 3090, 3104, 41 L. Ed. 2d 1039 (1974)

**Specificity:**

As the *Nixon* Court held, "the contents of the subpoenaed [documents]" need not "be described fully" by the moving party, provided there is "a sufficient likelihood" based on evidence combined with "rational inference[s]" that the subpoenaed documents contain relevant evidence. *Id.* Moreover, where a

5

defendant knows that the material sought exists and can identify it specifically, even if he is ignorant of the exact content of the material, the specificity requirement of Rule 17(c) can be met. *United States v. Weisberg, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011), citing United States v. Rajaratnam*, 2011 WL 507086, *1 n.1 (S.D.N.Y., February 15, 2011) ("[I]n the context of a subpoena to a third party …, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity"). If a "request is sufficiently narrowly focused on a group of records likely to contain helpful documents" then the moving party "cannot be said to be engaging in a 'fishing expedition.'" *Weisberg, supra*, at *7.

"[I]n this Circuit", unlike in some other circuits, "impeachment materials may be subpoenaed by a Rule 17(c) subpoena." *United States v. Brown*, 2013 WL 1624205, *4 (S.D. Fla., April 15, 2013), *citing United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) (holding that the district court properly denied the defendant's motion to quash the Government's Rule 17(c) subpoena because "[t]he subpoenaed [Florida Bar] complaints clearly possessed evidentiary potential for impeachment purposes if Silverman, in his testimony, denied that he had ever taken advantage of a client ….").

Impeachment material obtainable under Rule 17(c) includes evidence of a witness's prior inconsistent statements. *United States v. Skelos*, 2018 WL 2254538, *2 (S.D.N.Y., May 17, 2018) ("documents containing prior statements of a witness

6

that are inconsistent with that witness's testimony at trial can be admissible under Federal Rule of Evidence 613, and so can be the proper subject of a Rule 17(c) subpoena"); *United States v. Ferguson*, 2007 WL 4577303, *3 (D. Conn., December 26, 2007) (holding that prior inconsistent statements of testifying witnesses are "properly within the scope of [a] Rule 17(c) subpoena"). In addition, "[d]ocuments bearing on a witness's decision to 'cooperate with the government' or any bias" "can be proper subjects of a Rule 17(c) motion because those types of documents may themselves be admissible into evidence."*United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), aff'd, 988 F.3d 645 (2d Cir. 2021) *citing United States v. Orena*, 883 F. Supp. 849, 869 (E.D.N.Y. 1995); *United States v. Cavollo*, No. 10 CR 654 HB, 2012 WL 1195194, at *2 (S.D.N. Y. Apr. 9, 2012) (holding that evidence of "bias or a motive on the part of [the witness] to cooperate with the government" is proper subject of Rule 17(c) subpoena). Similarly, documents containing prior statements of a witness that are inconsistent with that witness's testimony at trial can be admissible under Federal Rule of Evidence 613, and so can be the proper subject of a Rule 17(c) subpoena. *United States v. Ferguson*, No. 3:06-CR137(CFD), 2007 WL 4577303, at *3 (D. Conn. Dec. 26, 2007) (holding that prior inconsistent statements of testifying witnesses are "properly within the scope of [a] Rule 17(c) subpoena").

7

With this standard in mind, we turn to each of the proposed subpoenas related to the Charges and defenses:

| Organization | Summary of Subpoenaed Information |
| --- | --- |
| National Sports League (NSL) aka National Basketball Association (NBA) | Records related to Burke's employment with NSL teams. Records related to NSL's use of and deployment of FTP sites, authorizations to use FTP sites. NSL FTP server configuration as it relates to the NSL network infrastructure. Documentation describing policy for creating accounts for the NSL FTP server, FTP server system logs and internal reports or investigations between 1/1/2022 and 12/31/2023 for username flipfactory. |
| StreamCo Inc. aka LiveU | Information related to the acquisition and disposition of the credentials related to StreamCo in general and demo credentials in particular. StreamCo data regarding unauthorized access to StreamCo or compromised credentials from 1/1/2022 to 12/31/2023. Unprivileged Communications between StreamCo Inc. and the DFIR (Digital Forensics and Incident Response) firm hired by Broadcaster-2. Contracts between StreamCo Inc. and Broadcaster-1 and Broadcaster-2 Documentation detailing the infrastructure and network design of the StreamCo Matrix platform Internal policies, agreements, or guidelines access to StreamCo, |

| | |
|---|---|
| | including but not limited to those specifying authorized users, partners, and third parties and policies on the issuance of demo credentials. Manifest of files that would be loaded on a computer that logged in through a StreamCo Matrix demo user ID and password. Documentation describing the procedure for who/how/when demo account credentials are generated for the StreamCo Matrix platform. Custodial procedures such as default permissions, inactive account actions, and mandatory password reset timelines should be included as well. Documentation describing use of warning banners within the StreamCo Matrix platform (i.e. EULA, TOS, Acceptable Use, etc). Documentation detailing the process of how BIDS are generated in the StreamCo Matrix platform. Documentation detailing how the StreamCo Matrix preview streams technically function. StreamCo Matrix system logs and change control logs/tickets from 1/1/2022 through 12/31/2023 for username Broadcaster-1-matrix-demo. StreamCo Matrix sales and marketing materials used between 1/1/2022 and 12/31/2023. StreamCo Matrix Terms of Service used between 1/1/2022 and 12/31/2023 and how they were displayed. StreamCo Matrix documentation describing password requirements (complexity, lifespan), utilization |

| | |
|---|---|
| | within the platform and password sharing policy.<br>Documentation regarding multi factor authentication capabilities for StreamCo Matrix accounts. |
| Broadcaster-1 aka CBS/Rutherford Group/WGNS | Records related to Broadcaster-1 use of StreamCo Inc. services, contracts and agreements regarding use of StreamCo credentials including credential selection and password sharing.<br>Communications between Broadcaster-1 DOJ, and FBI, the DRIR firms and law firms hired by Broadcaster-2.<br>Information regarding the posting by Broadcaster-1 of the StreamCo credentials to the web and to the Internet archive on 1/16/2022.<br>Broadcaster-1 Computer Use Policy<br>Broadcaster-1 Data Classification Policy<br>StreamCo System Logs for user Broadcaster-1-matrix-demo between 1/1/2022 through 12/31/2023.<br>StreamCo Inc. sales and marketing materials received by Broadcaster-1 |
| Broadcaster-2 aka Fox | Unprivileged copies of investigative reports created by Stroz Friedberg at the direction of counsel for Broadcaster-2 and shared with U.S. government in whole or in part.<br>Records related to "damages" or "losses" suffered by Broadcaster-2 as a result of the alleged breach or interception.<br>Records relating to "reasonable expectation of privacy" of participants in allegedly intercepted |

10

|  | communications, (including Kanye West and Tucker Carlson) including contracts, promises, emails and related communications. Communications between Broadcaster-2 and StreamCo Inc. Documents showing the identity of all participants in allegedly intercepted communications, including rosters, show notes, etc. Documentation for StreamCo Matrix system configuration for Broadcaster-2. Broadcaster-2 Computer Use Policy. Broadcaster-2 data classification policy. StreamCo Inc. sales and marketing materials received by Broadcaster-2. Copy of investigation report performed by Stroz Friedberg and provided to Broadcaster-2. |
|---|---|
| Holland & Knight | Unprivileged copies of report of investigation and directions given to Stroz Friedberg related to investigation of access to StreamCo and Broadcaster-2 |
| Norton Rose Fulbright | Unprivileged copies of report of investigation and directions given to Stroz Friedberg related to investigation of access to StreamCo and Broadcaster-2 |
| Stroz Friedberg | Unprivileged copies of report of investigation and directions given to Stroz Friedberg related to investigation of access to StreamCo and Broadcaster-2 |
| Wilson Sonsini | Unprivileged report of |

11

| | |
|---|---|
| | investigation related to Broadcaster-2 created by Stroz Friedberg at direction of Wilson Sonsini and shared totally or partially with U.S. government. Evidence related to "costs" or "losses" suffered by client Broadcaster-2. |
| FedNet | Access Logs and IP History; License Agreements; Cease and Desist Letters; Access and Use Policies; Internal Communications |

Related to 404(b) or Corporate Victims Evidence

| Organization | Item(s) Description |
|---|---|
| ESPN Inc. | Documentation related to the acquisition and disposition of ESPN FTP credentials in general and user graphics07 in particular. ESPN FTP Server logs for user graphics07 between 8/1/2020 and 12/31/2023. Communications and information related to Vimeo video uploaded 5/1/2020 titled Understanding Viz Deployment Emails narrated by ESPN employee May Forges (ESPN, Motion Graphics). Communication(s) and information related to Vimeo video uploaded 5/1/2020 titled Understanding Viz Deployment Emails that contain ESPN FTP credentials in an email sent by ESPN employee Viktoria Marti (ESPN, Motion Graphics Designer II) to 137 |

| | |
|---|---|
| | recipients.<br>Policy and procedure documentation related to the use of the ESPN Motion Graphics Vimeo Account.<br>Account activity history for ESPN Motion Graphics Vimeo account between 1/1/2020 and 12/31/2023.<br>ESPN Data Classification Policy. |
| TVU Mediasource | Records related to Burke's access to January 6, 2020 videos at the U.S. Capitol.<br>User agreements or terms of use or terms of service of TVU MediaSource.<br>Records related to the account of Timothy Burke at TVU MediaSource.<br>Records relating to Cease and Desist letter and responses thereto to Timothy Burke<br>Records related to ownership of copyright to videos of the U.S. Capitol allegedly infringed by Timothy Burke.<br>Contracts between TVU and FedNet related to ownership of copyright of FedNet broadcasts. |
| TVEyes | Records related to Tim Burke's access to TVEyes streaming platform.<br>Records related to Marco Gaudino's access to the TVEyes streaming platform |

The materials sought by the attached subpoenas are relevant and evidentiary, they are not otherwise procurable in advance of trial by exercise of due diligence, Defendant cannot properly prepare for trial without such production in advance of trial, and this application is targeted for specific

13

documents and made in good faith. Accordingly, the Court should issue the attached subpoenas.

WHEREFORE, Defendant respectfully requests that this Court grant the motion to compel the early production of documents pursuant to Federal Rule of Criminal Procedure 17(c).

## LOCAL RULE 3.01 CERTIFICATION

In accordance with Middle District Local Rule 3.01(g), the undersigned certifies that he has conferred, in good faith, with counsel for the Government who does not object to the requested relief. Specifically, the United States has no objection to the submission of the *Motion to Compel Early Production*, for the prospective subpoenas and summary of materials indicated in the chart of the motion. Mr. Duso has reviewed the Government's discovery productions to date; to the extent that Court agrees the materials summarized in the motion are evidentiary and relevant and that Mr. Burke can show that these materials are not otherwise procurable in advance of trial by other means, the Government agrees the use of a 17(c) subpoena to obtain them is appropriate.

Respectfully submitted,


| | |
|---|---|
| s/Michael P. Maddux | s/Mark D. Rasch |
| Michael P. Maddux, Esquire | Mark D. Rasch |
| Florida Bar # 964212 | Law Office of Mark Rasch |
| Michael P. Maddux, P.A. | Member, MD, MA, NY Bar |
| 2102 West Cleveland Street | MDRasch@gmail.com |
| Tampa, Florida 32606 | (301) 547-6925 |
| Phone: (813) 253-3363 | Admitted *Pro hac vice* |
| Fax: (813) 253-2553 | |
| Email: | |
| mmaddux@madduxattorneys.com | COUNSEL FOR TIMOTHY BURKE |
| ctonski@madduxattorneys.com | |


**CERTIFICATE OF SERVICE**

   **I HEREBY CERTIFY** that on this 30th day of July 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.


                                             s/*Michael P. Maddux*
                                             Michael P. Maddux, Esquire