AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 8:24-CR-00068-KKM-TGW |
| TIMOTHY BURKE | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE**

To: LiveU Inc.

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

See Attachment A

| Place: Michael P. Maddux, PA, 2102 W. Cleveland St., Tampa, FL 33606 | Date and Time: |
|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

(SEAL)

Date: _____

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Timothy Burke , who requests this subpoena, are:

Michael P. Maddux, Esq. Michael P. Maddux, PA, 2102 W. Cleveland St., Tampa, FL 33606; mmaddux@madduxattorneys.com; 813-253-3363

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

Case No.  8:24-CR-00068-KKM-TGW

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

### Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

    **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

    **(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

    **(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE
_____/

## SUBPOENA ATTACHMENT A

TO: Custodian of Records
LiveU Inc.
2 University Plaza Drive, Suite 505
Hackensack, NJ 07601

**YOU ARE COMMANDED** to produce at the time, date, and place set forth in the attached Subpoena the following books, papers, documents, data, or other objects:

1. Records concerning the acquisition, assignment, issuance, sharing, or compromise of all user credentials associated with the LiveU Matrix platform, including internal demo credentials and demo access used by third parties.

2. Policies, internal memoranda, user manuals, and procedural documents describing the creation, authorization, and sharing of demo credentials for the LiveU Matrix platform, including custodial rules, authentication protocols, default access permissions, time limitations, account expiration, and password reset timelines.

3. A complete list identifying all individuals or entities issued LiveU Matrix demo account credentials from January 1, 2022 through December 31, 2023, including usernames, issuing party, dates of issuance, and any expiration, suspension, or termination notations.

4. All logs, session metadata, server access records, authentication records, and IP address logs reflecting access to the LiveU Matrix platform from any IP address associated with Timothy Burke (IP address 47.197.207.14) or Marco Gaudino (IP address 67.183.179.97) during the period from January 1, 2022 through December 31, 2023.

5. Records reflecting any configuration settings, access control mechanisms, or security protocols applicable to the IP addresses and BID values used to access LiveU Matrix demo content, specifically identifying whether such configurations required additional login, token-based, or multifactor authentication, or were accessible directly by IP address or BID.

6. A copy of the home screen and user interface presented on the landing page of https://www.liveu.tv as it existed on January 16, 2022, including any pop-ups, banners, click-through agreements, or other mechanisms for displaying Terms of Service or Acceptable Use Policies.

7. All versions of the Terms of Service, End User License Agreements (EULAs), or Acceptable Use Policies applicable to demo account access to the LiveU Matrix platform in effect between January 1, 2022 and December 31, 2023, including associated enforcement protocols or notice procedures.

8. Contracts, license agreements, amendments, addenda, and related correspondence between LiveU Inc. and CBS Broadcasting Inc. (CBS) or Fox News Network, LLC (Fox News) related to the provision and use of the LiveU Matrix platform, with particular focus on provisions governing user credential management, third-party access, and password sharing or redistribution.

9. User access policies, security standards, onboarding documents, and compliance guidelines concerning account authorization, password security, credential revocation, and data access limitations applicable to LiveU Matrix during the period from January 1, 2022 to December 31, 2023.

10. Internal network configuration documents, infrastructure diagrams, API documentation, and systems engineering materials describing the deployment architecture of the LiveU Matrix platform.

11. Logs and change control tickets for user account "Broadcaster-1-matrix-demo" from January 1, 2022 through December 31, 2023, including all related administrative and login activity.

12. Sales and marketing materials describing the LiveU Matrix platform, demo account features, and user capabilities provided to third parties between January 1, 2022 and December 31, 2023.

13. Documentation describing how BIDS (Broadcast Identifier values) are generated, assigned, and mapped within the Matrix platform, and how preview streams function, including any system behaviors that govern default access.

14. Documentation on LiveU's implementation of multi-factor authentication (MFA), inactive session timeouts, credential expiration, and other access control measures.

15. Records describing the presence, use, or enforcement of warning banners, disclaimers, or system-level alerts within the LiveU Matrix platform, including any legal notices presented at login or content access screens.

16. Communications among engineers/administrators discussing lack of authentication or encryption.

17. Any internal audits assessing risk or exposure through demo credentials or JSON feeds.

18. Policies or logs on monitoring access to Matrix streams and credential usage.

19. Records showing how CBS and others received demo credentials and any restrictions imposed.

20. Reports of LiveU's internal investigation and whether an audit was performed to assess other unauthorized uses.

21. Documentation showing whether demo users were automatically shown third-party credentials or feeds.

22. Contracts or engagement letters with forensic firms (e.g., Stroz Friedberg).

23. Communications with counsel (Holland & Knight, Norton Rose Fulbright, Wilson Sonsini) about security, investigation, and responses.