UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

                                Case No. 8:24-cr-68-KKM-TGW

v.

TIMOTHY BURKE

## UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE CERTAIN ASPECTS OF PROPOSED EXPERT OPINION TESTIMONY OF MR. ADAM SHARP

The United States respectfully moves for an order *in limine* to preclude the defendant from presenting certain aspects of the proposed expert opinion testimony of Mr. Adam Sharp. The proposed testimony would be irrelevant and not helpful to the jury in understanding and deciding the facts in issue and would instead inject information into the trial that would only materially confuse the issues and mislead the jury. *See* Fed R. Evid. 401-403. For example, the defense disclosure concerning Mr. Sharp notes, *in multiple sections*, that Burke hopes to offer testimony at trial concerning the practices of unidentified "industries" and their "password sharing" practices, testimony which would stretch well-beyond the bounds of acceptable expert witness testimony in this case charging Burke and a co-conspirator with particular computer intrusion and wiretap activity. Indeed, as explained below, this intended industry-practice evidence poses a very real threat of confusing the jury and detracting from relevant information about Burke's conduct and that of his co-

conspirator. The government further requests that, given the highly irrelevant and confusing nature of this proposed testimony, in addition to limiting the testimony of the proposed defense expert, the defendant also be precluded from describing the inadmissible aspects of Mr. Sharp's proposed testimony in the defendant's opening statement.[1]

## INTRODUCTION

In a letter dated April 4, 2025, attached as Exhibit 1 (hereinafter, the "April 4 Disclosure Letter"), Burke's counsel notified the United States that Burke intends to call Mr. Adam Sharp as a defense witness, who is described as an expert in data recovery, forensic analysis, e-discovery, and cybersecurity. Mr. Sharp is presently employed as the President and CEO of Data Recovery Labs, Inc. and E-Hounds, Inc., which are both organizations that purport to specialize in data recovery and computer forensics.

The April 4 Disclosure Letter does not specify any opinions that will be elicited from Mr. Sharp. Rather, it sets forth six broad, and often irrelevant, subject matter areas about which Mr. Sharp is expected to testify. In sum, the letter identifies the following areas of proposed discussion:

---

[1] *See United States v. Clarke*, 159 Fed. Appx 128, 132–33 (11th Cir. 2005) (court can exclude irrelevant facts and preclude legal argument in opening statement); *see also United States v. Libutti*, 1994 WL 774646 at *1 (D.N.J. Feb. 8, 1994) ("In light of defendant's incomplete proffer, the defense was precluded from mentioning the compulsive gambling disorder theory and the proposed expert testimony in the opening statement.").

1. The structure and operation of various internet protocols, methods of data transmission using those protocols, and the role of encryption in securing communications. This area of focus includes application of these concepts to live streaming technologies. Exhibit 1 at 2.

2. *Industry common practices related to the creation and use of 'user credentials,'* to include usernames, passwords, and other access devices. The letter suggests that the witness will explain about *industry practices related to the use of 'demo' or 'demonstration' credentials*, to include password sharing and the lack of unique identifiers. Exhibit 1 at 2.

3. Details about the 'Wayback Machine,' a product made available by the non-profit Internet Archive organization, which will explain how web content available through this service is archived, retrieved, and accessed publicly. Mr. Sharp is also anticipated to discuss the effectiveness of methods used by web content publishers to attempt to prevent the Internet Archive and other services from obtaining web provider content. Exhibit 1 at 3.

4. Further elaboration on *"password sharing practices across industries," including in the context of 'demo' accounts*. This elaboration is purported to include technical limitations of enforcing single-user credential use, and *the "commonality of such practices in commercial and testing environments."* Exhibit 1 at 3.

5. Expert insight into the "structure of the dark web and deep web" to include discussion on locating materials in these areas, use of specialized search tools, and other methodologies. Mr. Sharp is expected to testify related to the identification of compromised data and credentials in non-public Internet spaces. Exhibit 1 at 3.

6. Testimony as to "standard methodologies for conducting cyber threat research, the role of credential monitoring, web scraping detection, and threat intelligence platforms used to identify unauthorized access or misuse of credentials and data." Exhibit 1 at 3.

The United States does not object to all the proposed testimony of Mr. Sharp. For example, Mr. Sharp's proposed testimony concerning the structure and operation of Internet protocols, including HTTP, RTMP, FTP, and others is likely relevant to the issues raised by this case. His proposed testimony concerning live

streaming technologies and a related discussion about how IP addresses are assigned and function is also likely relevant. That said, a significant amount of the anticipated testimony of Mr. Sharp is not expert opinion testimony at all; and worse, it is not even relevant to a determination of the facts of consequences in this case.

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is "relevant" only if it has a "tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401; *see, e.g., United States v. Matthews*, 431 F.3d 1296, 1309 (11th Cir. 2005). Thus, the determination of relevance has two parts: the evidence must tend to prove the matter sought to be proved, but the matter sought to be proved must also be one that is of consequence to the determination of the action. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981).

Further, any probative value of other aspects of Mr. Sharp's anticipated testimony is substantially outweighed by the danger of confusing and misleading the jury, undue delay, and wasting time, and also should be excluded under Fed. R. Evid. 403.

## MEMORANDUM OF LAW

    A.    Certain Aspects of the Proposed Expert Testimony of Mr. Adam Sharp Should Be Excluded Because It Will Not Assist the Jury to Understand the Evidence or Determine a Fact in Issue.

The Eleventh Circuit has emphasized that Federal Rule of Evidence 702 is the "starting point" for an analysis of the admissibility of exert testimony and the

4

reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258-59 (11th Cir. 2004). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.

To implement Rule 702, the Supreme Court requires the district court to perform the critical "gatekeeping" function concerning the admissibility of both scientific and technical evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, n.7 (1993); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, the trial court must conduct an "exacting analysis" of the foundations of expert testimony to ensure they meet the standards for admissibility under Rule 702. *Frazier*, 387 F.3d at 1260, quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

The Eleventh Circuit has emphasized the importance of the trial court's analysis of expert testimony because "no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Frazier*, 387 F.3d at 1260, quoting Fed. R. Evid. 703. In other words, an expert's testimony can be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

5

In this Circuit, the Court should conduct a "rigorous three-part inquiry" to determine the admissibility of expert testimony. As the *Frazier* Court explained, the trial court must consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

387 F.3d at 1260, citing *City of Tuscaloosa v. Harcros Chems, Inc.,* 158 F.3d 548, 562 (11th Cir. 1998). Moreover, although there may be some overlap between these requirements, they remain distinct concepts and the court must take care not to conflate them. *Id.*, citing *Quiet Technology DC-8 v. Hurel-Dubois UK LTD.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

The burden of establishing these three basic requirements always falls upon the proponent of the expert testimony. *Frazier*, 387 F.3d at 1260; *Cook ex rel. Estate of Tessler v. Sheriff of Monroe Cty.,* 402 F.3d 1092, 1107 (11th Cir. 2005) ("The proponent of the expert testimony carries a substantial burden under Rule 702."). Here, the defendant must carry his burden by describing how the proposed testimony would assist the jury in understanding the evidence or to determine a fact in issue.

Burke has not and cannot meet his burden with regard to significant aspects of the proffered testimony of Mr. Sharp. As outlined in the Indictment, ***the facts of consequence are properly limited to those that concern Burke's conduct and interactions***

6

*with co-conspirator Marco Gaudino, and others, from in or around February 2022 and continuing into May 2023 in furtherance of the specified objects, efforts, and acts alleged in Count One of the charged conspiracy and related substantive counts*. Doc. 1. As alleged in the conspiracy, Burke and Gaudino secured compromised credentials of entities and then used those entities' credentials to gain unauthorized access to said entities' protected computers. *Id*. at §§ C and D. Then, having done so, Burke and Gaudino are alleged to have scoured the protected computers and obtained and stolen from them information they desired, to include protected information which was then used to exploit the StreamCo-Net preview function so that they could steal information and intercept the contents of wire and electronic video communications being transmitted across the StreamCo-Net by its broadcaster- customers. *Id*. Burke is not charged with misuse of credentials in some undefined way to obtain access to protected computers across some unidentified industry. As a result, much of the anticipated testimony is irrelevant to this case or lacks any significant probative value.

Moreover, the proffered anticipated testimony from Mr. Sharp concerning "the standardized methodologies for conducting cyberthreat research, the role of credential monitoring, web scraping detection, and threat intelligence platforms used to identify unauthorized access or misuse of credentials and data," (*see* Exhibit 1 at 3), is irrelevant to Burke and Gaudino's concerted conduct to intrude upon protected computers. While such discussion would fit well in various seminars and lectures, in this case such information would offer nothing more than to confuse the jury about

7

the issues to be decided and work to improperly shift blame to the victims for claimed security vulnerabilities of the victims' platforms and systems, rather than upon the affirmative conduct of the defendants in using the compromised credentials they obtained, which would be misplaced. Suggesting, directly or indirectly, that better security could have prevented Burke and Gaudino from completing their criminal goals only serves to confuse the jury, misstate the law, and is not relevant to a charged conspiracy nor is it a valid defense to the charges raised in this case.

In the end, *expert testimony may only be admitted if it will "assist the trier of fact."* As the Supreme Court explained in *Daubert*, this condition of Rule 702 "goes primarily to relevance." 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful."). Another aspect of this analysis is whether expert testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id*. Indeed, even a reliable opinion expressed by a genuinely qualified expert may not be deemed "helpful" to the jury if it is not relevant to a fact at issue. *Quiet Tech*, 326 F.3d at 1341.

In general, expert testimony encompasses matters that are "beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262, citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). On the other hand, proffered expert testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. Moreover, because of the "powerful and potentially misleading effect of expert evidence," otherwise admissible expert testimony may still be excluded under Fed. R. Evid.,

403. *Frazier*, 387 F.3d at 1263 (exclusion appropriate if probative value of otherwise admissible evidence is substantially outweighed by the potential to confuse or mislead the jury). Expert testimony may also be excluded if it is cumulative or needlessly time consuming. *Id.*, citing *Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir. 1985). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.* at 1263.

    B.    Extensive, Generalized Expert Testimony regarding "Industry Practice" is Irrelevant, Prejudicial, and Likely to Confuse Issues or Mislead the Jury.

Most alarmingly, spread across the April 4 Disclosure Letter—at item 2 (user credentials and demonstration accounts), item 4 (password sharing practices and limitations), and item 6 (cyberthreat research methodology)—are numerous references to "industry practices" and other like references. What industries? What password sharing practices? The "industries" referred to in the April 4 Disclosure Letter are unidentified. Likewise, the "password sharing" practices for those unidentified industries are not specified or described, or otherwise referenced in any way to inform about how a particular practice might be tied to the charges raised by the indictment in the case. Thus, while a brief explanation of user credentials would likely relate to a matter of consequence to the determination of this case (assuming it is offered within the context of the charges raised), a discussion of general "industry practice" surrounding nebulous topics such as "demonstration accounts," "password

9

sharing practices," and the like, are well beyond the bounds of acceptable expert opinion testimony in this computer intrusion and wiretapping case. This case concerns the charged conspiracy objects and the efforts of Burke and Gaudino to accomplish those objects, as described in the manner and means section of Count One, and as further detailed by example in the overt acts section of the indictment. Doc. 1. Burke's efforts to steer the focus of the case to other topics and discussions through an expert "offers nothing more than what [the defense hopes to] argue in closing arguments." *See*, *e.g.*, *Frazier*, 387 F.3d at 1262. Such testimony should not be permitted in this case.

In *United States v. Brooks*, 681 F.3d 678, 709 (5th Cir. 2012), the court addressed the defendant's claims that the district court had erred by excluding evidence related to "industry practice." The defendants, all former employees of the El Paso Merchant Energy Corporation, were charged with commodities fraud and wire fraud by sending false information about natural gas prices to trade magazines in an effort to affect and manipulate price indexes, which would, in turn, affect the market for natural gas futures and benefit the company's financial positions. *Id*. at 684-85. The defendants attempted to offer "industry practice" evidence to support a good faith defense by showing that other energy companies also submitted similarly false data. *Id*. at 709. The court held that the "industry practice evidence" the defendants offered had "little or no bearing" on whether the defendants themselves had acted with fraudulent intent. *See also, United States v. Kahn*, 711 F. Supp.2d 9, 12 (D.D.C. 2010) (testimony about beliefs of third parties on validity of tax code

10

irrelevant to determination of whether defendants acted in good faith). Moreover, the court held that "this unrelated information posed a threat of confusing the jury and detracting from relevant information about the conduct of the actual parties." *Brooks*, 681 F.3d at 709. It was therefore not an abuse of discretion for the court to exclude the testimony under Rule 403.

Here, there is no evidence to be offered with respect to *any* established "industry" practice regarding the creation and use of user credentials, passwords, and access devices, to include the use of "demo" or "demonstrative" credentials, or "password sharing practices across industries," which bears any relevance to the very specific set of user credentials alleged to have been secured and used without authorization by defendant Burke and his co-conspirator. What other companies in some "industry" of media production and distribution did or didn't do, or should or shouldn't do, is irrelevant to this case; thus, the proffered testimony is irrelevant and should also be excluded under Fed. R. Evid. 401-402.

    C.    The April 4 Disclosure Letter Does Not Adequately Set Forth the Witness's Testimony or Opinions or Otherwise Comport with Rule 16.

Fed. R. Crim. P. 16(b)(1)(C), requires that Burke's April 4 Disclosure Letter contain certain information, including a statement of any opinions that will be elicited from the witness during the defendant's case-in-chief, and other information. Further, the rule requires that the proposed expert witness must approve and sign the disclosure. Rule 16(b)(1)(C)(v). Notwithstanding, said Disclosure Letter identifies no opinion that will be offered through Mr. Sharp and only instead lists general

11

categories of Internet-related topics to be covered during his testimony, many of which are unrelated to the charged conduct in this case. Moreover, there is no evidence that Mr. Sharp has reviewed and approved the April 4 Disclosure Letter, as it is only signed by defense counsel.

      The disclosure requirements of Rule 16 are frustrated if the defendant does not clearly state the subject matter of the expert witness's anticipated testimony and the opinions that will be offered through that expert. Further, neither the United States nor the Court can evaluate pretrial the admissibility of such generalized, nonspecific testimony and potential "opinions" unless that information is provided by the defense in a manner that allows them to be evaluated against the issues to be presented at trial. As a result, at this point, the proffered testimony of Mr. Sharp appears to be nothing more than a thinly veiled attempt to introduce the defendant's own version of facts and arguments, under the guise of "expert testimony" without actually having to take the witness stand. That should not be permitted. Instead, at this point, Mr. Sharp's proposed testimony should be limited to brief overarching testimony regarding topics and issues that will be raised at trial, that relate to a fact of consequence in determining *the issues presented by this criminal case*, and that Mr. Sharp has reviewed and approved. *See*, Fed. R. Evid. 401-402. Otherwise, his anticipated testimony "offers nothing more than what [the defense hopes to] argue in closing arguments." *Frazier*, 387 F.3d at 1262.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests this Court to enter an order *in limine* excluding certain aspects of the proffered opinion testimony of Mr. Adam Sharp.

                                    Respectfully submitted,

                                    GREGORY W. KEHOE
                                  United States Attorney

By:   */s/ Jay G. Trezevant*
        Jay G. Trezevant
        Assistant United States Attorney
        Florida Bar No. 0802093
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: jay.trezevant@usdoj.gov

        */s/ Adam J. Duso*
        Adam J. Duso
        Assistant United States Attorney
        Florida Bar No. 1026003
        400 N. Tampa St., Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Email: adam.duso@usdoj.gov

U.S. v. Timothy Burke Case                      No. 8:24-cr-68-KKM-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Maddux, Esq.

Mark Rasch, Esq.

                                          */s/ Jay G. Trezevant*
                                          Jay G. Trezevant
                                          Assistant United States Attorney