UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No. 8:24-cr-00068-KKM-TGW

v.

TIMOTHY BURKE

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR RULE 17(c) SUBPOENAS
TO COMPEL EARLY PRODUCTION OF DOCUMENTS**

The United States of America submits this response in opposition to defendant's *Motion for Rule 17(c) Subpoenas to Compel Early Production of Documents* (the "Motion"), filed July 30, 2025. Doc. 164. The Motion seeks the issuance of thirteen subpoenas to various third-party entities, including multiple victim entities, for an astoundingly vast array of materials that Burke has conclusively asserted are "evidentiary, relevant, not otherwise procurable, necessary for trial preparation, and sought in good faith." *Id*.

For the reasons discussed below, the United States opposes the Motion on several grounds, including Burke's: (1) failure to comport with his obligations under Fed. R. Crim. P. 17(c) and relevant case law; (2) failure to address or comply with the victim protection obligations under Rule 17(c)(3) provided for subpoenas to third-parties that may have "confidential or personal" information about a victim; (3) proposed subpoenas to entities not directly identified with the charged conduct or the

United States' related disclosures and therefore not likely to lead to relevant admissible evidence at trial; and (4) proposed subpoenas that command "fishing expedition"-level productions that are broader in scope than even the materials summarized in his Motion. This Court should therefore deny Burke's Motion.

## MEMORANDUM OF LAW

The issuance of a Rule 17(c) subpoena is within the sound discretion of the trial court. *United States v. Thomas*, 62 F.3d 1332 (11th Cir. 1995). The appellate court will not disturb the district court's ruling on a request for subpoena absent an abuse of discretion. *United States v. Lee,* 68 F.3d 1267 (11th Cir. 1995). Rule 17(c) provides a procedural mechanism allowing parties to request issuance of a subpoena to aid in readiness for trial. However, as multiple courts have opined, it does not permit the issuance of broad subpoenas to conduct general discovery. *See e.g., United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000) (denying Rule 17(c) subpoena where defendant was attempting to use it as a discovery device, "which it is not"); *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (Rule 17— "is not intended to provide an additional means of discovery"); *United States v. Cuthbertson*, 630 F.2d 139, 144 (2d Cir. 1980) (Rule 17(c) does not permit the issuance of subpoenas that would conduct a "general fishing expedition").

Rule 17(c) provides:

(c) **Producing Documents and Objects**

(1) **In General**. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2) **Quashing or Modifying the Subpoena**. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

(3) **Subpoena for Personal or Confidential Information About a Victim**. After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

The Supreme Court established a four-part test to govern the issuance of Rule 17(c) subpoenas in *United States v. Nixon*, 418 U.S. 683 (1974). Under *Nixon*, before being permitted to issue a Rule 17(c) subpoena *duces tecum*, the moving party must demonstrate to the court that: (1) the documents sought are both evidentiary and relevant, that is, admissible; (2) the documents are not otherwise procurable before trial through reasonable diligence; (3) the party cannot properly prepare for trial without early production; and (4) the application is not intended as a general fishing expedition. *Id*. at 671. In addition to the *Nixon* test, other lower courts have opined on the limits of Rule 17(c) as a discovery device. For example, both *Nixon* and other cases have made clear that materials whose evidentiary use is limited to

impeachment or cross-examination does not provide a justifiable basis for compelled early disclosure under Rule 17(c). *Nixon*, 418 U.S. at 701; *see also Hardy*, 224 F.3d at 755–56; *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981).

Several cases illuminate and provide context for the general prohibition on the use of Rule 17(c) subpoenas as a tool for general discovery. In *U.S. v. Abdush-Shakur*, 465 F.3d 458 (10th Cir. 2006), defendant Abdush-Shakur, sought to appeal his conviction for attempted murder and possession of a handmade knife by a prison inmate, after stabbing a correctional officer. Prior to trial, Abdush-Shakur sought to use a Rule 17(c) subpoena to procure records from his correctional facility regarding prior altercations between Abdush-Shakur and the stabbed corrections officer, which the trial court denied. Reviewing the denial under an abuse of discretion standard, a panel of the Tenth Circuit upheld the denial. The court cited *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) for the principle that "Rule 17(c) is 'not intended to provide an additional means of discovery' but 'to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.'" *Abdush-Shakur,* 465 F.3d at 467. The court noted that Abdush-Shakur's characterization of his request as "pertaining only to 'records relating to prior incidents [between the parties]'" was misleading, in that Abdush-Shakur, in his Rule 17(c) subpoena, also requested such materials as: (1) all incident reports for the previous five years involving stabbings; (2) complete personnel records of the stabbed officer; (3) complete copy of his own prison file; (4) a list of policies and procedures [for prison operations]. *Id*. at 468. In support of what the court described as an

"expansive" request, Abdush-Shakur *merely had stated that the requested documents were "material and integral to the defense" and that they were "evidentiary, relevant, and . . . requested in good faith"* without any additional articulation or evidentiary support. *Id*. (emphasis added). Per the court:

> "We agree with the district court that this is insufficient to satisfy Rule 17(c). Abdush-Shakur *failed to state in his motion how the requested material related to the charges against him, or how the documents were to be used in his defense. Conclusory statements do not establish relevance*."

*Id.* (emphasis added).

Mere conjecture that a document will contain evidentiary or favorable material to a defendant is not a basis for a subpoena under Rule 17(c). In *U.S. v. Bradford*, 806 F.3d 1151 (8th Cir. 2015), defendant Bradford appealed his conviction following entry of his plea agreement, in part, because the district court did not allow him to use a Rule 17(c) subpoena to compel the production of hospital records that he claimed could advance his argument for leniency at sentencing. In affirming Bradford's conviction, the Eighth Circuit noted that Rule 17(c) requires that "[t]he requesting party must identify the documents with adequate specificity and show that the documents are relevant and admissible." *Id*. at 1155 (citation omitted). Importantly, the *Bradford* court affirmed previous Eighth Circuit holdings, opining that "The relevance and specificity elements [of *Nixon*] *'require more than the title of a document and conjecture as to its contents,'* and a subpoena *'should not issue based upon a party's mere hope that it will turn up favorable evidence.'*" *Id*. (emphasis added, *Nixon* context added).

5

The four-part test established in *Nixon* applies not only to subpoenas served by a defendant upon the United States, but also to Rule 17(c) subpoenas served upon third parties. In *U.S. v. Rand*, 835 F.3d 451 (4th Cir. 2016), defendant Rand appealed his conviction for conspiracy and his unlawful conduct as the chief accounting officer for a home-building company, arguing, in pertinent part, that the *Nixon* test only applied in the narrow scope of a subpoena served upon the United States by the defendant. As to other subpoenas, such as those served upon third parties, Rand argued Rule 17(c)(2) applied only subpoenas that contained "unreasonable or oppressive" language. *Id*. at 462. The Fourth Circuit rejected Rand's argument, holding that the *Nixon* factors applied to all Rule 17(c) subpoenas. *Id*. at 463. In its discussion, the *Rand* Court noted that the purpose of *Nixon* was not, as Rand suggested, merely "to not allow bypass of Rule 16 through Rule 17 . . ." such that it should only apply to subpoenas issued to the government; rather the *Nixon* framework is the appropriate standard for all Rule 17(c) subpoenas. *Id*. The court reiterated the holding in *Nixon* that a subpoena duces tecum "was not intended to provide a means of discovery for criminal cases." *Id*. Additionally, the court, citing a district court order, explained that ***"[t]he right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory.'"*** *Id*. (citing *United States v. Al-Amin*, No. 1:12-cr-50, 2013 WL 3865079 at *8 (E.D. Tenn. July 25, 2013) (emphasis added)).

6

The mere ability to articulate what you hope to find in subpoenaed evidence does not meet the *Nixon* standard as to the relevance prong. In *U.S. v. Trump*, 703 F.Supp.3d 89 (D.D.C. 2023), the defendant sought to use multiple Rule 17(c) subpoenas issued to various governmental agencies and committees, none of whom were part of the prosecution team, to obtain what the defendant claimed were "missing materials" from those obtained in discovery. In the trial court's denial of the motion for Rule 17(c) subpoenas, the court, citing *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980), explained that "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *Trump,* 703 F.Supp.3d at 92. In defendant's motion, the defendant had suggested "that [certain of the missing materials] could be used for the [i]mpeachment of witnesses." *Id*. at 93. The district court rebuffed this as sufficient to establish relevance, noting "[d]efendant provides no basis for concluding that [the subpoenaed evidence] contain any such impeachment evidence. This falls well short of his burden. ***The relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence.***" *Id*. at 94 (emphasis added, internal citations omitted).

# ARGUMENT

### I. Burke Fails to Meet the *Nixon* Factors for Admissibility and Makes Conclusory Statements Regarding the Relevance of Subpoenaed Materials.

As described in *Nixon* and further refined by the holdings and discussion in *Abdush-Shakur, Bradford, Rand,* and *Trump*, subpoenas *duces tecum* under Fed. R. Crim. P. Rule 17(c) are ***not*** a means for the defendant to engage in general discovery, fact-finding, or other 'investigatory' ends. Rather, the scope of the Rule 17(c) subpoena is properly limited to ensuring that evidentiary and relevant (i.e. admissible) materials are available to the parties at trial. Parties moving for the issuance of Rule 17(c) subpoenas must be able to sufficiently articulate the four-prongs of the *Nixon* holding before a subpoena may be issued at the trial court's discretion.

The first prong of the analysis is whether the documents to be subpoenaed are relevant and evidentiary. In Burke's Motion, he provides the Court ***one sentence*** in support of his claim that the documents to be subpoenaed are relevant. Doc. 164 at 5. That one sentence conclusion asserts *ipse dixit* that "the documents are directly related to the charges against the defendant and are expected to contain information ***that will be used to challenge the prosecution's evidence*** and support the defense's case. *Id*. (emphasis added). Much like the defendant in *Abdush-Shakur*, Burke not only fails to provide sufficiently articulable grounds for relevancy, he fails to provide ***any***

8

particularized analysis whatsoever. As the Tenth Circuit asserted in *Abdush-Shakur*, "Conclusory statements do not establish relevance." *Abdush-Shakur*, 465 F.3d at 468.

Even if Burke had provided some analysis to support his various requests, the sheer scope of the materials requested within the motion, to include multi-year timelines, and whole categories of information, is not reconcilable with *Nixon* and its progeny. For example, when summarizing the information to be produced by the National Sports League (NSL), Burke seeks reports for ***any investigations during a two-year period*** related to the identified 'flipfactory' FTP account. Doc. 164 at 8. Likewise, in the subpoena to StreamCo Inc., Burke seeks all "StreamCo data regarding unauthorized access to StreamCo or compromised credentials" over a two-year period. *Id*. Burke's requested subpoenas are replete with examples of "Information related to [X] topic" or "[X] documents within [multi-year date range]." *See Id*. at 8–13. These potentially voluminous categories of information lack any appreciable degree of specificity such that they could be considered a tailored request for a particular admissible document or specified material, rather than what they are—a mere "fishing expedition" in search of a wishful production of favorable discovery. As explained by the Eighth Circuit in *Bradford*, a subpoena for documents, even where a defendant can provide a "title of a document and conjecture as to its content", such a subpoena "***should not issue based upon a party's 'mere hope' that it will turn up favorable evidence.***" *Bradford,* 806 F.3d at 1155. Here, Burke's level of articulation falls far short of that in *Bradford*.

9

Burke, in support of his argument that his subpoenas are specific enough as to not be a "general fishing expedition" cites a handful of district court opinions, primarily within the Second Circuit. Burke uses these fact-specific rulings to try to erode *Nixon's* bright line specificity requirement. However, these case specific rulings are easily distinguished from the wide categories of information sought by Burke in his subpoenas. Meanwhile, in the only circuit-level opinion indirectly cited by Burke on the issue of specificity, that of *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984), Burke seeks to vastly expand the narrow holding as opening the door to permitting blanket subpoenas for a wide-range of "impeachment" material, irrespective of their relevance and admissibility under the *Nixon* framework.

In addition to Burke's mere conclusions on the issue of relevance and specificity, Burke has also failed to adequately demonstrate support within the Motion for the other *Nixon* prongs. Burke recites mere conclusions for both the prongs that: (1) the documents are not otherwise attainable by exercise of due diligence; and (2) the defendant cannot prepare an adequate defense without access to the materials. Doc. 164 at 13. Burke fails to make any showing of his efforts undertaken to procure these materials by alternative means, or how the materials requested go towards the specifics of Burke's anticipated defense, rendering the requested documents essential.

II.     **Burke's Motion Fails to Meet the Notice and Review Obligations for Victim Protection under Rule 17(c)(3).**

Burke not only fails to address the *Nixon* prongs, he also fails to acknowledge or address the movant's obligations under Fed. R. Crim. P. Rule 17(c)(3), regarding subpoenas to third parties which may involve "personal or confidential information" about a victim. The Committee Notes for Fed. R. Crim. P. Rule 17 include a 2008 annotation noting the addition of subsection (c)(3), which implements the Crime Victims' Rights Act ("CVRA"). The CVRA, codified at 18 U.S.C. § 3771, states in part that victims have a right to respect for their "dignity and privacy."

Many of the subpoenas requested by Burke are either to victim entities, or to associated third parties, and seek information that "may involve personal or confidential information" about a victim. Specifically, Burke's proposed subpoenas make numerous references to procuring communications between victim entities and their legal counsel, as well as many documents, such as policies, procedures, decision-making processes, and other material which reasonably contain information the victim entities may believe are of a "personal or confidential nature."

However, Burke's motion makes no effort to guide or assist the Court in developing a reasonable course of action to ensure that the victim entities involved have reasonable time to move to "quash or modify . . . or otherwise object" to the subpoenas *before* a court order permitting the subpoenas is issued to the various third parties. The Committee Notes for Rule 17 further explains that the term "otherwise object[ing]" as used in subsection (c)(3) can include steps short of formal legal

11

intervention, such as the opportunity to review the proposed subpoenas and submit a letter with objections, or other action short of a motion to quash. However, under the Rule, the Court must exercise its discretion to ensure proper notice and opportunity to object in order to give meaning to the victim privacy rights in the CVRA.

### III. Burke Seeks to Subpoena Entities Not Identified with the Conduct Charged in the Indictment or the United States' Related Disclosures.

Burke, in addition to the expansive subpoenas to victim entities and other entities disclosed as involved in related conduct to the charged offenses, additionally seeks materials from entities **not** otherwise identified, and from whom there is not likely to be any admissible materials. For example, Burke has proposed a subpoena to "FedNet," a service purported to provide access to audiovisual streams related to sessions of Congress, to obtain various categories of materials related to a claimed cease-and-desist letter of unidentified date. *See* Doc. 164–10. In this subpoena, Burke seeks over a year's worth of IP access history logs, over five years' worth of licensure agreements, to include any agreements with any third parties involving the sublicensing of content obtained from government proceedings, and various internal communications. *Id*.

"FedNet" is neither a victim entity associated with the charged conduct, nor has the United States asserted any intent to put forth evidence of related conduct involving this entity during its case-in-chief. As "FedNet" is not an entity involved in the government's case, the possible relevance of this material—such that Burke seeks to use the power of the Court to compel these materials—is unclear, at best.

12

Certainly, these materials have no reasonable likelihood of being admissible towards the charged offenses at trial. The request of these additional subpoenas casts further doubts on Burke's assertion that he is merely seeking to ensure the availability of known, admissible, materials under Rule 17(c). Rather, these subpoenas evince an effort to conduct a fishing expedition to obtain discovery materials he speculates may be favorable to him.

### IV. Burke's Proposed Subpoenas Identify Broad Categories of Materials That Exceed Those Purportedly Sought Within His Motion.

Lastly, the subpoenas sought by Burke identify broad categories of materials that go beyond even those categories summarized within the Motion. Even if Burke had properly articulated the relevancy, specificity, and necessity of the materials summarized within the Motion, the subpoenas themselves seek a body of documents and materials that go beyond that sought in the Motion.[1] There is a material difference in scope between those materials summarized within the Motion on pages 8–13, and the various broad categories of materials sought within the 13 proposed subpoenas attached to the Motion. *See* Doc. 164–1 through 164–13.

For example, the proposed subpoena to Fox Corporation (Doc. 164–5), lists within subpoena attachment 'A' a command to produce, in part:

> . . .

---

[1] The United States has previously conferred with counsel for Burke, and the United States is not asserting that Burke has failed to act in good faith in his summarizing the materials sought in the Motion; merely that the subpoenas seek materials beyond the scope of that summarized therein.

13

3. All contracts, agreements, NDAs, releases, editorial control terms, and privacy-related provisions entered into between Fox News and Tucker Carlson and/or Kanye West, including any provisions addressing on-air appearances, recorded communications, or expectations of confidentiality or privacy.
. . .

4. Documents, communications, or other records addressing the existence or scope of any "reasonable expectation of privacy" for individuals participating in the allegedly intercepted communications, including policies, producer notes, emails, or legal opinions.
. . .

19. Communications with legal counsel (Holland & Knight, Norton Rose Fulbright, Wilson Sonsini) related to any legal or investigative action
. . .

20. Any and all information regarding the editorial decision about how and why the interview between Tucker Carlson and Kanye West was edited.

These broad categories of materials, particularly relating to requests for internal documents related to "editorial decision"-making, and a blanket request with no time period identified for **any** communications between victim and their various legal counsel, go far beyond the listed summary of materials sought for "Broadcaster-2 (a.k.a. Fox Corporation)" in the Motion on page 10–11. Burke cannot credibly allege that these, in addition to the sixteen other categories of information sought, are sufficiently tailored and specific as to not comprise a "tool for general discovery" prohibited by *Nixon*. Indeed, the scope of this subpoena asks the Court to compel a wide range of documents that seek to "[use] the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory." *Rand* 835 F.3d at 463.

## CONCLUSION

For the reasons provided, the United States asks this Court to deny the Motion and prohibit issuance of all subpoena *duces tecum* provided as attachments to the Motion.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: /s/ *Adam J. Duso*
Adam J. Duso
Assistant United States Attorney
Florida Bar No. 1026003
400 N. Tampa St., Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Email: adam.duso@usdoj.gov

/s/ *Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney
Florida Bar No. 0802093
400 N. Tampa St., Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Email: jay.trezevant@usdoj.gov

U.S. v. Timothy Burke                                    Case No. 8:24-cr-68-KKM-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Maddux, Esq.
Mark D. Rasch, Esq.

                                               */s/Jay G. Trezevant*
                                               Jay G. Trezevant
                                               Assistant United States Attorney