UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:24-cr-68-KKM-TGW

TIMOTHY BURKE

## NOTICE OF FILING VICTIMS' OBJECTIONS
## TO THE ISSUANCE OF RULE 17(C) SUBPOENAS

The United States hereby files a letter and attached addendum, dated August

29, 2025, received from victim entities in the above-referenced case. Through said

letter and addendum, the victim entities, pursuant to the Crime Victims' Rights Act

and Fed. R. Crim. P. 17(c)(3), object to the issuance of the subpoenas requested in

*Defendant Timothy Burke's Motion for Rule 17(c) Subpoenas to Compel Early Production of*

*Documents*, Doc. 164, which is scheduled to be addressed by this Court on Tuesday,

September 2, 2025.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    */s/ Adam J. Duso*
       Adam J. Duso
       Assistant United States Attorney
       Florida Bar No. 1026003
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:  (813) 274-6000
       Facsimile:   (813) 274-6358
       E-mail: adam.duso@usdoj.gov

/s/ Jay G. Trezevant
Jay G. Trezevant
Assistant United States Attorney
Florida Bar No. 0802093
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: jay.trezevant@usdoj.gov

**U.S. v. Timothy Burke**                    **Case No. 8:24-cr-68-KKM-TGW**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Maddux, Esq.
Mark Rasch, Esq.

<u>/s/ *Adam J. Duso*</u>
Adam J. Duso
Assistant United States Attorney

**Hecker Fink LLP**

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

shecker@heckerfink.com

NEW YORK | WASHINGTON, DC | LOS ANGELES

August 29, 2025

**BY EMAIL**

Adam J. Duso
Jay G. Trezevant
Assistant United States Attorneys
United States Attorney's Office
Middle District of Florida
400 North Tampa Street Suite 3200
Tampa, Florida 33602

>    Re:    *United States v. Burke, 8:24 Cr. 68 (KKM) (TGW)*

Dear AUSAs Duso and Trezevant:

We write on behalf of our client, the National Basketball Association, as well as three other victims in the above-referenced case, CBS Broadcasting Inc., Fox Corporation, and LiveU Inc. (collectively, the "Victims"). We appreciate your informing us that defendant Timothy Burke has sought the Court's permission to issue various subpoenas seeking information about the Victims. The Victims object to the issuance of those subpoenas, for the reasons explained in the attached Addendum. *See* Fed. R. Crim. P. 17(c)(3), Advisory Committee Notes (2008) (providing that victims may object to subpoenas by motion or "by other means such as a letter"). We request that you file this letter and the Addendum with the Court, or otherwise make them available to the Court in advance of the September 2 hearing. We are mindful of the Court's direction that all papers should be filed by 4:00 p.m. the day before the hearing, which we understand to be today, given the Monday holiday.

Sincerely

Sean Hecker
Derek Wikstrom

# ADDENDUM

## INTRODUCTION

In 2004, the watershed Crime Victims' Rights Act ("CVRA") was passed by the House in a 393-to-14 vote, unanimously approved by the Senate, and signed into law by the President. It guarantees victims "[t]he right to be reasonably protected from the accused" and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). The bipartisan support for these rights reflected the universal recognition that those who have already been preyed upon should not be further harmed through our justice system itself.

To address the harms that could be inflicted by misuse of the subpoena power, Rule 17(c)(3) "implements the Crime Victims' Rights Act" with procedures that protect victims. Fed. R. Crim. P. 17, Advisory Committee Notes (2008). Those procedures forbid subpoenas implicating victims' private information—like the proposed subpoenas here—to issue unless the defendant first meets his burden of showing the Court that the subpoenas are proper. And the procedures guarantee that while the Court considers that issue, the victims have an opportunity to "move to quash or modify the subpoena[s] or otherwise object." Fed. R. Crim. P. 17(c)(3).

The victims in the indictment—later identified as the NBA, CBS, Fox, and LiveU (the "Victims")—do so object. Those Victims waited on the sidelines while this case worked its way through the justice system, glad to leave any

1

disputes to Mr. Burke and the United States. Now, however, the rights guaranteed by the CVRA are threatened by the proposed subpoenas, which make sweeping demands for the Victims' confidential information, including attorney-client communications. The Victims have no choice but to speak up or risk their rights being trampled.

Under Rule 17, the CVRA, and the requirements set forth in *United States v. Nixon*, 418 U.S. 683 (1974), Mr. Burke's proposed subpoenas are improper. His Motion should be denied, and the subpoenas should not issue.

Rule 17 subpoenas are "not intended to provide a means of discovery for criminal cases" and cannot be used for a "fishing expedition." *Nixon*, 418 U.S. at 698-700. They can issue *only* for specifically identified documents. *See id.* And they cannot issue unless those specific documents are: (1) relevant; (2) admissible at trial; (3) "not available from any other source"; and (4) necessary to "properly prepare for trial." *Id.* at 698-702. Innumerable cases applying those standards hold that subpoenas fall short when—as here—their demands are framed like a request for production in civil discovery.[1]

---

[1] *See, e.g.*, *United States v. Bendawald*, 2025 WL 711725, at *9 (D. Idaho Mar. 4, 2025) ("[The] request here is reminiscent of a civil discovery request. It is broad in scope and seeks to find out what, if anything, exists on a particular topic."); *United States v. Weisberg*, 2010 WL 5027537, at *1 (E.D.N.Y. Dec. 3, 2010) ("Defendant's subpoena requests are phrased in language that resembles civil discovery requests, rather than the specific requests for actual evidence that are allowed under Rule 17(c)."); *United States v. Forbes*, 2005 WL (cont.)

2

Far from adhering to Rule 17's requirement that subpoenas request only specific, relevant, admissible documents, Mr. Burke's subpoenas demand 140 broad categories of information of marginal relevance but great sensitivity. Among many other things, Mr. Burke demands that:

- CBS produce all "[i]ncident response logs, policies, or meeting notes," without regard to time or specific subject matter, ECF No. 164-3 at #18, which on its plain terms would entail all notes taken at any meeting over CBS's nearly 100 years of operation. This would be an immense invasion of CBS's privacy and could compromise information security.

- LiveU produce all "[r]ecords concerning the acquisition, assignment, issuance, sharing, or compromise of all user credentials associated with the LiveU Matrix platform," without regard to time, ECF No. 164-2 at #1, which on its plain terms would entail turning over "user credentials" for every user ever on "the LiveU Matrix Platform." The security risks this presents—for LiveU and its users—are obvious.

- Fox produce all "[i]nternal archive records showing possession … of off-air materials," without regard to time or specific subject matter, ECF 164-5 at #17, which on its plain terms would entail all archival footage of unaired material that Fox maintains, or, at a minimum, documentation of all such archival footage. This would impinge significantly on Fox's privacy and journalistic freedom.

- The NBA produce "[a]ll records concerning the NBA's use, deployment, and management of FTP (File Transfer Protocol) sites or servers, including network architecture documents, security configurations, administrative manuals, and user onboarding materials," without regard to time, ECF No. 164-1 at #12, which on its plain terms would entail everything in the NBA's possession regarding the servers it has used for transferring electronic files—apparently for as long as the NBA

---

8146317, at *4 (D. Conn. Nov. 7, 2005) (finding "that the subpoena demands were as broad as any request for production in a civil case could be and that, contrary to the spirit and purpose of Rule 17(c), the defendants' subpoenas were aimed at obtaining discovery").

has used the internet, potentially decades. This, too, presents obvious security risks.

Such overbroad demands cannot pass muster under Rule 17 and *Nixon*.

Further, Mr. Burke's subpoenas *explicitly* demand attorney-client communications between Victims and counsel. These demands intrude upon "the oldest privilege known to the common law"—"the most sacred of all legally recognized privileges"—whose "preservation is essential to the just and orderly operation of our legal system." *In re Grand Jury Proc. Grand Jury No. 97-11-8*, 162 F.3d 554, 556 (9th Cir. 1998) (cleaned up). On this ground, too, the subpoenas are invalid. *See, e.g.*, *United States v. Vazquez*, 2023 WL 6476095, at *7 (M.D. Fla. Oct. 3, 2023) (subpoenas quashed where "the attorney client privilege and work product protections appl[ied]"), *adopted* 2023 WL 6520082 (M.D. Fla. Oct. 5, 2023). For example, Mr. Burke demands:

- The NBA produce all "[c]ommunications with ... *legal counsel* on FTP credential management or misuse." ECF No. 164-1 at #15.

- Fox produce all "[c]ommunications with *legal counsel* ... related to any legal or investigative action" ECF No. 164-5 at #19, and Fox's counsel produce "[a]ll communications with ... Fox" on this matter. ECF. Nos. 164-6, 164-7, 164-9 at #3.

- FedNet—apparently an uncharged Rule 404(b) victim—produce "[a]ll communications with internal or external *legal counsel* regarding the cease and desist letter, including drafts, legal opinions, or guidance on the legal basis for the letter." ECF No. 164-10 at #5(b).

Troublingly, as the government explained in its reconsideration request, Mr. Burke explicitly demanded these attorney-client communications without

informing the government he was doing so, without mentioning the demands in his Motion to the Court, and without offering any theory for invading the attorney-client privilege or overcoming the attorney-work-product doctrine.

Pursuant to the CVRA and the procedures of Rule 17(c)(3), the Victims hereby object. Mr. Burke's Motion does not even try to meet the requirements of Rule 17 and *Nixon*, and his proposed subpoenas would not pass muster if he had made that attempt. The Motion should be denied.

## **ARGUMENT**

## I. **The Victims Have the Right to Object Before Any Subpoenas Issue**

As noted, the procedures of Rule 17(c)(3) give the Victims the right to object *before* any subpoenas issue. Under those procedures, a subpoena can go forth "only by court order." Fed. R. Crim. P. 17(c)(3). "Before entering the order"—absent "exceptional circumstances" that no one suggests exist here— "the court must" allow Victims to "move to quash or modify the subpoena or otherwise object." *Id.* This unique right of victims to challenge subpoenas *before they issue* is distinct from, and in addition to, the right of any *recipient* of a subpoena—including a victim—to move to quash or modify the subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).[2]

---

[2] For that reason, the Victims expect that if any subpoenas were to issue, the recipients—including the Victims themselves—would challenge those

(cont.)

The procedures of Rule 17(c)(3) indisputably apply here, which is consistent with Mr. Burke filing his Motion rather than simply going ahead with serving the subpoenas:

- An indictment has been filed. Fed. R. Crim. P. 17(c)(3).

- The subpoenas call for "the production of personal or confidential information about a victim," *id.*; indeed, it is hard to imagine anything more personal or confidential than attorney-client communications.

- Finally, in two respects, the subpoenas are directed not merely at the Victims themselves but also at "third part[ies]," *id.*: (1) some non-Victims, such as Fox's law firms, have been directed to produce confidential information about a Victim; (2) each Victim is a "third party" vis-à-vis the other Victims, and Mr. Burke's subpoenas ask the Victims to provide confidential information about each other.

Because the triggering conditions for Rule 17(c)(3) are satisfied, the Victims' objections are properly before the Court.[3]

In contrast to challenges to subpoenas *after* they have issued—which a recipient must make on the grounds that a subpoena is "unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2)—there are no textual limits to the

---

subpoenas, including on individual grounds not raised here, such as undue burden. Whether certain arguments are not raised now thus cannot be construed as waiving those arguments.

[3] Although each Victim could have submitted a separate brief as to that Victim's bases for objecting to particular subpoenas, the CVRA expresses a preference in cases with "[m]ultiple crime victims" for approaches "that do[] not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). For that reason, and to minimize the costs incurred by the Victims in guarding their rights under the CVRA, the Victims jointly provide this submission.

grounds on which a victim may object to a subpoena *before* it has gone forth, *see* Fed. R. Crim. P. 17(c)(3). The 2008 Amendment Advisory Notes confirm that a victim's challenge can be based "on the grounds that [a subpoena] is unreasonable or oppressive" and can also be used more generally to protect "victim's privacy and dignity interests." A subpoena that fails the requirements of Rule 17 under *Nixon'* is plainly "unreasonable or oppressive."

## II. Mr. Burke's Motion Does Not Come Close to Making the Showings Required Under *Nixon* for a Proper Rule 17 Subpoena

### A. The Motion's Failure to Meet Mr. Burke's High Burden Means No Subpoenas May Issue

As Mr. Burke concedes, it was *his burden* in his Motion to establish that the proposed subpoenas satisfy the *Nixon* test: "Put another way, *the party seeking pretrial production under a Rule 17(c) subpoena* 'must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.'" Mot. 4-5 (emphasis added, alteration in Motion).[4] But the Motion fails to carry that burden—in fact, it does not even try to do so.

---

[4] Mr. Burke further concedes that he, as "*the requesting party*[,] *must show*: (1) the documents requested are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the requesting party cannot properly prepare for trial without production and inspection of the documents in advance of trial and failure to obtain the documents may tend unreasonably to delay the trial; and (4) the application is made in good faith and is not intended as a general 'fishing expedition.'" Mot. 4 (emphasis added, citations omitted).

7

That Mr. Burke bears the burden should, alone, be the end of the matter. As the government notes, *see* Opp. 8-9, the Motion does not attempt to *show* that any of the 140 categories of documents demanded in the proposed subpoenas are relevant, would be admissible, and contain information that cannot be attained by other means. Instead, it simply *asserts* that "[t]he documents are directly related to the charges," Mot. 5, that there are "valid potential evidentiary uses for the same material," *id.*, and that the information is "not otherwise procurable in advance of trial by exercise of due diligence," *id.* at 13. Further, Mr. Burke's Motion omits mention of many of the requests for production—including the most flagrantly improper ones, such as the explicit demands for attorney-client-privileged communications. No wonder these demands were omitted: even at a glance, many of them refute the Motion's assertions about relevancy, admissibility, and availability.[5]

---

[5] For instance, Mr. Burke's demand for "[a]ll ... billing statements" sent to Fox by the law firm Wilson Sonsini bears no relevance whatsoever to the charges against Mr. Burke. *See* ECF 164-9 at #4. Indeed, Fox did not retain Wilson Sonsini in this matter until *after* the crimes, the internal investigation, and the government's search of Mr. Burke's computers had all taken place, and its fees were not included in the loss figures for Marco Gaudino's sentencing. Likewise, the NBA's "[c]ommunications with ... legal counsel" about cybersecurity, which are obviously privileged, are not admissible evidence. ECF No. 164-1 at #15. And Mr. Burke has means other than a compulsory subpoena to the NBA for its "[o]rganizational documentation" to show that "no Seattle-based NBA team existed during the relevant period" (whatever that time period might be). *Id.* at #14. It is a matter of public record that the Seattle SuperSonics moved to Oklahoma City nearly twenty years ago.

But it is not the government's or the Victims' burden to prove that the requirements of Rule 17 and *Nixon* have *not* been met, nor the Court's obligation to assess that question in the first instance. Instead, the law required Mr. Burke's Motion to explain why each of his extensive document demands is consistent with Rule 17. The government and the Victims would then have the opportunity to rebut Mr. Burke's arguments, to the extent necessary. Mr. Burke's conclusory and misleading Motion failed to even attempt the initial showings, short-circuiting the process. "As a matter of litigation fairness and procedure," *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002), such a gambit is impermissible. A movant cannot shirk his burden and force his opponents to disprove the elements that he was required to establish—and then sandbag them with his affirmative arguments on reply. That is particularly true where, as here, Mr. Burke has proposed such a huge volume of document demands without any of the context required by Rule 17 and *Nixon*. Because Mr. Burke has the burden as to the proposed subpoenas and the Motion did not carry that burden, the Motion should be denied and no subpoenas should issue.

That is particularly true against the policy backdrop of the CVRA, which Rule 17(c)(3) was meant to implement. Victims have the "[t]he right to be treated with fairness" and "dignity," and "[t]he right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7), (8). Here, Mr. Burke submitted

improper subpoenas, failed to inform the government about their contents, submitted a Motion with a summary table that omitted the most outrageous of his document demands, never gave notice to the Victims, and told this Court that the Motion was unopposed. *See* Mot. 14; ECF No. 166 at 2 ("Burke's Motion … seeks permission to issue subpoenas to third-party witnesses that compel the production of information and material *that substantially exceeds what had been represented to the United States*…." (emphasis added)). As a result, Mr. Burke successfully caused the Court to grant the Motion without giving the government or the Victims a chance to respond—impinging the Victims' rights to be treated with dignity and respect for their privacy—even though the Motion did not actually make the requisite *Nixon* showings. The government then had to seek reconsideration so that it could oppose (and now has opposed) the Motion—impinging the Victims' rights to proceedings to be free of unreasonable delay.

The Victims hurried to object to the proposed subpoenas and oppose Mr. Burke's Motion. If Mr. Burke is now allowed to belatedly raise new substantive arguments and bases for the subpoenas—or worse, propose new and different demands when faced with the government's opposition and the Court's scrutiny—the process will become even more protracted. *None* of that comports with the fairness, dignity, and lack of unreasonable delay that Victims are promised by the CVRA and Rule 17(c)(3).

## B.    Mr. Burke's 140 Broad Categories of Document Demands Do Not Pass the *Nixon* Test for Rule 17 Subpoenas

The Victims need not (and will not) take on the burden of proving the negative of what is Mr. Burke's burden under the law. Nevertheless—to assist the Court and to hopefully protect the Victims from revictimization—we illustrate below how Mr. Burke's 140 categories of document demands do not meet the requirements of Rule 17 as articulated in *Nixon*.

### 1.    The Subpoenas Demand Broad, Non-Specific Categories of Documents

The 140 categories of document demands made in Mr. Burke's subpoenas are the stuff of civil discovery, not the kind of focused, highly justified subpoenas permitted by Rule 17. If there is one shorthand rule as to Rule 17 subpoenas, it is that if the subpoenas look like they belong in a civil case, they should not issue.[6]

---

[6] *See supra* n.1; *see also, e.g.*, *United States v. Indivior Inc.*, 2020 WL 616167, at *1 (W.D. Va. Feb. 10, 2020) (quashing subpoenas after agreeing with the government that "the defendants are misusing Rule 17(c) to impose civil discovery-type burdens on the recipients of the subpoenas"); *United States v. Mills*, 2018 WL 1382647, at *4 (W.D. Pa. Mar. 19, 2018) (quashing "broad subpoena requests akin to civil discovery"); *United States v. Cartagena-Albaladejo*, 299 F. Supp. 3d 378, 386 (D.P.R. 2018) (granting motion to quash where "[t]he subpoena … is more akin to an expansive, civil discovery request than a proper Rule 17(c) subpoena"); *United States v. Ruehle*, 2009 WL 10710391, at *1 (C.D. Cal. Sept. 15, 2009) ("This type of civil discovery is simply inappropriate in a criminal case."); *see generally United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) ("Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [rule] 16.").

Perhaps the most obvious giveaway of the subpoenas' impropriety is their recurrent use of "all" or "any." Courts have repeatedly made clear that this formula indicates an impermissibly non-specific fishing expedition.[7] As in those cases, Mr. Burke's 13 subpoenas demand "[a]ll records" (*e.g.*, ECF No. 164-1 at #2), "[a]ll communications" (*e.g.*, ECF No. 164-3 at #20), "[a]ny and all information" (*e.g.*, ECF No. 164-5 at #20), "[a]ll memos, drafts, emails, or legal documents" (*e.g.*, ECF No. 164-6 at #4), "[a]ll contracts" (*e.g.*, ECF No. 164-12 at #6), and the like.[8] Put otherwise, "[t]he requests seek 'any and all documents and communications' regarding every conceivable subject matter with any direct or indirect relation to the events described in the document Defendant allegedly leaked, and similar events within a broader time period. The requests are typical of discovery in civil cases under the Federal Rules of Civil

---

[7] *See, e.g.*, *United States v. Janbakhsh*, 2025 WL 1908434, at *3 (M.D. Tenn. July 10, 2025) ("Defendant's subpoena … requests 'any' or 'all documents and communications' about various topics, … which are the types of overly broad requests that courts routinely quash."); *United States v. Maxwell*, 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021) ("The use of the terms 'all' and 'any' 'do not evince specificity.'"); *United States v. Hastie*, 2015 WL 13310085, at *1 (S.D. Ala. Apr. 21, 2015) ("As a general rule, requests for 'any and all documents' are emblematic of a fishing expedition, which is impermissible under Rule 17.").

[8] The subpoenas sometimes leave out "all" or "any" and instead say "records," "communications," "documents," etc., but this stylistic difference does not eliminate the flaw. For instance, adding the word "all" or "any" would not make the following non-specific demand any broader: "[r]ecords concerning the acquisition, assignment, issuance, sharing, or compromise of all user credentials associated with the LiveU Matrix platform, including internal demo credentials and demo access used by third parties." ECF No. 164-2 at #1.

Procedure, but Rule 17 is not an additional means of discovery." *United States v. Winner*, 2018 WL 1998311, at *2 (S.D. Ga. Apr. 27, 2018).

On their face, the 140 categories of document demands "cast a wide net that betokens as general fishing expedition." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (cleaned up). That alone is a basis to deny the Motion. Indeed, even if Mr. Burke's subpoenas had called for "highly relevant" material that was "arguably admissible"—which they *do not*—their overbreadth would mean they still should not issue. *See United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (quashing subpoena seeking highly relevant and arguably admissible material because it "reference[d] all records, documents, reports, telephone logs, etc.").

Mr. Burke merely underscores the subpoenas' flaws when he argues that "if a 'request is sufficiently narrowly focused on a group of records likely to contain helpful documents,' then the moving party 'cannot be said to be engaging in a "fishing expedition."'" Mot. 6. Here, the requests are not "narrowly focused" in any meaningful sense, as the following examples show:

- From the NBA, the subpoena demands: "All records concerning the NBA's use, deployment, and management of FTP (File Transfer Protocol) sites or servers, including network architecture documents, security configurations, administrative manuals, and user onboarding materials." ECF No. 164-1 at #2.

- From LiveU, the subpoena demands: "Any internal audits assessing risk or exposure through demo credentials or JSON feeds." ECF No. 164-2 at #17.

- From the law firm Holland & Knight, retained by Fox, the subpoena demands: "All memos, drafts, emails, or legal documents prepared for or provided to federal law enforcement, DOJ, or the USAO-MDFL concerning this matter." ECF No. 164-6 at #4.

Mr. Burke has not "demonstrated why he wants to look into the material," nor has he "set forth what the subpoena[s'] materials contain, forcing the court to speculate as to the specific nature of their contents and its relevance." *United States v. Cory*, 2021 WL 3709797, at *3 (M.D. Fla. Aug. 20, 2021) (citation omitted). For these reasons, too, the subpoenas are impermissible.

Mr. Burke claims that these categories of documents could somehow serve for impeachment. Mot. 6-7. But "[w]hen a party moving for a subpoena under Rule 17(c) is unable to set forth the 'generally anticipated' contents of the documents he is seeking and is unable to identify the basis for believing that the documents would impeach a particular witness's credibility, the party has not met its burden and is engaging in a fishing expedition." *United States v. Blake*, 2014 WL 1764679, at *4 (S.D. Fla. Mar. 25, 2014). Mr. Burke's Motion has both those failings, neither specifying the documents' anticipated contents nor identifying how they would impeach a witness's credibility.

All of these concerns take on added weight in the context of the charged offenses and the CVRA. The Victims fear that the harms Mr. Burke's overbroad subpoenas would cause are not simply incidental to a fishing expedition, but a means of revictimization. From the Victims' perspective, the subpoenas appear

14

to be fishing for confidential documents that could be used in attempts to cast
the Victims in a negative light or to exploit their information-security
measures.

Even in a run-of-the-mill case, general subpoenas seeking material for
victim-blaming would be inconsistent with both the CVRA and *Nixon*'s
requirements of specificity, relevancy, and admissibility. But such demands
are worse here: Mr. Burke has been criminally charged with unauthorized
electronic access of Victims' systems to pilfer private communications and
information. The incredibly broad demands in his subpoenas appear to be more
of the same, for they seek sweeping, sensitive information about the Victims'
information-security measures and internal operations and discussions.[9] The
CVRA promises victims that courts will not permit Rule 17(c)(3) to be used in
that way. *See* 18 U.S.C. § 3771(a)(1), (8) (giving victims "[t]he right to be
reasonably protected from the accused" and "[t]he right to be treated … with
respect for the victim's dignity and privacy"). Even if the lack of specificity were
a close call—and it is not—the policies of the CVRA would counsel caution.

_____

[9] From the Victims' perspective, the information-security demands are akin to
a bank robber demanding that victim banks produce blueprints of their
locations, engineering schematics of their vaults, names and rotation schedules
of their guards, and outcomes of other prior robbery attempts—all while the
bank robber claims that federal law would not preclude him from robbing them
again. *See, e.g.*, ECF No. 164-1 at #2-6, 12; ECF No. 164-2 at #1-3, 5, 9-10, 13-
18. It therefore makes sense that the CVRA would require *Nixon* and Rule 17's
specificity requirements to be applied with the utmost rigor to such demands.

## 2.    The Subpoenas Demand Broad Swaths of Information with Little to No Apparent Relevance

Because Mr. Burke's Motion does not even attempt to articulate a *general* theory of relevance—let alone give the required explanation of how each of the 140 document demands calls for particular documents with *specific* relevance—the Victims are left to guess at how the demands are meant to support Mr. Burke's defense. To defeat the Motion, it should be enough to show that several demands do not go to any elements of the charged crimes, or to impeach any of the Victim witnesses who may be called. Simply put, Mr. Burke has not made the showing that he "cannot properly prepare for trial without such production," as required by *Nixon*. *See* 418 U.S. at 699.

Many of the demands have no apparent relevance at all, and instead seem to be casting about for ways to further invade the Victims' privacy. From Fox, the subpoena demands: "Any and all information regarding the editorial decision about how and why the interview between Tucker Carlson and Kanye West was edited." ECF No. 164-5 at #20. From the law firms hired by Fox, the subpoenas demand "[a]ll engagement letters." *E.g.*, ECF No. 164-6 at #3. As noted above, from the NBA, the subpoena demands "[o]rganizational documentation confirming no Seattle-based NBA team existed during the relevant period." ECF No. 164-1 at #14. From LiveU, the subpoena demands "[s]ales and marketing materials describing the LiveU Matrix platform." ECF

16

No. 164-2 at #12. From CBS, the subpoena demands "[a]ll communications
with Holland & Knight, Norton Rose Fullbright, or Wilson Sonsini regarding
the incident." ECF No. 164-3 at #20. From FedNet, the subpoena demands:
"Any agreements with third parties governing the licensing or sublicensing of
content obtained from congressional events or other government proceedings."
ECF No. 164-10 at #2(b). From ESPN, the subpoena demands "ESPN's data
classification policy." ECF No. 164-11 at #7.

It is hard to fathom how those requests for production meet the relevancy
requirement. In contrast, it is easy to see how Mr. Burke's subpoenas (if he
were allowed to move forward with them) would offend the rights Congress
enshrined for victims: "dignity"; "privacy"; and "protect[ion] from the accused."
18 U.S.C. § 3771(a)(1), (8).

### 3.  The Subpoenas Demand Obviously Inadmissible Material

Lastly, Mr. Burke's Motion failed to justify the subpoenas' demands for
protected attorney-client communications from both Victims and law firms, or
even make those demands clear to the Court. Mr. Burke demands, *inter alia*:

- From the NBA, its "[c]ommunications" with its "legal counsel" about
  "FTP credential management or misuse." ECF No. 164-1 at #15.

- From Fox, "[c]ommunications with legal counsel" about "any legal or
  investigative action," ECF No. 164-5 at #19, and vice versa from Fox's
  lawyers, *e.g.*, ECF No. 164-6 at #2.

- From FedNet, "[a]ll communications with internal or external legal counsel regarding the cease and desist letter, including drafts, legal opinions, or guidance on the legal basis for the letter." ECF No. 164-10 at #5(b).

Mr. Burke also demands attorney work product (such as engagement letters, memoranda, and billing statements), including through forensic investigators. *See, e.g.*, ECF No. 164-6 at #2, 4; ECF No. 164-8 at #2; ECF No. 164-10 at #5(b). And many of the other broad categories in Mr. Burke's subpoenas likely also encompass privileged material. *See, e.g.*, ECF No. 164-3 at #18 (demanding that CBS produce all "[i]ncident response logs, policies, or meeting notes").

"[A] subpoena may be unreasonable or oppressive under Rule 17(c)" if it calls for documents protected by "a constitutional, statutory, or common-law privilege." *In re Grand Jury Doe No. G.J.2005-2*, 478 F.3d 581, 585 (4th Cir. 2007). Rightly so, because privileged communications are not admissible. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "It is therefore not only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or

18

advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. "The work product privilege is 'distinct from and broader than the attorney-client privilege.'" *In re Green Grand Jury Proc.*, 492 F.3d 976, 980 (8th Cir. 2007).

Both the attorney-client and work product privileges apply in the criminal context. *United States v. Nobles*, 422 U.S. 225, 236 (1975). There are exceptions, but none apply here and Mr. Burke does not articulate or advocate for them. Under the legal procedures that govern motions and Rule 17 subpoenas, Mr. Burke's failure to address an obvious basis for inadmissibility in the Motion requires that the Motion be denied and the subpoenas not issue.

What is worse, rather than attempting to justify Mr. Burke's express efforts to invade multiple attorney-client relationships and multiple law firms' work product, the Motion indicated no privileged materials had been subpoenaed. The Motion features a table that purports to include a "Summary of Subpoenaed Information" for each subpoena. *See* Mot. 8-13. Not only does the table leave out the demands to Victims for their communications with counsel, Mot. 8-12, when it comes to what has been subpoenaed from the three law firms retained by Fox, it states only: "*Unprivileged* copies of report of investigation given to Stroz Friedberg related to investigation of access to StreamCo and Broadcaster-2," Mot. 11-12 (emphasis added). The table makes no mention of the subpoenas' demands for the attorneys' *privileged* client

communications, memos, engagement agreements, drafts, and internal loss assessments. A table ostensibly meant to allow the Court to quickly decide whether the subpoenas should issue should have highlighted such demands; instead, Mr. Burke's table omits them.

Here, too, the CVRA underscores why the proposed subpoenas should not issue. The Rule 17(c) procedures were amended precisely to protect victims' CVRA rights to privacy and dignity, and the attorney-client privilege goes to the heart of those rights. But Mr. Burke did not disclose his effort to subpoena privileged materials to the government or this Court—the entities meant to safeguard victims' rights under the CVRA. Mr. Burke thus succeeded in causing the Court to initially authorize the subpoenas, without any apparent scrutiny of how they impinged on privilege. Put bluntly, in order to issue subpoenas that would violate Rule 17's *substantive* requirements, Mr. Burke filed a Motion that circumvented Rule 17(c)(3)'s *procedural* protections. The CVRA makes clear the Court should not countenance such conduct.

In sum, the subpoenas call for clearly inadmissible material; the Motion did not attempt to address that inadmissibility; and indeed the Motion concealed the subpoenas' improper scope. The Motion failed to meet the requirements of Rule 17 and *Nixon* for these reasons as well.

## CONCLUSION

The Court should deny Mr. Burke's Motion in full.