UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No.: 8:24-cr-00068-KKM-TGW

v.

TIMOTHY BURKE

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S DENIAL OF RULE 17(c) SUBPOENA PRODUCTION

The United States of America submits this response in opposition to *Defendant Timothy Burke's Motion for Reconsideration of Magistrate Judge's Denial of Early Pretrial Production Pursuant to F.R. Crim. P. 17(c)* ("Motion for Reconsideration"), filed September 15, 2025. Doc. 205. As explained below, Burke has failed to show that any aspect of the Magistrate Judge's order is contrary to law or clearly erroneous. Instead, Burke's Motion for Reconsideration mischaracterizes the law and issues before this Court and fails to meet the established legal standards required for issuance of the desired Fed. R. Crim. P. 17(c) subpoenas. Further, the entities victimized by Burke's charged conduct have not yet had a reasonable opportunity to "quash, modify, or otherwise object" to Burke's motion, as required under Rule 17(c)(3). Therefore, this Court should deny Burke's Motion for Reconsideration.

I.  **Legal Standard for Review**

Burke's Motion for Reconsideration objects to the determination by the Magistrate Judge on a non-dispositive discovery matter. Fed. R. Crim. P. 59(a) provides that when considering the objection of a party to such a non-dispositive order, the Court "must consider timely objections and modify or set aside any part of [an] order *that is contrary to law or clearly erroneous.*" This standard for review and required finding is also articulated in the statute delineating the jurisdiction and powers of a federal Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(A).

II. **Procedural History**

Defendant Burke filed his "*Motion to Compel Early Production Pursuant to Rule 17(c) Subpoenas*," on July 30, 2025. Doc. 164. The United States timely responded in opposition to that motion. Doc. 173. The United States articulated four grounds supporting its opposition, namely: (1) Burke's failure to comport with his obligations under Fed. R. Crim. P. 17(c) and relevant case law; (2) Burke's failure to address the victim protection obligations under Rule 17(c)(3), governing subpoenas to third-parties that may have "confidential or personal" information about a victim; (3) that some of the proposed subpoenas were targeted at entities not directly implicated by the charged conduct and were unlikely to lead to any relevant, admissible evidence at trial; and (4) that the actual proposed subpoenas commanded general "fishing expedition"-level productions, much broader in scope than the materials summarized in the requesting motion. *See generally, Id*.

2

To aid the Court with compliance under the "dignity and privacy" provisions of the Crime Victims' Rights Act[1] ("CVRA") and Rule 17(c)(3) (requiring that the victim entities be given notice and an opportunity to "otherwise object" prior to the issuance of a court order authorizing Rule 17(c) subpoenas), the United States, on August 29, 2025, filed a notice with the Court that contained a cover letter and Addendum that had been sent to the United States by said victim entities registering certain objections to the proposed subpoenas. Doc. 190. The Magistrate Judge struck the United States' filing as an unauthorized memorandum. Doc. 196. A hearing on Burke's motion for Rule 17(c) subpoenas was held on September 2, 2025. Doc. 164. Following oral arguments, the Magistrate Judge entered an Order denying, without prejudice, Burke's motion. Doc. 198. The Defendant's Motion for Reconsideration followed on September 15, 2025. Doc. 205.

### III. Relevant Law Regarding Rule 17(c) Subpoenas

As expressed in the *United States' Response in Opposition to Defendant's Motion for Rule 17(c) Subpoenas to Compel Early Production of Documents* (doc. 173), the issuance of such subpoenas is within the sound discretion of the Court, subject to the application of the four-part test established by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974). Under *Nixon*, before being permitted to issue a Rule 17(c) subpoena *duces tecum*, the moving party must demonstrate to the court that: (1) the documents sought are both evidentiary and relevant, that is, admissible; (2) the documents are

---

[1] *See* 18 U.S.C. § 3771(a)(8).

not otherwise procurable before trial through reasonable diligence; (3) the party cannot properly prepare for trial without early production; and (4) the application is not intended as a general fishing expedition. *Id*. at 699-700.

In addition to the *Nixon* test, other lower courts have opined on the limits of Rule 17(c) as a discovery device. For example, both *Nixon* and other cases have made clear that the desire to secure materials sought for impeachment or cross-examination is not a justifiable basis for compelled early disclosure under Rule 17(c). *Nixon*, 418 U.S. at 701; *see also United States v. Hardy*, 224 F.3d 752, 755–56 (8th Cir. 2000); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981).

Several cases illuminate and provide context for the general prohibition on the use of Rule 17(c) subpoenas as a tool for general discovery. In *U.S. v. Abdush-Shakur*, 465 F.3d 458 (10th Cir. 2006), defendant Abdush-Shakur sought to appeal his conviction for attempted murder and possession of a handmade knife by a prison inmate, after stabbing a correctional officer. Prior to trial, Abdush-Shakur sought to use a Rule 17(c) subpoena to procure records from his correctional facility regarding prior altercations between Abdush-Shakur and the stabbed corrections officer, which the trial court denied. Reviewing the denial under an abuse of discretion standard, a panel of the Tenth Circuit upheld the denial. The court cited *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) for the principle that "Rule 17(c) is 'not intended to provide an additional means of discovery' but 'to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.'" *Abdush-Shakur,* 465 F.3d at 467. The court noted that Abdush-Shakur's

4

characterization of his request as "pertaining only to 'records relating to prior incidents [between the parties]'" was misleading, in that Abdush-Shakur, in his Rule 17(c) subpoena, also requested such materials as: (1) all incident reports for the previous five years involving stabbings; (2) complete personnel records of the stabbed officer; (3) complete copy of his own prison file; (4) a list of policies and procedures [for prison operations]. *Id*. at 468. In support of what the court described as an "expansive" request, Abdush-Shakur *merely had stated that the requested documents were "material and integral to the defense" and that they were "evidentiary, relevant, and . . . requested in good faith"* without any additional articulation or evidentiary support. *Id*. (emphasis added). Per the court:

> "We agree with the district court that this is insufficient to satisfy Rule 17(c). Abdush-Shakur *failed to state in his motion how the requested material related to the charges against him, or how the documents were to be used in his defense. Conclusory statements do not establish relevance*."

*Id.* (emphasis added).

Mere conjecture that a document will contain evidentiary or favorable material to a defendant is not a basis for a subpoena under Rule 17(c). In *U.S. v. Bradford*, 806 F.3d 1151 (8th Cir. 2015), defendant Bradford appealed his conviction following entry of his plea agreement, in part, because the district court did not allow him to use a Rule 17(c) subpoena to compel the production of hospital records that he claimed could advance his argument for leniency at sentencing. In affirming Bradford's conviction, the Eighth Circuit noted that Rule 17(c) requires that "[t]he requesting party must identify the documents with adequate specificity and show that

5

the documents are relevant and admissible." *Id*. at 1155 (citation omitted). Importantly, the *Bradford* court affirmed previous Eighth Circuit holdings, opining that "[t]he relevance and specificity elements [of *Nixon*] **'require more than the title of a document and conjecture as to its contents,'** and a subpoena **'should not issue based upon a party's mere hope that it will turn up favorable evidence.'**" *Id*. (emphasis added, *Nixon* context added).

The four-part test established in *Nixon* applies not only to subpoenas served by a defendant upon the United States, but also to Rule 17(c) subpoenas served upon third parties. In *U.S. v. Rand*, 835 F.3d 451 (4th Cir. 2016), defendant Rand appealed his conviction for conspiracy and his unlawful conduct as the chief accounting officer for a home-building company, arguing, in pertinent part, that the *Nixon* test only applied in the narrow scope of a subpoena served upon the United States by the defendant. As to other subpoenas, such as those served upon third parties, Rand argued Rule 17(c)(2) applied only subpoenas that contained "unreasonable or oppressive" language. *Id*. at 462. The Fourth Circuit rejected Rand's argument, holding that the *Nixon* factors applied to all Rule 17(c) subpoenas. *Id*. at 463. In its discussion, the *Rand* Court noted that the purpose of *Nixon* was not, as Rand suggested, merely "to not allow bypass of Rule 16 through Rule 17 . . ." such that it should only apply to subpoenas issued to the government; rather the *Nixon* framework is the appropriate standard for all Rule 17(c) subpoenas. *Id*. The court reiterated the holding in *Nixon* that a subpoena duces tecum "was not intended to

6

provide a means of discovery for criminal cases." *Id*. Additionally, the court, citing a district court order, explained that ***"[t]he right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory.'"*** *Id*. (citing *United States v. Al-Amin*, No. 1:12-cr-50, 2013 WL 3865079 at *8 (E.D. Tenn. July 25, 2013) (emphasis added)).

The mere ability to articulate what you hope to find in subpoenaed evidence does not meet the *Nixon* standard as to the relevance prong. In *U.S. v. Trump*, 703 F.Supp.3d 89 (D.D.C. 2023), the defendant sought to use multiple Rule 17(c) subpoenas issued to various governmental agencies and committees, none of whom were part of the prosecution team, to obtain what the defendant claimed were "missing materials" from those obtained in discovery. In the trial court's denial of the motion for Rule 17(c) subpoenas, the court, citing *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980), explained that "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *Trump,* 703 F.Supp.3d at 92. In defendant's motion, the defendant had suggested "that [certain of the missing materials] could be used for the [i]mpeachment of witnesses." *Id*. at 93. The district court rebuffed this as sufficient to establish relevance, noting "[d]efendant provides no basis for concluding that [the subpoenaed evidence] contain any such impeachment evidence. This falls well short of his burden. ***The relevance prong is not***

7

*satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence.*" *Id*. at 94 (emphasis added, internal citations omitted).

# ARGUMENT

### IV. Burke Mischaracterizes the Pertinent Issues and Law Before the Court in His Motion for Reconsideration.

Burke, in his Motion for Reconsideration, mischaracterizes the issues pending before this Court as being limited to an issue of the *timing of production*, without fully acknowledging the significance of the intertwined scope-of-production issue. Doc. 205 at 1. While the Magistrate Judge took separate issue with the timing of the proposed subpoenas, specifically as to whether the requested issuance of Rule 17(c) subpoenas *prior to trial* was permissible, the Magistrate Judge specifically noted in his Order that Burke "requests an inordinate amount of information, which defense counsel acknowledges is overbroad." Doc. 198 at 1. The Court also noted that "specific arguments explaining why [Burke] is entitled to these wide-reaching types of information identified in each subpoena is underdeveloped, so I am not even able to determine whether the defendant is entitled to that information at any time during this case." *Id*. at 1–2.

Burke's Motion for Reconsideration attempts to skip past that aspect of the Magistrate Judge's Order, ignoring his obligation to demonstrate that his requests meet the *Nixon* factors and are otherwise proper. Instead, Burke summarily asserts that he possesses an unqualified "[C]onstitutional right to compel third parties to produce by subpoena materials which are evidentiary and relevant[.]" Doc. 205 at 1.

8

While the right of a defendant to subpoena both witnesses, and relevant, admissible material evidence in support of his defense is a well-established Constitutional right, the *scope, qualifications, and limits of that right* stand at the center of the issues taken up by the Supreme Court in *Nixon*. The Sixth Amendment Compulsory Process Clause, *like all Constitutional due-process rights*, is moderated by, and has its outer limits drawn through, a body of binding case law, which Burke has thus far seemed unwilling to directly tackle.

 Indeed, Burke asks this Court to do the opposite. In making his request for 13 separate subpoenas to victim entities, their legal counsel, and other nonparties—seeking, in aggregate, over 140 categories of information (many of which seek "any and all" documents meeting a broad criterion)—Burke asks that he be granted broad authority to compel production of general discovery materials without having established *any articulated grounds* for the relevancy or admissibility of his requests as required by *Nixon*. In his Motion for Reconsideration, Burke argues that the Court *must* grant him this sweeping pretrial remedy because "the documents may be voluminous" and, he claims, it is necessary to "litigate issues of scope, privilege, and privacy" before trial. Doc. 205 at 2–3.

 Additionally, during the hearing on this matter before the Magistrate Judge, Burke's counsel explained: "[Burke] is asking for early production permitted to save everybody and the Court time basically . . .." Doc. 201 at 4, line 15. Further, "[Burke is] willing to whittle it down. . . . if we got 100 pages of paper from all of this, we'd be happy. *We don't know the scope of everything that we're seeking, what does and*

9

*doesn't exist, but we know we have some significant defenses* that involve some customs and policies and practices of these corporate victims . . ..*"* Doc. 201 at 6, lines 4–9 (emphasis added). Counsel added, "the point is the rule specifically says when victims are served—and these corporate vicitms, they can move to quash or modify or otherwise object. *That process can take place now if you'd just allow us to issue the subpoenas*. . . [w]e would—we would narrow it down. . . [Burke doesn't] want a motion to quash, your honor, on the case. I want to work it out." Doc. 201 at 15, lines 15–23 (emphasis added).

    As the Magistrate Judge aptly explained, "[T]his comes up all the time usually in civil cases*. This is a criminal case in which there is a narrower range of discovery.* So—and in the civil cases, I knock down a whole lot of stuff that's way too broad." Doc. 201 at 19, lines 1–4 (emphasis added). The "narrower range of discovery" identified by the Magistrate Judge is governed by Fed. R. Crim. P. 16, which Burke is clearly attempting to circumvent. As *Nixon* and its progeny have concluded, Rule 17(c) is **not** intended to be used as a discovery device. Burke's arguments, made in written filings and related oral arguments, have made abundantly clear that Burke is hoping *to engage in a general discovery process*, akin to that of civil discovery, in which Burke seeks the power of the Court to compel a wide-range of documents *in the mere hope* that some of these documents may raise or bolster a defense theory.

10

**V.     Burke's Underlying Motion for Rule 17(c) Subpoenas Fails the *Nixon* Analysis and Seeks to Engage in an Impermissible Fishing Expedition.**

As fully expounded upon in the United States' response in opposition to the underlying motion and reasserted here, Burke fails to meet the standard for the issuance of Rule 17(c) subpoenas on numerous grounds. Those arguments are further summarized here for consideration of the Court.

   a.  Burke Fails to Meet the *Nixon* Factors for Admissibility and Makes Conclusory Statements Regarding the Relevance of Subpoenaed Materials

As described in *Nixon* and further refined by the holdings and discussion in *Abdush-Shakur, Bradford, Rand,* and *Trump*, subpoenas *duces tecum* under Fed. R. Crim. P. Rule 17(c) are ***not*** a means for the defendant to engage in general discovery, fact-finding, or other 'investigatory' ends. Rather, the scope of the Rule 17(c) subpoena is properly limited to ensuring that evidentiary and relevant (i.e. admissible) materials are available to the parties at trial. Parties moving for the issuance of Rule 17(c) subpoenas must be able to sufficiently articulate the four-prongs of the *Nixon* holding before a subpoena may be issued at the trial court's discretion.

The first prong of the analysis is whether the documents to be subpoenaed are relevant and evidentiary. In Burke's underlying motion, he provides the Court ***one sentence*** in support of his claim that the documents to be subpoenaed are relevant. Doc. 164 at 5. That one sentence conclusion asserts *ipse dixit* that "the documents are directly related to the charges against the defendant and are expected to contain

11

information *that will be used to challenge the prosecution's evidence* and support the defense's case. *Id*. (emphasis added). Much like the defendant in *Abdush-Shakur*, Burke not only fails to provide sufficiently articulable grounds for relevancy, he fails to provide *any* particularized analysis whatsoever. As the Tenth Circuit asserted in *Abdush-Shakur*, "Conclusory statements do not establish relevance." *Abdush-Shakur*, 465 F.3d at 468.

Even if Burke had provided some analysis to support his various requests, the sheer scope of the materials requested within the motion, to include multi-year timelines, and whole categories of information, is not reconcilable with *Nixon* and its progeny. For example, when summarizing the information to be produced by the National Sports League (NSL), Burke seeks reports for *any investigations during a two-year period* related to the identified 'flipfactory' FTP account. Doc. 164 at 8. Likewise, in the subpoena to StreamCo Inc., Burke seeks all "StreamCo data regarding unauthorized access to StreamCo or compromised credentials" over a two-year period. *Id*. Burke's requested subpoenas are replete with examples of "Information related to [X] topic" or "[X] documents within [multi-year date range]." *See Id*. at 8–13. These potentially voluminous categories of information lack any appreciable degree of specificity such that they could be considered a tailored request for a particular admissible document or specified material, rather than what they are—a mere "fishing expedition" in search of a wishful production of favorable discovery. As explained by the Eighth Circuit in *Bradford*, a subpoena for documents,

12

even where a defendant can provide a "title of a document and conjecture as to its content", such a subpoena "*should not issue based upon a party's 'mere hope' that it will turn up favorable evidence.*" *Bradford,* 806 F.3d at 1155 (emphasis added). Here, Burke's level of articulation falls far short of that in *Bradford*.

    b. Burke's Motion Fails to Meet the Notice and Review Obligations for <u>Victim Protection under Rule 17(c)(3)</u>

Burke not only fails to address the *Nixon* prongs, he also fails to acknowledge or address the movant's obligations under Fed. R. Crim. P. Rule 17(c)(3), regarding subpoenas to third parties which may involve "personal or confidential information" about a victim. The Committee Notes for Fed. R. Crim. P. Rule 17 include a 2008 annotation noting the addition of subsection (c)(3), which implements the CVRA. The CVRA, codified at 18 U.S.C. § 3771, states in part that victims have a right to respect for their "dignity and privacy."

However, Burke's underlying motion makes no effort to guide or assist the Court in developing a reasonable course of action to ensure that the victim entities involved have reasonable time to move to "quash or modify . . . or otherwise object" to the subpoenas *before* a court order permitting the subpoenas is issued to the various third parties. The Committee Notes for Rule 17 further explains that the term "otherwise object[ing]" as used in subsection (c)(3) can include steps short of formal legal intervention, such as the opportunity to review the proposed subpoenas and submit a letter with objections, or other action short of a motion to quash. However, under the Rule, the Court must exercise its discretion to ensure proper notice and

opportunity to object in order to give meaning to the victim privacy rights in the CVRA.

      c. Burke Seeks to Subpoena Entities Not Identified with the Conduct Charged in the Indictment or the United States' Related Disclosures

Burke, in addition to the expansive subpoenas to victim entities and other entities disclosed as involved in related conduct to the charged offenses, additionally seeks materials from entities **not** otherwise identified, and from whom there is not likely to be any admissible materials. For example, Burke has proposed a subpoena to "FedNet," a service purported to provide access to audiovisual streams related to sessions of Congress, to obtain various categories of materials related to a claimed cease-and-desist letter of unidentified date. *See* Doc. 164–10. In this subpoena, Burke seeks over a year's worth of IP access history logs, over five years' worth of licensure agreements, to include any agreements with any third parties involving the sublicensing of content obtained from government proceedings, and various internal communications. *Id*.

"FedNet" is neither a victim entity associated with the charged conduct, nor has the United States asserted any intent to put forth evidence of related conduct involving this entity during its case-in-chief. As "FedNet" is not an entity involved in the government's case, the possible relevance of this material—such that Burke seeks to use the power of the Court to compel these materials—is unclear, at best. Certainly, these materials have no reasonable likelihood of being admissible towards the charged offenses at trial. The request of these additional subpoenas casts further

14

doubts on Burke's assertion that he is merely seeking to ensure the availability of known, admissible, materials under Rule 17(c). Rather, these subpoenas evince an effort to conduct a fishing expedition to obtain discovery materials he speculates may be favorable to him.

> d. Burke's Proposed Subpoenas Identify Broad Categories of Materials That Exceed Those Purportedly Sought Within His Motion

Lastly, the subpoenas sought by Burke identify broad categories of materials that go beyond even those categories summarized within the Motion. Even if Burke had properly articulated the relevancy, specificity, and necessity of the materials summarized within the Motion, the subpoenas themselves seek a body of documents and materials that go beyond that sought in the Motion.[2] There is a material difference in scope between those materials summarized within the Motion on pages 8–13, and the various broad categories of materials sought within the 13 proposed subpoenas attached to the Motion. *See* Doc. 164–1 through 164–13.

For example, the proposed subpoena to Fox Corporation (Doc. 164–5), lists within subpoena attachment 'A' a command to produce, in part:

> . . .
>
> 3. All contracts, agreements, NDAs, releases, editorial control terms, and privacy-related provisions entered into between Fox News and Tucker Carlson and/or Kanye West, including any provisions addressing on-air appearances, recorded communications, or expectations of confidentiality or privacy.
> . . .

---

[2] The United States has previously conferred with counsel for Burke, and the United States is not asserting that Burke has failed to act in good faith in his summarizing the materials sought in the Motion; merely that the subpoenas seek materials beyond the scope of that summarized therein.

    4. Documents, communications, or other records addressing the existence or scope of any "reasonable expectation of privacy" for individuals participating in the allegedly intercepted communications, including policies, producer notes, emails, or legal opinions.

    . . .

    19. Communications with legal counsel (Holland & Knight, Norton Rose Fulbright, Wilson Sonsini) related to any legal or investigative action

    . . .

    20. Any and all information regarding the editorial decision about how and why the interview between Tucker Carlson and Kanye West was edited.

These broad categories of materials, particularly relating to requests for internal documents related to "editorial decision"-making, and a blanket request with no time period identified for **any** communications between victim and their various legal counsel, go far beyond the listed summary of materials sought for "Broadcaster-2 (a.k.a. Fox Corporation)" in the Motion on page 10–11. Burke cannot credibly allege that these, in addition to the sixteen other categories of information sought, are sufficiently tailored and specific as to not comprise a "tool for general discovery" prohibited by *Nixon*. Indeed, the scope of this subpoena asks the Court to compel a wide range of documents that seek to "[use] the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory." *Rand* 835 F.3d at 463.

## VI. Rule 17(c)(3) Requires the Opportunity for the Victim Parties to Meaningfully Object *Prior To the Issuance of an Order for Subpoenas*

As discussed above, Rule 17(c)(3) seeks to give force and effect to the CVRA with respect to the "dignity and privacy" rights of victims. Subsection (c)(3), in particular, requires that ***prior to the issuance of a court order*** for the issuance of certain

16

Rule 17(c) subpoenas that may seek "personal and confidential" information about a victim entity, the victim must be afforded both notice and an opportunity to "quash, modify, or otherwise object." *See* Rule 17(c)(3).

On August 29, 2025, the United States received a cover letter and attached Addendum from four victim entities (the "letter and Addendum") referenced in the indictment, requesting that the letter and Addendum be filed or otherwise be made available to this Court. That letter and Addendum, at least in part, reflects those identified entities' objections to some of the requested Fed. R. Crim. P. 17(c) subpoenas included in Burke's *Motion for Rule 17(c) Subpoenas to Compel Early Production of Documents*. Doc. 164. The United States thereafter filed a *Notice of Filing Victims' Objections to the Issuance of Rule 17(c) Subpoenas*, incorporating that letter and Addendum. Doc. 190. On September 5, 2025, the Magistrate Judge entered an order that struck the United States' filing, noting that the submission was "not merely a notice; it contain[ed] a twenty-page 'addendum' which [was] an unauthorized memorandum." Doc. 196.

The United States is mindful that the Magistrate Judge struck the pertinent filing on the grounds that it was an "unauthorized memorandum" because it was more than a mere notice. However, the United States believes that, having received the pertinent cover letter and Addendum from the victim entities, it was incumbent upon the United States to file the same with this Court, or at least to bring the letter and Addendum to the Court's attention. The United States therefore respectfully requests that this Court provide some guidance regarding whether the submission of

17

the letter and Addendum should be made by the United States, by the four identified victim entities, or not made at all absent later direction by this Court.

## CONCLUSION

For the foregoing reasons, the United States asks that this Court deny Burke's Motion for Reconsideration. Burke has failed to demonstrate that any aspect of the pertinent Magistrate Judge's Order was "contrary to law or clearly erroneous," as required under Fed. R. Crim. P. Rule 59 and 28 U.S.C. § 636(b)(1)(A). Burke has also failed to articulate the appropriate relevancy, specificity, and admissibility as required under the four-part *Nixon* test to support his request for Rule 17(c) subpoenas that command the pretrial production of voluminous discovery materials. Therefore, the Magistrate Judge's Order should stand.

        Respectfully submitted,

        GREGORY W. KEHOE
        United States Attorney

By:   */s/ Adam J. Duso*
       Adam J. Duso
       Assistant United States Attorney
       Florida Bar No. 1026003
       400 N. Tampa St., Suite 3200
       Tampa, Florida 33602-4798
       Telephone: (813) 274-6000
       Email: adam.duso@usdoj.gov

       */s/ Jay G. Trezevant*
       Jay G. Trezevant
       Assistant United States Attorney
       Florida Bar No. 0802093

400 N. Tampa St., Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Email: jay.trezevant@usdoj.gov

U.S. v. Timothy Burke                                Case No. 8:24-cr-68-KKM-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Maddux, Esq.
Mark D. Rasch, Esq.

                                                                                   */s/ Adam J. Duso*
                                                                                    Adam J. Duso
                                                                                    Assistant United States Attorney