UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                          Case No. 8:24-cr-68-KKM-TGW

TIMOTHY BURKE,

    Defendant.
_____

## ORDER

    The Wiretap Act bars the interception of a wire communication, defined in broad strokes as "any aural transfer" made with the use of a wire, cable, or similar connection. An "aural transfer" means "a transfer containing the human voice." In 1986, Congress expanded the Wiretap Act's reach by prohibiting the interception of "electronic" communications, defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence" transmitted "by a wire, radio, electromagnetic, photoelectronic or photooptical system" "but does not include . . . any wire . . . communication."

    By adding electronic communication to the prohibitions, Congress sought to expand the kinds of communications that could be penalized for unlawful interceptions. The statutory text, albeit cumbersome, does not indicate that Congress sought to double count every interception of a digital transfer containing the human voice, first as an interception of a wire

communication based on the audio portion and second as an electronic communication based on all the other data transmitted. Indeed, to do so runs afoul of Double Jeopardy principles.

In granting Defendant Timothy Burke's third motion to dismiss, I explained that the audio-video livestreams that Burke allegedly intercepted "appear to be best understood as electronic communications, not a mixture of wire and electronic communications broken apart into the human voice and video aspects." Order (Doc. 217) at 6; *see id.* at 35 n.10 (concluding "that the livestreams Burke allegedly intercepted are likely electronic communications, not oral or wire."). I also determined that "intercepting wire and electronic communications have different elements and are therefore now different offenses, not merely different means of committing the same offense." *Id.* In the light of that ruling, the government moves for clarification as to whether the order dismissed with prejudice the Wiretap Act counts for "wire communications" predicated on interception of audio-video livestreams. Mot. for Clarification (MFC) (Doc. 225) at 2–3.[1] Based on the indictment's allegations, the answer is yes. The Wiretap Act does not countenance two separate violations of the statute, one for "wire" and another for "electronic"

---

[1] If it seeks a superseding indictment, the government represents that it intends on charging "at least in part, the 'wire' portion of the streams—i.e., the portion of the streams that contain a human voice (and therefore cannot be charged or proven as electronic' communications)." MFC at 2.

communications, for the same interception of an audio-video stream. That kind of audio-visual communication is best understood as an electronic communication. Thus, each allegation of "intentionally intercept[ing]" an "audio/video . . . stream" pertains only to an "electronic communication." *See* Indictment (Doc. 1) (Counts 8–12) ¶ 2.

This conclusion follows from applying traditional principles of criminal law to the text and structure of the Wiretap Act. To start, an indictment must set out separate offenses in separate counts. FED. R. CRIM. P. 8(a); *see id.* 12(b)(3)(B)(i). But an indictment fails for multiplicity if it charges the same offense in more than one count, *see United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008), "violat[ing] double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense," *United States v. Jones*, 601 F.3d 1247, 1258 (11th Cir. 2010); *see also* FED. R. CRIM. P. 12(b)(3)(B)(ii). "When an indictment contains more than one count charging a violation of the same statute, [the] inquiry concerns whether Congress intended the different acts underlying each count to constitute a separate offense." *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012) (per curiam) (citing *United States v. Smith*, 231 F.3d 800, 815 (11th Cir. 2000)).

The touchstone, then, is whether the defendant committed separately punishable "different acts." *Fee*, 491 F. App'x at 157. That is, whether a transaction is "a single offense or separate offenses . . . is determined by

3

whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Davis,* 730 F.2d 669, 672 (11th Cir. 1984) (quoting *Bins v. United States,* 331 F.2d 390, 393 (5th Cir. 1964)). To make that determination, I must ascertain "the allowable unit of prosecution." *Smith*, 231 F.3d at 815 (quoting *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991)). "The principle underlying this rule is that the 'unit of prosecution' for a crime is the *actus reus*, the physical conduct of the defendant." *United States v. Jones*, 2007 WL 2301420, at *10 (N.D. Ga. July 18, 2007) (quoting *United States v. Prestenbach*, 230 F.3d 780, 783 (5th Cir. 2000)); *see Jones v. Sec'y, Dep't of Corr.*, 778 F. App'x 626, 635 (11th Cir. 2019) ("First, we look to the statute charged to ascertain the allowable unit of prosecution, or the *actus reus* of the crime." (internal quotation marks omitted)).

To be sure, the previous order concluded that the interception of an electronic communication is a different substantive offense than the interception of a wire communication because the former requires proof of an additional element, namely that the communication was not readily accessible to the general public. *See* Order at 34–35 & n.10. But it does not follow that the government may charge Burke with two offenses for the same *actus reus*, i.e., the same interception of a single livestreamed video communication. For example, where a statute prohibits uttering false statements or stealing mail, each separate utterance or theft constitutes the "unit of prosecution" and thus

4

a separate offense. So, fraudulently endorsing eight separate checks in a single transaction constitutes eight separate violations of 18 U.S.C § 495, *see United States v. Windom*, 510 F.2d 989, 994–95 (5th Cir. 1975),[2] but stealing a single bag of mail containing multiple pieces of mail qualifies as only a single offense under 18 U.S.C. § 1708, *see Williams v. United States*, 385 F.2d 46, 47 (5th Cir. 1967).

The same principle applies here. The Wiretap Act limits the unit of prosecution to a single act of interception (or disclosure). A defendant commits an offense if he "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "The statute's use of [discrete] verbs to describe the prohibited conduct shows that Congress criminalized individual acts that may be divided into separate offenses." *United States v. Leahy*, No. 8:22-CR-0156-KKM-MRM, 2022 WL 2818114, at *5 (M.D. Fla. July 19, 2022), *aff'd*, 152 F.4th 1356 (11th Cir. 2025). The statute further distinguishes between communication types, making electronic and wire communications mutually exclusive. *See* 18 U.S.C. § 2510(12)(A) (An "electronic communication" "does not include . . . any wire or oral

---

[2] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

communication."). So, to charge two separate violations for "intentionally intercept[ing]" an electronic communication and a wire communication, the government must allege that two separate interceptions occurred. I do not read the indictment—or the brief description of the planned superseding indictment—to allege as much. All allegations by the government of interception support the view that Burke allegedly acquired the contents of each "audio/video" stream in a single act using the same wire, cable, or other system.

Thus, insofar as the government intends to reallege that Burke "intercepted" five "audio/video NW2 stream[s] including . . . conversation[s]," each individual communication must be either electronic or wire, but not both.[3] Indictment (Counts 8–12) ¶ 2. And, as explained in the previous order, those communications are better categorized as electronic communications, even if they "contain a human voice." MFC at 2.

The Eleventh Circuit's decision in *United States v. Herring* requires this result. There, the defendant used an electronic device to "unscramble" satellite television signals and "receive pay-television programming without subscribing to and paying for it." 993 F.2d 784, 786 (11th Cir. 1993). In

---

[3] This conclusion applies to the alleged disclosure of communications at issue in Counts 13 and 14. There, the government does not allege that Burke separately "disclosed" an electronic communication and a wire communication. *See* Indictment (Counts 13–14) ¶ 2.

6

rejecting the defendant's argument that the Wiretap Act did not apply to his conduct, the court first determined that "the modified [electronic device] which unscrambles the scrambled television signal . . . thus 'acquires' the 'content' of the pay-television signal within the meaning of the statutory definition" of "intercept." *Id.* Turning to the communication type, the court explained "that the television programming at issue in this case falls within the plain meaning" of an "electronic communication[]," as defined "very broad[ly]" by the Wiretap Act. *Id.* at 787 (citing 18 U.S.C. § 2510(12)); *see, e.g., United States v. Splawn*, 982 F.2d 414, 416 (10th Cir. 1992) ("[I]t is undisputed that satellite television transmissions contain sounds and images and are carried via radio waves; therefore, they constitute electronic communications." (internal citation omitted)). It appears to have made no difference to the *Herring* court that the "television programming" at issue, when "unscrambled," almost certainly contained human voice. Here, too. As alleged, the government describes audio-video livestreams that contain "signs, signals, writing, images, *sounds*, data, or intelligence of any nature." 18 U.S.C. § 2510(12) (emphasis added). And because, as alleged, those audio-video communications were transmitted over the Internet, I conclude they were "transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." *Id.; see* Electronic Privacy Information Center (EPIC) Br. (Doc. 143) at 6 ("In the streaming context, the operative communication is the transfer of video data

7

from the streaming server to the recipient user's device."). At bottom, the government's descriptions of the communications fit within the Wiretap Act's "very broad" definition of an electronic communication.

Two other statutory definitions bolster *Herring*'s conclusion. First, "'intercept' means the aural or other acquisition of the contents of any . . . communication." 18 U.S.C. § 2510(4). And the "contents" of a communication "include[] *any* information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8) (emphasis added). When "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). As alleged here, the audio component of each livestream must "include[] *any* information" about the communication's "substance, purport, or meaning." § 2510(8) (emphasis added); *see, e.g.*, Indictment (Count Ten) ¶ 2 ("including news correspondent hosting off-camera conversations with multiple participants concerning their political views . . . ."). To say that subcomponents containing human voice count only as "wire communication[s]" would strip the "electronic communication" interception offense of all function in violation of a "cardinal principle of statutory construction." *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005) (en banc) (internal quotation marks omitted); *see* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF

8

LEGAL TEXTS § 26, at 174 (2012) ("[No word] should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). I decline to do so.

Accordingly, the government's Unopposed Motion for Clarification (Doc. 225) is **GRANTED**. Based on the facts described by the government and the allegations in the indictment, those communications that Burke allegedly intercepted and disclosed are "electronic communication[s]" under the Wiretap Act. *See* 18 U.S.C. § 2510(12).

**ORDERED** in Tampa, Florida, on October 20, 2025.

Kathryn Kimball Mizelle
United States District Judge