# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Golden-Collum Memorial Federal Building & U.S. Courthouse
207 NW Second Street
Ocala, Florida 34475
(352) 369-4860

Elizabeth M. Warren                                          Lisa Fannin
Clerk of Court                                          Division Manager

**DATE:** November 12, 2025

**TO:** Clerk, U.S. Court of Appeals for the Eleventh Circuit

---

UNITED STATES OF AMERICA,
        Plaintiff,

v                                          Case Number: 8:24-cr-68-KKM-TGW

TIMOTHY BURKE,
        Defendant.

---

**U.S.C.A. Case No.:        NEW APPEAL**

Enclosed are documents and information relating to an appeal in the above-referenced action.  Please acknowledge receipt on the enclosed copy of this letter.

- Honorable Kathryn Kimball Mizelle, United States District Judge appealed from.

- Appeal filing fee was not paid. Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.  If you are filing informa pauperis, a request for leave to appeal in forma pauperis needs to be filed with the district court.

- Certified copy of Notice of Appeal, docket entries, judgment and/or Order appealed from.  Opinion was not entered orally.

ELIZABETH M. WARREN, CLERK

By:     s/L. DeAngelis, Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
        *Plaintiff,*

v.                                Case No. 8:24-cr-68-KKW-TGW

TIMOTHY BURKE,
        *Defendant*

## UNITED STATES' NOTICE OF APPEAL

The United States of America appeals to the United States Court of Appeals for the Eleventh Circuit the orders entered in this action on September 25, 2025, Doc. 217, and on October 20, 2025, Doc. 226.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:    *s/ Jay G. Trezevant*
       JAY G. TREZEVANT
       Assistant United States Attorney
       Florida Bar No. 0802093
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:  (813) 274-6000
       Facsimile:  (813) 274-6358
       E-mail: jay.trezevant@usdoj.gov

_s/ Adam J. Duso_

ADAM J. DUSO
Assistant United States Attorney
Florida Bar No. 1026003
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail: adam.duso@usdoj.gov

**U.S. v. Timothy Burke**                    **Case No. 8:24-cr-68-KKW-TGW**

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

MICHAEL P. MADDUX, ESQ.
MARK D. RASCH, ESQ.


/s/ Jay G. Trezevant
JAY G. TREZEVANT
Assistant United States Attorney

BOND,INTAPP,SL DOC,TANGIBLE,TRLSET

# U.S. District Court
# Middle District of Florida (Tampa)
# CRIMINAL DOCKET FOR CASE #: 8:24-cr-00068-KKM-TGW-1

Case title: USA v. Burke

Date Filed: 02/15/2024

---

Assigned to: Judge Kathryn Kimball
Mizelle
Referred to: Magistrate Judge Thomas G.
Wilson

**Defendant (1)**

**Timothy Burke**                                   represented by   **Michael P. Maddux**
                                                                     Michael P. Maddux, PA
                                                                     2102 W Cleveland St
                                                                     Tampa, FL 33606
                                                                     813/253-3363
                                                                     Fax: 813/253-2553
                                                                     Email: mmaddux@madduxattorneys.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Designation: Retained*

                                                                     **Mark D. Rasch**
                                                                     Law Office of Mark D. Rasch
                                                                     7919 Springer Road
                                                                     Bethesda, MD 20817
                                                                     301-547-6925
                                                                     Email: mdrasch@gmail.com
                                                                     *PRO HAC VICE*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Designation: Retained*

**Pending Counts**                                                   **Disposition**

18:371.F CONSPIRACY TO DEFRAUD
THE UNITED STATES
(1)

18:1030A.F FRAUD ACTIVITY
CONNECTED WITH COMPUTERS
(2-7)

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| 18:2511.F INTERCEPTION AND DISCLOSURE OF WIRE OR ORAL COMMUNICATIONS (8-14) | Dismissed on defendant's motion |

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
|---|---|
| None | |

---

**Amicus**

**Reporters Committee for Freedom of the Press**

represented by **Gabriel Rottman**
Reporters Committee for Freedom of the Press
Suite 1020
1156 15th Street NW
Washington, DC 20005
202-795-9300
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Amicus**

**Electronic Privacy Information Center (EPIC)**

represented by **Alan Butler**
Electronic Privacy Information Center (EPIC)
1519 New Hampshire Ave NW
Washington, DC 20036
202-483-1140
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Amicus**

**American Civil Liberties Union Foundation of Florida, Inc.**

represented by **Daniel B. Tilley**
ACLU Foundation of Florida, Inc.
Suite 400
4343 West Flagler Street
Miami, FL 33134
786/ 363-2700
Email: dtilley@aclufl.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Amicus**

**Internet Accountability Project**                represented by **Jason Brent Gonzalez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Adam P. Laxalt**
Cooper & Kirk, PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
202-220-9600
Email: alaxalt@cooperkirk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**John D. Ohlendorf**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202-220-9600
Email: johlendorf@cooperkirk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**First Amendment Lawyers Association**        represented by **Gary S. Edinger**
*FALA*                                          Benjamin, Aaronson, Edinger & Patanzo, P.A.
305 N.E. 1st Street
Gainesville, FL 32601
352/338-4440
Fax: 352-337-0696
Email: GSEdinger12@gmail.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Plaintiff**

**USA**                                         represented by **Adam John Duso**
DOJ-USAO
Tampa Division
400 North Tampa Street
Suite 3200
Tampa, FL 33602
813-274-6169
Email: adam.duso@usdoj.gov

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**James A. Muench**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813/274-6000
Email: james.muench2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jason Brent Gonzalez**
Lawson Huck Gonzalez, PLLC
101 E. College Avenue
5th Floor
Tallahassee, FL 32301
850-825-4334
Email: jason@lawsonhuckgonzalez.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jay G. Trezevant**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813/274-6312
Fax: 813/274-6103
Email: jay.trezevant@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/15/2024 | 1 | INDICTMENT returned in open court as to Timothy Burke (1) count(s) 1, 2-7, 8-14. (Attachments: # 1 Restricted Unredacted Indictment) (JNB) (Entered: 02/22/2024) |
| 02/15/2024 | 3 | MOTION for Miscellaneous Relief, specifically to seal indictment and related documents by USA as to Timothy Burke. (JNB) (Entered: 02/22/2024) |
| 02/15/2024 | 4 | **ORDER granting 3 Motion to seal indictment and related documents as to Timothy Burke (1). Signed by Magistrate Judge Anthony E. Porcelli on 2/15/24. (JNB)** (Entered: 02/22/2024) |
| 02/22/2024 | | Arrest of Timothy Burke on 2/22/2024 (AMS) (Entered: 02/22/2024) |
| 02/22/2024 | 6 | ORAL MOTION for Release from Custody by Timothy Burke. (AMS) (Entered: 02/22/2024) |
| 02/22/2024 | 7 | NOTICE of Standing Order Regarding Due Process Protections Act, 3:20-mc-20-TJC, Doc 1 as to Timothy Burke: Pursuant to the Due Process Protections Act, the Court confirms the United States' disclosure obligation under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to comply with that obligation. Violating this order may result in consequences, including exclusion of evidence, |

| | | |
|---|---|---|
| | | adverse jury instructions, dismissal of charges, contempt proceedings, and other sanctions. Signed by Judge Timothy J. Corrigan. (AMS) (Entered: 02/22/2024) |
| 02/22/2024 | 8 | **STANDING ORDER: No later than 30 days from the date this order is entered in a criminal case, the United States is directed to file a notice of all corporate victims or other corporate interested parties, including legal entities that hold any interest in a corporate victim's or interested party's shares or stock. If there are no corporate victims or other corporate interested parties, the United States is directed to file a notice stating that there are none. Signed by Judge Kathryn Kimball Mizelle on 2/22/2024. (GSO)** (Entered: 02/22/2024) |
| 02/22/2024 | 9 | Minute Entry for In Person proceedings held before Magistrate Judge Amanda Arnold Sansone: granting 6 Motion for Release from Custody as to Timothy Burke (1); Initial Appearance as to Timothy Burke held on 2/22/2024. (Digital) (AMS) (Entered: 02/23/2024) |
| 02/22/2024 | 10 | Arrest Warrant Returned Executed on 2/22/2024 as to Timothy Burke. (GL) (Entered: 02/23/2024) |
| 02/26/2024 | 11 | NOTICE OF ATTORNEY APPEARANCE James A. Muench appearing for USA. (Muench, James) (Entered: 02/26/2024) |
| 03/01/2024 | 13 | NOTICE OF HEARING as to Timothy Burke: Arraignment set for 3/5/2024 at 11:00 AM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (KMN) (Entered: 03/01/2024) |
| 03/01/2024 | 14 | NOTICE OF RESCHEDULING HEARING: The Arraignment hearing previously scheduled for 3/5/2024 is rescheduled as to Timothy Burke. New hearing date and time: Arraignment set for 3/11/2024 at 11:00 AM in Tampa Courtroom 11 A before Magistrate Judge Thomas G. Wilson. (KMN) (Entered: 03/01/2024) |
| 03/11/2024 | 15 | ORAL MOTION to Continue Arraignment, ORAL MOTION to Modify Conditions of Release by Timothy Burke. (KMN) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 03/11/2024) |
| 03/11/2024 | 16 | **ORAL ORDER granting 15 ORAL Motion to Continue as to Timothy Burke (1); granting 15 ORAL Motion to Modify Conditions of Release as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 3/11/2024. (KMN)** (Entered: 03/11/2024) |
| 03/11/2024 | 17 | Minute Entry for In Person proceedings held before Magistrate Judge Thomas G. Wilson: ARRAIGNMENT held on 3/11/2024. Arraignment was continued and to be scheduled for a later day. (DIGITAL) (KMN) (Entered: 03/11/2024) |
| 03/11/2024 | 18 | ***CJA 23 Financial Affidavit by Timothy Burke. (KMN) (Entered: 03/11/2024) |
| 03/11/2024 | 19 | NOTICE OF HEARING as to Timothy Burke: Arraignment set for 4/2/2024 at 11:00 AM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (KMN) (Entered: 03/11/2024) |
| 03/11/2024 | 20 | NOTICE OF ATTORNEY APPEARANCE Adam John Duso appearing for USA. (Duso, Adam) (Entered: 03/11/2024) |
| 03/12/2024 | 21 | **ORDER amending conditions of release as to Timothy Burke. Signed by Magistrate Judge Thomas G. Wilson on 3/12/2024. (KMN)** (Entered: 03/12/2024) |
| 03/21/2024 | 22 | NOTICE of a related case per Local Rule 1.07(c) as to Timothy Burke by USA. Related case(s): Yes (Trezevant, Jay) (Entered: 03/21/2024) |

| 04/01/2024 | 24 | NOTICE OF ATTORNEY APPEARANCE: Michael P. Maddux appearing for Timothy Burke and Waiver of Defendant's Presence at Arraignment (Maddux, Michael) (Entered: 04/01/2024) |
| 04/01/2024 | 25 | **ACCEPTANCE OF WAIVER of defendant's presence at arraignment as to Timothy Burke. Signed by Magistrate Judge Thomas G. Wilson on 4/1/2024. (KAJ)** (Entered: 04/01/2024) |
| 04/01/2024 | 26 | NOTICE canceling Arraignment hearing scheduled for 4/2/2024 as to Timothy Burke. (KMN) (Entered: 04/01/2024) |
| 04/02/2024 | 27 | **PRETRIAL discovery order and notice** as to Timothy Burke. Jury Trial set for 6/3/2024 at 09:00 AM in Tampa Courtroom 13 B before Judge Kathryn Kimball Mizelle. Status Conference set for 5/14/2024 at 09:00 AM in Tampa Courtroom 13 B before Judge Kathryn Kimball Mizelle. Signed by Magistrate Judge Thomas G. Wilson on 4/2/2024. (KMN) (Entered: 04/02/2024) |
| 04/04/2024 | 28 | NOTICE *of Request for Discovery* by Timothy Burke re 27 Pretrial discovery order (Maddux, Michael) (Entered: 04/04/2024) |
| 04/15/2024 | 29 | Unopposed MOTION to Extend Time to Time to File Pretrial Motions by Timothy Burke. (Maddux, Michael) (Entered: 04/15/2024) |
| 04/16/2024 | 30 | **ENDORSED ORDER granting Defendant's 29 Unopposed Motion for Extension of Time. Pretrial motions concerning the Indictment or a bill or particulars are due by June 16, 2024, and other motions and memoranda concerning matters not covered by the 27 Pretrial Scheduling Order are due thirty days after the United States's last discovery disclosure. If either party wishes to continue the trial term or status conference scheduled for May 14, 2024, counsel should file a motion. Signed by Judge Kathryn Kimball Mizelle on 4/16/2024. (GSO)** (Entered: 04/16/2024) |
| 04/24/2024 | 31 | Unopposed MOTION for Mark D. Rasch to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-22018977 for $150 by Timothy Burke. (Attachments: # 1 Exhibit Written Designation by Local Counsel)(Maddux, Michael) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/24/2024) |
| 04/30/2024 | 32 | **ORDER granting 31 Motion to Appear Pro Hac Vice as to Timothy Burke (1). Attorney Mark D. Rasch is authorized to appear pro hac vice. Signed by Magistrate Judge Thomas G. Wilson on 4/30/2024. (KMN)** (Entered: 05/01/2024) |
| 05/06/2024 | 33 | MOTION for Protective Order by USA as to Timothy Burke. (Attachments: # 1 Exhibit 1)(Trezevant, Jay) (Entered: 05/06/2024) |
| 05/08/2024 | 34 | MOTION for Hearing *(Immediate) and for Trial Date Certain* by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 05/08/2024) |
| 05/08/2024 | 35 | NOTICE *of Filing Declarations of Authentication of Business Records* by USA as to Timothy Burke (Attachments: # 1 Exhibit A, # 2 Exhibit B-1, # 3 Exhibit B-2, # 4 Exhibit C-1, # 5 Exhibit C-2, # 6 Exhibit C-3, # 7 Exhibit D-1, # 8 Exhibit D-2, # 9 Exhibit D-3, # 10 Exhibit D-4, # 11 Exhibit D-5, # 12 Exhibit E)(Trezevant, Jay) (Entered: 05/08/2024) |
| 05/09/2024 | 36 | NOTICE *of Filing Declarations of Authentication of Business Records (Second)* by USA as to Timothy Burke (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Trezevant, Jay) (Entered: 05/09/2024) |

| 05/09/2024 | 37 | AMENDED NOTICE *of Filing Declarations of Authentication of Business Records* by USA as to Timothy Burke (Attachments: # 1 Exhibit A, # 2 Exhibit B-1, # 3 Exhibit B-2, # 4 Exhibit C-1, # 5 Exhibit C-2, # 6 Exhibit C-3, # 7 Exhibit D-1, # 8 Exhibit D-2, # 9 Exhibit D-3, # 10 Exhibit D-4, # 11 Exhibit D-5, # 12 Exhibit E)(Trezevant, Jay) (Modified on 5/10/2024, to edit text) (BGR). (Entered: 05/09/2024) |
|---|---|---|
| 05/10/2024 | 38 | **ENDORSED ORDER resolving 34 Motion for Hearing as to Timothy Burke. The Court will address trial dates in the light of the Speedy Trial Act at the status conference on May 14, 2024. Parties should be prepared to propose date certains to commence trial. Signed by Judge Kathryn Kimball Mizelle on 5/10/2024. (Mizelle, Kathryn)** (Entered: 05/10/2024) |
| 05/13/2024 | 39 | MEMORANDUM in opposition by Timothy Burke re 33 MOTION for Protective Order *by United States* (Maddux, Michael) (Entered: 05/13/2024) |
| 05/14/2024 | 40 | MINUTE ENTRY for 5/14/2024 in-person Status Conference as to Timothy Burke before Judge Kathryn Kimball Mizelle. Court Reporter: Bill Jones (GSO) (Entered: 05/15/2024) |
| 05/14/2024 | 41 | ORAL MOTION to Continue Trial by Timothy Burke. (GSO) (Entered: 05/15/2024) |
| 05/15/2024 | 42 | **ORDER granting 41 Oral Motion to Continue Trial as to Timothy Burke. The trial is continued to the October 2024 trial calendar. The status conference is rescheduled for September 16, 2024, at 9:30 a.m. in Tampa Courtroom 14A before Judge Thomas P. Barber. The time from today through November 8, 2024, is "excludable time." Timothy Burke's Jury Trial is scheduled to commence on October 21, 2024, at 9:00 a.m. in Courtroom 13B of the United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602-3800. A Pretrial Conference is scheduled for October 7, 2024, at 10:00 a.m. in Courtroom 13B. See Order for pretrial deadlines. Signed by Judge Kathryn Kimball Mizelle on 5/15/2024. (GSO)** (Entered: 05/15/2024) |
| 05/21/2024 | 43 | NOTICE OF HEARING: In-person oral argument on the Government's Motion for Protective Order (DOC. 33) is SCHEDULED for 5/31/2024 at 3:30 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. It is expected that the memoranda will contain all the information the parties wish to present at the hearing. Thus, the parties should not expect the court to consider information not reflected in the memoranda. In all events, any submission must be made by 4:00 p.m. on the day before the hearing. Furthermore, a reply may not be filed without leave of court. Any belated submission or unauthorized reply will be disregarded.(MEM) (Entered: 05/21/2024) |
| 05/28/2024 | 44 | (STRICKEN per Court's 46 Order) MEMORANDUM in opposition by Timothy Burke re 33 MOTION for Protective Order (Maddux, Michael) Modified on 5/29/2024 to reflect being stricken(KMN). (Entered: 05/28/2024) |
| 05/28/2024 | 46 | **ORDER to strike re: 44 Memorandum in opposition as an unauthorized filing. Signed by Magistrate Judge Thomas G. Wilson on 5/28/2024. (KMN)** (Entered: 05/29/2024) |
| 05/29/2024 | 45 | Unopposed MOTION for Leave to File Document *(Reply to Response to Motion for Protective Order)* by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 05/29/2024) |

| | | |
|---|---|---|
| 05/29/2024 | 47 | MOTION for Leave to File Second Response and Exceed the Page Limitation in Response to 33 Motion for A Protective Order by Timothy Burke. (Maddux, Michael) . Added MOTION for Miscellaneous Relief, specifically to File Excess Pages on 5/30/2024 (JK). Modified text and entry relationship on 5/30/2024 (JK). (Entered: 05/29/2024) |
| 05/30/2024 | 48 | **ORDER: (1) cancelling hearing for May 31; (2) granting in part and denying in part 45 Motion for Leave to File as to Timothy Burke and (3); granting in part and denying in part 47 Motion for Leave to File as to Timothy Burke. See Order for Details. Signed by Magistrate Judge Thomas G. Wilson on 5/30/2024. (MEM)** Modified on 5/31/2024 (JK). (Entered: 05/30/2024) |
| 05/30/2024 | | Set/Reset Deadlines/Hearings as to Timothy Burke: Motion Hearing set for 6/26/2024 at 02:30 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (JK) (Entered: 05/31/2024) |
| 05/31/2024 | 49 | NOTICE OF RESCHEDULING HEARING: The Motion hearing previously scheduled for 6/26/2024 is rescheduled as to Timothy Burke. New hearing date and time: Motion Hearing set for 6/27/2024 at 02:30 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (KMN) (Entered: 05/31/2024) |
| 05/31/2024 | 50 | NOTICE of a related case per Local Rule 1.07(c) as to Timothy Burke by USA. Related case(s): Yes (Trezevant, Jay) (Entered: 05/31/2024) |
| 06/10/2024 | 51 | RESPONSE in Opposition by Timothy Burke re 33 MOTION for Protective Order (Maddux, Michael) (Entered: 06/10/2024) |
| 06/24/2024 | 52 | REPLY TO RESPONSE to Motion by USA as to Timothy Burke re 47 MOTION for Leave to File Document *Second Response and Exceed the Page Limitation in Response to Government's Motion for A Protective Order* MOTION for Miscellaneous Relief, specifically, 45 Unopposed MOTION for Leave to File Document *(Reply to Response to Motion for Protective Order)* (Attachments: # 1 Attachment 1, # 2 Attachment 2, # 3 Attachment 3)(Trezevant, Jay) (Entered: 06/24/2024) |
| 06/27/2024 | 53 | NOTICE *of Filing Exhibits for 06/27/24 Hearing* by Timothy Burke re 51 Response in Opposition. (Attachments: # 1 Exhibit CV of Timothy Burke, # 2 Exhibit Internet Archive)(Maddux, Michael) (Entered: 06/27/2024) |
| 06/27/2024 | 54 | Minute Entry for In Person proceedings held before Magistrate Judge Thomas G. Wilson: MOTION HEARING as to Timothy Burke held on 6/27/2024 re 33 MOTION for Protective Order filed by USA. (DIGITAL) (KMN) (Entered: 06/27/2024) |
| 06/27/2024 | 56 | **ORDER as to Timothy Burke re 33 MOTION for Protective Order filed by USA. Signed by Magistrate Judge Thomas G. Wilson on 6/27/2024. (KMN)** (Entered: 06/28/2024) |
| 07/01/2024 | 60 | Unopposed MOTION to Extend Time to Pretrial Motions Deadline by Timothy Burke. (Maddux, Michael) (Entered: 07/01/2024) |
| 07/02/2024 | 61 | **ENDORSED ORDER granting 60 Unopposed Motion to Extend Time to File Pretrial Motions Until July 15, 2024, as to Timothy Burke. Accordingly, the additional pretrial deadlines are adjusted as indicated on page six of the motion. Signed by Judge Thomas P. Barber on 7/2/2024. (GSO)** (Entered: 07/02/2024) |
| 07/09/2024 | 62 | RESPONSE in Opposition by Timothy Burke re 33 MOTION for Protective Order (Maddux, Michael) (Entered: 07/09/2024) |
| 07/09/2024 | 63 | MEMORANDUM in support re 52 Reply to Response to motion, 33 Motion for Protective Order, 56 Order by USA as to Timothy Burke *(Supplemental Memorandum)* |

| | | (Trezevant, Jay) (Entered: 07/09/2024) |
|---|---|---|
| 07/12/2024 | 64 | First MOTION to Dismiss *Indictment* by Timothy Burke. (Rasch, Mark) (Entered: 07/12/2024) |
| 07/12/2024 | 65 | First MOTION to Suppress *and for Franks Hearing* by Timothy Burke. (Rasch, Mark) (Entered: 07/12/2024) |
| 07/15/2024 | 66 | First MOTION for Miscellaneous Relief, specifically for Pretrial Notice of Other Crimes Under F.R.Evid. 404(b), First MOTION in Limine by Timothy Burke. (Rasch, Mark) Modified text on 7/16/2024 (GL). (Entered: 07/15/2024) |
| 07/23/2024 | 67 | Unopposed MOTION for Miscellaneous Relief, specifically Authorization for Additional Pages re 65 First MOTION to Suppress *and for Franks Hearing* by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 07/23/2024) |
| 07/24/2024 | 68 | **ORDER granting 33 Motion for Protective Order as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 7/24/2024. (KMN)** (Entered: 07/24/2024) |
| 07/24/2024 | 69 | **PROTECTIVE ORDER. Signed by Magistrate Judge Thomas G. Wilson on 7/24/2024. (KMN)** (Entered: 07/24/2024) |
| 07/24/2024 | 70 | **ENDORSED ORDER granting the 67 Motion to Exceed the Page Limit. The United States may file a response to the 65 motion to suppress not to exceed twenty-eight (28) pages. Signed by Judge Kathryn Kimball Mizelle on 7/24/2024. (CMM)** (Entered: 07/24/2024) |
| 07/26/2024 | 71 | RESPONSE in Opposition by USA as to Timothy Burke re 64 First MOTION to Dismiss *Indictment* (Trezevant, Jay) (Entered: 07/26/2024) |
| 07/26/2024 | 72 | RESPONSE in Opposition by USA as to Timothy Burke re 65 First MOTION to Suppress *and for Franks Hearing* (Attachments: # 1 Exhibit 1)(Trezevant, Jay) Modified on 7/29/2024 to edit text. (LD). (Entered: 07/26/2024) |
| 07/29/2024 | 73 | RESPONSE to Motion re 66 First MOTION for Miscellaneous Relief, specifically Notice of Other Crimes Under F.R.Evid. 404(b) First MOTION in Limine by USA as to Timothy Burke (Trezevant, Jay) (Entered: 07/29/2024) |
| 08/02/2024 | 74 | MOTION for Leave to Reply to Government's Reponses to Motions to Suppress and Dismiss by Timothy Burke. (Maddux, Michael) (Modified on 8/5/2024, to edit text) (BGR). (Entered: 08/02/2024) |
| 08/05/2024 | 75 | **ENDORSED ORDER: The 74 motion for leave to file replies is GRANTED. No later than August 19, 2024, Burke may file a reply to the United States' response to the motion to suppress, not to exceed eight pages. No later than August 19, 2024, Burke may also file a reply to the United States' response to the motion to dismiss, not to exceed seven pages. Signed by Judge Kathryn Kimball Mizelle on 8/5/2024. (CMM)** (Entered: 08/05/2024) |
| 08/05/2024 | | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Timothy Burke 64 First MOTION to Dismiss *Indictment*, 65 First MOTION to Suppress *and for Franks Hearing*. Replies due by 8/19/2024. (BGR) (Entered: 08/05/2024) |
| 08/16/2024 | 76 | REPLY TO RESPONSE to Motion by Timothy Burke re 64 First MOTION to Dismiss *Indictment* (Maddux, Michael) (Entered: 08/16/2024) |
| 08/16/2024 | 77 | REPLY TO RESPONSE to Motion by Timothy Burke re 65 First MOTION to Suppress *and for Franks Hearing* (Maddux, Michael) (Entered: 08/16/2024) |

| 08/22/2024 | 78 | Joint MOTION to Continue trial by Timothy Burke. (Maddux, Michael) (Entered: 08/22/2024) |
|---|---|---|
| 08/23/2024 | 79 | **ORDER granting 78 Joint Motion to Continue Trial as to Timothy Burke. The trial is continued to the January 2025 trial calendar. The status conference is scheduled for November 12, 2024, at 9:00 a.m. in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. The time from today through February 2, 2025, is "excludable time." Signed by Judge Kathryn Kimball Mizelle on 8/23/2024. (GSO)** (Entered: 08/23/2024) |
| 08/26/2024 | 80 | Unopposed MOTION for Leave to File *Two-Page Sur-Reply to Reply to Response to 77 Motion to Suppress* by USA as to Timothy Burke. (Trezevant, Jay) Modified text on 8/26/2024 (JK). (Entered: 08/26/2024) |
| 08/26/2024 | 81 | **ENDORSED ORDER: The unopposed 80 motion to file a sur-reply is GRANTED. No later than August 30, 2024, the United States may file a two-page sur-reply to the 77 reply. Signed by Judge Kathryn Kimball Mizelle on 8/26/2024. (CMM)** (Entered: 08/26/2024) |
| 08/30/2024 | 82 | REPLY TO RESPONSE to Motion by USA as to Timothy Burke re 65 First MOTION to Suppress *and for Franks Hearing (Sur-Reply to Reply)* (Trezevant, Jay) (Entered: 08/30/2024) |
| 11/12/2024 | 83 | Minute Entry for In Person proceedings held before Judge Kathryn Kimball Mizelle: STATUS Conference as to Timothy Burke held on 11/12/2024. Court Reporter: Bill Jones (KAC) (Main Document 83 replaced on 11/12/2024 due to scrivener's error on previous version) (KAC). (Main Document 83 replaced on 11/13/2024 to correct document back to original/previous version) (KAC). (Entered: 11/12/2024) |
| 11/12/2024 | 84 | ORAL MOTION to Continue trial to June 2025 (unopposed) by Timothy Burke. (KAC) (Entered: 11/12/2024) |
| 11/12/2024 | 85 | **ORAL ORDER granting 84 Oral Motion to Continue Trial as to Timothy Burke (1). The trial is removed from the January 2025 trial calendar and rescheduled for a status conference on April 8, 2025, at 9:00 a.m. in Courtroom 13B before Judge Kathryn Kimball Mizelle. The trial is continued to the June 2025 trial calendar, with a trial date certain of June 9, 2025, to be set by separate order. The time from today through July 7, 2025, is excluded under 18 U.S.C. § 3161(h). Signed by Judge Kathryn Kimball Mizelle on 11/12/2024. (KAC)** (Entered: 11/12/2024) |
| 11/13/2024 | 86 | **SCHEDULING ORDER: Timothy Burke's Jury Trial is scheduled to commence on June 9, 2025, at 9:00 a.m. in Courtroom 13B of the United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602-3800. A status conference is scheduled for April 7, 2025, at 10:00 a.m. and the final Pretrial Conference is scheduled for May 20, 2025, at 1:30 p.m., both in Courtroom 13B. See Order for pretrial deadlines. Signed by Judge Kathryn Kimball Mizelle on 11/13/2024. (KAC)** (Entered: 11/13/2024) |
| 11/18/2024 | 87 | **ENDORSED ORDER: No later than December 13, 2024, the parties must submit supplemental briefing related to the "readily accessible" exception found in 18 U.S.C. § 2511(2)(g)(i). The parties should address how the decisions in *United States v. McCann*, 465 F.2d 147 (5th Cir. 1972), and *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006), inform the determination of whether the "readily accessible" exception is an element of the offense of intercepting electronic communications under 18 U.S.C. § 2511(1)(a) or an affirmative defense. The briefs may not exceed a total of ten (10) pages in length. Signed by Judge Kathryn Kimball Mizelle on 11/18/2024. (BTM)** (Entered: 11/18/2024) |

| 11/19/2024 | 88 | **ENDORSED ORDER granting 66 Motion regarding other acts evidence. Consistent with Federal Rule of Evidence 404(b), the United States must provide defense with reasonable notice of any evidence it seeks to admit through that rule. Defendant Burke may renew this motion closer to the trial date certain if it becomes necessary. Signed by Judge Kathryn Kimball Mizelle on 11/19/2024. (Mizelle, Kathryn)** (Entered: 11/19/2024) |
|---|---|---|
| 11/21/2024 | 89 | **ORDER: The Motion to Suppress (Doc. 65) is DENIED. Signed by Judge Kathryn Kimball Mizelle on 11/21/2024. (BTM)** (Entered: 11/21/2024) |
| 12/13/2024 | 90 | MEMORANDUM in support re 87 Order by Timothy Burke. (Maddux, Michael) (Entered: 12/13/2024) |
| 12/13/2024 | 91 | MEMORANDUM in opposition by USA as to Timothy Burke re 87 Order 90 Memorandum in support *(Supplemental Per Court Order)* (Trezevant, Jay) (Entered: 12/13/2024) |
| 01/03/2025 | 92 | MOTION to File Motion to Dismiss Out of Time by Timothy Burke. (Attachments: # 1 Exhibit Motion to Dismiss Counts on Duplicity)(Maddux, Michael) Modified text on 1/3/2025 (BD). (Entered: 01/03/2025) |
| 01/17/2025 | 93 | RESPONSE to Motion re 92 MOTION to File Motion to Dismiss Out of Time by USA as to Timothy Burke (Trezevant, Jay) (Entered: 01/17/2025) |
| 01/21/2025 | 94 | **ENDORSED ORDER: Defendant Timothy Burke's opposed 92 Motion to File Motion to Dismiss Out of Time is DENIED WITHOUT PREJUDICE. Federal Rule of Criminal Procedure 12(c)(3) provides that a court may consider an untimely motion under Rule 12(b)(3) "if the [moving] party shows good cause." *See also* Fed. R. Crim. P. 45(b)(1)(B). Burke's motion makes no effort to show good cause beyond his statement that "Defense Counsel has uncovered further legal issues with the Indictment." (Doc. 92) at 5. Burke may file a new motion for the same relief explaining why good cause exists to consider his untimely motion to dismiss. Signed by Judge Kathryn Kimball Mizelle on 1/21/2025. (SJR)** (Entered: 01/21/2025) |
| 01/24/2025 | 95 | MEMORANDUM in support re 94 Order on Motion for Leave to File Document, 92 Motion for Leave to File Document by Timothy Burke. (Maddux, Michael) Modified on 1/27/2025 to edit the docket text (MLB). (Entered: 01/24/2025) |
| 02/11/2025 | 96 | **ENDORSED ORDER: Defendant Timothy Burke's 95 Memorandum in Support is construed as a renewal of his 92 Motion to File Motion to Dismiss Out of Time. That motion is GRANTED. The Clerk is DIRECTED to docket (Doc. 92-1) as a motion. The Government may respond to Burke's motion to dismiss no later than February 25, 2025. Signed by Judge Kathryn Kimball Mizelle on 2/11/2025. (SJR)** (Entered: 02/11/2025) |
| 02/11/2025 | 97 | MOTION to Dismiss Counts on Duplicity by Timothy Burke. (LSS) (Entered: 02/12/2025) |
| 02/11/2025 | | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Timothy Burke 97 MOTION to Dismiss. Responses due by 2/25/2025 (LSS) (Entered: 02/12/2025) |
| 02/25/2025 | 98 | RESPONSE in Opposition by USA as to Timothy Burke re 97 MOTION to Dismiss - *Duplicity* (Trezevant, Jay) (Entered: 02/25/2025) |
| 03/04/2025 | 99 | Unopposed MOTION for Leave to File Surreply to Response to Motion Regarding Duplicity by Timothy Burke. (Maddux, Michael) (Entered: 03/04/2025) |

| 03/04/2025 | 100 | **ENDORSED ORDER granting defendant Timothy Burke's unopposed 99 Motion for Leave to File Surreply to Response to Motion Regarding Duplicity. Burke may reply to the government's 98 response no later than March 11, 2025. The reply may not exceed two pages. Signed by Judge Kathryn Kimball Mizelle on 3/4/2025. (SJR)** (Entered: 03/04/2025) |
|---|---|---|
| 03/04/2025 | 101 | REPLY TO RESPONSE to Motion by Timothy Burke re 97 MOTION to Dismiss, 99 Unopposed MOTION for Leave to File Surreply to Response to Motion Regarding Duplicity (Maddux, Michael) (Entered: 03/04/2025) |
| 03/31/2025 | 102 | NOTICE OF RESCHEDULING HEARING: The Status Conference hearing previously scheduled for April 7, 2025, is rescheduled as to Timothy Burke. New hearing date and time: Status Conference rescheduled for April 11, 2025, at 11:00 AM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. (GSO) (Entered: 03/31/2025) |
| 04/08/2025 | 104 | Unopposed MOTION to Extend Time to Deadline to Make Rebuttal Disclosures by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 04/08/2025) |
| 04/09/2025 | 105 | **ENDORSED ORDER granting 104 Motion to Extend Time as to Timothy Burke (1). Signed by Judge Kathryn Kimball Mizelle on 4/9/2025. (DAY)** (Entered: 04/09/2025) |
| 04/10/2025 | 106 | Unopposed MOTION for Mark Rasch, Esquire to appear by video *for Status Conference on 04/11/25* by Timothy Burke. (Maddux, Michael) (Entered: 04/10/2025) |
| 04/10/2025 | 107 | **ENDORSED ORDER granting in part the Motion to Appear Remotely. (Doc. 106). Counsel Mark Rasch may appear telephonically. The courtroom deputy will call counsel's office telephone number at the time of the status conference. Signed by Judge Kathryn Kimball Mizelle on 4/10/2025. (BTM)** (Entered: 04/10/2025) |
| 04/11/2025 | 108 | MINUTE ENTRY for 4/11/2025 in-person Status Conference as to Timothy Burke before Judge Kathryn Kimball Mizelle. Court Reporter: David Collier (GSO) (Entered: 04/11/2025) |
| 04/11/2025 | 109 | ORAL MOTION to Continue Trial by Timothy Burke. (GSO) (Entered: 04/11/2025) |
| 04/14/2025 | 110 | **ORDER: Burke's Motion to Dismiss (Doc. 64) is DENIED. Signed by Judge Kathryn Kimball Mizelle on 4/14/2025. (BTM)** (Entered: 04/14/2025) |
| 04/14/2025 | 111 | **ORDER: Burke's Motion to Dismiss (Doc. 97) is DENIED. Signed by Judge Kathryn Kimball Mizelle on 4/14/2025. (BTM)** (Entered: 04/14/2025) |
| 04/14/2025 | 112 | VACATED per #186 ENDORSED ORDER. **ORDER granting 109 Oral Motion to Continue Trial as to Timothy Burke. The jury trial will commence on September 8, 2025, at 9:00 a.m. in Courtroom 13B of the United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602-3800. The final Pretrial Conference is scheduled for August 28, 2025, at 10:00 a.m. See Order for additional pretrial deadlines. Signed by Judge Kathryn Kimball Mizelle on 4/14/2025. (GSO)** Modified on 8/21/2025 (LD). (Entered: 04/14/2025) |
| 04/25/2025 | 113 | MOTION for Reconsideration re 110 Order on Motion to Dismiss by Timothy Burke. (Maddux, Michael) (Entered: 04/25/2025) |
| 04/30/2025 | 114 | NOTICE OF HEARING as to Timothy Burke: Hearing scheduled for May 6, 2025, at 11:00 AM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. The Court intends on addressing the defendant's motion for reconsideration at Doc. 113. (GSO) (Entered: 04/30/2025) |

| 05/05/2025 | 115 | Unopposed MOTION for Mark Rasch to appear telephonically by Timothy Burke. (Maddux, Michael) (Entered: 05/05/2025) |
|---|---|---|
| 05/05/2025 | 116 | **ENDORSED ORDER granting Motion to Appear Via Telephone. (Doc. 115). The courtroom deputy will call counsel's office telephone number at the time of the hearing. Signed by Judge Kathryn Kimball Mizelle on 5/5/2025. (BTM)** (Entered: 05/05/2025) |
| 05/06/2025 | 117 | **ENDORSED ORDER: The Motion for Reconsideration (Doc. 113) is DENIED for the reasons stated on the record. Burke may file a new motion to dismiss no later than May 13, 2025. The government may respond no later than May 27, 2025. Neither party may use footnotes, and the motion and response must otherwise comply with Local Rule 1.08. No other deadlines are extended or altered. Signed by Judge Kathryn Kimball Mizelle on 5/6/2025. (BTM)** (Entered: 05/06/2025) |
| 05/06/2025 | 118 | MINUTE ENTRY for 5/6/2025 in-person Motion Hearing before Judge Kathryn Kimball Mizelle. Court Reporter: Bill Jones (GSO) (Entered: 05/06/2025) |
| 05/13/2025 | 119 | STRICKEN per Order 124 Second MOTION to Dismiss *Counts 8, 9, 10, 11, 12, 13, and 14* by Timothy Burke. (Rasch, Mark) Modified on 5/16/2025 to edit docket text (ELA). (Entered: 05/13/2025) |
| 05/14/2025 | 120 | NOTICE OF HEARING as to Timothy Burke: Status Conference scheduled for May 15, 2025, at 3:00 PM via Zoom Video Conference before Judge Kathryn Kimball Mizelle. Zoom meeting information will be sent via email. (GSO) (Entered: 05/14/2025) |
| 05/15/2025 | 121 | Unopposed MOTION for Miscellaneous Relief, specifically Allow General Public to Appear Via Zoom *at the Status Conference* by Timothy Burke. (Maddux, Michael) (Entered: 05/15/2025) |
| 05/15/2025 | 122 | **ENDORSED ORDER resolving Defendant's Motion for Public to Attend Via Zoom. (Doc. 121). To ensure compliance with Local Rule 5.01, the hearing is rescheduled to 2:00 p.m. on May 20, 2025, in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. Signed by Judge Kathryn Kimball Mizelle on 5/15/2025. (BTM)** (Entered: 05/15/2025) |
| 05/15/2025 | 123 | NOTICE OF RESCHEDULING HEARING: The Status Conference hearing previously scheduled for May 15, 2025, is rescheduled as to Timothy Burke. New hearing date, time, and location: Status Conference rescheduled for May 20, 2025, at 2:00 PM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. (GSO) (Entered: 05/15/2025) |
| 05/15/2025 | 124 | **ORDER: Defendant Timothy Burke's 119 Second Motion to Dismiss contains significant misrepresentations and misquotations of supposedly pertinent case law and history. Accordingly, the clerk is directed to STRIKE Timothy Burke's 119 Motion. Burke may file a new version of this motion--without the above-described citation errors but with proper legal support--no later than May 19, 2025. If Burke chooses to refile the motion, he must accompany it with a separate brief, not to exceed five pages, explaining how these unprofessional misrepresentations of legal citations occurred and what counsel will do to avoid filing any similarly unacceptable motions again. Signed by Judge Kathryn Kimball Mizelle on 5/15/2025. (SJR)** (Entered: 05/15/2025) |
| 05/19/2025 | 125 | MOTION to Dismiss titled "Replacement Memorandum of Law in Support of Motion to Dismiss" by Timothy Burke. (Maddux, Michael) Modified text on 5/20/2025 (BD). (Entered: 05/19/2025) |

| 05/19/2025 | 126 | RESPONSE 124 Order by Timothy Burke (Maddux, Michael) (Entered: 05/19/2025) |
|---|---|---|
| 05/20/2025 | 127 | MINUTE ENTRY for 5/20/2025 in-person Status Conference as to Timothy Burke before Judge Kathryn Kimball Mizelle. Court Reporter: Bill Jones (GSO) (Entered: 05/20/2025) |
| 05/21/2025 | 128 | **ORDER: To help resolve Burke's third motion to dismiss the Wiretap Act counts, (Doc. 125), the Court invites amicus curiae to submit briefing, not to exceed 25 pages each, on any of the questions in the attached order. Amicus briefs are due no later than June 27, 2025. Signed by Judge Kathryn Kimball Mizelle on 5/21/2025. (BTM)** (Main Document 128 replaced 5/21/2025) (GSO). (Entered: 05/21/2025) |
| 05/28/2025 | 129 | Unopposed MOTION to Extend Time to File Response to Doc. 125 *(Burke's Third Motion to Dismiss)* by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 05/28/2025) |
| 05/29/2025 | 130 | **ENDORSED ORDER granting Unopposed Motion for Extension of Time. (Doc. 129). The government must respond to Burke's Third Motion to Dismiss no later than June 16, 2025. Signed by Judge Kathryn Kimball Mizelle on 5/29/2025. (BTM)** (Entered: 05/29/2025) |
| 05/30/2025 |  | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Timothy Burke 125 MOTION to Dismiss . Responses due by 6/16/2025. (MGB) (Entered: 05/30/2025) |
| 06/11/2025 | 131 | Unopposed MOTION to Extend Time to File Response to Burke's Third Motion to Dismiss by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 06/11/2025) |
| 06/12/2025 | 132 | **ENDORSED ORDER granting 131 Motion to Extend Time. The United States may respond to defendant Timothy Burke's 125 Motion to Dismiss no later than June 23, 2025, and in a brief not to exceed 30 pages. Signed by Judge Kathryn Kimball Mizelle on 6/12/2025. (SJR)** (Entered: 06/12/2025) |
| 06/12/2025 | 133 | Unopposed MOTION to Travel by Timothy Burke. (Maddux, Michael) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 06/12/2025) |
| 06/16/2025 | 134 | **ORDER granting 133 Motion to Travel as to Timothy Burke. Mr. Burke must provide his itinerary to his Pretrial Services Supervising Officer. Signed by Magistrate Judge Amanda Arnold Sansone on 6/16/2025. (JS)** (Entered: 06/16/2025) |
| 06/18/2025 | 135 | TRANSCRIPT of Hearing as to Timothy Burke held on 05-06-25 before Judge Kathryn Kimball Mizelle. Court Reporter/Transcriber: Bill Jones. Email address: bill_jones@flmd.uscourts.gov. Telephone number: 8133016158.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/9/2025. Redacted Transcript Deadline set for 7/21/2025. Release of Transcript Restriction set for 9/16/2025. (HWJ) (Entered: 06/18/2025) |
| 06/18/2025 | 136 | TRANSCRIPT of Hearing as to Timothy Burke held on 05-20-25 before Judge Kathryn Kimball Mizelle. Court Reporter/Transcriber: Bill Jones. Email address: |

| | | |
|---|---|---|
| | | bill_jones@flmd.uscourts.gov. Telephone number: 8133016158.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/9/2025. Redacted Transcript Deadline set for 7/21/2025. Release of Transcript Restriction set for 9/16/2025. (HWJ) (Entered: 06/18/2025) |
| 06/23/2025 | 137 | MOTION for Gabriel Rottman to appear pro hac vice by Reporters Committee for Freedom of the Press as to Timothy Burke. (e-portal) (JKB) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 06/23/2025) |
| 06/23/2025 | 138 | RESPONSE to Motion re 125 MOTION to Dismiss by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 06/23/2025) |
| 06/24/2025 | 139 | **ORDER granting 137 Motion to Appear Pro Hac Vice as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 6/24/2025. (KMN)** (Entered: 06/25/2025) |
| 06/25/2025 | 140 | NOTICE to counsel Gabriel Rottman Local Rule 2.01(c), Special Admission to Practice - Pay the Special Admission Fee; Submit a Pro Hac Vice E-File Registration through PACER. Visit www.flmd.uscourts.gov/for-lawyers for details as to Timothy Burke (Signed by Deputy Clerk). (MLB) (Entered: 06/25/2025) |
| 06/26/2025 | 141 | Unopposed MOTION to Extend Time to File Brief as Amicus Curiae by USA as to Timothy Burke. (Gonzalez, Jason) (Entered: 06/26/2025) |
| 06/26/2025 | 143 | NOTICE of filing Amicus Brief by Electronic Privacy Information Center (EPIC) as to Timothy Burke re 128 Order. (e-portal) (JKB) Modified text on 6/27/2025 (JKB). (Entered: 06/27/2025) |
| 06/26/2025 | 144 | CERTIFICATE of interested persons and corporate disclosure statement by Electronic Privacy Information Center (EPIC). (e-portal) (JKB) (Entered: 06/27/2025) |
| 06/27/2025 | | ***PRO HAC VICE FEES PAID (Receipt Number TPA72503 for $150) by attorney Gabriel Rottman appearing on behalf of Timothy Burke. Related document: 137 MOTION for Gabriel Rottman to appear pro hac vice. (EGP) (Entered: 06/27/2025) |
| 06/27/2025 | 142 | **ENDORSED ORDER granting the Internet Accountability Project's 141 Motion to Extend Time to File Brief as Amicus Curiae. The deadline for all prospective amici to file their briefs is extended to July 11, 2025. Signed by Judge Kathryn Kimball Mizelle on 6/27/2025. (SJR)** (Entered: 06/27/2025) |
| 06/27/2025 | 145 | NOTICE of Amicus Brief by American Civil Liberties Union Foundation of Florida, Inc. as to Timothy Burke in response to 128 Order. (e-portal) (JKB) Modified text on 6/27/2025 (JKB). (Entered: 06/27/2025) |
| 06/27/2025 | 146 | MOTION to File Amicus Brief and Proposed Brief by Gabe Rottman by Reporters Committee for Freedom of the Press as to Timothy Burke. (e-portal) (JKB) (Entered: 06/30/2025) |
| 06/30/2025 | 147 | **ENDORSED ORDER granting 146 Motion to File Amicus Brief as to Timothy Burke (1). Signed by Judge Kathryn Kimball Mizelle on 6/30/2025. (SJR)** (Entered: 06/30/2025) |

| 07/02/2025 | 148 | TRANSCRIPT of Status Conference as to Timothy Burke held on 11-12-24 before Judge Kathryn Kimball Mizelle. Court Reporter/Transcriber: Bill Jones. Email address: bill_jones@flmd.uscourts.gov. Telephone number: 8133016158.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/23/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 9/30/2025. (HWJ) (Entered: 07/02/2025) |
| 07/02/2025 | 149 | Unopposed MOTION for Leave to File Reply to Response to Motion to Dismiss by Timothy Burke. (Maddux, Michael) (Entered: 07/02/2025) |
| 07/02/2025 | 150 | Unopposed MOTION for John D. Ohlendorf to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-23562386 for $150 by USA as to Timothy Burke. (Gonzalez, Jason) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 07/02/2025) |
| 07/02/2025 | 151 | Unopposed MOTION for Adam P. Laxalt to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-23562414 for $150 by USA as to Timothy Burke. (Gonzalez, Jason) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 07/02/2025) |
| 07/02/2025 | 152 | **ORDER granting 150 Motion to Appear Pro Hac Vice as to Timothy Burke (1); granting 151 Motion to Appear Pro Hac Vice as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 7/2/2025. (Wilson, Thomas)** (Entered: 07/02/2025) |
| 07/09/2025 | 153 | MOTION to File Amicus Brief *(Joinder by First Amendment Lawyers Association with the Reporters Committee* by Gary S. Edinger. by Reporters Committee for Freedom of the Press as to Timothy Burke. (Edinger, Gary) (Entered: 07/09/2025) |
| 07/09/2025 | 154 | AMENDED UNOPPOSED MOTION for John D. Ohlendorf to appear pro hac vice by Internet Accountability Project as to Timothy Burke. (e-portal) (JKB) Motions referred to Magistrate Judge Thomas G. Wilson. (Main Document 154 replaced on 7/10/2025) (JKB). (Entered: 07/10/2025) |
| 07/09/2025 | 155 | AMENDED UNOPPOSED MOTION for Adam P. Laxalt to appear pro hac vice by Internet Accountability Project as to Timothy Burke. (e-portal) (JKB) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 07/10/2025) |
| 07/10/2025 | 156 | **ENDORSED ORDER granting 153 Motion to File Amicus Brief as to Timothy Burke (1). Signed by Judge Kathryn Kimball Mizelle on 7/10/2025. (SJR)** (Entered: 07/10/2025) |
| 07/10/2025 | 157 | **ENDORSED ORDER granting 149 Motion for Leave to File Document as to Timothy Burke (1). Burke may file a reply, not to exceed 6 pages, no later than July 17, 2025. Signed by Judge Kathryn Kimball Mizelle on 7/10/2025. (SJR)** (Entered: 07/10/2025) |
| 07/11/2025 | 158 | MOTION to File Amicus Brief by Jason Gonzalez. by Internet Accountability Project as to Timothy Burke. (Gonzalez, Jason) (Entered: 07/11/2025) |

| 07/15/2025 | 159 | **ORDER granting 155 Motion to Appear Pro Hac Vice as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 7/15/2025. (Wilson, Thomas)** (Entered: 07/15/2025) |
|---|---|---|
| 07/15/2025 | 160 | **ORDER granting 154 Motion to Appear Pro Hac Vice as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 7/15/2025. (Wilson, Thomas)** (Entered: 07/15/2025) |
| 07/17/2025 | 161 | MOTION to Extend Time to File Reply by Timothy Burke. (Maddux, Michael) (Entered: 07/17/2025) |
| 07/18/2025 | 162 | **ENDORSED ORDER granting 161 Motion to Extend Time as to Timothy Burke (1). Burke's reply is due no later than today, July 18, 2025. Signed by Judge Kathryn Kimball Mizelle on 7/18/2025. (SJR)** (Entered: 07/18/2025) |
| 07/18/2025 | 163 | REPLY TO RESPONSE to Motion by Timothy Burke re 125 MOTION to Dismiss (Maddux, Michael) (Entered: 07/18/2025) |
| 07/30/2025 | 164 | MOTION to Compel *Early Production Pursuant to Rule 17(c) Subpoenas* by Timothy Burke. (Attachments: # 1 Exhibit Subpoena to NBA, # 2 Exhibit Subpoena to LiveU, # 3 Exhibit Subpoena to CBS, # 4 Exhibit Subpoena to Rutherford Group, # 5 Exhibit Subpoena to Fox, # 6 Exhibit Subpoena to Holland and Knight, # 7 Exhibit Subpoena to Norton Rose Fulbright, # 8 Exhibit Subpoena to Stroz Friedberg, # 9 Exhibit Subpoena to Wilson Sonsini, # 10 Exhibit Subpoena to FedNet, # 11 Exhibit Subpoena to ESPN, # 12 Exhibit Subpoena to TVU, # 13 Exhibit Subpoena to TVeyes)(Maddux, Michael) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 07/30/2025) |
| 08/04/2025 | 165 | VACATED PER 167 ORDER. **ORDER granting 164 Motion to Compel as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 8/4/2025. (KMN)** Modified docket text on 8/6/2025 (JOS). (Entered: 08/05/2025) |
| 08/05/2025 | 166 | Time Sensitive MOTION for Reconsideration re 165 Order on Motion to Compel, 164 MOTION to Compel *Early Production Pursuant to Rule 17(c) Subpoenas* filed by Timothy Burke by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 08/05/2025) |
| 08/05/2025 | 167 | **ORDER granting 166 Motion for Reconsideration / Clarification as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 8/5/2025. (KMN)** (Entered: 08/05/2025) |
| 08/05/2025 | 168 | NOTICE OF HEARING ON MOTION in case as to Timothy Burke: 164 MOTION to Compel *Early Production Pursuant to Rule 17(c) Subpoenas*. Motion Hearing set for 9/2/2025 at 02:30 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (KMN) (Entered: 08/05/2025) |
| 08/07/2025 | 169 | MOTION to Continue trial by Timothy Burke. (Maddux, Michael) (Entered: 08/07/2025) |
| 08/07/2025 | 170 | MOTION in Limine *re: Preclude Improper Legal Argument and Evidence* by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 08/07/2025) |
| 08/07/2025 | 171 | **NOTICE OF HEARING as to Timothy Burke: Status Conference scheduled for August 20, 2025, at 11:00 AM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. (GSO)** (Entered: 08/07/2025) |
| 08/07/2025 | 172 | MOTION in Limine *re: Exclude Certain Testimony of Defense Expert Witness* by USA as to Timothy Burke. (Attachments: # 1 Exhibit 1)(Duso, Adam) (Entered: 08/07/2025) |

| 08/13/2025 | 173 | RESPONSE in Opposition by USA as to Timothy Burke re 164 MOTION to Compel *Early Production Pursuant to Rule 17(c) Subpoenas* (Duso, Adam) (Entered: 08/13/2025) |
|---|---|---|
| 08/14/2025 | 174 | **ENDORSED ORDER: The United States is directed to respond to Timothy Burke's 169 Motion to Continue Trial by 5:00 PM on August 18, 2025. Signed by Judge Kathryn Kimball Mizelle on 8/14/2025. (SJR)** (Entered: 08/14/2025) |
| 08/14/2025 | 175 | **TRIAL CALENDAR for September 2025 trial term. Signed by Judge Kathryn Kimball Mizelle on 8/14/2025. (GSO)** (Entered: 08/14/2025) |
| 08/14/2025 | 176 | Proposed Jury Instructions by USA as to Timothy Burke (Trezevant, Jay) (Entered: 08/14/2025) |
| 08/14/2025 | 177 | PROPOSED Voir Dire by USA as to Timothy Burke (Trezevant, Jay) (Entered: 08/14/2025) |
| 08/14/2025 | 178 | PROPOSED verdict form filed by USA as to Timothy Burke (Trezevant, Jay) (Entered: 08/14/2025) |
| 08/14/2025 | 179 | PROPOSED Voir Dire by Timothy Burke (Maddux, Michael) (Entered: 08/14/2025) |
| 08/14/2025 | 180 | PROPOSED verdict form filed by Timothy Burke (Maddux, Michael) (Entered: 08/14/2025) |
| 08/18/2025 | 181 | RESPONSE to Motion re 169 MOTION to Continue trial by USA as to Timothy Burke (Trezevant, Jay) (Entered: 08/18/2025) |
| 08/19/2025 | 182 | Unopposed MOTION for Mark Rasch to appear telephonically *at Status Conference* by Timothy Burke. (Maddux, Michael) (Entered: 08/19/2025) |
| 08/20/2025 | 183 | **ENDORSED ORDER granting 182 Motion to Appear Via Telephone as to Timothy Burke. Signed by Judge Kathryn Kimball Mizelle on 8/20/2025. (GSO)** (Entered: 08/20/2025) |
| 08/20/2025 | 184 | MINUTE ENTRY for 8/20/2025 in-person Status Conference as to Timothy Burke before Judge Kathryn Kimball Mizelle. Court Reporter: Bill Jones (GSO) (Entered: 08/20/2025) |
| 08/20/2025 | 185 | **ORAL ORDER granting 169 Motion to Continue as to Timothy Burke. For the reasons stated on the record, namely, to allow time to rule on the pending motions, the ends of justice outweigh the interests of the defendant and of the public in a speedy trial. See 18 U.S.C. § 3161(h)(7)(A). The trial is continued to the October 2025 trial calendar. A status conference is scheduled for September 16, 2025, at 10:00 a.m. in Tampa Courtroom 13B. The time from today through November 2, 2025, is "excludable time." The August 28, 2025 pretrial conference and September 8, 2025 jury trial are cancelled. Signed by Judge Kathryn Kimball Mizelle on 8/20/2025. (GSO)** (Entered: 08/20/2025) |
| 08/20/2025 | 186 | **ENDORSED ORDER as to Timothy Burke: The 112 Order, along with all trial-related deadlines, is vacated. Signed by Judge Kathryn Kimball Mizelle on 8/20/2025. (GSO)** (Entered: 08/20/2025) |
| 08/20/2025 | 187 | **ENDORSED ORDER: The United States's 170, 172 Motions in Limine are DENIED WITHOUT PREJDUICE. The United States may refile its motions in limine, if appropriate, closer to the rescheduled pretrial conference. Signed by Judge Kathryn Kimball Mizelle on 8/20/2025. (SJR)** (Entered: 08/20/2025) |
| 08/21/2025 | 188 | NOTICE to counsel Alan Butler Local Rule 2.01(c), Special Admission to Practice - File a Motion to Appear Pro Hac Vice. Co-counsel with filing rights may electronically |

| | | |
|---|---|---|
| | | file the motion on behalf of lawyer seeking Special Admission or the motion may be filed on paper; as to Timothy Burke (Signed by Deputy Clerk). (LD) (Entered: 08/21/2025) |
| 08/29/2025 | 189 | Unopposed MOTION for Mark Rasch to appear telephonically by Timothy Burke. (Maddux, Michael) (Entered: 08/29/2025) |
| 08/29/2025 | 190 | ***STRICKEN per Order 196*** NOTICE *of Filing Victims' Objections to the Issuance of Rule 17(c) Subpoenas* by USA as to Timothy Burke re 164 MOTION to Compel *Early Production Pursuant to Rule 17(c) Subpoenas*. (Duso, Adam) Modified on 9/8/2025 to edit text. (JVC) (Entered: 08/29/2025) |
| 08/29/2025 | 191 | MOTION to Strike *(Doc 190) Notice of Filing Victims' Objections to the Issuance of Rule 17(c) Subpoenas* by Timothy Burke. (Maddux, Michael) (Entered: 08/29/2025) |
| 08/29/2025 | 193 | **ORDER denying 189 Motion to Appear as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 8/29/2025. (Wilson, Thomas)** (Entered: 08/29/2025) |
| 09/02/2025 | 194 | Minute Entry for In Person proceedings held before Magistrate Judge Thomas G. Wilson: MOTION HEARING as to Timothy Burke held on 9/2/2025 re 164 MOTION to Compel *Early Production Pursuant to Rule 17(c) Subpoenas* filed by Timothy Burke. (DIGITAL) (KMN) (Entered: 09/04/2025) |
| 09/05/2025 | 196 | **ORDER to strike re: 190 Notice (Other) as to Timothy Burke. Signed by Magistrate Judge Thomas G. Wilson on 9/5/2025. (KMN)** (Entered: 09/05/2025) |
| 09/05/2025 | 197 | **ORDER denying as moot 191 Motion to Strike as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 9/5/2025. (KMN)** (Entered: 09/05/2025) |
| 09/05/2025 | 198 | **ORDER denying without prejudice 164 Motion to Compel as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 9/5/2025. (KMN)** (Entered: 09/05/2025) |
| 09/08/2025 | 199 | NOTICE to counsel Gabriel Rottman Local Rule 2.01(c), Special Admission to Practice - Submit a Pro Hac Vice E-File Registration through PACER. Visit www.flmd.uscourts.gov/for-lawyers for details as to Timothy Burke (Signed by Deputy Clerk). (JVC) (Entered: 09/08/2025) |
| 09/08/2025 | 200 | SECOND NOTICE to counsel Alan Butler Local Rule 2.01(c), Special Admission to Practice - File a Motion to Appear Pro Hac Vice. Co-counsel with filing rights may electronically file the motion on behalf of lawyer seeking Special Admission or the motion may be filed on paper; Pay the Special Admission Fee; as to Timothy Burke (Signed by Deputy Clerk). (JVC) (Entered: 09/08/2025) |
| 09/08/2025 | 201 | TRANSCRIPT of MOTION TO COMPEL HEARING as to Timothy Burke held on 9/2/25 before Judge WILSON. Court Reporter/Transcriber: Lori Ann Cecil Vollmer. Email address: lori_cecilvollmer@flmd.uscourts.gov. Telephone number: (813) 301-5336.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/29/2025. Redacted Transcript |

| | | Deadline set for 10/9/2025. Release of Transcript Restriction set for 12/8/2025. (LAC) (Entered: 09/08/2025) |
|---|---|---|
| 09/09/2025 | 202 | NOTICE OF RESCHEDULING HEARING: The Status Conference previously scheduled for September 16, 2025, is rescheduled as to Timothy Burke. New hearing date and time: Status Conference rescheduled for September 23, 2025, at 11:00 AM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. (GSO) (Entered: 09/09/2025) |
| 09/12/2025 | 203 | Unopposed MOTION for Alan Butler to appear pro hac vice by Electronic Privacy Information Center (EPIC) as to Timothy Burke. (eportal) (MCB) Motions referred to Magistrate Judge Thomas G. Wilson. Modified on 9/15/2025 to edit the docket text (MLB). (Entered: 09/15/2025) |
| 09/15/2025 | 204 | **ORDER granting 203 Motion to Appear Pro Hac Vice as to Timothy Burke (1). Signed by Magistrate Judge Thomas G. Wilson on 9/15/2025. (Wilson, Thomas)** (Entered: 09/15/2025) |
| 09/15/2025 | 205 | MOTION for Reconsideration *of Magistrate Judge's Denial of Early Pretrial Production Pursuant to F.R. Crim. P. 17(c)* by Timothy Burke. (Maddux, Michael) (Entered: 09/15/2025) |
| 09/16/2025 | 206 | **ENDORSED ORDER directing the United States to respond no later than September 29, 2025, to 205 Motion for Reconsideration, filed by Timothy Burke. Signed by Judge Kathryn Kimball Mizelle on 9/16/2025. (GSO)** (Entered: 09/16/2025) |
| 09/20/2025 | 212 | **TRIAL CALENDAR for October 2025 trial term. Signed by Judge Kathryn Kimball Mizelle on 9/20/2025. (GSO)** (Entered: 09/20/2025) |
| 09/22/2025 | 213 | NOTICE OF RESCHEDULING HEARING: The Status Conference previously scheduled for September 23, 2025, is rescheduled as to Timothy Burke. New hearing date and time: Status Conference rescheduled for September 26, 2025, at 10:00 AM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. The Court will address when the trial should be scheduled at that status conference. (GSO) (Entered: 09/22/2025) |
| 09/23/2025 | 215 | Unopposed MOTION to Continue Status Conference by Timothy Burke. (Maddux, Michael) (Entered: 09/23/2025) |
| 09/23/2025 | 216 | **ENDORSED ORDER granting 215 Unopposed Motion to Continue Status Conference as to Timothy Burke. Status Conference rescheduled for September 30, 2025, at 3:00 PM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. Signed by Judge Kathryn Kimball Mizelle on 9/23/2025. (GSO)** (Entered: 09/23/2025) |
| 09/25/2025 | 217 | **ORDER: Defendant Timothy Burke's 125 Third Motion to Dismiss is GRANTED. Counts Eight through Fourteen of the 1 Indictment are DISMISSED without prejudice. Signed by Judge Kathryn Kimball Mizelle on 9/25/2025. (SJR)** (Entered: 09/25/2025) |
| 09/25/2025 | 219 | DISMISSAL OF COUNTS on Defendant's 125 Third Motion to Dismiss as to Timothy Burke. (GSO) (Entered: 09/28/2025) |
| 09/26/2025 | 218 | Unopposed MOTION for Mark Rasch to appear telephonically *at the Status Conference* by Timothy Burke. (Maddux, Michael) (Entered: 09/26/2025) |
| 09/29/2025 | 220 | **ENDORSED ORDER granting 218 Motion to Appear Via Telephone as to Timothy Burke. Counsel Mark Rasch may appear telephonically. The courtroom** |

| | | |
|---|---|---|
| | | deputy will call counsel's telephone number, as listed on the docket, at the time of the status conference. **Signed by Judge Kathryn Kimball Mizelle on 9/29/2025. (GSO)** (Entered: 09/29/2025) |
| 09/29/2025 | 221 | RESPONSE in Opposition by USA as to Timothy Burke re 205 MOTION for Reconsideration *of Magistrate Judge's Denial of Early Pretrial Production Pursuant to F.R. Crim. P. 17(c)* (Duso, Adam) (Entered: 09/29/2025) |
| 09/30/2025 | 222 | MINUTE ENTRY for 9/30/2025 in-person Status Conference as to Timothy Burke before Judge Kathryn Kimball Mizelle. Court Reporter: Bill Jones (GSO) (Entered: 09/30/2025) |
| 09/30/2025 | 223 | **ORAL ORDER denying 205 Motion for Reconsideration as to Timothy Burke. Signed by Judge Kathryn Kimball Mizelle on 9/30/2025. (GSO)** (Entered: 09/30/2025) |
| 09/30/2025 | 224 | **ORAL ORDER as to Timothy Burke: For the reasons stated on the record, the ends of justice outweigh the interests of the defendant and of the public in a speedy trial. See 18 U.S.C. § 3161(h)(7)(A). The trial is continued to the January 2026 trial calendar with a date certain of January 5, 2026. A status conference is scheduled for October 30, 2025, at 11:00 a.m. in Tampa Courtroom 13B. The time from today through February 1, 2026, is "excludable time." Signed by Judge Kathryn Kimball Mizelle on 9/30/2025. (GSO)** (Entered: 09/30/2025) |
| 10/07/2025 | 225 | Unopposed MOTION for Clarification re 217 Order on Motion to Dismiss by USA as to Timothy Burke. (Trezevant, Jay) (Entered: 10/07/2025) |
| 10/20/2025 | 226 | **ORDER: The government's 225 Unopposed Motion for Clarification is GRANTED. Signed by Judge Kathryn Kimball Mizelle on 10/20/2025. (PBH)** (Entered: 10/20/2025) |
| 10/22/2025 | 227 | Unopposed MOTION for Mark Rasch to appear telephonically *at the October 30, 3025 Status Conference* by Timothy Burke. (Maddux, Michael) (Entered: 10/22/2025) |
| 10/24/2025 | 228 | **ENDORSED ORDER granting 227 Motion to Appear Via Telephone as to Timothy Burke. Counsel Mark Rasch may appear telephonically. The courtroom deputy will call counsel's telephone number, as provided by co-counsel, at the time of the status conference. Signed by Judge Kathryn Kimball Mizelle on 10/24/2025. (GSO)** (Entered: 10/24/2025) |
| 10/27/2025 | 229 | NOTICE OF INTERLOCUTORY APPEAL by USA as to Timothy Burke re 226 Order on Motion for Reconsideration / Clarification, 217 Order on Motion to Dismiss. Filing fee not paid. (Trezevant, Jay) (Entered: 10/27/2025) |
| 10/27/2025 | 230 | **ENDORSED ORDER: In the light of the United States' 229 Notice of Interlocutory Appeal, the Clerk is directed to STAY and ADMINISTRATIVELY CLOSE this case pending resolution of the interlocutory appeal. The period of "delay resulting from any interlocutory appeal" is excludable time. *See* 18 U.S.C. § 3161(h)(1)(C). Signed by Judge Kathryn Kimball Mizelle on 10/27/2025. (PBH)** (Entered: 10/27/2025) |
| 10/28/2025 | 231 | NOTICE canceling October 30, 2025 Status Conference and January 5, 2026 Jury Trial as to Timothy Burke. (GSO) (Entered: 10/28/2025) |

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                        Case No. 8:24-cr-68-KKM-TGW

TIMOTHY BURKE,

    Defendant.
_____

## <u>ORDER</u>

Congress enacted the Wiretap Act in 1968 to combat nefarious actors intercepting Americans' private communications. In this case, the government argues that it can prove a Wiretap Act violation solely by showing that a defendant intentionally acquired a communication using a device and that the many exceptions to the Wiretap Act are not elements of the crime but instead defenses to be raised by a criminal defendant. Significant First Amendment concerns arise if I were to adopt the government's theory. To cure this constitutional concern, I look to the statutory exceptions and conclude that the government must plead and prove two of them: that a defendant was not a "party to the communication" and that any electronic communication was not "readily accessible to the general public."

# I.    BACKGROUND

Among other offenses, a grand jury charged that Timothy Burke violated the Wiretap Act, 18 U.S.C. § 2511, by intentionally intercepting several livestreams and by disclosing them. Indictment (Doc. 1) (Counts 8–12) (interception); *id.* (Counts 13–14) (disclosure). Burke allegedly gained access to StreamCo-Net, a livestreaming platform, and intercepted video and audio streams transmitted through it by a multinational media company (Network #1) and a commercial broadcast television and radio network (Network #2). Indictment (Count 1) ¶¶ 8–9, 13, 15, 23i. Burke then downloaded these communications and disclosed some of them. *Id.* ¶¶ 23i–23j.

Burke first moved to dismiss the Wiretap Act counts because, among other reasons, they fail to state an offense. *See* First MTD (Doc. 64) at 8–13; *see also* FED. R. CRIM. P. 12(b)(3)(B)(v). On Burke's view, the indictment should allege that any communications were acquired without consent and any electronic communications were not "readily accessible to the general public." First MTD at 8–13; 18 U.S.C. §§ 2510(2), 2511(2)(d), (2)(g)(i). I denied Burke's first motion to dismiss. First Order at 13–30. The Fifth Circuit's holding in *United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972),[1] that consent was

---

[1] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

a defense to, not an element of, a Wiretap Act charge foreclosed Burke's argument as to "consent" and informed treatment of other statutory exceptions, *see* First Order at 16–19. The order likewise underscored that Congress set out the provisions at issue among a "host of statutory exceptions located in other subsections" from the main proscription. First Order at 21. I thus concluded that, as a matter of statutory interpretation, the government did not need to negate either exception in the indictment. *Id.* at 18, 27.

In the light of that ruling, Burke now moves to dismiss again. Burke argues that Counts Eight through Fourteen violate the First Amendment because the Wiretap Act, as interpreted, is impermissibly overbroad and facially prohibits vast swaths of First Amendment-protected conduct. Third MTD (Doc. 125).[2] The government opposes. Resp. (Doc. 138).

In the light of the thorny constitutional and interpretive issues raised by Burke's motion, I invited *amici curiae* to address three questions:

1)      Whether a video that includes both a human voice and visual data transmitted over the internet is an electronic communication, a wire communication, or both, as defined by 18 U.S.C. § 2510.

---

[2] This is Burke's third attempt to dismiss Counts Eight through Fourteen. His second motion unsuccessfully argued that the counts were duplicitous. Second MTD (Doc. 97); Second Order (Doc. 111) (denying Burke's Second MTD). Burke filed an earlier version of the present motion, *see* (Doc. 119), but I struck that motion because it contained "significant misrepresentations and misquotations of supposedly pertinent case law and history," (Doc. 124), which Burke's counsel attributed to the use of artificial intelligence, *see* (Doc. 126) ¶ 9.

2) Whether 18 U.S.C. § 2511(1)(a) prohibits a person watching a video on an internet streaming platform or visiting a public-facing webpage, without considering any of the statutory exceptions. If so, whether this interception would be deemed lawful by an exception in 18 U.S.C. § 2511, including whether such a viewer would have consent or would be a "party to the communication," *id.* § 2511(2)(d). If not, why not.

3) Whether, to avoid the chilling of protected activity, the Free Speech Clause of the First Amendment requires the government, in some cases, to allege in the indictment and to negate at trial a statutory exception to a criminal offense. Specifically, whether the Free Speech Clause requires the government to negate the "readily accessible" statutory exception for electronic communications, 18 U.S.C. § 2511(2)(g)(i), when prosecuting an intentional interception of an electronic communication, *id.* § 2511(1)(a), and the statutory exceptions for "consent" and "a party to the communication," *id.* § 2511(2)(d), when prosecuting an intentional interception of an electronic or wire communication, *id.* § 2511(1)(a).

(Doc. 128) at 4–5.

With the benefit of the parties' and *amici*'s papers, I reexamine the offense of intentional interception of communications under the Wiretap Act, 18 U.S.C. § 2511(1), and conclude that treating the exceptions from liability for "parties to the communication" and for electronic communications "readily accessible to the general public" as elements cures any First Amendment concern.

## II.    LEGAL STANDARD

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An "indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (quoting *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999)).

A defendant may move to dismiss an indictment that fails to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v). "In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated." *United States v. Fitapelli*, 786 F.2d 1461, 1463 (11th Cir. 1986). An indictment states an offense when it "allege[s] each of the elements of the statute." *United States v. Plummer*, 221 F.3d 1298, 1302 (11th Cir. 2000). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)).

5

## III.  ANALYSIS

Burke argues that, as interpreted, the Wiretap Act violates the First Amendment. *See generally* Third MTD. While Burke earlier argued that the "consent" and "readily accessible to the general public" exceptions should be treated as elements, Burke never contended that the First Amendment required that reading. (Doc. 90) at 8. In the light of these new arguments and the *amici*'s submissions, the proper course is to consider (1) whether the offense of interception of a communication under the Wiretap Act creates a First Amendment issue, and (2) whether any exception must be considered an element to cure that concern.

As an antecedent matter, I encouraged the parties and *amici* to address whether the livestreams that Burke allegedly intercepted were "an electronic communication, a wire communication, or both." (Doc. 128) at 4. Contrary to the government's position in a recent hearing, *see* Hr'g Tr. (Doc. 135) 30:2–31:3, livestreams appear to be best understood as electronic communications, not a mixture of wire and electronic communications broken apart into the human voice and video aspects. In *United States v. Herring*, the Eleventh Circuit concluded that "satellite television signals" fell within the Wiretap Act's "very broad" definition of electronic communications. 993 F.2d 784, 785, 787 (11th Cir. 1993) (en banc). No basis appears for distinguishing the livestreams here from the satellite television signals in *Herring*. Both include video and audio

6

components. *See* Indictment (Counts 8–12) ¶¶ 2; *cf. Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1183 (Fed. Cir. 1998) ("Conventional television signals contain two primary components: the video portion of the signal and the audio portion."). *See generally* Electronic Privacy Information Center (EPIC) Br. (Doc. 143) at 8–17.

I need not decide which kind of communication a livestream is to resolve this motion, though. Reading the exception for "parties to the communication" to be an element cures most First Amendment concerns because that exception applies to any communication—wire, oral, or electronic. And reading the exception for electronic communications that are "readily accessible to the general public" as an element doubly cures any constitutional problem.

## A. If None of the Wiretap Act Exceptions are Elements, the Offense of Intentional Interception of a Communication Raises Serious First Amendment Concerns

If the Wiretap Act permits the investigation and prosecution of the intentional acquisition of *any* communication—full stop—then it raises serious First Amendment concerns under binding precedent. Burke and most of the *amici* contend that this is what the statute does if all its exceptions are defenses rather than elements. Third MTD at 5–10; ACLU Br. (Doc. 145) at 6–7, 12–22; Reporters Committee for Freedom of the Press Br. (Doc. 146) at 13–15; Internet Accountability Project (IAP) Br. (Doc. 158) at 15–16. I agree.

Without considering the statutory exceptions, the Wiretap Act prohibits "intentionally intercept[ing] . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The statute defines "intercept" to mean "acquire" using a device. *Id.* § 2510(4) (" '[I]ntercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."). And "acquire" in 1968 simply meant to "obtain" or "come to possess." *See Acquire*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 18 (1968) ("[T]o come into possession, control, or power of disposal of"); *Acquire*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 12 (1969) ("To gain possession of"); *see also Acquire*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 18 (2d ed. 1987) ("[T]o come into possession or ownership of; get as one's own"). To prove a Wiretap Act violation for intercepting a communication, then, the government would need to show only that the defendant intentionally acquired, using a device, the contents of a communication.

Significant First Amendment concerns arise if these are the only elements of a Wiretap Act interception offense.[3] *See Ashcroft v. Free Speech*

---

[3] Although the parties frame the First Amendment concern as arising under the Supreme Court's overbreadth doctrine, this action does not present an ordinary challenge of that kind. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 292 (2008) (explaining that under the "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech" "relative to the statute's plainly legitimate sweep."); *Cheshire Bridge Holdings, LLC v. City of*

*Coal.*, 535 U.S. 234, 255 (2002) ("The Government raises serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not unlawful."); *cf. Reno v. ACLU*, 521 U.S. 844, 881–82 (1997) (finding a defense inadequate to save a criminal statute from a First Amendment challenge). First, the government could bring to criminal trial anyone who intentionally acquires a communication—such as by accessing a webpage or streaming a YouTube video—even if he had a clearly applicable defense. *See Woodruff*, 296 F.3d at 1046 (explaining that an "indictment is sufficient if it '. . . presents the essential elements of the charged offense' "

---

*Atlanta*, 15 F.4th 1362, 1370–71 (11th Cir. 2021); *see also* Third MTD at 10 ("The statute is overbroad because it prohibits on its face all 'interceptions' not just those which are 'unlawful' or surreptitious."); Resp. at 3 ("The Court . . . should reject outright Burke's invitation to apply the overbreadth doctrine); *id.* at 24 ("Proper overbreadth analysis, at least of a 'bare' overbreadth challenge like Burke's . . . should be of both initial prohibition and exceptions to liability."). Burke does not argue, for example, that the Wiretap Act would allow the government to secure convictions for swaths of First Amendment-protected conduct, even if the First Amendment does not protect the conduct in which Burke allegedly engaged. *See* First Order at 6–13. Instead, the First Amendment concerns at play here require more of a constitutional avoidance analysis: in the light of the need to assign the burden of proof to a particular party in a criminal case, I must interpret what is an element and what is a defense. And I must do so consistent with long-standing precedent that instructs that Congress enacts statutes in conformity with the Constitution. *See, e.g., United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994). To be sure, the government never contends that Congress may, consistent with the First Amendment, give a person the burden of proving that his speech is lawful. I note though, if this case did require a true overbreadth doctrine inquiry, that test's pedigree is suspect as an original matter. *See, e.g., United States v. Hansen*, 599 U.S. 762, 785 (2023) (Thomas, J., concurring) ("[The overbreadth] doctrine 'lacks any basis in the text or history of the First Amendment, relaxes the traditional standard for facial challenges,' and distorts the judicial role." (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 390 (2020) (Thomas, J., concurring))); *Moody v. NetChoice, LLC*, 603 U.S. 707, 752–66 (2024) (Thomas, J., concurring).

(quoting *Steele*, 178 F.3d at 1233–34)); *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam) ("Because [the defendant] was properly indicted, the government is entitled to present its evidence at trial."). It is "a fundamental aim of the First Amendment" to ensure that "the public has access to a wide range of views." *Moody v. NetChoice, LLC*, 603 U.S. 707, 741 (2024). Yet threatened with the Damoclean sword of prosecution for accessing unpopular speech, the public may choose to forgo hearing those views rather than "risk the perils of trial. There is a potential for extraordinary harm and a serious chill upon protected speech." *Ashcroft v. ACLU*, 542 U.S. 656, 670–71 (2004). Nor is this only a historical concern, as recent memory confirms that the federal government, at times, seeks to suppress disfavored views. *See Murthy v. Missouri*, 603 U.S. 43, 51–53 (2024) (detailing efforts by the White House, Surgeon General, CDC, and FBI to pressure social media companies to censor COVID-19 and election-related "misinformation").

Second, the government could use Wiretap Act violations as a basis for invasive search warrants. The potential availability of a defense does not negate probable cause (unless, perhaps, the government knows conclusively that the defense applies). *See, e.g.*, *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) ("[A]n affirmative defense to an alleged crime does not necessarily vitiate probable cause."); *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024) ("A defense that may be raised in future proceedings does not vitiate probable

cause at the time of arrest."). Evidence of the mere acquisition of a communication might provide probable cause to search someone's email, text messages, video calls, or internet browsing history, chilling speech of all varieties. As some *amici* point out, this is no hypothetical danger. *See, e.g.*, ACLU Br. at 19–21 ("Journalists may not yet have been prosecuted for watching YouTube, but some recent cases are not far off."); Reporters Committee Br. at 11–13 (describing a 2023 raid on the offices of the Marion County Recorder and a reporter's home based on the reporter "accessing a state website and acquiring information that was meant to be publicly available" (citing Sofia Andrade & Paul Farhi, *After a Police Raid on a Kansas Newspaper, Questions Mount*, Wash. Post (Aug. 13, 2023), https://perma.cc/NCJ3-DVFY)).

The government and one *amicus* respond that the plain meaning of the Wiretap Act, even without any exceptions, does not allow for this parade of First Amendment horribles. They offer different reasons, but I part ways with both.

### 1. The Government's Ordinary Course of Business Argument

The government argues that there is no First Amendment problem because the Wiretap Act exempts interceptions by a device used "in the ordinary course of business." Resp. at 12 (quoting 18 U.S.C. § 2510(5)(a)). I

disagree with the government's reading of the statute, but even if correct, that provision does not allay the First Amendment concerns outlined above.

To cure the looming First Amendment problem, the government leans on a definition: the interception must be "by a device being used not 'in the ordinary course of business.' " *Id.* at 12 (quoting 18 U.S.C. § 2510(5)(a)). The statute explains that the interception of a communication must be "through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). As relevant here, the statute excludes from these kinds of "devices":

> any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business.

*Id.* § 2510(5)(a). In the government's view, this provision "neatly separates intentional from inadvertent wiretapping" by excluding from liability anyone using the device "in the ordinary course of business." Resp. at 8.

The government vastly overreads this exception. Critically, the statute does not except *all* devices used in the ordinary course of business, but only "any *telephone or telegraph* instrument, equipment or facility, or any component thereof . . . used in the ordinary course of its business." 18 U.S.C. § 2510(5)(a) (emphasis added). The government never explains why desktops,

laptops, smartwatches, smart TVs, Bluetooth speakers, or many of the other technologies that Americans use to acquire communications are "telephone or telegraph instrument[s], equipment or facilit[ies], or . . . component[s] thereof." *Id.* A modern smartphone might be within the semantic range of "telephone," *id.*, though that is doubtful given that Congress added the term in 1968, *see* Omnibus Crime Control and Safe Streets Act of 1968, Pub L. No. 90-351, § 802, 82 Stat. 197, 212; *see also Telephone*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2350 (1968) ("An instrument for reproducing sounds esp. articulate speech at a distance"); *Telephone*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1323 (1969) ("An instrument that directly modulates carrier waves with voice or other acoustic source signals to be transmitted to remote locations and that directly reconverts received waves into audible signals; especially, such an instrument connected to others by wire"). But many devices that people daily use to acquire communications fall outside the government's carveout.

The cases that the government cites do not alter the conclusion that "telephone or telegraph" cabins the reach of exempted devices. The government's in-circuit authority deals with the ordinary-course-of-business exception in the context of traditional telephony alone, not modern electronic communications. *See Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582–84 (11th Cir. 1983) (employer interception of employee's telephone call); *Simpson v.*

13

*Simpson*, <u>490 F.2d 803, 804</u>, <u>809</u> & n.17 (5th Cir. 1974) (husband intercepting wife's telephone calls), *overruled by Glazner v. Glazner*, <u>347 F.3d 1212</u> (11th Cir. 2003) (en banc).

The government also relies on *Hall v. EarthLink Network, Inc.*, <u>396 F.3d 500, 503</u>–05 (2d Cir. 2005), but that opinion is unpersuasive. The Second Circuit held that the ordinary-course-of-business exception applies to an interception by any "equipment or facility," not just those associated with telephones or telegraphs. *Id. Hall* reasoned that whether "telephone or telegraph" modify the whole series or just "instrument" was ambiguous and therefore relied on legislative history to favor the latter interpretation. *Id.* at 504. That reading is wrong. No ambiguity arises as "telephone or telegraph" clearly modify the parallel clauses that follow. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 19, at 147 (2012) (series-qualifier canon) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."); *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, <u>113 F.4th 1312, 1322</u> (11th Cir. 2024), *cert. denied*, <u>145 S. Ct. 1431</u> (2025); *see also Facebook, Inc. v. Duguid*, <u>592 U.S. 395, 409</u>–13 (2021) (Alito, J., concurring) (cautioning against overreliance on the series-qualifier canon but primarily addressing postpositive, not prepositive, modifiers). Nothing in the statute's text suggests otherwise, particularly as

14

Congress added the provision in 1968, long before the internet age, so there is no need to resort to legislative history. *See Wiersum v. U.S. Bank, N.A.*, <u>785 F.3d 483, 487</u>–88 (11th Cir. 2015) ("Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history." (quoting *Harry v. Marchant*, <u>291 F.3d 767, 772</u> (11th Cir. 2002) (en banc))).

Even accepting the government's misreading as a permissible textual interpretation, the government's reliance on the ordinary-course-of-business exception to resolve any First Amendment problem is misplaced. The ordinary meaning of the phrase includes a business or commercial component, and the Fifth and Eleventh Circuits have always applied it in business or commercial contexts. *See Watkins*, <u>704 F.2d at 582</u> ("[T]he general rule seems to be that if the intercepted call was a business call, then [the company]'s monitoring of it was in the ordinary course of business. If it was a personal call, the monitoring was probably, but not certainly, *not* in the ordinary course of business."); *Briggs v. Am. Air Filter Co., Inc.*, <u>630 F.2d 414, 420</u> (5th Cir. 1980) ([T]he 'ordinary course of business' exception does not encompass interceptions not reasonably related to a business purpose."); *see also Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.*, <u>924 F.2d 215, 216</u>–19 (11th Cir. 1991) (per curiam) (interpreting identical language in the Florida Security of Communications Act, 934.02(4)(a)1., Fla. Stat.); *Epps v. St. Mary's Hosp. of Athens, Inc.*, <u>802</u>

F.2d 412, 416–17 (11th Cir. 1986); *Ordinary Course of Business*, BLACK'S LAW DICTIONARY (4th rev. ed. 1968) ("The transaction of business according to the usages and customs of the commercial world generally or of the particular community or (in some cases) of the particular individual whose acts are under consideration"); *Ordinary Course of Business*, BLACK'S LAW DICTIONARY (6th ed. 1990) (similar). The government provides no authority suggesting that the ordinary-course-of-business exception protects purely private, noncommercial conduct like watching a YouTube video or accessing an online article.

The government has thus not shown that an exception to the definition of "device" ameliorates the First Amendment concern.

## 2. The Government's Argument about the Scope of the Wiretap Act's Chilling Effect

The government argues at length that "[t]he wiretap statute does not chill hearing or listening to (or watching) anything" but merely prohibits *acquiring* a communication. Resp. at 13–23; *see id.* at 17–18 (arguing that the Wiretap Act "cannot even be interpreted to prohibit, as an illegal wiretap, the 'listening' or 'viewing' anything" because "the human ear or eye is not a 'device'" and "no ear or eye 'acquires' a communication as necessary to trigger the wiretap statute"). In other words, the government contends that the Wiretap Act creates no First Amendment problem because, while it might prohibit digitally accessing an article, it does not prohibit reading it.

The absurdity of this position is plain. "The right of freedom of speech and press . . . embraces the right to distribute literature and necessarily protects the right to receive it." *TikTok Inc. v. Garland*, 604 U.S. 56, 69 (2025) (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). Were the government right, a regulation that prohibited members of the public from taking flyers on a matter of public concern—but permitted offering the flyers and reading them—would pass constitutional muster. That is not the law.

The government does try to moderate its extreme position. First, it maintains that the Wiretap Act does not regulate " 'streaming' anything" because streaming is not "an intentional acquisition by *unauthorized device*." Resp. at 19 (emphasis added). As explained above, the government's construction of what constitute "unauthorized devices" is at odds with the statute's text. Second, the government contends that "the subscriber or user of an online electronic communication service, who is hearing, listening, watching a program, or streaming—'accessing online' entertainment content— also does not have the requisite mens rea for an illegal wiretap." *Id.* Yet if all the government need prove to secure a conviction is that a person "intentionally" acquires a communication using a device that is not so. 18 U.S.C. § 2511(1)(a). One can intentionally obtain a communication with no other nefarious or unlawful intent and still fall within the ambit of the Wiretap Act as facially defined.

17

The government's argument that no First Amendment problem exists because "[t]he Constitution does not provide Burke the right to *take* others' private and proprietary information" is therefore without merit. Resp. at 21. The question at this stage is not whether Congress may lawfully prohibit Burke's particular alleged conduct—it may. The question is whether the statute's structure raises serious First Amendment concerns—it does. And the government's statutory interpretation arguments fail to mitigate those concerns.

The government thus fails to show that, bracketing the Wiretap Act's exceptions, the Act does not prohibit First Amendment-protected conduct.

### 3. *Amicus* Internet Accountability Project's Ordinary Meaning of "Intercept" Argument

*Amicus* Internet Accountability Project proposes to cure any First Amendment concern by reading "intercept" in accord with its narrower, ordinary meaning, rather than its broad statutory definition. *See* IAP Br. at 9–13. In the alternative, Internet Accountability argues that both the "party to a communication" and "readily accessible to the general public" exceptions must be treated as elements to remedy any First Amendment concern. I agree with Internet Accountability's alternative argument and explain why later, but first address why I am compelled to read "intercept" consistent with its broad statutory definition.

Recall, the Wiretap Act defines "intercept" to mean roughly "to acquire using a device," 18 U.S.C. § 2510(4), while intercept's ordinary meaning is "[t]o stop, deflect, or interrupt the progress or intended course of" something, *Intercept*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 683 (1969); *see also Intercept*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1176 (1968) ("[T]o take, seize, or stop by the way or before arrival at the destined place" or to "stop or interrupt the progress or course of"); *Intercept*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 992 (2d ed. 1987) ("[T]o stop or interrupt the course, progress, or transmission of" or "to see or overhear (a message, transmission, etc., meant for another)"). Using intercept's ordinary meaning, Internet Accountability argues that "only an unauthorized viewer can 'intercept,' " for example, "a video on the internet." IAP Br. at 9.

Absent patent ambiguity, a statutory definition is almost always conclusive of a statutory term's meaning. SCALIA & GARNER, READING LAW § 36, at 228 (interpretive-direction canon). When the definition itself contains an ambiguity though, the defined term's ordinary meaning might interpret an ambiguous definition. *See, e.g.*, *Delligatti v. United States*, 145 S. Ct. 797, 808–09 (2025); *Sackett v. EPA*, 598 U.S. 651, 672 (2023); *see also Van Buren v. United States*, 593 U.S. 374, 404 (2021) (Thomas, J., dissenting). But there must be some ambiguity—otherwise, departing from the statutory definition

is just "result-driven antitextualism." *Bond v. United States*, 572 U.S. 844, 868 (2014) (Scalia, J., concurring in the judgment); SCALIA & GARNER, READING LAW § 36, at 228 ("It is very rare that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications."). Here, the Wiretap Act defines "intercept" to mean, in essence, "acquire using a device." *See* 18 U.S.C. § 2510(4). No patent ambiguity there, and thus no basis to depart from Congress's definition.

Reading "intercept" in accord with its ordinary meaning instead of its statutory one also renders some of the Wiretap Act exceptions nullities. Internet Accountability stresses that a broad reading of "intercept" "would criminalize, at the federal level, an extraordinary amount of conduct." IAP Br. at 11. I would agree if Congress had not included the statutory exceptions. Unlike instances where backdrop "unexpressed presumptions" might favor a different meaning, Congress included explicit limits on the extent of criminal liability in the very text of the statute: as exceptions. *Bond*, 572 U.S. at 857. Jettisoning the statutory definition for the ordinary meaning of "intercept" would render at least one of the exceptions—that parties to the communication are ordinarily not liable for acquisitions—superfluous. Someone cannot intercept in the colloquial sense a communication that he sent or that is intended for him. *See infra* at 25–26. Courts, of course, disfavor statutory readings that render another part of the statute "superfluous, void, or

20

insignificant." *Fuerst v. Hous. Auth. of Atlanta*, 38 F.4th 860, 869 (11th Cir. 2022) (quoting *In re Shek*, 947 F.3d 770, 777 (11th Cir. 2020)).

Because Internet Accountability's first proposed solution to the First Amendment problem is incompatible with the statute's plain meaning, I decline to adopt it.

\*    \*    \*

Neither the government nor the *amici* offer a reason to interpret § 2511(1) in a way that does not facially sweep in swaths of First Amendment-protected conduct. If all the government must allege is that the defendant intentionally acquired a communication using a device, then the Wiretap Act raises serious First Amendment concerns. *See Ashcroft v. ACLU*, 542 U.S. at 670–71; *Free Speech Coal.*, 535 U.S. at 255. In such cases, "[c]ourts should . . . construe statutes 'to avoid not only the conclusion that they are unconstitutional, but also grave doubts upon that score.'" *United States v. Palomar-Santiago*, 593 U.S. 321, 328–29 (2021) (alteration adopted) (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)); *see also* H.R. REP. NO. 99-647, at 39–40 (1986) (explaining that the Electronic Communications Privacy Act amended part of 18 U.S.C. § 2511(2)(d) to stymie "attempts by parties to chill the exercise of First Amendment rights," specifically "responsible news gathering"); S. REP. NO. 99-541, at 17–18 (1986) (same).

21

## B. The "Party to the Communication" and "Readily Accessible" Exceptions Are Elements

Because the Wiretap Act does not unambiguously explain which of its provisions are elements and which are defenses, the presumption that Congress intends to legislate consistent with the First Amendment supports treating some exceptions to intentional interception of a communication as elements.

"Determining whether an exception in a criminal statute creates an element or an affirmative defense is not an exact science." *United States v. Rafiekian*, 991 F.3d 529, 541 (4th Cir. 2021). The heart of the inquiry is whether the offense can "be accurately and clearly described" without reference to the exception, or whether the exception is a key "ingredient[]" of the offense. *United States v. Cook*, 84 U.S. 168, 173–74 (1872); *see United States v. Outler*, 659 F.2d 1306, 1309 (5th Cir. Unit B Oct. 1981)[4] (holding that a part of a statute that "embodies the culpability of the offense" "is an essential element of [the] offense"). In this Circuit, courts look to three considerations to determine whether a statute defines an element or a defense: (1) "the language and structure of the statute"; (2) "the legislative history of the provision"; and (3) "whether the defendant or the government is better situated to adduce

---

[4] Decisions rendered by a Unit B panel of the former Fifth Circuit are considered binding precedent in the Eleventh Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

evidence tending to prove or disprove the applicability of the exception." *United States v. McArthur*, <u>108 F.3d 1350, 1353</u> (11th Cir. 1997). The first consideration is, of course, the most important. *See United States v. Steele*, <u>147 F.3d 1316, 1318</u> (11th Cir. 1998) (en banc) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself." (quoting *Merritt v. Dillard Paper Co.*, <u>120 F.3d 1181, 1185</u> (11th Cir. 1997))).

### 1. The Government Must Plead and Prove That Burke Was Not a "Party to the Communication" That He Allegedly Intercepted

The earlier order presented no occasion to address the party-to-the-communication exception, but I conclude now that the government must plead and prove it as an element. Beginning with the text, *see Groff v. DeJoy*, <u>600 U.S. 447, 468</u> (2023), the Wiretap Act provides broadly that

> any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be [subject to criminal punishment or civil action].

<u>18 U.S.C. § 2511(1)</u>. The statute includes over twenty exceptions (depending on how you count them) from that sweeping prohibition, including acquiring a communication to which one is a party:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where *such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious

23

act in violation of the Constitution or laws of the United States or of any State.

*Id.* § 2511(2)(d) (emphasis added).

Narrow provisos to broad proscriptions ordinarily set out defenses, not elements. That is the Supreme Court's long-settled rule, one recognized in this Circuit. *See McKelvey v. United States*, <u>260 U.S. 353, 357</u> (1922) ("[A]n indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere."); *McArthur*, <u>108 F.3d at 1353</u> ("[A] narrow proviso to a more general statutory offense is more likely to be an affirmative defense than an element of the offense."). Like other background principles of interpretation, courts assume that Congress writes with this general rule in mind absent "compelling reason to think" otherwise. *Meacham v. Knolls Atomic Power Lab'y*, <u>554 U.S. 84, 91</u> (2008).

Two "compelling reason[s]" teach that the Wiretap Act does not follow, at least in part, that general rule: (1) serious First Amendment concerns counsel against a broad interpretation of the core offense, *see supra* at 7–21, and (2) the use of "intercept" to define the offense suggests that more than the mere acquisition of an electronic communication is at the offense's heart.

To start, reading the party-to-the-communication exception as an element ameliorates most of the First Amendment concerns identified above

and discussed by the parties and *amici*. Many of the examples that Burke and the *amici* provide involve someone acquiring electronic data from the internet, like accessing The Wall Street Journal or TikTok or streaming a YouTube video. *See, e.g.*, Third MTD at 2, 7, 15; ACLU Br. at 1, 10. For ordinary public videos and webpages, the acquiror will be a party to the communication: the intended recipient of data sent from the website's server. *See United States v. Tagg*, 886 F.3d 579, 583 n.2 (6th Cir. 2018) ("Anytime you click on a website's content (e.g., a link, an image, a page), the website's host computer transmits data to your computer, allowing you to view the content that you requested."); *cf. In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 140–45 (3d Cir. 2015) ("[T]he intended recipient of a communication is necessarily one of its parties, and the defendants were the intended recipients of the . . . requests they acquired here, [so] the defendants were parties to the transmissions at issue in this case."). The statute thus would not facially prohibit most of the acquisitions about which Burke and the *amici* are concerned.

The ordinary meaning of "intercept" also supports reading the party-to-the-communication exception as an element. Using the word "intercept" in the core offense language suggests that the acquiror must not be a party to the communication. In everyday language, to "intercept" means "[t]o stop, deflect, or interrupt the progress or intended course of" something. *Intercept*, THE

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 683 (1969); *Intercept*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1176 (1968); *see United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003); *see also Intercept*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 992 (2d ed. 1987) ("to stop or interrupt the course, progress, or transmission of" or "to see or overhear (a message, transmission, etc., meant for another)").[5] These definitions suggest that for one to intercept a communication, the communication must (1) be acquired during its transit between an origin and a destination, and (2) be acquired by someone who is neither the sender nor the intended recipient. *See Steiger*, 318 F.3d at 1048–49 ("[A] contemporaneous interception—*i.e.*, an acquisition during 'flight'—is required to implicate the Wiretap Act with respect to electronic communications.").

The use of "intercept" in the principal subsection that proscribes the conduct is indicative of the "definition of the offense" Congress created through § 2511(1). *United States v. Kloess*, 251 F.3d 941, 945 (11th Cir. 2001). Congress could have chosen any number of words with a similar meaning to "acquire" to denote the actus reus—"obtain," or "procure," for example. It would be surprising for Congress to choose the word "intercept" as the principal term setting out the offense conduct while nevertheless intending the offense to be

---

[5] The legal definition of "intercept" is that provided by the Wiretap Act. *See Intercept*, BLACK'S LAW DICTIONARY (5th ed. 1979) (citing 18 U.S.C. § 2510).

far, far broader. *Cf. Delligatti*, 145 S. Ct. at 810 ("Since on this side of the looking-glass an entirely artificial definition is rare, the meaning of the definition is almost always closely related to the ordinary meaning of the word being defined." (quoting SCALIA & GARNER, READING LAW at 228)). Given the term's ordinary meaning and in context, "intercept" suggests prohibition of only a third-party acquisition of a communication during transmission, even if the Act achieves that goal in part through its exceptions and not exclusively through § 2511(1). The Eleventh Circuit has already recognized the "during transmission" component of the offense. *See Steiger*, 318 F.3d at 1048–49. Reading the party-to-the-communication exception as an element gives effect to the "third-party" component of "intercept."

The best reading of the Wiretap Act's text thus suggests that it is an "essential element of the offense" that the acquiror not be a "party to the communication." 18 U.S.C. § 2511(2)(d); *Outler*, 659 F.2d at 1309.[6]

---

[6] In many ways, I agree with Internet Accountability's first argument that the term "intercept" does important work in the Wiretap Act's overall meaning, but I differ on the way in which it manifests. By adhering to the statutory definition of "intercept," I need not render the party-to-the-communication exception and the statutory definition nullities. Instead, the ordinary meaning of "intercept" informs a question that the statute does not answer expressly: what are the elements of this offense? In doing so, it gives effect both to the statutory definition of "intercept" and all the exceptions, while also respecting Congress's choice of the word "intercept" to describe the offense conduct.

"[T]he 'legislative history of the provision' " "provides little additional insight." First Order at 22 (quoting *McArthur*, <u>108 F.3d at 1353</u>). The broad purpose of the Wiretap Act—to protect privacy while allowing adequate law-enforcement information gathering—is well established. *See* Omnibus Crime Control and Safe Streets Act § 801 (findings). The committee reports' commentary on the party-to-the-communication exception is uninstructive. The 1968 act's Senate Report states merely that the act included the exception for parties to the communication in <u>18 U.S.C. § 2511(2)(d)</u>[7] because it "largely reflects existing law." S. REP. NO. 90-1097, at 93–94 (1968). Both the House and Senate Reports for the Electronic Communication Privacy Act (ECPA), which extended the Wiretap Act to electronic communications, *see* Pub. L. No. 99-508, § 101, <u>100 Stat. 1848</u>, <u>1848–53</u> (1986), discuss an amendment to § 2511(2)(d) striking the language "or for the purpose of committing any other injurious act," which followed the carveout for interceptions in furtherance of criminal or tortious acts. *See* H.R. REP. NO. 99-647, at 39–40; S. REP. NO. 99-541, at 17–18. While the reports explain that the change was motivated by concern about journalists' First Amendment rights,[8] they do not shed any light

---

[7] Section 2511(2)(c) in the version reported out of the Senate Committee on the Judiciary. *See* S. REP. NO. 90-1097, at 12 (1968).

[8] The reports both express concern with the Sixth Circuit's decision in *Boddie v. American Broadcasting Companies, Inc.*, 731 F.2d 333 (6th Cir. 1984). *See* H.R. REP. NO. 99-647, at 39–40; S. REP. NO. 99-541, at 17–18. In *Boddie*, in which ABC

on whether the party-to-the-communication exception is an element or an affirmative defense.

As in the previous order, "I agree that, in the ordinary case, 'a defendant will be in the best position to prove facts necessary' to establish that" he was a party to the communication at issue. First Order at 23. This is unsurprising; the defendant is ordinarily "the most knowledgeable and unimpeachable source of information about his past conduct." *Bruton v. United States*, 391 U.S. 123, 140 (1968) (White, J., dissenting). While this factor favors treating the party-to-the-communication exception as a defense, I give it minimal weight because that is likely true in most criminal contexts.

The earlier order concluded that *United States v. McCann*'s holding that the consent exception was a defense applied equally to the "readily accessible" exception. First Order at 19 (reasoning "that exceptions in the same statutory clause should be 'treated similarly'" (quoting *United States v. Haggerty*, 997 F.3d 292, 300–01 (5th Cir. 2021))); *see also* 18 U.S.C. §§ 2510, 2511(2) (creating over twenty exceptions to § 2511(1)). Without the free speech concerns, the

---

journalists had surreptitiously recorded an interview, the Sixth Circuit held that whether the journalists recorded the interview "with a 'purpose of committing any other injurious act'" was for the jury because the plaintiff claimed "that the [journalists'] purpose was 'to cause the Plaintiff insult and injury.'" 731 F.3d at 336–38. In the committees' view, "[t]his interpretation of the statute places stumbling blocks in the path of even the most scrupulous journalist" and is "inconsistent with the guarantees of the First Amendment." H.R. REP. NO. 99-647, at 39–40; *see* S. REP. NO. 99-541, at 17. This shows a concern about the First Amendment implications of the Wiretap Act, but it does not clarify what constitutes the elements of the offense.

order relied on binding precedent treating one statutory exception as a defense
to imply that similar statutory exceptions also are best read as defenses. I also
gave great weight to the statutory structure of the Wiretap Act, which
proscribes the primary conduct in the first subsection and then enumerates
around twenty exceptions in later subsections and definition sections. While
that structure remains and *McCann* no doubt supports the prior order's
conclusion, it does not require that all statutory exceptions must be treated as
defenses.

First, *McCann* addressed only the consent exception, and only briefly.
The Fifth Circuit at first characterized the defendants' argument as "that the
[trial] court committed reversible error by not dismissing the indictment
against the [defendants] because it did not negate *all* the statutory exceptions
listed in 18 U.S.C. § 2511." *McCann*, 465 F.2d at 162 (emphasis added). Yet the
court answered the defendants' argument by saying that "[i]t was not
necessary to recite in the indictment that the interceptions were made without
consent. If the appellants believed that they came within the consent exception
it was incumbent upon them to prove this fact." *Id.*; *see also id.* ("[A]s will be
discussed later, it was not necessary that the Government prove that no party
to the conversations which were intercepted consented to their interception.").
While a "decision can hold nothing beyond the facts of [the] case" no matter
"what a court says in its opinion," *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298

(11th Cir. 2010), nothing in the *McCann* opinion attempts to resolve whether the other exceptions are defenses or elements.

Second, the Eleventh Circuit did not address or follow *McCann* in *Snow v. DirecTV*, 450 F.3d 1314 (11th Cir. 2006). There, the Eleventh Circuit concluded, though in a civil context and under the Stored Communications Act (SCA),[9] that "the requirement that the electronic communication not be readily accessible by the general public is material and essential to recovery under the SCA." *Id.* at 1321. To hold otherwise would, the court said, subject "the merely curious" to prosecution. *Id.* To be sure, the SCA contains no party-to-the-communication provision like the Wiretap Act, as that statute addresses access to electronically stored information, so the Eleventh Circuit had no occasion to cure any First Amendment concern through that exception. But its concern carries over to this context too. While *Snow* did not cite *McCann*, its interpretation of the same provision—18 U.S.C. § 2511(2)—in a closely related context suggests that *McCann*'s reasoning does not extend to every exception in § 2511.

Third, the *McCann*'s treatment of "consent" as a defense is consistent with the ordinary meaning of "intercept." Someone may still intercept a communication even if they have permission to do so. *See Intercept*, THE

---

[9] Congress enacted the Stored Communications Act as Title II of the ECPA, §§ 201–02, 100 Stat. at 1860–68.

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 683 (1969);

*Intercept*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1176 (1968);

*Steiger*, 318 F.3d at 1048–49. For example, it is perfectly natural to say that a

law enforcement officer who taps a phoneline with the consent of the

confidential informant using that line is "intercepting" calls made from third

parties to the informant.

*McCann* thus does not foreclose treating the party-to-the-communication

exception as an element.

The Wiretap Act's text and significant First Amendment concerns

support treating the party-to-the-communication exception as an element that

the government must plead and prove. The legislative history is neutral, and

the "ease of proof" weighs weakly toward treating it as a defense. And

precedent does not dictate the outcome. On balance, I conclude that it is an

element.

### 2. The Government Must Also Plead and Prove that Any Electronic Communications Were Not "Readily Accessible to the General Public"

In the light of the above reasons supporting that the party-to-the-

communication exception is an element, I conclude that the readily-accessible-

to-the-general-public exception for electronic communications is also an

element. Three reasons support that conclusion.

32

First, the readily accessible exception for electronic communications cures the Wiretap Act's potential First Amendment problems. The parties did not raise any First Amendment concerns in the briefing on Burke's first motion to dismiss, other than Burke's argument that Counts Thirteen and Fourteen violated *Bartnicki v. Vopper*, 532 U.S. 514 (2001). *See* First Order at 6–13. Yet the readily accessible exception addresses the First Amendment concerns that Burke raises now in much the same way that the party-to-the-communication exception does.

> Section 2511(g)(i) provides that a person may lawfully
>
> intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public.

An "electronic communication system" means, generally, "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications." 18 U.S.C. § 2510(15). The readily accessible exception thus precludes liability for intercepting electronic communications that most ordinary Americans can access, regardless of whether they are parties to the communication in question.

The majority of feared chilled speech involves a casual internet user mostly accessing websites or applications—Instagram, X, Netflix, The Washington Post—that are readily accessible to the public. These websites are

configured to be accessible to people equipped with today's standard technology
and plainly fall within the exception's ambit. Making the readily accessible
exception an element removes the ordinary user's protected access to speech
from the statute's sweep.

Second, *Snow* counsels strongly in favor of treating the readily accessible
exception as an element. *Snow* concluded that, in the context of an SCA civil
action, a valid complaint must allege that the "the electronic communication
not be readily accessible by the general public." 450 F.3d at 1321. While *Snow*
did not cite the First Amendment, it justified this holding mainly in terms of
public access to information. *Id.* ("If by simply clicking a hypertext link, after
ignoring an express warning, on an otherwise publicly accessible webpage, one
is liable under the SCA, then the floodgates of litigation would open and the
merely curious would be prosecuted. We find no intent by Congress to so
permit.").

Neither *Snow* nor *McCann* control for purposes of determining who bears
the burden of proof for the readily accessible exception but the two cases cut
against one another. *See* First Order at 26–27. But in the light of the First
Amendment concerns recently raised, *Snow* weighs heavily in favor of treating
the readily accessible exception as an element in the criminal context.

Third, treating the party-to-the-communication exception differently
than the readily accessible exception risks confusing the jury. Both exceptions

34

thrust at the same question—the nature of the defendant's access to the allegedly intercepted communication. Placing the burden for proving one exception on the government and the other on the defendant creates a significant risk of a jury confusion, particularly given the technological complexity of a case like this.

In the light of these considerations, I conclude that the government must plead and prove that any electronic communications that Burke allegedly intercepted were not readily accessible to the general public.[10]

## C. Dismissal of the Indictment is the Appropriate Remedy

The government does not allege in the indictment that Burke was not a party to the communications or that the electronic communications that Burke allegedly intercepted were not readily accessible to the general public, so dismissal is the ordinary remedy. *See United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) (per curiam). *Amicus* Internet Accountability contends that dismissal is unnecessary because the allegations in the indictment fairly

---

[10] Because the readily accessible exception is an element and applies only to the offense of intercepting electronic communications, intercepting wire and electronic communications have different elements and are therefore now different offenses, not merely different means of committing the same offense. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) (explaining that an indictment must charge distinct crimes in separate counts). If the United States elects to file a superseding indictment, it should consider this order's implications for the indictment's structure, as well as its conclusion that the livestreams Burke allegedly intercepted are likely electronic communications, not oral or wire. *See supra* at 6–7 (citing *Herring*, 993 F.2d at 785, 787).

imply that Burke was not a party to the communications and that the communications were not readily accessible. *See* IAP Br. at 21–23 (citing *Woodruff*, 296 F.3d at 1045–48). While I am inclined to agree as a matter of context, precedent suggests that best practice is for the indictment to track the language of the statute. *See United States v. Moore*, 954 F.3d 1322, 1332 (11th Cir. 2020). As there is minimal prejudice to requiring the government to supersede in this manner, particularly as a date certain for trial has yet to be set, *see* (Doc. 185), dismissal without prejudice of the Wiretap Act counts is appropriate.

## IV.    CONCLUSION

Burke raises significant First Amendment concerns if the Wiretap Act facially prohibits the mere acquisition of communications using a device. But reading the party-to-the-communication and readily accessible exceptions as elements of a Wiretap Act offense remedies those concerns. Because the indictment does not allege either with regards to Counts Eight through Fourteen, those counts are dismissed without prejudice.

This ruling leaves several potential paths forward for the government. First, the government may proceed to trial on the remaining counts in the current indictment and abandon the Wiretap Act counts. Second, the government may appeal this decision and postpone trial until the Eleventh Circuit clarifies the law regarding the Wiretap Act interception offenses. *See*

18 U.S.C. § 3731. Third, the government may supersede and cure the counts consistent with this order. I note that, given the parties' arguments and representations about the evidence, this last route would appear to minimally impact the parties' anticipated trial presentation. Burke does not dispute that he acquired the communications, but instead whether he did so consistent with the Wiretap Act exceptions. The government's arguments (and I assume evidence) are that he did not. So although this order shifts the burden of proof on those exceptions, it does not alter the focus of the trial.

Accordingly, defendant Timothy Burke's Third Motion to Dismiss (Doc. 125) is **GRANTED**. Counts Eight through Fourteen of the Indictment (Doc. 1) are **DISMISSED without prejudice**.

**ORDERED** in Tampa, Florida, on September 25, 2025.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                              Case No. 8:24-cr-68-KKM-TGW

TIMOTHY BURKE,

     Defendant.
_____

## <u>ORDER</u>

The Wiretap Act bars the interception of a wire communication, defined in broad strokes as "any aural transfer" made with the use of a wire, cable, or similar connection. An "aural transfer" means "a transfer containing the human voice." In 1986, Congress expanded the Wiretap Act's reach by prohibiting the interception of "electronic" communications, defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence" transmitted "by a wire, radio, electromagnetic, photoelectronic or photooptical system" "but does not include . . . any wire . . . communication."

By adding electronic communication to the prohibitions, Congress sought to expand the kinds of communications that could be penalized for unlawful interceptions. The statutory text, albeit cumbersome, does not indicate that Congress sought to double count every interception of a digital transfer containing the human voice, first as an interception of a wire

communication based on the audio portion and second as an electronic communication based on all the other data transmitted. Indeed, to do so runs afoul of Double Jeopardy principles.

In granting Defendant Timothy Burke's third motion to dismiss, I explained that the audio-video livestreams that Burke allegedly intercepted "appear to be best understood as electronic communications, not a mixture of wire and electronic communications broken apart into the human voice and video aspects." Order (Doc. 217) at 6; *see id.* at 35 n.10 (concluding "that the livestreams Burke allegedly intercepted are likely electronic communications, not oral or wire."). I also determined that "intercepting wire and electronic communications have different elements and are therefore now different offenses, not merely different means of committing the same offense." *Id.* In the light of that ruling, the government moves for clarification as to whether the order dismissed with prejudice the Wiretap Act counts for "wire communications" predicated on interception of audio-video livestreams. Mot. for Clarification (MFC) (Doc. 225) at 2–3.[1] Based on the indictment's allegations, the answer is yes. The Wiretap Act does not countenance two separate violations of the statute, one for "wire" and another for "electronic"

---

[1] If it seeks a superseding indictment, the government represents that it intends on charging "at least in part, the 'wire' portion of the streams—i.e., the portion of the streams that contain a human voice (and therefore cannot be charged or proven as electronic' communications)." MFC at 2.

communications, for the same interception of an audio-video stream. That kind of audio-visual communication is best understood as an electronic communication. Thus, each allegation of "intentionally intercept[ing]" an "audio/video . . . stream" pertains only to an "electronic communication." *See* Indictment (Doc. 1) (Counts 8–12) ¶ 2.

This conclusion follows from applying traditional principles of criminal law to the text and structure of the Wiretap Act. To start, an indictment must set out separate offenses in separate counts. FED. R. CRIM. P. 8(a); *see id.* 12(b)(3)(B)(i). But an indictment fails for multiplicity if it charges the same offense in more than one count, *see United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008), "violat[ing] double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense," *United States v. Jones*, 601 F.3d 1247, 1258 (11th Cir. 2010); *see also* FED. R. CRIM. P. 12(b)(3)(B)(ii). "When an indictment contains more than one count charging a violation of the same statute, [the] inquiry concerns whether Congress intended the different acts underlying each count to constitute a separate offense." *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012) (per curiam) (citing *United States v. Smith*, 231 F.3d 800, 815 (11th Cir. 2000)).

The touchstone, then, is whether the defendant committed separately punishable "different acts." *Fee*, 491 F. App'x at 157. That is, whether a transaction is "a single offense or separate offenses . . . is determined by

3

whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Davis,* <u>730 F.2d 669, 672</u> (11th Cir. 1984) (quoting *Bins v. United States,* <u>331 F.2d 390, 393</u> (5th Cir. 1964)). To make that determination, I must ascertain "the allowable unit of prosecution." *Smith,* <u>231 F.3d at 815</u> (quoting *United States v. Langford,* <u>946 F.2d 798, 802</u> (11th Cir. 1991)). "The principle underlying this rule is that the 'unit of prosecution' for a crime is the *actus reus,* the physical conduct of the defendant." *United States v. Jones,* <u>2007 WL 2301420,</u> at *10 (N.D. Ga. July 18, 2007) (quoting *United States v. Prestenbach,* <u>230 F.3d 780, 783</u> (5th Cir. 2000)); *see Jones v. Sec'y, Dep't of Corr.,* <u>778 F. App'x 626, 635</u> (11th Cir. 2019) ("First, we look to the statute charged to ascertain the allowable unit of prosecution, or the *actus reus* of the crime." (internal quotation marks omitted)).

To be sure, the previous order concluded that the interception of an electronic communication is a different substantive offense than the interception of a wire communication because the former requires proof of an additional element, namely that the communication was not readily accessible to the general public. *See* Order at 34–35 & n.10. But it does not follow that the government may charge Burke with two offenses for the same *actus reus,* i.e., the same interception of a single livestreamed video communication. For example, where a statute prohibits uttering false statements or stealing mail, each separate utterance or theft constitutes the "unit of prosecution" and thus

4

a separate offense. So, fraudulently endorsing eight separate checks in a single transaction constitutes eight separate violations of 18 U.S.C § 495, *see United States v. Windom*, 510 F.2d 989, 994–95 (5th Cir. 1975),[2] but stealing a single bag of mail containing multiple pieces of mail qualifies as only a single offense under 18 U.S.C. § 1708, *see Williams v. United States*, 385 F.2d 46, 47 (5th Cir. 1967).

The same principle applies here. The Wiretap Act limits the unit of prosecution to a single act of interception (or disclosure). A defendant commits an offense if he "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "The statute's use of [discrete] verbs to describe the prohibited conduct shows that Congress criminalized individual acts that may be divided into separate offenses." *United States v. Leahy*, No. 8:22-CR-0156-KKM-MRM, 2022 WL 2818114, at *5 (M.D. Fla. July 19, 2022), *aff'd*, 152 F.4th 1356 (11th Cir. 2025). The statute further distinguishes between communication types, making electronic and wire communications mutually exclusive. *See* 18 U.S.C. § 2510(12)(A) (An "electronic communication" "does not include . . . any wire or oral

---

[2] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

communication."). So, to charge two separate violations for "intentionally intercept[ing]" an electronic communication and a wire communication, the government must allege that two separate interceptions occurred. I do not read the indictment—or the brief description of the planned superseding indictment—to allege as much. All allegations by the government of interception support the view that Burke allegedly acquired the contents of each "audio/video" stream in a single act using the same wire, cable, or other system.

Thus, insofar as the government intends to reallege that Burke "intercepted" five "audio/video NW2 stream[s] including . . . conversation[s]," each individual communication must be either electronic or wire, but not both.[3] Indictment (Counts 8–12) ¶ 2. And, as explained in the previous order, those communications are better categorized as electronic communications, even if they "contain a human voice." MFC at 2.

The Eleventh Circuit's decision in *United States v. Herring* requires this result. There, the defendant used an electronic device to "unscramble" satellite television signals and "receive pay-television programming without subscribing to and paying for it." 993 F.2d 784, 786 (11th Cir. 1993). In

---

[3] This conclusion applies to the alleged disclosure of communications at issue in Counts 13 and 14. There, the government does not allege that Burke separately "disclosed" an electronic communication and a wire communication. *See* Indictment (Counts 13–14) ¶ 2.

rejecting the defendant's argument that the Wiretap Act did not apply to his conduct, the court first determined that "the modified [electronic device] which unscrambles the scrambled television signal . . . thus 'acquires' the 'content' of the pay-television signal within the meaning of the statutory definition" of "intercept." *Id.* Turning to the communication type, the court explained "that the television programming at issue in this case falls within the plain meaning" of an "electronic communication[]," as defined "very broad[ly]" by the Wiretap Act. *Id.* at 787 (citing 18 U.S.C. § 2510(12)); *see, e.g., United States v. Splawn*, 982 F.2d 414, 416 (10th Cir. 1992) ("[I]t is undisputed that satellite television transmissions contain sounds and images and are carried via radio waves; therefore, they constitute electronic communications." (internal citation omitted)). It appears to have made no difference to the *Herring* court that the "television programming" at issue, when "unscrambled," almost certainly contained human voice. Here, too. As alleged, the government describes audio-video livestreams that contain "signs, signals, writing, images, *sounds*, data, or intelligence of any nature." 18 U.S.C. § 2510(12) (emphasis added). And because, as alleged, those audio-video communications were transmitted over the Internet, I conclude they were "transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." *Id.; see* Electronic Privacy Information Center (EPIC) Br. (Doc. 143) at 6 ("In the streaming context, the operative communication is the transfer of video data

from the streaming server to the recipient user's device."). At bottom, the government's descriptions of the communications fit within the Wiretap Act's "very broad" definition of an electronic communication.

Two other statutory definitions bolster *Herring*'s conclusion. First, "'intercept' means the aural or other acquisition of the contents of any . . . communication." 18 U.S.C. § 2510(4). And the "contents" of a communication "include[] *any* information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8) (emphasis added). When "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). As alleged here, the audio component of each livestream must "include[] *any* information" about the communication's "substance, purport, or meaning." § 2510(8) (emphasis added); *see*, *e.g.*, Indictment (Count Ten) ¶ 2 ("including news correspondent hosting off-camera conversations with multiple participants concerning their political views . . . ."). To say that subcomponents containing human voice count only as "wire communication[s]" would strip the "electronic communication" interception offense of all function in violation of a "cardinal principle of statutory construction." *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005) (en banc) (internal quotation marks omitted); *see* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF

LEGAL TEXTS § 26, at 174 (2012) ("[No word] should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). I decline to do so.

Accordingly, the government's Unopposed Motion for Clarification (Doc. 225) is **GRANTED**. Based on the facts described by the government and the allegations in the indictment, those communications that Burke allegedly intercepted and disclosed are "electronic communication[s]" under the Wiretap Act. *See* 18 U.S.C. § 2510(12).

**ORDERED** in Tampa, Florida, on October 20, 2025.

Kathryn Kimball Mizelle
United States District Judge

9