**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **CASE NO.: 8:24-cr-00068-KKM-SPF**

**TIMOTHY BURKE**
**______________________________/**

**DEFENDANT, TIMOTHY BURKE'S, MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE FOR VIOLATION OF THE SPEEDY TRIAL ACT AND THE SIXTH AMENDMENT, AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Timothy Burke, moves, pursuant to 18 U.S.C. §§ 3161–3162 and the Sixth Amendment, to dismiss the Indictment (Doc. 1) with prejudice. This case reduces to three facts the government cannot escape: 1) there was no appeal, 2) there was no justification for the delay it caused, and 3) the harm to Mr. Burke is real, substantial, and entirely of the government's making. Dismissal is required.

**INTRODUCTION**

On October 27, 2025, the government filed a notice of interlocutory appeal. For the next 322 days, until the mandate issued on September 14, 2026, Mr. Burke's prosecution was frozen. In that time, the government filed no brief, obtained five extensions, and finally walked away – dismissing an appeal it had

never been authorized to bring. See 28 C.F.R. § 0.20(b); Justice Manual § 9-2.170 (only the Solicitor General decides "whether, and to what extent, appeals will be taken by the Government"). While the Speedy Trial Act, Section 3161(h)(1)(C) excludes "delay resulting from any interlocutory appeal," it presumes that "[t]he appeal in all such cases shall be taken within thirty days . . . and shall be diligently prosecuted." 18 U.S.C. § 3731. Here, the government failed to comply with Section 3731. Both the Speedy Trial Act and the Sixth Amendment require dismissal, and because the government's conduct reflects more than negligence, the dismissal must be with prejudice.

**PROCEDURAL HISTORY**

The grand jury returned the indictment on February 15, 2024; Mr. Burke appeared on February 22, 2024. Trial is presently scheduled for December 7, 2026. On September 25, 2025, the Court dismissed Counts Eight through Fourteen without prejudice (Doc. 217); seven days after clarifying that order (Doc. 226), the government noticed an interlocutory appeal (Doc. 229), and the case was stayed and administratively closed the same day, citing § 3161(h)(1)(C) (Doc. 230).

<u>What followed is the subject of this motion.</u>

The government filed its notice of appeal on October 27, 2025; the Eleventh Circuit docketed it November 12, 2025, and set the opening brief due December 22, 2025. USCA Doc. 1, 6. On November 26, 2025, the government affirmed to the Eleventh Circuit that "[a]ll necessary transcript(s) are on file" and told this Court,

the same day, that "no transcript(s)" were requested. Doc. 233; USCA Doc. 5. On December 22 — the day their brief was due — the government obtained a telephonic extension to file its brief from the Eleventh Circuit clerk to January 21, 2026, at that time there was no disclosure that the appeal had not been authorized by the Solicitor General of the United States. USCA Doc. 8.

On January 21, 2026 — again, on the day the brief was due — the government moved for another extension, to April 21, 2026, simply noting that the appellate attorney for the government had multiple briefs due before the court, and observing that the Burke appeal required "coordination with, and approvals from, components other than the United States Attorney's Office for the Middle District of Florida. The Solicitor General for the United States issues final approval for any government appeal." USCA Doc. 9. The motion was not clear that the Solicitor General had not even authorized the government to appeal the dismissal at all.

On April 8–9, 2026 — roughly nine business days before the April 21 deadline, the government ordered a transcript of the June 27, 2024 protective-order hearing before Magistrate Judge Wilson, a hearing with no apparent bearing on the orders under appeal, after having represented in November 2025 that all necessary transcripts were already on file. USCA Doc. 5, 12. Based on this request, the briefing schedule was rescinded by the clerk that

same day. USCA Doc. 13. The transcript was not filed until May 6, 2026, and only then did the clerk set a new briefing deadline of June 15, 2026. USCA Doc. 16, 17.

On June 15, 2026, again, on the day the brief was due, the government moved for yet another extension to July 30, 2026. Over Mr. Burke's opposition, the court granted it on June 18. USCA Doc. 19, 20, 21.

On July 30, 2026 — again on the day the brief was due — the government moved for a fourth extension, to August 31, 2026, and for the first time clearly declared that the Solicitor General had not authorized the appeal, further noting that the issues were "novel and complex" and that it was "working diligently" toward getting a decision from the Solicitor General on whether or not to authorize the appeal. USCA Doc. 22 at 3–4.

Mr. Burke opposed the extension and, in the same filing, moved to dismiss the appeal for want of prosecution. USCA Doc. 23. The Eleventh Circuit did not rule on this motion until August 26, 2026, when it granted the government a longer extension than had been requested — thirty days from the order, to September 25, 2026, not to the August 31 date that the government had asked for — and denied Mr. Burke's motion to dismiss. USCA Doc. 25. Two weeks later, on September 9, 2026 — 317 days after the notice of appeal, the government voluntarily dismissed the appeal. USCA Doc. 26. The mandate was issued on September 14.

## I. THERE WAS NO APPEAL FROM WHICH TO EXCLUDE TIME

18 U.S.C Section 3161(h)(1)(C) excludes delay "resulting from" an appeal – not delay merely coinciding with the label. Causation is in the text. Where 322 days produced no brief, where the government's own transcript representations directly contradicted each other, and where a deadline was reset by clerk's action with no judicial order behind it, the delay does not result from an appeal's prosecution; it results from the government's default in prosecuting one. This delay is not contemplated by the statute. An appeal was initiated. It was never prosecuted, and its prosecution was never authorized.

The authority to file a protective notice of appeal "runs directly from the Attorney General to the United States Attorney, independently of the duties of the Solicitor General." *Hogg v. United States*, 428 F.2d 274, 280 (6th Cir. 1970); *see also United States v. Hill*, 19 F.3d 984, 991 n.6 (5th Cir. 1994) 28 C.F.R. § 0.45. Having exercised this authority by filing the protective notice of appeal, the U.S. Attorney then has no authority to pursue the appeal without the authorization of the Solicitor General. 28 C.F.R. § 0.20(b). A notice of appeal is therefore part of a prosecutor's ordinary duties; but an appeal exists only once the Solicitor General authorizes its prosecution. The government's own filings confirm that authorization was never obtained here. Moreover, the government provided no reason for the delay. While the U.S. Attorney represented that the government was "working diligently" to obtain authorization to appeal, it never submitted

any justification or explanation for the continued delay, nor did the Office of the Solicitor General submit any affidavit or declaration to the court concerning the reason it failed to act within the 30 days after the submission of the notice of appeal to authorize any further proceeding. What the government dismissed on September 9, 2026 was just a notice of an intent to appeal that failed to materialize.

In *United States v. Salisbury*, 158 F.3d 1204, 1206–07 (11th Cir. 1998), the government attempted to appeal a district court suppression order, but failed to certify that the appeal was for a proper purpose as required by 18 U.S.C. § 3731. The government attributed the failure to the fact that the AUSA responsible was out of town and that another prosecutor filed the deficient notice of appeal, and asserted that the non-incarcerated defendant suffered no harm when the government filed the required certification a month later. The court found the noncompliance nonetheless “not a mere formality” and noted that even an unincarcerated defendant suffers harm from a noncompliant appeal, and dismissed the government’s appeal. The authorization defect here is more fundamental than the certification defect in *Salisbury*, and the delay it produced was longer. If a certification defect justifies dismissing a government appeal outright, an unauthorized appeal that consumed 322 days without ever being briefed should not be treated as validly excludable time under § 3161(h)(1)(C).

Because the government "bears the burden of ensuring [Mr. Burke's] speedy trial rights are not violated," its conduct is central to this inquiry, not incidental to it. This Circuit "focus[es] on 'the culpability of the delay-producing conduct,'" and has held that "it is ultimately the obligation of the Government to ensure compliance with the Speedy Trial Act." *United States v. David Williams*, 314 F.3d 552, 559 (11th Cir. 2002). Once the unauthorized appeal period is excluded from the § 3161(h)(1)(C) exclusion, as the statute's causation language requires, the seventy non-excludable days have long since run, and dismissal of the indictment under § 3162(a)(2) is mandatory.

In *United States v. Loud Hawk,* 474 U.S. 302, 311 (1986) the Supreme Court set out the general rule that the time taken to pursue an appeal "ordinarily is a valid reason that justifies delay," "[g]iven the important public interests in appellate review." 474 U.S. at 315. However, here, the government never actually sought appellate review. It sought only delay. It never presented any position or argument to the Court of Appeals, never filed a brief, and simply requested continuance after continuance until it walked away without explanation. We can't determine if the appeal was frivolous or not because there was, ultimately, no appeal. There was simply a notice.

## II. THE GOVERNMENT NEVER JUSTIFIED THE DELAY, SO NO ENDS-OF-JUSTICE FINDING CAN SAVE IT

Even setting the causation problem aside, no ends-of-justice exclusion can rescue this record. The Supreme Court has held that no period of delay is excludable under an ends-of-justice continuance "unless the court sets forth . . . its reasons for [its] finding[s]," and that a court may not supply those findings after the fact. *Zedner v. United States,* 547 U.S. 489, 506–07 (2006). This Circuit applies the identical principle to filings that invoke a procedural label without substance: such a filing does not, by the label alone, stop the clock, because to hold otherwise would leave "no teeth in the Speedy Trial Act as a whole." *United States v. Brown*, 285 F.3d 959, 962 (11th Cir. 2002).

No such finding exists anywhere in this record for the appeal period. This Court's earlier orders excluding time rest on real, contemporaneous ends-of-justice findings of exactly the kind *Zedner* requires. See, e.g., Order (Doc. 185) (Aug. 20, 2025); Order (Doc. 224) (Sept. 30, 2025). But nothing comparable exists for October 2025 through September 2026, because no one could have found at the time that the ends of justice would be served by a 322-day appeal that produced no brief and one unauthorized, clerk-ordered deadline reset. The government's July 30, 2026 extension motion tells the Eleventh Circuit only that Solicitor General authorization is required – it says nothing about why their attempts at obtaining that authorization took ten and a half months, nothing

about what the Office of the Solicitor General was doing with the matter, and nothing a court could rely on to find that the delay served the interests of justice. A litigant who offers no explanation for a delay has, by definition, offered no basis for excusing it. The government had the burden to justify this delay, but never even attempted to meet it.

The pattern of the continuances themselves confirms that no genuine interests-of-justice finding was ever possible. In request after request, the government asked for more time only as, or after, the very deadline it already faced had arrived – not because anything had changed, but because the brief still did not exist. Mr. Burke could not meaningfully evaluate, and the Court of Appeals could not meaningfully assess, whether any given extension served the interests of justice, because the government never disclosed facts that would have made that assessment possible. Had the government told the Court in December 2025 what it did not say until July 2026 – that it had never been authorized to pursue this appeal – Mr. Burke's position on each request, and quite possibly the Court of Appeals' own rulings on them, would likely have been different. In the end, the time the government failed to pursue the appeal should not be excluded for speedy trial purposes, the Court should dismiss the case with prejudice under the Speedy Trial Act. *United States v. Taylor*, 487 U.S. 326, 332–43 (1988). Although the Eleventh Circuit warned in *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984) that "[w]here the crime charged is

serious, the court should dismiss only for a correspondingly severe delay," without mitigating the seriousness of the wiretap and hacking statutes themselves, the indictment here alleges that the defendant obtained and disclosed newsworthy content by accessing a streaming service which was accessible by entering a URL into a browser.

**III. THE SIXTH AMENDMENT INDEPENDENTLY REQUIRES DISMISSAL – AND THE HARM IS THE GOVERNMENT'S DOING, NOT MR. BURKE'S**

Even if § 3161(h)(1)(C) is read to excuse this delay statutorily, "[a] delay of sufficient length may be a Constitutional violation, even though it is not a violation of the Speedy Trial Act." *United States v. Beard,* 41 F.3d 1486, 1488 n.6 (11th Cir. 1995). *Barker v. Wingo* weighs four factors, and every one weighs against the government and favors Mr. Burke. 407 U.S. 514, 530 (1972). Those four factors are: "[l]ength of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Barker*, 407 U.S. at 530. No factor is a necessary or sufficient condition; the Court considers them together with the circumstances of the case. *Id*. at 533. The Eleventh Circuit applied this formulation in *United States v. Louis,* 146 F.4th 1328, 1337 (11th Cir. 2025), where it recognized COVID-19 related delays to a trial, the defendant's technical failure to raise speedy trial before trial, and the defendant's responsibility for a seven-month delay, and the fact that the defendant "has not

pointed to any prejudice from these delays; if anything, they improved his defense" as weighing against the *Barker* factors. *Id.* at 1337-1339.

**Length**. More than thirty-one months have passed since indictment, 322 days of it consumed by an unauthorized appeal that was never briefed. By the current trial date, the total pendency of the case will exceed 1,000 days. "A delay exceeding one year is 'presumptively prejudicial.'" *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006), citing *Doggett*, 505 U.S. at 652 n. 1; *see also Clark*, 83 F.3d at 1352. A two-year delay was, by itself, sufficient to require full *Barker* review in *Ingram*, where this Circuit reversed the conviction and ordered the indictment dismissed. *Id.* at 1336–39. The delay here is longer, and a discrete, independently traceable portion of it – the entire appeal period – has a single identified cause within the government's own control.

**Reason**. This factor carries the most weight, because length alone does not weigh heavily against the government unless the reason for delay does too. *See, United States v. Stapleton,* 39 F.4th 1320, 1327 (11th Cir. 2022). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

Nothing about the reason here is neutral. The government disclaimed any need for a transcript, then reversed that position five months later to seek an unrelated hearing transcript; it promoted a clerk-ordered deadline reset with no chance for Mr. Burke to object or be heard; across five extension requests spanning ten and a half months it never explained why it could not receive a response from the Solicitor General to validate the appeal finding. All of this arose from an indictment this Court noted resulted from an unconstitutional interpretation of the wiretap statute which raised serious First Amendment concerns.

The former Fifth Circuit has already supplied the standard for weighing exactly this kind of conduct: "An interlocutory appeal by the government is generally a valid reason that justifies an appropriate delay. Of course, when the government acts arbitrarily, negligently, or in bad faith, the delay may not be justifiable." *United States v. Herman*, 576 F.2d 1139, 1146 (5th Cir. 1978) (binding in this Circuit, *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc)). In *Herman* itself, "[m]ost of the delay . . . nearly fifteen months resulted from the government's decision to consider and seek an interlocutory appeal," *id.* at 1145 – and that delay was excused only because the charges were capital murder and armed robbery, and because the appeal was, eventually, briefed and decided. Neither is true here, where the government's case was never briefed on appeal. The Supreme Court reached the same conclusion on comparable facts in *Doggett*:

where the government's own negligence caused the delay, "the Government's egregious persistence in failing to prosecute [the defendant] is clearly sufficient" to weigh decisively against it. *Doggett v. United States*, 505 U.S. 647, 657 (1992). Here, the sole justification for the repeated extensions in the Court of Appeals amounts to nothing more than claims the government was seeking approval to write a brief and file it.

**Assertion**. Mr. Burke opposed many of the government's extension requests in real time, moved to dismiss the appeal for failure to prosecute on July 31, 2026, and now files this motion at the first opportunity after jurisdiction returned to this Court. When the Eleventh Circuit denied dismissal of the appeal, USCA Doc. 25, that involved the court's own docket-management discretion – it was never asked to, and did not, decide any Speedy Trial Act or Sixth Amendment question, both committed to this Court in the first instance.

**Prejudice**. Even an unincarcerated defendant "is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility," and need not prove the delay altered the trial's outcome. *Barker*, 407 U.S. at 533. Mr. Burke's prejudice is actual and ongoing: more than two and a half years under this Indictment, ten and a half of the most recent months litigating an appeal the government would not brief, at a personal financial cost that has consumed his savings and diverted resources from his defense. Throughout the appeal's pendency, he had no ability to compel discovery under

Federal Rule of Criminal Procedure 17(c), notwithstanding the government's own representation that this case is "both unusual and complex due to the incredible volume and technical aspects of discovery." Doc. 250 at 6–7.

This delay works a further, unique harm. The government retains First Amendment–protected materials from decades of Mr. Burke's journalistic work, and, as the Eleventh Circuit has already found in this case, he can neither obtain return of those materials under Federal Rule of Criminal Procedure 41(g) nor remove them from the government's possession while this case remains pending. *Burke v. United States,* No. 23-13649, *slip op.* at 3 (11th Cir. May 24, 2024). This matters because 42 U.S.C. § 2000aa presumes the government may not even take custody of a journalist's work product and documentary materials in the first place – not even with a valid warrant, absent narrow exceptions that do not apply here. 42 U.S.C. § 2000aa(a), (b).

Every day the government retains these materials, Mr. Burke and the First Amendment are damaged. This damage is the product of the government's unwillingness to accept the trial court's ruling and then never pursuing a remedy. Moreover, the passage of time increases the likelihood of spoliation of documents (particularly electronic documents), witnesses becoming unavailable, memories receding, and makes it more difficult to present a defense.

If the Court finds a Sixth Amendment violation, *Strunk v. United States*, 412 U.S. 434, 439–40 (1973), holds that dismissal is the required remedy ("In light of

the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, "the only possible remedy."). The Eleventh Circuit applies that rule directly: "a court must set aside any judgment of conviction, vacate any sentence imposed, and dismiss the indictment if it finds a violation of the defendant's right to a speedy trial." *United States v. Villarreal,* 613 F.3d 1344, 1349 (11th Cir. 2010). *See also United States v. Ingra*m, 446 F.3d 1332, 1340 (11th Cir. 2006) (reversing convictions and remanding "with instructions to dismiss the indictment" after finding a Sixth Amendment speedy-trial violation).

**CONCLUSION**

For the foregoing reasons, Mr. Burke respectfully requests that the totality of the circumstances and equity require this Court to dismiss the Indictment with prejudice.

Dated: September 22, 2026.

**LOCAL RULE 3.01 CERTIFICATION**

In accordance with Middle District Local Rule 3.01(g), the undersigned certifies that he has conferred, in good faith, with counsel for the Government who indicated that he objects to the requested relief.

Respectfully submitted,

***s/Michael P. Maddux***
Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
Fax: (813) 253-2553
Email: mmaddux@madduxattorneys.com
ctonski@madduxattorneys.com

***s/Mark D. Rasch***
Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
Admitted *Pro hac vice*

COUNSEL FOR TIMOTHY BURKE

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 22nd day of September, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

s/***Michael P. Maddux***
Michael P. Maddux, Esquire