UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:24-cr-68-KKM-SPF

TIMOTHY BURKE

**UNITED STATES' RESPONSE OPPOSING BURKE'S FOURTH MOTION TO DISMISS**

The United States opposes *Defendant, Timothy Burke's, Motion to Dismiss the Indictment with Prejudice for Violation of the Speedy Trial Act and the Sixth Amendment, and Incorporated Memorandum of Law* ("Burke's Fourth Motion to Dismiss"). Doc. 255. As explained below, Burke has failed to demonstrate that there has been a violation of the Speedy Trial Act ("STA") or the Sixth Amendment to the Constitution. Burke's Fourth Motion to Dismiss should be denied.

## I. INTRODUCTION AND PERTINENT BACKGROUND

A grand jury returned a fourteen-count indictment against Burke alleging that he violated various provisions of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Wiretap Act, 18 U.S.C. § 2511, and conspired to do the same. Burke's initial appearance and arraignment occurred on February 22, 2024, at which time his counsel, Michael Maddux, made a limited appearance. Doc. 9. At the conclusion of that hearing, Burke was released on pretrial supervision and attorney Maddux requested that the arraignment be continued to allow Burke time to resolve issues concerning his representation, which request was granted. *Id*. At Burke's next

hearing, on March 11, Burke, through attorney Maddux, again requested the arraignment be continued. *See* Docs. 13, 14, 16, 19. That request was granted and Burke's arraignment was rescheduled for April 2. *Id*.

On April 1, attorney Maddux entered his appearance in the case and waived Burke's presence for arraignment, resulting in a cancellation of the April 2 hearing. Doc. 26. On April 15, Burke filed an unopposed motion to extend time to file pretrial motions until June 16, Doc. 29, which was granted. Thereafter, with one exception in August 2024 when the parties filed a joint motion for a four-month continuance (noting Burke was not incarcerated and the parties were working to provide Burke with a logical copy of his array server, Doc. 78), this case was continued upon oral and written motions by Burke. See Docs. 40, 79, 84, 109, 169, 215.

Burke subsequently filed three motions to dismiss. The first such motion was filed in July 2024 and argued that the indictment failed to allege necessary elements. Doc. 64. That motion was denied in April 2025, following a hearing and supplemental briefing. *See* Docs. 83, 87, 90, 91, 110 and 148. The second motion is not directly relevant here. On May 19, 2025, Burke filed his third motion to dismiss Counts Eight through Fourteen ("the Wiretap Act counts"), arguing that those charges were brought pursuant to a fatally "overbroad" statute,[1] Doc. 125, and the United States responded in opposition. Doc. 138. This Court entered an Order on September 25, 2025, granting Burke's motion and dismissing the Wiretap Act counts

[1] The motion was titled, "*Defendant's Replacement Memorandum of Law in Support of Motion to Dismiss Counts 8, 9, 10, 11, 12, 13, and 14*."

without prejudice. Doc. 217. The Court elaborated in its Order that the United States could, at its option: (1) proceed to trial on the remaining counts and abandon the Wiretap Act counts, (2) pursue an appeal of the Order, or (3) pursue a superseding indictment that cures the Wiretap Act counts, consistent with the Order. *Id*. at 36-37.

The Court also discussed in its Order whether the audio-video livestreams that Burke allegedly intercepted are "electronic communication[s], [] wire communication[s], or both." *Id*. at 6. The Court likened the livestreams to satellite television signals and explained that "livestreams appear to be best understood as electronic communications, not a mixture of wire and electronic communications broken apart into human voice and video aspects." *Id*. (citing *United States v. Herring*, 993 F.2d 784, 785, 787 (11th Cir. 1993)). The Court added that the livestreams Burke allegedly intercepted are likely electronic communications, not wire communications. *Id*. at fn 10.

On September 30, 2025, the Court held a status conference during which the Court continued trial to the January 2026 trial calendar and scheduled a follow-up status conference for October 30, 2025. Doc. 222. The Court also determined that the period from September 30, 2025, through February 1, 2026, was excludable time, articulating that the ends of justice outweighed the interests of the defendant and the public in a speedy trial under 18 U.S.C. § 3161(h)(7)(A). Docs. 222 and 224.

The United States, on October 7, 2025, filed an unopposed motion for clarification of one aspect of the Court's Order dismissing the Wiretap Act counts, namely the Court's conclusion that the livestreams Burke allegedly intercepted are

electronic communications, not oral or wire. Doc. 225. The United States requested that this Court clarify whether the Court's Order dismissed with prejudice the Wiretap Act counts with respect to "wire" communications. *Id*. at 2-3. Thereafter, on October 20, 2025, this Court granted the United States' motion for clarification explaining that, as to the United States' inquiry, "the answer is yes[,]" in that "those communications that Burke allegedly intercepted and disclosed are 'electronic communication[s]' under the Wiretap Act." Doc. 226 at 2-3 and 9.

The United States then filed a notice of appeal, Doc. 229, appealing to the Eleventh Circuit the orders entered on September 25 and October 20, 2025. Docs. 217, 226, and 229. This Office received notice on September 7, 2026, that the Solicitor General had not authorized said appeal to proceed. The United States therefore moved the Eleventh Circuit the next working day, September 8, to dismiss the then-pending appeal, which motion was granted on September 14, 2026. *See United States v. Burke*, Case No. 25-13969, Docs. 26 and 27.

Dismissal of the appeal returned jurisdiction to this Court. That same day, September 14, the United States filed its *Time-Sensitive United States' Motion for Continuance of Proceedings Pursuant to 18 U.S.C. § 3161(h)(7)(A)-(B) and for Status Conference.* Doc. 250. Therein, the United States requested that it be permitted a reasonable amount of time, or 60 days following jurisdiction being returned to this Court, for the United States to pursue a superseding indictment that conforms to the requirements set forth in this Court's orders dismissing without prejudice the

Wiretap Act counts charged in Counts Eight through Fourteen, Docs. 1, 217, and 226, and to thereafter prepare for trial.

This Court convened a hearing the next day, September 15, during which the Court granted, in part, the United States motion under § 3161(h)(7), finding there was good cause to grant a continuance and that the ends of justice were served by granting the continuance and outweighed the best interests of the public and the defendant in a speedy trial, allowing the United States until October 15 to pursue a superseding indictment. Docs. 252 and 253. This Court also set a trial date certain of December 7, 2026, based, in part, on defense counsel's availability, and determined that time from September 15, 2026, through January 3, 2027, was excludable time under § 3161(h)(7). *Id*. Burke's Fourth Motion to Dismiss was filed one week later, on September 22, 2026, alleging violations of speedy trial under the STA and the Sixth Amendment. Doc. 255. In support of his motion, Burke leans heavily on the unsupported (and unsupportable) novel theory that when the United States pursues an appeal, which is later not authorized by the Solicitor General and consequently no appellate brief filed by the government, the time associated with that process is to be counted against the 70-day speedy-trial clock. Burke is off base.

## II. RELEVANT LAW, PROCEDURES, AND PROCESSES

### A. Speedy Trial

A defendant such as Burke can raise two different speedy-trial challenges to his prosecution, one under the STA and a related, but different one under the Sixth Amendment.

i. Challenges in the Context of The Speedy Trial Act

The STA requires a defendant's trial to begin within 70 days of his indictment or appearance "before a judicial officer of the court in which such charge is pending, whichever date last occurs." *See* 18 U.S.C. § 3161(c)(1). Certain periods, however, are automatically excluded from the 70-day period, including any "delay resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(C); *Henderson v. United States*, 476 U.S. 321 (1986); *United States v. Davenport*, 935 F.2d 1223, 1233-1234 (11th Cir. 1991); *United States v. Saintil*, 705 F.2d 415, 417 (11th Cir. 1983);[2] *United States v. Kirsh*, 54 F.3d 1062, 1070-1071 (2nd Cir. 1995) (excluding eight-month delay resulting from defendants' interlocutory appeal of order requiring them to submit to psychiatric examinations); *United States v. Long*, 900 F.2d 1270, 1276-1277 (8th Cir. 1990) (delay resulting from government's interlocutory appeal of adverse rulings on pretrial motions excludable; fact that delay lasted 18 months immaterial since § 3161(h)(1)(C) does not require such delay to be reasonable); and *United States v. Holyfield*, 802 F.2d 846, 847 (6th Cir. 1986) (per curiam) (seven-month delay due to codefendant's interlocutory appeal reasonable). *But cf. United States v. Layton*, 855 F.2d 1388, 1412-1413 (9th Cir. 1988) (frivolous interlocutory appeal by government may violate Sixth Amendment). Excludable time under the STA for an interlocutory appeal begins when the appellant files a notice of appeal in the district court,

[2] A few provisions of the STA were renumbered effective October 13, 2008. The provision relating to interlocutory appeals, 18 U.S.C. § 3161(h)(1)(C), was formerly codified as § 3161(h)(1)(E).

*Davenport*, 935 F.2d at 1230, and continues through the certiorari process. *United States v. Pete*, 525 F.3d 844, 849-850 (9th Cir. 2008).

Indeed, even a delay attributable to a mistaken interlocutory appeal of a non-appealable order is excluded under the STA. *Saintil*, 705 F.2d at 417-419. In *Saintil*, the United States filed a notice of appeal from a district court's oral order striking surplusage from the indictment, mistakenly understanding the order to address the relevancy and admissibility of certain evidence. *Id*. at 416-417. Several months later, when the United States realized it had misconstrued the district court's order, the United States moved to voluntarily dismiss its appeal. *Id*. Five months had passed between the district court's initial order staying trial for the interlocutory appeal and remand following the government's motion to voluntarily dismiss. *Id*. Appellee Saintil subsequently moved to dismiss the indictment based upon the denial of his rights under the STA and the Sixth Amendment, and the district court dismissed the case as a violation of the STA. *Id.* at 417. The United States appealed that dismissal, and the Eleventh Circuit reversed. It held that delay caused by the United States' mistaken, seemingly "frivolous[]" interlocutory appeal was automatically excluded. *Id*. at 419 (the Court pointed out that appeals from nonappealable orders do not divest the district court from jurisdiction and that "[t]he district court could have considered the frivolousness of the government's appeal and proceeded with trial." *Id*.). The Court explained:

> We will not adopt a rule that would permit an examination of the government's care in prosecuting its every interlocutory appeal. We do expect

> integrity and good faith. We hope for perfection, but we recognize the reality of fallibility.

*Id*.

Here unlike in *Saintil*, the interlocutory appeal was from an appealable order: the "order of a district court dismissing an indictment … as to any one or more counts, or any part thereof." 18 U.S.C. § 3731. And, before filing the notice of appeal, the United States sought clarification from this Court of the scope of its dismissal order. *See* Doc. 226. So this case presents a stronger case than *Saintil*. But regardless, this was a "delay resulting from any interlocutory appeal," 18 U.S.C. § 3161(h)(1)(C), and the time is excludable.

ii. Challenges in the Context of Post-Indictment Delay Under <u>the Sixth Amendment</u>

Burke's Fourth Motion to Dismiss also raises a speedy-trial challenge under the Sixth Amendment. That challenge is subject to a four-factor analysis established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of the speedy trial right; and (4) prejudice to the defendant. *United States v. Vargas*, 97 F.4th 1277 (11th Cir. 2024); *United States v. Oliva*, 909 F.3d 1292 (11th Cir. 2018). And, absent the first three factors weighing heavily against the government, the defendant is generally required to show actual prejudice to receive relief. *United States v. Louis*, 146 F.4th 1328, 1337-1338 (11th Cir. 2025); *Ogiekpolor*, 122 F.4th 1296, 1305 (11th Cir. 2024) ("In this circuit, a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government."); *Davenport*,

935 F.2d at 1239. Pertinent here, the Eleventh Circuit has explained that it is an unusual case in which the STA has been met but the Sixth Amendment has not. *Saintil*, 705 F.2d at 418.

1. The First Factor: Was Length of Delay Presumptively Prejudicial. To trigger the speedy-trial analysis, a defendant must initially show that the length of the delay between indictment and trial was "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647 (1992). Only when that threshold point is satisfied may the court proceed to the final three *Barker* factors. Delays exceeding one year are generally considered to be presumptively prejudicial. *United States v. Ingram*, 446 F.3d 1332, 1336-1337 (11th Cir. 2006) (two-year delay presumptively prejudicial); *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) (same). Where a court determines the first three factors "weigh heavily against" the government, a defendant need not show actual prejudice, the fourth factor. *Oliva*, 909 F.3d at 1298. A trial court therefore should assess whether one or more of the first factors merely "weighs against the government" or "weighs heavily against the government." *Ogiekpolor*, 122 F.4d at 1307; *Oliva*, 909 F.3d at 1298. Thus, for example, if a trial court determines that a delay was intentionally caused by the government, that finding will weigh heavily against the government, whereas a finding of negligence will not weigh heavily against the government. *Ogiekpolor*, 122 F.4d at 1306. Moreover, the length of the delay alone does not weigh heavily against the

government unless the reason for delay does as well. *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022).

2. <u>The Second Factor: Reason For Delay</u>. The government has a duty to make a diligent, good-faith effort to promptly bring a charged defendant to trial. *Smith v. Hooey*, 393 U.S. 375 (1969); *United States v. Hayes*, 40 F.3d 362 (11th Cir. 1994) (where indictment was maintained under seal and trial was delayed by years, United States established it acted with diligence because it documented its efforts to locate co-defendant and obtain and secure his presence in court during the period). That said, a delay requested by the charged defendant does not "rest with the government." *Barker*, 407 U.S. at 531; *Louis*, 146 F.4th at 1338; *Ogiekpolor*, 122 F.4th at 1306-1307.

3. <u>The Third Factor: Assertion of Speedy-Trial Right</u>. A defendant bears the responsibility for asserting a speedy-trial claim. *Barker*, 407 U.S. at 529. The failure to assert such a right makes it difficult for a defendant to prove the defendant was denied a speedy trial. *United States v. Register*, 182 F.3d 820 (11th Cir. 1999). And the failure to assert a constitutional speedy-trial right is weighed heavily against a defendant. *United States v. Twitty*, 107 F.3d 1482 (11th Cir. 1997).

4. <u>The Fourth Factor: Prejudice</u>. In determining whether prejudice has been demonstrated by a defendant, the district court considers three issues: (1) oppressive pretrial incarceration, (2) the accused's own anxiety and concern, and (3) the possibility the accused's defense was impaired. *Doggett*, 505 U.S. at 654; *Ogiekpolor*, 122 F.4th at 1307; *United States v. Clark*, 83 F.3d 1350 (11th Cir.

1996). Where the government engages in bad-faith delay, the court's concern regarding the length of the delay and substantiating prejudice are much reduced, bolstering defendant's chance for relief. In contrast, in cases where the government was negligent, a court's concern for substantiating prejudice decreases. *Doggett* 505 U.S. at 647, 656. Thus, the Eleventh Circuit in *Clark* held that a 17-month delay caused by negligence required a showing of actual prejudice by the defendant before the indictment would be dismissed, and a defendant's conclusory claims are insufficient to constitute proof of actual prejudice. *Clarke*, 83 F.3d at 1353-1354.

**B. The Appellate Process**

An appeal by the United States of a district court's order begins with the United States filing in the district court its notice to appeal. *See* 18 U.S.C. § 3731; *Davenport*, 935 F.2d at 1230. Congress has provided the United States, in a criminal case, the ability to pursue an interlocutory appeal in a few important but limited circumstances, including when an indictment or portion of an indictment is dismissed or when important evidence is suppressed or excluded. 18 U.S.C. § 3731; *United States v. Loudhawk*, 474 U.S. 302, 318 (1986).

The Solicitor General of the United States is the only Executive Branch representative authorized, by regulation, to represent the people of the United States' interests before the Supreme Court of the United States. Thus, the Solicitor General "[d]etermin[es] whether, and to what extent, appeals will be taken by the Government … ." 28 C.F.R. § 0.20(b). A United States Attorney may not prosecute an appeal, on any issue, without leave from the Solicitor General to do so. And the

Solicitor General, as ultimate representative of the Executive Branch before the Judicial Branch, often solicits input from multiple—or even myriad—components of the Executive Branch, when considering whether and to what extent an appeal may proceed. When a decision appealed involves multiple issues, those issues may necessitate consultation, sometimes extensive, with Executive Branch components.

### III. Burke's Fourth Motion to Dismiss

Burke's Fourth Motion to Dismiss argues that the indictment should be dismissed with prejudice for violations of the STA and Burke's Sixth Amendment right under the Constitution. Burke, in material part, bases his arguments on conclusory claims that the United States somehow acted arbitrarily, negligently, or in bad faith, Doc. 255 at 11-13, and that the United States was not forthcoming with the Eleventh Circuit about the Department's internal exchanges concerning the appeal—"government's July 30, 2026 extension motion tells the Eleventh Circuit only that Solicitor General authorization is required – it says nothing about why their attempt at obtaining that authorization took ten and a half months …[.]" *Id.* at 8-9. Burke also raises the nonsensical argument that, though an appeal by the United States is initiated by filing a notice of appeal, said appeal does not actually come into existence until the Solicitor General later authorizes it. *Id.* at 5. And he leverages upon that nonsensical argument to present his unsupported novel theory that when the United States pursues an appeal, which is later not authorized by the Solicitor General and consequently no appellate brief filed by the government, the

time associated with that process is to be counted against the 70-day speedy-trial clock. As explained below, Burke is wrong on all counts.

## IV. Argument

### A. Introduction

Here, the United States filed a notice of appeal specifically naming two Orders, Docs. 217 and 226. Those Orders affected, and referred to, a number of previous decisions by this Court. And in light of attention and time devoted by this Court to those issues, the United States, while considering those issues, logically devoted a commensurate amount of attention and time when considering whether, and to what extent, the appeal should proceed. As explained above, Burke himself unhesitatingly acknowledged, in multiple oral and written motions to continue the trial—*see* Docs. 40, 78, 84, 109, 169, and 215—and in related hearings, the factual complexity of this case (resulting in approximately 20 months being excluded from speedy trial calculations, only four months of which were pursuant to a joint motion). Burke (and this Court, *sua sponte*) also raised pretrial numerous complex legal issues. Docs. 136, 148.

In July 2024, Burke filed his first motion to dismiss, which included his argument that the Wiretap Act, contrary to Eleventh Circuit precedent, includes additional elements not yet set forth in the indictment. Doc. 64. Approximately nine months later, and following a hearing and supplemental briefing, this Court ruled on that motion, denying it—and specifically denied Burke's elements arguments. Docs. 86, 87, 90, 91, 110; 148 at 7-10. Meanwhile, in February 2025,

Burke filed his second motion to dismiss, *Defendant's Motion to Dismiss Counts on Duplicity Pursuant to F.R. Crim. P. 8(a)*, which was denied. Docs. 97, 111.

In May 2025, Burke filed a third motion to dismiss. Doc. 119. In September 2025, this Court granted that motion in part, following this Court's striking of the initial version of the motion, grant of leave to refile, Burke's refiling, related hearings, the solicitation of amici assistance with what this Court explained were "novel" legal issues therein, *see* Docs. 119, 124, 127 138, 143, 145, 158. In September 2025—14 months after Burke's first motion raising issues inherent in the United States interlocutory appeal—this Court identified three paths forward for the United States in this case concerning those issues: (1) proceed to trial on the remaining counts and abandon the Wiretap Act counts, (2) pursue an appeal of the Court's Order, or (3) pursue a superseding indictment that cures the Wiretap Act counts, consistent with this Court's Order. Doc. 217 at 36-37. Following the United States motion to clarify, the United States elected the second path identified by this Court in its Order and timely filed its Notice of Appeal. Docs. 225, 229.

It is therefore unsurprising that, during the interlocutory appeal, the United States required the 323 days at issue—between the United States Attorney's Notice of Appeal and the Solicitor General's final decision on whether, and to what extent, the appeal should proceed. Burke should not be heard to complain of that time, in the abstract. But most importantly, Burke should not be heard to complain *to this Court*. Burke's motion is primarily concerned with the supposed "delay" between notice of appeal and the Solicitor General's ultimate decision. It *solely* asserts,

apparently, negligence—and implies bad faith—by the United States Attorney (or other components of the Executive Branch) in assertions to the Eleventh Circuit on which *that* court acted. Doc. 255 at 3-4, 12-13. And it even implies that the Eleventh Circuit committed missteps when evaluating the United States' motions—or when applying its own internal rules and operating procedures. *Id*.

At most, this Court should review Burke's motion as a motion to reconsider this Court's two most recent orders while exercising jurisdiction over the case: This Court's order, on October 27, 2025, specifically excluding all time following the United States' notice of appeal, which began the interlocutory appeal, until the case was returned to its jurisdiction; and this Court's order, on September 15, 2026, granting the United States until October 15, 2026, to reindict the case. Docs. 230, 253. And clearly there is no reason to revisit either.

In any event, USAO-MDFL Appellate Division attorneys filed motions for extension of time while awaiting a final decision by the Solicitor General. Said extension motions included language making clear that the extensions were requested to allow "sufficient time for the Solicitor General to make his decision and to enable the United States to complete and file its brief, if authorized, within any parameters established by the Solicitor General." *See, e.g., United States v. Burke*, Case No. 25-13969, Doc. 19 at 4. When the USAO-MDFL received notice on September 7, 2026, that the Solicitor General did not authorize the appeal to proceed, the USAO-MDFL moved the Eleventh Circuit the next working day to dismiss the then-pending appeal. *United States v. Burke*, Case No. 25-13969, Doc. 26.

The Eleventh Circuit granted the United States motion on September 14, 2026. *United States v. Burke*, Case No. 25-13969, Doc. 27. Later that same day, the undersigned submitted the *Time-Sensitive United States' Motion for Continuance of Proceedings Pursuant to 18 U.S.C. § 3161(h)(7)(A)-(B) and Status Conference*. Doc. 250. The USAO-MDFL filed its notice of appeal and pursued authorization to proceed with that appeal in good faith.

**B. Burke's Speedy Trial Act Challenge Fails.**

Here, Burke's Fourth Motion to Dismiss identifies the period associated with the interlocutory appeal—October 27, 2025, through September 14, 2026—as the period forming the basis for his STA challenge. Doc. 255 at 8-10. In raising that claim, Burke argues, without support, his theory that when the United States pursues an appeal that is later not authorized by the Solicitor General and so no appellate brief filed by the United States, the time associated with that process is to be counted against the 70-day speedy-trial clock. Burke is off base. The law is settled: Any "delay resulting from any interlocutory appeal" is automatically excluded from the 70-day period established by the STA. 18 U.S.C. § 3161(h)(1)(C). As the Supreme Court has explained, the provision excludes "all the time consumed by an interlocutory appeal," and Congress intended the exclusion "to be automatic." *Henderson v. United States*, 476 U.S. 321, 327 (1986); *and see, e.g., Davenport*, 935 F.2d at 1233-1234. Indeed, even a delay attributed to a mistaken nonappealable interlocutory appeal is automatically excluded under the STA. *Saintil*, 705 F.2d at 417, 419. The excludable time begins with the filing of a notice

of appeal, *Davenport*, 935 F.2d at 1230, and continues through the certiorari process. *Pete*, 525 F.3d at 849-850. That timeline does not change, retroactively, depending on the outcome—or continuation—of the appeal. *See United States v. McGrath*, 613 F.2d 361, 366 (2nd Cir. 1979) (time while interlocutory appeal of codefendant's suppression order was pending is excludable, and government's later withdrawal of that appeal when the codefendant pleaded guilty "does not render the critical period of delay nonexcludable"). Burke's challenge under the STA fails.

**C. Burke's Challenge Under the Sixth Amendment Likewise Fails.**

Burke's Fourth Motion to Dismiss also asserts that the indictment should be dismissed because Burke's right to a speedy trial under the Sixth Amendment has been violated. Doc. 255 at 1-2 and 10-15. As explained above, that claim implicates the four-factor analysis established in *Barker* and reaffirmed multiple times by the Eleventh Circuit, including in *Louis*, *Ogiekpolor*, *Vargas*, and *Davenport*.

i. Length of Delay Does Not Support Dismissal.

While a delay of more than one year between indictment and trial is "presumptively prejudicial," *Doggett*, 505 U.S. at 651-652, this factor is only a threshold inquiry triggering further analysis. *See, e.g.*, *Oliva*, 909 F.3d at 1298-1299; *Ogiekpolor*, 122 F.4th at 1305. Here, the indictment was returned against Burke on February 15, 2024, more than one year ago. Doc. 1. Therefore, that threshold inquiry is satisfied. Notwithstanding, other than Burke's conclusory allegations, no evidence exists supporting the notion that the United States has acted in bad faith,

or even negligently, in this case. Thus, this factor does not weigh heavily against the United States. *See*, *e.g.*, *Ogiekpolor*, 122 F.4th at 1306.

ii. The Reasons for Delay Do Not Weigh Against the Government.

This circuit evaluates the reasons for delay allocating different weights for the causes of the delay. *Id*. at 1306-1307. Deliberate attempts by the government to delay the trial to hamper the defense are weighted heavily against the government, but more neutral reasons, such as negligence or court congestion, are weighted less heavily. *Id*. And, length of delay alone does not weigh heavily against the government unless the reason for delay does too. *Stapleton*, 39 F.4th at 1327.

As explained above, Burke filed an unopposed motion to extend time to file pretrial motions, Doc. 29, and he initiated multiple oral and written motions to continue the scheduled trial dates in this case—*See* Docs. 40, 78, 84, 109, 169, and 215—and in related hearings. Docs. 136 and 148. Burke also filed a motion to suppress, Doc. 65, and he filed three motions to dismiss—Docs. 64, 97, and 119—which cumulatively required additional delay to address. Such delays should not weigh against the United States. *See, i.e., Stapleton*, 39 F.4th at 1327; *Louis*, 146 F.4th at 1338. Other than a general allegation that the government acted arbitrarily, negligently, or in bad faith, the only delay Burke points to that was caused by the United States is the delay attributable to the interlocutory appeal, which was a path recognized by this Court. Doc. 217 at 36-37. Thus, both parties bear some responsibility for setting off the trial. In such cases, the second *Barker* factor—reasons for delay—should not weigh in Burke's favor and against the United States,

and this is particularly so where the litigation of pretrial motions and requests for continuances were initiated by Burke. *Ogiekpolor*, 122 F.4th at 1306.

iii. Burke Did Not Assert His Right to a Speedy Trial or Complain About Undue Delay Until the United States Appealed the District Court's Order Dismissing the Wiretap Act Counts.

Burke's failure to previously assert a Constitutional speedy-trial claim is weighed heavily against him. *Twitty*, 107 F.3d at 1490. Moreover, whereas Burke now asserts his right to a speedy trial in an effort to prevent the United States from pursuing a superseding indictment that includes Wiretap Act counts, Burke's earlier motions to suppress and to dismiss the indictment make Burke largely responsible for the delays preceding the United States' interlocutory appeal. *Ogiekpolor*, 122 F.4th at 1307. Thus, this factor also does not weigh against the United States.

iv. Burke Cannot Establish Actual Prejudice.

Because the first three factors do not jointly weigh heavily against the United States, Burke must show actual prejudice, meaning (1) oppressive pretrial incarceration, (2) extraordinary anxiety, or (3) impairment of the ability to mount a defense. *Ogiekpolor*, 122 F.4th at 1307-1308. First, Burke has not been incarcerated awaiting trial. Indeed, Burke's conditions of pretrial release were relaxed during the pendency of the interlocutory appeal, allowing him to travel within the continental United States with only notice to his Pretrial Officer and removed a previously imposed drug-testing requirement. Docs. 236, 237, 239-241.

Second, other than the general anxiety and burdens attendant to the many defendants who are charged and prosecuted in a federal criminal case, Burke has

offered nothing extraordinary to substantiate that prong of the actual prejudice factor. Doc. 255 at 14-15. Notwithstanding, Burke, as in his earlier motion to suppress, Doc. 65, again ignores he was charged for ***his personal role in violating the CFAA and the Wiretap Act*** and complains he cannot obtain his materials—his contraband—nor remove it from the government's possession during the pendency of this case, which, he says, violates the Privacy Protection Act. Burke's complaint in this regard has previously been resolved by this Court. *See* Doc. 89 at 12-13.

Burke also makes conclusory claims that the passage of time increases the likelihood of spoliation and witnesses becoming unavailable, though he offers nothing to support those claims. Indeed, the conduct charged in this case is still within the statute of limitations to bring an initial indictment, and nothing is preventing Burke, through counsel, taking steps to ensure preservation of his electronic material, which has been produced in discovery. Burke therefore has failed to demonstrate actual prejudice. His challenge under the Sixth Amendment fails.

## V. Conclusion

WHEREFORE, for all of the reasons set forth above, Burke's challenges to this prosecution under the STA and the Sixth Amendment fail. There is no reason to dismiss the indictment in this case, and Burke has certainly not articulated any support for his request that the indictment be dismissed with prejudice. This Court therefore should deny Burke's Fourth Motion to Dismiss.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney
Florida Bar No. 0802093
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: jay.trezevant@usdoj.gov

**U.S. v. Timothy Burke** **Case No. 8:24-cr-68-KKM-SPF**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Maddux, Esq.
Mark Rasch, Esq.

*/s/ Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney