**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v. Case No. 8:24-cr-68-KKM-SPF

TIMOTHY BURKE,

Defendant.

---

**ORDER**

Timothy Burke moves to dismiss the indictment for violations of his Sixth Amendment right to a speedy trial and the Speedy Trial Act. Mot. (Doc. 255) at 1. In his view, because the government did not diligently prosecute its interlocutory appeal, there essentially "was no appeal" to justify the delay that the appeal caused. *Id*. Because that is not how the Speedy Trial Act considers the interlocutory appeal and because Burke fails to establish that the constitutional speedy trial factors weigh in his favor, I deny his motion.

## I. BACKGROUND

In February 2024, a grand jury returned a fourteen-count indictment against Burke for violations of the Computer Fraud and Abuse Act and the Wiretap Act. *See generally* Indictment (Doc. 1). After Burke filed three motions to dismiss and a motion to suppress, I eventually dismissed the counts arising

under the Wiretap Act because the indictment's failure to allege particular elements of the statute created significant First Amendment problems. Order (Doc. 217) at 37. I also clarified that, based on the videos upon which the government relied, the communications at issue were "electronic"—not "wire" or a mixture of "wire" and "electronic"—communications. *Id.* at 6. In the many orders related to the motions to dismiss, I noted that the First Amendment and technology issues were both "novel" and "complex[]." *See* Order Inviting Amicus Curiae (Doc. 128) at 4; Order at 35. The government filed a notice of interlocutory appeal on October 27, 2025, which stayed this case. Notice (Doc. 229); Stay Order (Doc. 230).

While on appeal, the government sought and received from the Eleventh Circuit multiple extensions of time to file its opening brief while awaiting authorization to appeal from the Solicitor General. *See generally* App. Dkt., *United States v. Burke*, (No. 25-13969). Burke opposed some of these extensions. *Id.* Docs. 20, 23. Ultimately, the Solicitor General denied authorization to appeal and the government moved to dismiss the appeal on September 9, 2026. *Id.* Doc. 26.

## II. LEGAL STANDARD

Criminal defendants have both a statutory guarantee and a constitutional right to a speedy trial. U.S. CONST. amend VI; 18 U.S.C. § 3161(a).

Under the Speedy Trial Act, defendants are generally guaranteed a trial "within seventy days from . . . the date the defendant has appeared before" the court. 18 U.S.C. § 3161(c)(1). But the statute excludes certain delays from that 70-day computation of time. Relevant here, the statute excludes "[a]ny period of . . . delay resulting from any interlocutory appeal." *Id.* § 3161(h)(1)(C).

The constitutional speedy trial right requires courts to consider four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). To "trigger a speedy trial analysis," the defendant must first allege that the delay was so long as to be "presumptively prejudicial." *Id.* "Delays exceeding one year are generally found to be presumptively prejudicial." *Id.* (citation omitted). Once triggered, the court "may . . . proceed with the final three factors." *Id.* If the first three factors all weigh heavily against the government, "the defendant need not show actual prejudice" to succeed. *Id.* None of these factors are "necessary or sufficient condition[s]," but are instead meant to be balanced against each other. *Barker*, 407 U.S. at 533.

## III. ANALYSIS

A year ago, the United States sought appeal of two orders related to Burke's motions to dismiss the indictment, both of which addressed issues of

first impression as a matter of constitutional analysis and technology. *See* Notice. The almost two-year lapse of time preceding that notice of appeal was mostly attributable to Burke's motions, including opportunities to remedy papers infected with hallucinations caused by AI-generated work product. *See* Order at 3, n.2 (recounting this history). Burke cannot now complain about that earlier self-inflicted delay. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("[D]elay caused by the defense weighs against the defendant.").

But the United States is responsible for the loss of the last year. For purposes of the Speedy Trial Act, the reason for the interlocutory appeal matters not, as the statute expressly excludes time "resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(C). For purposes of the Sixth Amendment, though, the government's reason very much matters. Here, the government sought appeal of complicated and novel legal issues (made more so by somewhat conflicting Eleventh Circuit precedent that I addressed in an earlier order) and had to await authorization from the Solicitor General to file its opening brief. Burke does not point to evidence of nefarious conduct by the government, although he faults the government for not being more transparent about the status of the Solicitor General's approval. Without evidence of actual prejudice, the government's reason for the delay—to appeal issues of first impression about the construction of a federal statute—undercuts Burke's constitutional speedy trial argument.

### A. Speedy Trial Act

The filing of the government's notice of appeal on October 27, 2025, tolled the Speedy Trial Act's 70-day timeframe. *United States v. Davenport*, 935 F.2d 1223, 1230 (11th Cir. 1991) ("The period of time excluded from the speedy trial clock for interlocutory appeals generally begins when the appeal is filed."). Under the statute, the period of time when the action was on appeal is considered excludable time. 18 U.S.C. § 3161(h)(1)(C). The Speedy Trial Act does not expound on the rigor by which the government must prosecute an appeal or require the government to have first secured authorization to appeal from the Solicitor General. *See* 20 C.F.R. § 0.20(b) (vesting the authority to determine which appeals the government may take in the appellate courts solely with the Solicitor General). Instead, once the notice of appeal is filed, the statute contemplates that the speedy-trial clock pauses until the conclusion of the appeal. *Davenport*, 935 F.2d at 1230.

Burke resists that plain reading in a couple ways. First, he argues that granting the motions for extensions of time at the Eleventh Circuit somehow violated his statutory guarantee because the government failed to provide context for the status of approval from the Solicitor General. But this argument fails because the Eleventh Circuit has the discretion to approve those requests, and I have no authority to review that court's decisions. Even if I may consider those decisions in resolving Burke's statutory Speedy Trial Act claim now, I

find Burke's argument on that basis unpersuasive. The Speedy Trial Act does not require what Burke claims the government omitted in its motions for extension of time: the efforts made within the Department of Justice to secure the Solicitor General's approval. Second, Burke suggests that the appeal never really commenced because the Solicitor General never approved it. But he identifies no authority for that position. The procedural posture of the action remained one of interlocutory appeal during that timeframe. Indeed, the ultimate voluntary dismissal was simply the resolution of the appeal, not the recognition of a failure to initiate one.

### B. Sixth Amendment

Even assuming that the more-than-year-long delay between the indictment and Burke's trial is presumptively prejudicial,[1] *Ingram*, 446 F.3d at 1336, Burke fails to show that the reason for the delay is unjustified. The government appealed two orders dismissing the Wiretap Act counts and characterizing the videos under that statute as "electronic communications." *See generally* Order; Order for Clarification (Doc. 226). Those orders addressed substantial First Amendment concerns about the government's reading of the statute and which kind of "communication" the statute considers a video

[1] As I explained above, Burke primarily caused the first twenty-two months of delay due to his many motions. The United States caused the last ten-and-a-half months of delay due to the appeal. The caselaw is unclear whether a presumption attaches when less than a year is attributable to the government.

stream. Order 217 at 8–10, 16–18; Order for Clarification at 7–8. Given the complicated and novel nature of these issues, it was reasonable for the government to take additional time to consider and evaluate the position of the United States. These reasons are "valid," and "serve to justify" an "appropriate delay." *Barker*, 407 U.S. at 531.

As for the third *Barker* factor, Burke asserted his speedy-trial right for the first time only after dismissal of the interlocutory appeal, which weighs heavily against him. *United States v. Twitty*, 107 F.3d 1482, 1490 (11th Cir. 1997) (citing *Doggett v. United States*, 505 U.S. 647, 653 (1992)).

Finally, and particularly poignant here when the other factors do not weigh in his favor, Burke fails to show actual prejudice by the delay. The Supreme Court has highlighted three predominant interests to consider: (1) "to prevent oppressive pretrial incarceration," (2) "to minimize anxiety and concern of the accused," and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. First, Burke is not incarcerated, so there is no threat of "time spent in jail awaiting trial" or that he will not be able to "otherwise prepare his defense." *Id.* at 532–33. Second, though Burke may naturally feel anxiety due to his pending charges, the delay causing that anxiety is due to both his motions before the interlocutory appeal and by the government's appeal. Lastly, though Burke indicates that he fears the "spoliation of documents" and witnesses' "memories receding," Mot. at 14, he

does not show how a ten-month delay prevented him from taking steps to preserve that evidence, nor does he identify any stale evidence or other actual harm from the delay, Resp. at 20. Particularly because this prosecution concerns electronic communications and digital fingerprints, all of which were long ago seized by the government, the lack of specific prejudice in this regard is telling.

Weighing the factors, the delay caused by the interlocutory appeal did not violate Burke's Sixth Amendment speedy-trial right. An interlocutory appeal on particularly complex First Amendment and technology issues is a valid reason for the government to delay this trial, even if the Solicitor General ultimately determined that the government would not pursue the appeal. Further, the ten-month delay caused by that interlocutory appeal did not meaningfully prejudice Burke.

## IV. CONCLUSION

This is not the "unusual case" where the requirements of the Speedy Trial Act have been met but "the Sixth amendment right to a speedy trial has been violated." *Twitty*, 107 F.3d at 1490. The delay caused by the interlocutory appeal was justified because the Solicitor General took time to consider the position of the United States on weighty constitutional and statutory interpretation questions. Therefore, neither Burke's Sixth Amendment

speedy-trial right nor his Speedy Trial Act guarantee were violated. Burke's motion to dismiss the indictment is, therefore, **DENIED**.

**ORDERED** in Tampa, Florida, on October 28, 2026.

Kathryn Kimball Mizelle
United States District Judge