**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**TAMPA DIVISION**

UNITED STATES OF AMERICA

v. CASE NO.: 8:24-cr-00068-KKM-SPF

TIMOTHY BURKE

________________________________/

**DEFENDANT TIMOTHY BURKE'S MOTION TO DISMISS SUPERSEDING INDICTMENT WITH PREJUDICE**

Defendant Timothy Burke, through undersigned counsel and under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), moves to dismiss the wiretap and disclosure counts (Counts 8–13), the wiretap objects of Count One (¶ 21(b)–(c)), and the felony allegations of Counts 4–7 that depend on them, in the Superseding Indictment (Doc. 260).

This Court held that before a person may be prosecuted for acquiring an electronic communication, the government must plead and prove two things: that the communication was not "made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public," 18 U.S.C. § 2511(2)(g)(i), and that the defendant was not a party to the communication. *United States v. Burke*, 801 F. Supp. 3d 1273, 1276, 1285–91 (M.D. Fla. 2025). The Superseding Indictment adds those words, but adds no facts to support these conclusory allegations. <u>The facts it does plead answer both</u>

questions the other way. *United States v. Bobo*, 344 F.3d 1076, 1086 (11th Cir. 2003)(court is bound by facts alleged in indictment); *United States v. Tomeny,* 144 F.3d 749, 751 (11th Cir. 1998)(motion to dismiss based on facts pleaded.)

It alleges that the preview streams "w[ere] viewable by accessing specific uniform resource locaters [sic] ('URLs')." Doc. 260 ¶ 9. Mr. Burke is alleged to have requested those URLs and received what the server sent. *Id.* ¶¶ 22(h), 23(i). A server that delivers a stream to anyone who asks without requesting credentials or an authorization key is configured so that those streams are readily accessible to the public, and the person who requested it is the other party to the exchange. These facts, as alleged, *negate the elements addressed by this Court* and the indictment fails to state a crime.

The indictment asserts that "[t]he StreamCo-Net preview function was viewable by accessing specific uniform resource locaters [sic] ("URLs") that were composed of letters, numbers, and symbols and included a unique StreamCo-assigned "BID", generated by an algorithm, that functioned much like a Social Security number." This asserts apparent complexity of the address, not inaccessibility of the communications or the configuration of the platform. The indictment still factually asserts that the communications themselves were on a server that was configured so that they were readily accessible and that all you had to do to access them is to enter the URL into a browser. As pled, the indictment charges no offense and in fact, negates criminality: the legal conclusions assert one thing but the facts alleged assert the opposite.

## I. THE GOVERNING STANDARD

As this Court explained in *United States v. Dines,* No. 8:22-cr-0078-KKM-MRM (M.D. Fla. July 2, 2022), an indictment, read on its face and in a way most favorable to the government, is generally sufficient if it tracks the statutory language and sets out the elements of the offense. Rule 12(b)(3)(B)(v) permits dismissal of an indictment that, *on the facts alleged*, fails to make out the elements of the crime. *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).

While "an indictment need not "allege in detail the factual proof that will be relied upon to support the charges,"" *United States v. Sharpe*, 438 F.3d 1257, 1264 n.3 (11th Cir. 2006)" *cited in United States v. Gbenedio*, 95 F.4th 1319, 1328 (11th Cir. 2024), an indictment that tracks the statute is still judged by the facts it pleads. *See United States v. Huff*, 512 F.2d 66, 69 (5th Cir. 1975) (binding under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*))(count fatally defective where it called the substance a controlled substance but pleaded facts showing it was not); *United States v. Lang*, 732 F.3d 1246, 1249 (11th Cir. 2013) (structuring counts recited the statutory purpose but alleged only single sub-threshold transactions; government's theory was "all well and good, but it is not what is alleged in the indictment"; indictment dismissed).

The defect here is not a missing element, or insufficient facts to support the theory of criminal liability. *Gbenedio*, *supra* at 1329. It is that the indictment affirmatively pleads facts that contradict its own legal conclusions and <u>negate the elements</u>, once you include the "readily

accessible" and "not a party" as elements. In *Huff*, *supra*, the indictment *alleged a controlled substance* but *the facts* alleged a substance that was not controlled, so the indictment as a whole "alleges nothing more than an act which is legal," despite tracking the statutory language. 512 F.2d at 69. And, because the Court has already explained that reading the Wiretap Act to reach such conduct would raise serious First Amendment concerns, *Burke*, 801 F. Supp. 3d at 1279–81, the conduct alleged is not merely lawful; it is constitutionally protected.

## II. THE FACTS ALLEGED AND THE GOVERNMENT'S THEORY

### A. Two systems

The Superseding Indictment describes two StreamCo streaming systems. The first carried the high-definition streams. Those were "encoded by a StreamCo device at the event location and sent in a high-resolution format via a StreamCo proprietary streaming point-to-point protocol to a StreamCo receiving device capable of decoding that transmission," Doc. 260 ¶ 11, and access to the StreamCo-Net protected stream was limited "to only authorized customers through the Internet via a secured password-protected website, which required customers to enter assigned credentials before gaining access." *Id.* ¶ 12; *see id.* ¶ 8 ("secure audio-video streams"). In short, it was an electronic communications system that was configured so that the communications contained in it were not readily accessible to the general public. The indictment does not allege that Mr. Burke acquired or received that transmission.

The second system was the "preview function," which let viewers review the streams "at a lower resolution" and "was viewable by accessing

specific uniform resource locaters [sic] (‘URLs’).” *Id.* ¶ 9. For the preview stream, the indictment alleges no password, token, encryption, or other barrier. It alleges that Mr. Burke saved M3U files listing the preview URLs, *id.* ¶ 23(h), and used his computer to “download and save” the files “retrieved via” the network, *id.* ¶¶ 22(h), 23(i). The server that delivered those files is, in the indictment’s words, “a computer that provided services for other computers connected to it via a computer network . . . for the purpose of sharing resources.” *Id.* ¶ 19.

**B. The government’s theory**

The Superseding Indictment alleges no new facts about how the preview system was configured, and adopts the language of the original indictment that the “audiovisual communications” were accessible by entering a URL. The Superseding Indictment adds only the conclusory allegations that the system “was not configured so that the communication was readily accessible to the general public” and that Mr. Burke “was not a party to the communication.” Doc. 260 at 19–20. Like the original indictment, the superseding alleges that the URL (web address) contained a StreamCo-assigned “BID,” 9 to 16 characters long, “generated by an algorithm,” that “functioned much like a Social Security number.” *Id.* ¶¶ 9–10. The Court invited the government to establish that the system was *configured* so that the communications were not readily accessible. *Burke*, 801 F. Supp. 3d at 1292. The facts alleged in the indictment answer a different question -- whether a member of the public was likely to find the address.

## III. THE FACTS ALLEGED SHOW A SYSTEM CONFIGURED TO MAKE THE COMMUNICATIONS READILY ACCESSIBLE TO THE GENERAL PUBLIC

### A. The Wiretap Act asks a different question from the CFAA and the SCA

Congress protects computers and communications in three statutes, and each asks a different question and requires different allegations and proof.

The Computer Fraud and Abuse Act asks whether the user was *authorized to access the computer*; a gate must be "up or down." 18 U.S.C. § 1030(a)(2)(C); *Van Buren v. United States*, 593 U.S. 374, 390 (2021); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1199 (9th Cir. 2022). *Greenburg v. Wray,* No. CV-22-00122-PHX-DLR, 2022 WL 2176499 (D. Ariz. June 16, 2022), and 2023 WL 4105349, at *3 (D. Ariz. June 21, 2023); *Island Peak Grp., LLC v. Ownwell, Inc.*, No. 3:24-CV-3135-D, 2026 WL 2959162, at *13 (N.D. Tex. Oct. 1, 2026)(no additional authorization required where the website is accessible). An open gate implies authorization. The CFAA also discusses obtaining information one "is not entitled so to obtain." *Van Buren*, supra.

The Stored Communications Act speaks of "unauthorized access" to stored communications, and asks whether the communicator *restricted* access. 18 U.S.C. § 2701(a)(1); *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 668 (D.N.J. 2013) (SCA protects communications the communicator "actively restricts the public from accessing"). Again, with the SCA, the question is whether the access to

the communications is "authorized" and the configuration question is used to determine express or implied permission.

18 U.S.C. § 2511(2)(g)(i), applicable to both the Wiretap Act and the SCA, asks neither. It asks *only* whether the *electronic communications system* -- that is, the facilities "for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications" (18 USC 2510(14)) -- was <u>*configured*</u> so that *the communications themselves* were readily accessible to the general public. A URL itself is not a "facility" or "electronic equipment" - *it is an identifier and an address*, one that "provide[s] a means of locating the resource by describing its primary access mechanism," T. Berners-Lee, R. Fielding & L. Masinter, Uniform Resource Identifier (URI): Generic Syntax, RFC 3986, § 1.1 (Internet Eng'g Task Force Jan. 2005), and the principle of constitutional avoidance cautions against expanding the statutory definition to include a prohibition on otherwise protected activity. *Clark v. Martinez*, 543 U.S. 371, 380–82 (2005); *Skilling v. United States*, 561 U.S. 358, 405–09 (2010).

In short, when you access the electronic communications system - with or without authorization -- by entering the address, the question is whether that system - the facility you have accessed - is configured to deliver the requested communication. The *facts* alleged in the indictment answer that question in the affirmative and negate "the very core of criminality" required to allege a crime. *Russell v. United States*, 369 U.S. 749, 764 (1962).

The indictment explains that the system at issue was configured so

that entering the URL delivers the communication to anyone who asks. This is not about authorization, permission, knowledge, or consent -- the test is objective and focuses only on technical configuration. It is also not about the accessibility of the network, but whether the network is configured so that the communications residing on the network are "readily accessible." *In re Innovatio IP Ventures, LLC Patent Litig., 886 F. Supp. 2d 888, 892 (N.D. Ill. 2012)* ("The question is not . . . whether the networks are 'readily [accessible] to the general public,' but instead whether the network is configured in such a way so that the electronic communications sent over the network are readily [accessible]."); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321–22 (11th Cir. 2006) ("website must be configured in some way so as to limit ready access by the general public.") See *Konop v. Hawaiian Airlines,* Inc., 302 F.3d 868, 875 & 879 n.8 (9th Cir. 2002) (describing H.R. Rep. No. 99-647, at 41, 62–63 (1986), as expressing the Committee's understanding that "the configuration of the electronic communications system would determine whether or not an electronic communication was readily accessible to the public," and quoting the report's intent to "establish an objective standard [of design configuration for] determining whether a system receives privacy protection"); S. Rep. No. 99-541, at 35–36 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3599. The question is whether the website (the thing the URL points to) is configured so that the communications on it (the streams) are not "readily accessible."

Here, the Superseding Indictment itself provides the answer to that question, and the indictment's bare conclusion that the system was "not configured" for public access, with no facts to support it, does not suffice.

*Snow*, 450 F.3d at 1320–21 (affirming dismissal of civil complaint where the complaint's "conclusory allegation . . . provides little insight into whether the website is configured so that the communications . . . are not readily accessible"; "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

**B. The indictment pleads the configuration, and it is open**

The grand jury knew how to describe a closed system, and it did so for the high-definition streams: a proprietary point-to-point protocol and a password-protected website. Doc. 260 ¶¶ 11–12. In contrast, for the preview streams, it described a server that delivered the file to whoever requested the URL, with no credential, no encryption, and no warning. *Id.* ¶¶ 9, 22(h), 23(i). That is the configuration the statute asks about, and it is a public one.

The URL, even with a difficult-to-guess address, was public and publicly accessible - like all URL's are. The system was configured so that the communications on them were readily accessible to the general public - if anyone typed the URL into their browser, then the stream was delivered. The assertion that the system was "not configured" for public access, *id.* at 19–20, is a conclusion with no fact behind it, and with the facts alleged directly contradicting the legal conclusion. "The government's theory… is all well and good, but it is not what is alleged in the indictment." *United States v. Lang*, 732 F.3d 1246,1249 (11th Cir. 2013). *Accord, Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189, 1205–06 (11th Cir. 2007)(in civil case "duty to

accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.")

**C. An obscure address is not a barrier.**

A URL is just an internet address. Anyone who has it may use it to ask a server for what the server is configured to deliver. A hard-to-guess address does not change what the server does when it receives the request. As Professor Kerr observes, "[a] hard-to-guess URL is still a URL, and the information posted at that address is still posted and accessible to the world," and because "[e]ven complicated addresses are easy for computers to find," there is "no workable line between an 'easy' URL that can be accessed and one so hard to guess that access is implicitly forbidden." Orin S. Kerr, *Norms of Computer Trespass*, 116 Colum. L. Rev. 1143, 1164–65 (2016).

Nor does the public's awareness of the URLs matter. "The public's lack of awareness of the ease with which unencrypted Wi-Fi communications can be intercepted by a third party is, however, irrelevant to a determination of whether those communications are "readily accessible to the general public."" *Innovatio*, 886 F. Supp. 2d at 894. Once the correct URL is entered, the Superseding Indictment demonstrates that StreamCo system was configured to deliver the content to the general public and would have done so in precisely the same way irrespective of how the URL was acquired. As in *Snow*, there is no barrier to entry - and indeed, in *Snow*, the defendant was specifically warned not to enter. It is important to note here what the defendant does not argue. We don't argue that

StreamCo had bad, weak or ineffective security or authentication - those are trial issues. We go no further than the wording of the Indictment which asserts that the communications are accessible to anyone who makes the request -- therefore there is no unlawful wiretap.

The government itself takes this position when it suits it. When agents download files from peer-to-peer networks, it contends that no wiretap order is required because the system is configured so that the files are readily accessible, even when the user did not know his folders were exposed and even when agents use special software to find what might otherwise be difficult or impossible to find. *See United States v. Norman*, 448 F. App'x 895, 897 (11th Cir. 2011); *United States v. Thomas*, 548 F. Supp. 3d 1212, 1218 (M.D. Fla. 2021); *United States v. Ganoe*, 538 F.3d 1117, 1119 (9th Cir. 2008); *United States v. Borowy*, 595 F.3d 1045, 1048 (9th Cir. 2010) (irrelevant that the user "simply did not know that others would be able to access files stored on his own computer"). See also, *In re Complaint of Judicial Misconduct*, 575 F. 3d 279 297 (3rd Cir. 2009)(federal judge's lack of awareness that a video he posted of himself bungee jumping revealed a folder containing sexually explicit images he did not intend to make public was irrelevant in determining if they were publicly accessible, rejecting claim of "security through obscurity"). A rule that obscurity defeats public accessibility would unsettle those cases and the convictions that rest on them.

The same is true of the "dark web." Tor "hidden services" are sites a user "can access . . . only *by* knowing [their] exact URL address." *United States v. Taylor*, 935 F.3d 1279, 1283 (11th Cir. 2019). The addresses are

"a random jumble of letters and numbers followed by the address '.onion'" and are "shared via message-board postings on the regular internet or by word of mouth." *Id.*; *accord United States v. Anzalone*, 208 F. Supp. 3d 358, 361 (D. Mass. 2016) (hidden services "are not indexed like websites on the traditional internet"); *United States v. Eldred*, 933 F.3d 110, 112 (2d Cir. 2019). Reaching them takes the exact address and a Tor Browser, which is free and publicly available. Absent some barrier, an "onion service" "will be accessible to anyone with the onion address." *Client Authorization*, Tor Project, https://community.torproject.org/onion-services/advanced/client-auth/ (last visited Nov. 4, 2026). Yet the Department of Justice explains that gathering threat intelligence from such forums "is unlikely to constitute a federal crime." Cybersecurity Unit, Comput. Crime & Intell. Prop. Section, U.S. Dep't of Justice, *Legal Considerations when Gathering Online Cyber Threat Intelligence and Purchasing Data from Illicit Sources* (Version 1.0, Feb. 2020). Visiting a secret dark web forum accessible only through a secret, random address and special software where you have to be provided the .onion address does not answer the question of whether the dark web website hosting that forum is configured so that the contents of the forum are readily accessible to the general public. Some dark-web forums "are invitation-only sites," while "[o]thers are openly accessible on the Dark Web." Kristin Finklea, Cong. Rsch. Serv., R44101, Dark Web 5-7 (2017). Accord, *United States v. Ulbricht*, 858 F. 3d 71, 83 (2nd Cir., 2017)(the Silk Road Tor site "contained a private message system" [and] "a public forum to discuss topics related to Silk Road.") A DarkWeb <u>public forum</u> is

configured so that the communications are readily accessible to the public despite the hidden nature of the dark web and the near impossibility of finding the URL without having it be provided. The indictment alleges the same for the StreamCo site.

**D. The Court's reading avoids the First Amendment problem; the indictment would restore it**

The readily-accessible exception exists in part because it "cures the Wiretap Act's potential First Amendment problems." *Burke*, 801 F. Supp. 3d at 1290. Treating a download from an open server as a felony interception would reintroduce the concern that the Court identified: the specter of a criminal prosecution of "anyone who intentionally acquires a communication—such as by accessing a webpage or streaming a YouTube video," *Id. at 1280, but changes* it to acquiring a communication from an obscure URL (such as a YouTube video posted as "unlisted," removing it from search engines but viewable by anyone with the URL). The ability to find materials online -- even hidden materials -- is particularly critical for members of the digital investigative press. *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 11-12 (D.D.C. 2018)(CFAA case). "[T]he Court must exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium." *Packingham v. North Carolina*, 582 U.S. 98, 105 (2017). See also, D. Victoria Baranetsky, Data Journalism and the Law, Colum. Journalism Rev. (Sept. 19, 2018), https://www.cjr.org/tow_center_reports/data-journalism-and-the-law.php (describing a Pulitzer finalist investigation that retrieved documents "hidden

not by classification or court order, but by obscurity"). This is particularly apparent when prosecutors can use the threat of criminal prosecution to punish those who publish materials found on obscure sites which provide no barrier to entry based on whether what they publish is embarrassing to persons in power. See, e.g. *Zorn v. City of Marion, Kansas*, 774 F. Supp. 3d 1279, 1301–02, 1306–07 (D. Kan. 2025) and *Meyer v. City of Marion*, 776 F. Supp. 3d 991, 1023–24 (D. Kan. 2025)(describing raid on small midwestern newspaper for finding and publishing publicly accessible information). If the obscurity of an internet address is the line between licit and illicit access to content, it poses the same constitutional danger to First Amendment protected activity that this Court's order previously corrected. A shared or posted URL provides access to the system which has been configured to make the communications on it "readily accessible." The conclusory allegation to the contrary would permit prosecution of the "merely curious" in *Snow*, or the doggedly determined investigative journalist.

## IV. MR. BURKE WAS A PARTY TO THE COMMUNICATION

This Court explained that "[f]or ordinary public videos and webpages, the acquiror will be a party to the communication: the intended recipient of data sent from the website's server." *Burke*, 801 F. Supp. 3d at 1287 (citing *United States v. Tagg*, 886 F.3d 579, 583 n.2 (6th Cir. 2018) ("Anytime you click on a website's content (e.g., a link, an image, a page), the website's host computer transmits data to your computer, allowing you to view the content that you requested."); *cf. In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 140–45 (3d Cir. 2015)). The

Superseding Indictment did nothing to assert a configuration that made Burke's request, and the website's delivery of the video anything that was not "ordinary." The indictment alleges it was a video stream accessible by entering a URL. Again, the problem here is not that the indictment lacks fact, it is that the indictment asserts facts that demonstrate no law violation.

To intercept, the communication must be "acquired during its transit between an origin and a destination" by "someone who is neither the sender nor the intended recipient." *Burke* at 1287 (*citing United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003)). "In the streaming context, the operative communication is the transfer of video data from the streaming server to the recipient user's device." *Burke* at 1295 (quoting EPIC Br. (Doc. 143) at 6).

A download is the retrieval, by the party who asks for it, of data that a server sends in response to the request. *Tagg, supra*. An interception is the acquisition of data in transit by someone who is not a party to the exchange. The indictment's facts allege the former, the statute reaches only the latter. The Superseding Indictment pleads exactly that - the download of a file from a file server by the party who requested it.

In each count, the origin is the StreamCo server; the destination is the requester's computer, Mr. Burke's or Mr. Gaudino's. The indictment alleges no facts alleging that either indicted requester (Mr. Burke or Mr. Gaudino) captured a transmission addressed to *some third party*, (what *Steiger* calls, "in flight" 318 F.3d at 1050) or that anyone stood between the server and the requesting computer. Each request for a preview URL is a separate request and response between the server and the requester. Doc.

260 at 19–21 (Counts 8–9 at 67.183.179.97, Gaudino residence; Counts 10–12 at 47.197.207.14, Burke residence). It alleges that the conspirators requested the preview URLs and then "download[ed] and save[d] to their respective computers the intercepted contents retrieved via" the network, *id.* ¶ 22(h); *see id.* ¶ 22(k); and that the server exists "for the purpose of sharing resources," *id.* ¶ 19. The file was simply delivered to the party who asked for it.

The use of the term "intercepted" here is the statutory one - referring to the "acquired" contents. But, the facts describe a download, not an interception of a communication to a third party - precisely what *Tagg* says is permitted. Paragraph 22(g)'s description of the objective as intercepting contents "as they were being transmitted across the StreamCo-Net" is a conclusory label about *contemporaneity*, the counts themselves allege requests and downloads - an ordinary request and delivery from a file server.

When a computer-to-computer connection is voluntarily made, and data is sent from one to the other, both computers, and their operators, are parties to the transfer. *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (collecting cases, including *Google Cookie Placement*, 806 F.3d at 142–43). The *amicus* brief on which the Court relied here said the same: as a direct party to the communication with a streaming server, a user "cannot be held liable for third-party interception." Doc. 143 at 2–3. How Mr. Burke came to have the URL does not change the Superseding Indictment's factual allegation that he (or Gaudino) requested the file and that the

StreamCo server sent it to them. The bare conclusion “not a party,” Doc. 260 at 19–20, cannot override those facts.

## V. DISMISSAL OF THE WIRETAP COUNTS AND THE FELONY ENHANCEMENT IS THE APPROPRIATE REMEDY

### A. The wiretap counts

Counts 8 through 12 fail for the reasons above. Count 13, the disclosure count, depends on an unlawful interception and falls with them. It has two further defects. It rests on a stream “intercepted on 09-28-22,” a date on which none of Counts 8 through 12 charges an interception. Doc. 260 at 19–22; *see id.* ¶ 23(j). And its charging paragraph cites § 2511(1)(a), the interception offense, while its closing line cites § 2511(1)(c), so it does not tell Mr. Burke which offense he must meet. *Id.* at 21–22. The wiretap objects of Count One, *id.* ¶ 21(b)–(c), must fail because a conspiracy cannot have as its object conduct that is not a crime. The forfeiture allegation, *id.* at 23, must be stricken to the extent it depends on these counts.

### B. The felony enhancement

Counts 4 through 7 are charged as felonies only because the access was alleged to be “in furtherance of a criminal act, in violation of 18 U.S.C. § 2511(1)(a).” Doc. 260 at 18–19; *see* 18 U.S.C. § 1030(c)(2)(B)(ii). The original indictment pleaded the enhancement three ways: a § 2511(1)(a) predicate, a § 2511(1)(c) predicate, and commercial advantage or private financial gain. Doc. 1. The Superseding Indictment abandons the second and third. 18 U.S.C. § 371 ¶ 2 (“If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the

punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.”).

## VI. DISMISSAL SHOULD BE WITH PREJUDICE

The first dismissal was without prejudice because the Court had just announced the governing elements. *Burke*, 801 F. Supp. 3d at 1291. The Court then laid out the government’s options, including to “supersede and cure the counts consistent with this order,” and observed that doing so would “minimally impact” the trial presentation. *Id.* at 1292. The government has had that roadmap, a second grand jury, and more than a year, and it has now pleaded these counts twice. The facts pled still describe a download from an open server. No further pleading on those facts can state an offense.

**WHEREFORE**, Mr. Burke requests that the Court dismiss with prejudice Counts 8 through 13, the wiretap objects of Count One, and the related forfeiture allegation; limit the 18 U.S.C. § 371 count to the penalty for a misdemeanor; and dismiss the § 1030(c)(2)(B)(ii) enhancement in Counts 4 through 7 or reduce those counts to misdemeanors.

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01(g), the undersigned certifies that he has conferred with counsel for the government, who opposes the requested relief.

Respectfully submitted,

*s/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 33606
Phone: (813) 253-3363
Email: mmaddux@madduxattorneys.com

*s/Mark D. Rasch*
Mark D. Rasch
Law Office of Mark Rasch
MDRasch@gmail.com | (301) 547-6925
Admitted *Pro hac vice*

COUNSEL FOR TIMOTHY BURKE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of November, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

*s/Michael P. Maddux*
Michael P. Maddux, Esquire